Jonas Jacobson (OSB No. 231106)
jonas@dovel.com
Christin Cho (Cal. Bar No. 238173)*
christin@dovel.com
Simon Franzini (Cal. Bar No. 287631)*
simon@dovel.com
Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
Tel: (310) 656-7066

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| KEIRA MCCARRELL, individually and on behalf of all others similarly situated, | Case No. 3:25-cv-00454 |
| Plaintiff, | |
| v. | CLASS ACTION COMPLAINT |
| RUGSUSA, LLC, | DEMAND FOR JURY TRIAL |
| Defendant. | |

## Table of Contents

I.  Introduction. ........................................................................................................... 1

II.  Parties. ................................................................................................................... 2

III.  Jurisdiction and Venue. ......................................................................................... 3

IV.  Facts. ..................................................................................................................... 3

    A.  Defendant's fake prices and fake discounts. ................................................ 3

    B.  Defendant's advertisements violate Oregon law. ...................................... 11

    C.  Defendant's advertisements harm consumers ........................................... 13

    D.  Plaintiff was misled by Defendant's misrepresentations. ......................... 15

    E.  Defendant breached its contract with and warranties to Ms. McCarrell and the putative class. ................................................................................... 18

    F.  No adequate remedy at law. ...................................................................... 19

V.  Class Action Allegations. ..................................................................................... 20

VI.  Claims. ................................................................................................................. 21

    Count I: Violation of the Oregon Unlawful Trade Practices Act:  O.R.S. §§ 646.605, et seq. .................................................................................................... 21

    Count II: Breach of Contract ............................................................................. 28

    Count III: Breach of Express Warranty ............................................................. 28

    Count IV: Unjust Enrichment ........................................................................... 29

    Count V: Intentional Misrepresentation ........................................................... 30

VII.  Prayer for Relief. ................................................................................................. 31

VIII.  Jury Demand. ....................................................................................................... 31

## I.    Introduction.

1.    Advertised "sale" prices are important to consumers.  Consumers are more likely to purchase an item if they know that they are getting a good deal.  Further, if consumers think that a sale will end soon, they are likely to buy now, rather than wait, comparison shop, and buy something else.

2.    While there is nothing wrong with a legitimate sale, a fake one—that is, one with made-up regular prices, made-up discounts, and made-up expirations—is deceptive and illegal.

3.    As the Federal Trade Commission advises in its *Guides Against Deceptive Pricing*, it is deceptive to make up "an artificial, inflated price … for the purpose of enabling the subsequent offer of a large reduction" off that price.  16 C.F.R. § 233.1.

4.    In addition, Oregon's Unlawful Trade Practices Act (UTPA) expressly prohibits businesses from making "false or misleading representations of fact concerning the reasons for, existence of, or amounts of price reductions," O.R.S. § 646.608(j); "false or misleading representations of fact concerning the offering price of, or the person's cost for real estate, goods or services," O.R.S. § 646.608(s); representing that goods have "characteristics" that they do not have, O.R.S. § 646.608(e); advertising "goods … with intent not to provide the real estate, goods or services as advertised," O.R.S. § 646.608(i); and making "false or misleading statements about a … promotion," O.R.S. § 646.608(p).

5.    The UTPA also prohibits sellers from using misleading price comparisons to advertise their products.  O.R.S. § 646.608(ee).

6.    Defendant RugsUSA, LLC ("Defendant" or "RugsUSA") sells and markets rugs and home accessory products online through the RugsUSA brand and website, www.rugsusa.com ("RugsUSA Products" or "Products").  It sells its products using fake sales, and has used fake sales for years.  Consumers buy RugsUSA products believing that they are getting a discount—when in

fact they are not.

7.      RugsUSA uses fake sales despite knowing that this is illegal and misleading. RugsUSA was already sued for using fake sales last year.  It settled that case, and then resumed using fake sales again.  Today, RugsUSA continues to use illegal fake sales.  They continue to mislead consumers into believing that they are getting a sale price—when in fact consumers are paying full price.

8.      As described in greater detail below, Ms. McCarrell bought an item from Defendant from its website, www.rugsusa.com.  When Ms. McCarrell made her purchase, Defendant advertised that a limited-time sale was going on, and so Defendant represented that the Product Ms. McCarrell purchased was being offered at a steep discount from its purported regular prices.  And based on Defendant's representations, Ms. McCarrell believed that she was purchasing a Product whose regular price and market value were the purported list price that Defendant advertised, that she was receiving a substantial discount, and that the opportunity to get that discount was time-limited. These reasonable beliefs are what caused Ms. McCarrell to buy from Defendant.

9.      In truth, however, the representations Ms. McCarrell relied on were not true.  The purported list prices were not the true regular prices, the purported discounts were not the true discounts, and the discounts were not time-limited.  Had Defendant been truthful, Ms. McCarrell and other consumers like her would not have purchased the Products, or would have paid less for them.

10.     Ms. McCarrell brings this case for herself and the other customers who purchased Defendant's Products.

## II.    Parties.

11.     Plaintiff Keira McCarrell is domiciled in Portland, Oregon.

12.     The proposed class includes citizens of every state.

13.     Defendant RugsUSA, LLC is a Delaware company with a place of business at 8 Santa Fe Way, Cranbury, NJ 08512.

**III.    Jurisdiction and Venue.**

14.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2).  The amount in controversy exceeds $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from Defendant.

15.     The Court has personal jurisdiction over Defendant because Defendant sold RugsUSA Products to consumers in Oregon, including to Plaintiff.  Defendant does business in Oregon.  It advertises and sells its Products in Oregon, and serves a market for its Products in Oregon.  Due to Defendant's actions, its Products have been marketed and sold to consumers in Oregon, and harmed consumers in Oregon.  Plaintiff's claims arise out of Defendant's contacts with this forum.  Due to Defendant's actions, Plaintiff purchased Defendant's Product in Oregon, and was harmed in Oregon.

16.     Venue is proper under 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(d) because Defendant would be subject to personal jurisdiction in this District if this District were a separate state, given that Defendant sold RugsUSA Products to consumers in this District, including Plaintiff. Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of Defendant's conduct giving rise to the claims occurred in this District, including Defendant's sale to Plaintiff.

17.     Divisional Assignment.  This case should be assigned to the Portland division. *See* L.R. 3-2(a)(1).  A substantial part of the events giving rise to the claims occurred in Portland, Oregon.

**IV.    Facts.**

**A.    Defendant's fake prices and fake discounts.**

18.     Defendant manufactures, distributes, markets, and sells rugs and home accessory

products.  RugsUSA sells its Products directly to consumers online, through its website,

rugsusa.com.

19.     Defendant has used fake sales to sells its products for years.

20.     In April 2023, RugsUSA was sued in California for misleading customers with its

fake sale practices.[1]  Lawsuits in other states followed.  Plaintiffs in the other cases were represented

by Plaintiff's counsel in this case.  In February 2024, the parties settled, with RugsUSA ultimately

paying over $14 million dollars into a class common fund.[2]

21.     But even after being sued and settling that case, RugsUSA continued to use fake

sales, and continues its practice of using fake sales today.  This includes using fake strikethrough

prices, fake sitewide sales, and "limited time" sales that are continuously available.

22.     At any given time, on its website, Defendant advertises steep discounts on its

Products.  Even though in truth these discounts run in perpetuity, Defendant prominently claims

that they are "LIMITED TIME ONLY."  And it advertises these discounts extensively: on an

attention-grabbing banner near the top of its website; in a large banner image on its homepage; on

the products listing pages; on the individual product pages for each Product, and on the checkout

pages.  It advertises them by touting "X% off"; by advertising list prices in strikethrough font next

to lower, purported discount prices; with slogans such as "20% Off" in attention-grabbing, red font

next to product descriptions; and by identifying the supposed savings that customers are supposedly

receiving by expressing the supposed full purchase price, in strikethrough font, during checkout.

Example screenshots are provided on the following pages:

---

[1] *See, e.g., Dray v. RugsUSA*, No. 2:23-cv-3017 (C.D. Cal. April 21, 2023) (complaint).
[2] The class members for that settlement included purchaser from certain states, including Oregon, that had purchased RugsUSA products on or before October 12, 2023.



*Captured on October 28, 2023*



*Captured on December 24, 2023*



*Captured on February 13, 2024*



*Captured on April 17, 2024*



*Captured on July 11, 2024*



*Captured on August 9, 2024*

*Captured on September 11, 2024*



*Captured on August 28, 2024*



*Captured on April 18, 2024*



*Captured on April 17, 2024*



*Captured on October 8, 2024*

23. Defendant represents that these discounts will only be available for a limited time, but in reality, they continue indefinitely. For example, as depicted below, Defendant represents that its sales expire on a particular date ("Ends Tonight!") or when the countdown clock expires, for example: "8h 36m 37s." To reasonable consumers, this means that after the countdown clock runs out, Defendant's Products will no longer be on sale and will retail at their purported list prices. But

immediately after each purportedly time-limited sale ends, Defendant generates another similar discount, with a new expiration date.

24.    For example, on July 8, 2024 Defendant advertised a purportedly time-limited sale "END[ING] TONIGHT!"



*Captured on July 8, 2024*

25.    However, on July 9, 2024, the day that the time-limited sale was supposed to end, Defendant advertised another purportedly "limited time" sale.



*Captured on July 8, 2024*

Class Action Complaint                9                Case No. 3:25-cv-00454

26.     To confirm that Defendant routinely offers discounts off of purported regular prices even after settling its fake discount cases, Plaintiff's counsel performed an investigation of Defendant's advertising practices using the Internet Archive's Wayback Machine and screen captures from Defendant's website.  150 screenshots were collected from the Internet Archive's Wayback Machine and directly from Defendant's website, from the period beginning October 13, 2023, through November 22, 2024.  138 out of 150 of those screenshots displayed a purportedly time-limited sitewide sale.

27.     Defendant advertises that to obtain the supposed discount, consumers must enter a promo code.  The promo code is prominently advertised throughout Defendant's website, including on a banner on every page of the website, on product pages, on search pages, and during checkout. It is also prominently advertised at the top of the checkout cart.  And, it is automatically applied to the order, even if the consumer does not enter it.  So, the overwhelming majority (if not all) of Defendant's sales are made at the advertised discount price (and not the supposedly regular list price), notwithstanding the supposed need to enter a promo code to get the advertised discount.

28.     Through its fake discount scheme, Defendant leads reasonable consumers to believe that they will get a discount on the Products they are purchasing if they purchase during the limited-time promotion.  In other words, it leads reasonable consumers to believe that if they buy now, they will get a Product worth X at a discounted, lower price Y.  This creates a sense of urgency: buy now, and you will receive something worth more than you pay for it; wait, and you will pay more for the same thing later.

29.     Based on Defendant's advertisements, reasonable consumers reasonably believe that the list prices Defendant advertises are Defendant's regular prices (that is, the prices at which the Products ordinarily or typically retail for), and its former prices (that is, the prices at which the goods were actually offered for sale before the limited-time offer went into effect).  In other words,

reasonable consumers believe that the list prices Defendant advertises represent the amount that consumers usually have to pay for Defendant's goods, formerly had to pay for Defendant's goods (before the limited-time sale began), and will again have to pay for Defendant's goods when the limited-time sale ends.  Said differently, reasonable consumers reasonably believe that, prior to the supposedly time-limited sale, consumers had to pay the list price to get the item and did not have the opportunity to get a discount from that list price; and that they will have to pay the list price again once the supposedly time-limited sale is over.

30.    Reasonable consumers also reasonably believe that the list prices that Defendant advertises represent Defendant's regular prices, and the true market value of the Products, and that they are the prevailing prices for those Products.  Reasonable consumers also believe that they are receiving reductions from Defendant's regular prices, former prices, and the market value of the Products in the amounts advertised.  Said differently, reasonable consumers reasonably believe that, if they buy now, they will receive a price reduction from the price at which Defendant ordinarily and typically sells its Products; a price reduction from Defendant's former prices; and a price reduction from the Products' market value.  In truth, however, Defendant consistently, if not perpetually, offers purported reductions off the list prices it advertises.  As a result, everything about Defendant's price and purported discount advertising is false.  The list prices Defendant advertises are not actually Defendant's regular or former prices, or the prevailing prices for the Products Defendant sells, and do not represent the true market value for the Products, because Defendant's Products are consistently available for less than that, and customers did not have to formerly pay that amount to get those items.  The purported discounts Defendant advertises are not the true discount the customer is receiving.  Nor are the purported discounts "LIMITED TIME ONLY"— quite the opposite, they are almost always, if not always, available.

**B.    Defendant's advertisements violate Oregon law.**

31.     Oregon's Unlawful Trade Practices Act (UTPA) expressly prohibits businesses from making "false or misleading representations of fact concerning the reasons for, existence of, or amounts of price reductions," O.R.S. § 646.608(j); "false or misleading representations of fact concerning the offering price of, or the person's cost for real estate, goods or services," O.R.S. § 646.608(s); representing that goods have "characteristics" or "qualities" that they do not have, O.R.S. § 646.608(e); advertising "goods … with intent not to provide the real estate, goods or services as advertised," O.R.S. § 646.608(i); and making "false or misleading statements about a … promotion used to publicize a product, business or service," O.R.S. § 646.608(p).

32.     Here, as described in detail above, Defendant makes false and misleading representations of fact about its prices.  Defendant makes false or misleading representations of fact concerning the existence of and amounts of price reductions, including the existence of steep discounts, and the amounts of price reductions resulting from those discounts.  Defendant also advertises regular prices that are not its true regular prices, or its former prices.

33.     Defendant also represents that the goods have characteristics and qualities that they do not have—namely, that the values of the Products are greater than they actually are.  Defendant does this by advertising fake discounts for the Products, as alleged in greater detail above. Defendant advertised goods or services with the intent not to sell them as advertised, for example, by advertising goods having certain former prices and/or market values without the intent to sell goods having those former prices and/or market values.  Finally, Defendant makes false or misleading statements about its promotions.  As detailed above, for example, Defendant makes "limited time" statements when its promotions are not, in fact, time-limited.  Likewise, Defendant represents that its Products are being sold at a discount because of a promotion, when they are not.

34.     The UTPA also prohibits sellers from using misleading price comparisons to advertise their products.  O.R.S. § 646.608(ee) (citing O.R.S. §§ 646.884 and 646.885).  Specifically, it

is illegal for a seller to include a price comparison in an advertisement unless "[t]he seller clearly and conspicuously identifies in the advertisement the origin of the price that the seller is comparing to the seller's current price." O.R.S. § 646.883. Use of the term "sale" is deemed to identify "the origin of the price that the seller is comparing to the seller's current price as the seller's own former price, or in the case of introductory advertisements, the seller's future price." O.R.S. § 646.884. And, unless otherwise stated, use of the terms "discount," "_____ percent discount," "$_____ discount," "_____ percent off," and "$_____ off" are "considered to identify the origin of the price that the seller is comparing to the seller's current price as the seller's former price, or in the case of introductory advertisements, the seller's future price." O.R.S. § 646.885.

35.    As alleged in greater detail above, Defendant uses misleading price comparisons.

36.    For example, Defendant uses strikethrough pricing without clearly and conspicuously identifying in the advertisement the origin of the price that the seller is comparing to the current price. As shown in the images above, Defendant uses strikethrough sale pricing without any disclosures about where the strikethrough price comes from.

37.    In addition, as alleged in greater detail above, Defendant uses the word "sale," "discount," and "___% Off," in its promotions, even when the Products are not offered at a discount as compared to the seller's former price (or in the case of introductory products, a future price). Defendant also makes no disclosure indicating that the price comparisons are to something other than the former or future price.

**C.    Defendant's advertisements harm consumers.**

38.    Based on Defendant's advertisements, reasonable consumers expect that Defendant's regular prices (the prices without the advertised discounts) are former prices at which Defendant actually sold its Products before the discounts were introduced for a limited time; that they are the prevailing prices for the Products; and that they represent the true market value of the

Products.

39.     Reasonable consumers also expect that, if they purchase during the sale, they will receive (at a discount) Products whose market value is the regular, non-discounted price, and which regularly and formerly retailed for that amount.  For example, for items that are purportedly 20% off, reasonable consumers would expect that they are receiving a 20% discount as compared to the regular price and former price, and that the items have a market value of 20% more than what they are spending.

40.     As explained above, however, Plaintiff and class members' reasonable expectations were not met.  Instead of receiving Products with a market value equal to the alleged regular prices, they received items worth less.  In addition, instead of receiving a significant discount, Plaintiff and the class received little or no discount.  Thus, Defendant's false advertisements harm consumers by depriving them of the reasonable expectations to which they are entitled.

41.     In addition, consumers are more likely to buy a product, and buy more of it, and pay more for it, if they believe that the product is on sale and that they are getting a product with a higher regular price and/or market value at a substantial discount.

42.     Consumers that are presented with discounts are substantially more likely to make the purchase.  "Nearly two-thirds of consumers surveyed admitted that a promotion or a coupon often closes the deal, if they are wavering or are undecided on making a purchase."[3]  And, "two-thirds of consumers have made a purchase they weren't originally planning to make solely based on finding a coupon or discount," while "80% [of consumers] said they feel encouraged to make a first-time purchase with a brand that is new to them if they found an offer or discount."[4]

---

[3] https://www.invespcro.com/blog/how-discounts-affect-online-consumer-buying-behavior/.
[4] RetailMeNot Survey: Deals and Promotional Offers Drive Incremental Purchases Online, Especially Among Millennial Buyers (prnewswire.com).

43.     Similarly, when consumers believe that an offer is expiring soon, the sense of urgency makes them more likely to buy a product.[5]

44.     Thus, Defendant's advertisements harm consumers by inducing them to make purchases they otherwise would not have made, based on false information.  In addition, Defendant's advertisements artificially increase consumer demand for Defendant's Products.  This puts upward pressure on the prices that Defendant can charge for its Products.  As a result, Defendant can charge a price premium for its Products, that it would not be able to charge absent the misrepresentations described above.  So, due to Defendant's misrepresentations, Plaintiff and the class paid more for the Products they bought than they otherwise would have.

**D.     Plaintiff was misled by Defendant's misrepresentations.**

45.     On June 27, 2024, Ms. McCarrell purchased a "Opar Flora Washable Abstract Rug" from Defendant's website, rugsusa.com.  She made this purchase while living in Portland, Oregon.  On its website and during checkout, Defendant represented that a time-limited ("Ends Tonight") "70% OFF" sitewide sale, as well as another "40% Off Clearance" sale ("Use Code: SALE40"), was running and applied to the Product that Ms. McCarrell purchased:

---

[5] https://cxl.com/blog/creating-urgency/ (addition of a countdown timer increased conversion rates from 3.4%-10%); Dynamic email content leads to 400% increase in conversions for Black Friday email | Adestra (uplandsoftware.com) (400% higher conversation rate for ad with countdown timer).



*Captured June 27, 2024*



*Captured June 27, 2024*

46.    Defendant also represented that the list price of the Opar Flora Washable Abstract Rug was $183.19, but that Ms. McCarrell would receive a $94.40 total discount on her order (-$59.20 "SALE40" clearance discount combined with the automatic "Fourth of July" discount).  Defendant represented that the Product had a certain regular price, and Defendant confirmed this in Ms. McCarrell's online Order Details:



47.    Ms. McCarrell read and relied on Defendant's representations on Defendant's website, specifically that the Product she purchased being offered at a discount for a limited time and had higher regular and usual prices, and that she would be receiving a price reduction by buying now.  Based on Defendant's representations described and shown above, Ms. McCarrell reasonably understood that the Product she was purchasing regularly (and before the promotion Defendant was advertising) retailed at the published list price, that the published list price was the market value of the Product that she was buying; that she was receiving the advertised discount and a price reduction as compared to the regular price, and that advertised discount was only available for a limited time (during the limited time promotion).  She would not have made the purchase if she had known that the Product was not discounted as advertised, and that she was not receiving the advertised discount.

48.    Plaintiff faces an imminent threat of future harm.  Plaintiff would purchase RugsUSA Products from Defendant again in the future if she could feel sure that Defendant's list prices accurately reflected Defendant's regular prices and former prices, and the market value of the

Products, and that its discounts were truthful.  But without an injunction, Plaintiff has no realistic way to know which—if any—of Defendant's list prices, discounts, and sales are not false or deceptive.   For example, while she could watch a sale until the countdown ends to see if the sale is permanent, doing so could result in her missing out on the sale (e.g., if the sale is actually limited in time, and not permanent).  Accordingly, Plaintiff is unable to rely on Defendant's advertising in the future, and so cannot purchase the Products she would like to purchase.

> **E.      Defendant breached its contract with and warranties to Ms. McCarrell and the putative class.**

49.      When Ms. McCarrell and other members of the putative class purchased and paid for the Products they bought as described above, they accepted offers that Defendant made, and thus, a contract was formed at the time that they made the purchase.  The offer was to provide Products having a particular listed regular price and market value, and to provide those Products at the discounted price advertised on the website.

50.      Defendant's website and order details list the market value of the items that Defendant promised to provide.  Defendant agreed to provide a discount equal to the difference between the regular prices listed by Defendant, and the prices paid by Ms. McCarrell and putative class members.  For example, Defendant offered to provide Ms. McCarrell the Opar Flora Washable Abstract Rug, which has a regular price and market value of $183.19, and to provide a significant discount from the regular price of the item.  Defendant also warranted that the regular price and market value of the Product Ms. McCarrell purchased was the amount it identified as the list price and warranted that Ms. McCarrell was receiving a total discount of $94.40 on the Product.

51.      The regular price and market value of the items Ms. McCarrell and the putative class members would receive, and the amount of the discount they would be provided off the regular price of those items, were specific and material terms of the contract.  They were also affirmations of fact about the Products and a promise relating to the goods.

52.     Ms. McCarrell and other members of the putative class performed their obligations under the contract by paying for the items they purchased.

53.     Defendant breached its contract by failing to provide Ms. McCarrell and other members of the putative class with Products that have a regular price and former price and market value equal to the regular list price displayed, and by failing to provide the discounts and price reductions it promised, in the amounts promised.  Defendant also breached warranties for the same reasons.

**F.     No adequate remedy at law.**

54.     Plaintiff seeks damages and, in the alternative, restitution.  Plaintiff is permitted to seek equitable remedies in the alternative because she has no adequate remedy at law.

55.     A legal remedy is not adequate if it is not as certain as an equitable remedy.  The elements of Plaintiff's equitable claims are different and do not require the same showings as Plaintiff's legal claims.  For example, Plaintiff's False Advertising Law (FAL) claim under section 17501 (an equitable claim) is predicated on a specific statutory provision, which prohibits advertising merchandise using a former price if that price was not the prevailing market price within the past three months.  Cal. Bus. & Prof. Code § 17501.  Plaintiff may be able to prove these more straightforward factual elements, and thus prevail under the FAL, while not being able to prove one or more elements of her legal claims.

56.     In addition, to obtain a full refund as damages, Plaintiff must show that the Products she bought has essentially no market value.  In contrast, Plaintiff can seek restitution without making this showing.  This is because Plaintiff purchased Products that she would not otherwise have purchased, but for Defendant's representations.  Obtaining a full refund at law is less certain that obtaining a refund in equity.

57.     Furthermore, the remedies at law available to Plaintiff are not equally prompt or

otherwise efficient.  The need to schedule a jury trial may result in delay.  And a jury trial will take longer, and be more expensive, than a bench trial.

**V.      Class Action Allegations.**

58.     Plaintiff brings the asserted claims on behalf of the proposed class of all persons who, while in the state of Oregon and within the applicable statute of limitations period, purchased one or more RugsUSA Product advertised at a discount on Defendant's website on or after October 13, 2023 (the "Class").

59.     Plaintiff reserves the right to amend the definitions of the Class if discovery or further investigation reveals that the Class should be expanded or otherwise modified.

60.     The following people are excluded from the proposed class: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

*Numerosity & Ascertainability*

61.     The proposed class contains members so numerous that separate joinder of each member of the class is impractical.  There are tens or hundreds of thousands of class members.

62.     Class members can be identified through Defendant's sales records and public notice.

*Predominance of Common Questions*

63.     There are questions of law and fact common to the proposed class.  Common

questions of law and fact include, without limitation:

(1) whether Defendant made false or misleading statements of fact in its advertisements;

(2) whether Defendant violated Oregon's consumer protection statutes;

(3) whether Defendant committed a breach of contract;

(4) whether Defendant committed a breach of an express warranty;

(5) damages needed to reasonably compensate Plaintiff and the proposed class.

### *Typicality & Adequacy*

64.     Plaintiff's claims are typical of the proposed class.  Like all members of the proposed class, Plaintiff purchased the Products advertised at a discount on Defendant's website.  There are no conflicts of interest between Plaintiff and the class.

### *Superiority*

65.     A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical.  It would be unduly burdensome to have individual litigation of millions of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

## VI.    Claims.

**Count I: Violation of the Oregon Unlawful Trade Practices Act:**
**O.R.S. §§ 646.605, et seq.**
**(By Plaintiff and the Class)**

66.     Plaintiff incorporates each and every factual allegation set forth above.

67.     Plaintiff brings this cause of action on behalf of herself and members of the Class.

68.     Defendant has violated the Oregon Unlawful Trade Practices Act (UTPA).  O.R.S. §§ 646.605, et seq.

69.     The UTPA prohibits unlawful business and trade practices.  O.R.S. § 646.608. Under the UTPA, "[a] person engages in an unlawful practice if in the course of the person's

business, vocation or occupation the person does any of the following:"

- "Represents that … goods … have … characteristics … that the … goods … do not have," O.R.S. § 646.608(e);

- "Advertises … goods … with intent not to provide the real estate, goods or services as advertised," O.R.S. § 646.608(i);

- "Makes false or misleading representations of fact concerning the reasons for, existence of, or amounts of price reductions," O.R.S. § 646.608(j);

- "Makes any false or misleading statement about a … promotion used to publicize a product," O.R.S. § 646.608(p);

- "Makes false or misleading representations of fact concerning the offering price of, or the person's cost for real estate, goods or services," O.R.S. § 646.608(s);

70.     Defendant is a "person," under the UTPA, as defined by O.R.S. § 646.605(4).  The definition of "person" includes "corporations," and as alleged above, Defendant is a corporation.

71.     Defendant engages in the conduct of "trade" and "commerce" under the UTPA.  Defendant does this by advertising, offering, and distributing, by sale, goods in a manner that directly and indirectly affects people of the state of Oregon.  O.R.S. § 646.605(8).  Defendant advertises and sells rugs and home accessory products in Oregon, and serves a market for its Products in Oregon.  Due to Defendant's actions, its Products have been marketed and sold to consumers in Oregon, and harmed consumers in Oregon, including Plaintiff.  Defendant's unlawful methods, acts and practices described above were committed in the course of Defendant's business.  O.R.S. § 646.608(1).

72.     The rugs and home accessory products advertised, offered, and sold Defendant are "goods" that are or may be obtained primarily for personal, family or household as defined by O.R.S. § 646.605(6).  Plaintiff and the Class purchased the Products advertised by Defendant for

personal, family, or household purposes.

73.     As alleged in greater detail above, Defendant makes "false or misleading representations of fact concerning the reasons for, existence of, or amounts of price reductions." O.R.S. § 646.608(j).  Defendant does this by advertising fake sales, fake list prices, and fake limited time sales.  By advertising regular list prices and supposedly time-limited discounts, Defendant's website creates an illusion that consumers are receiving a limited-time discount if they buy now.  In truth, however, Defendant's Products are always on sale, and these sales persist indefinitely.  As a result, Defendant's listed prices are not Defendant's true prices, or former prices, or the prevailing market prices for Defendant's Products.  Nor are its purported price reductions true price reductions.  Because Defendant always offers sitewide discounts, as well as discounts on certain items, it does not ordinarily or typically sell its Products at the purported regular prices.

74.     As alleged in greater detail above, Defendant also makes "false or misleading representations of fact concerning the offering price of, or the person's cost for real estate, goods or services."  O.R.S. § 646.608(s).  As described above, Defendant's website purports to advertises its Products with regular list prices, and discounted "sale" prices.  But Defendant's listed prices are not Defendant's true prices, former prices, or prevailing market prices for those Products.  Likewise, the purported price reductions are not true price reductions.

75.     As alleged in greater detail above, Defendant also "advertises … goods … with intent not to provide the … goods … as advertised," O.R.S. § 646.608(i).  Defendant advertises Products at a sale price, or discount, as compared to a regular list price.  But the purported discounts that Defendant advertises are not the true discounts that the customer receives.  And Defendant's listed prices are not Defendant's true prices, former prices, or prevailing market prices for those Products.  In many cases, the customer receives no discount at all.

76.     As alleged in greater detail above, Defendant also represents that its goods have

characteristics that they do not have. O.R.S. § 646.608(e). Defendant represents that the value of its Products is greater than it actually is by advertising fake discounts for the Products.

77.    As alleged in greater detail above, Defendant false and misleading statements about the promotions used to publicize its Products. O.R.S. § 646.608(p). As described above, Defendant advertises Products at a sale price, or discount, as compared to the regular prices. But the purported discounts that Defendant advertises are not the true discounts that the customer receives. In many cases, the customer receives no discount at all. In addition, as described above, Defendant advertises limited-time discounts that are not in fact limited in time.

78.    The UTPA also prohibits sellers from using misleading price comparisons to advertise their products. O.R.S. § 646.608(ee) (citing O.R.S. §§ 646.884 and 646.885). The UTPA expressly prohibits sellers from including "a price comparison in an advertisement unless" "[t]he seller clearly and conspicuously identifies in the advertisement the origin of the price that the seller is comparing to the seller's current price." O.R.S. § 646.883. Use of term "sale" is deemed to identify "the origin of the price that the seller is comparing to the seller's current price as the seller's own former price, or in the case of introductory advertisements, the seller's future price." O.R.S. § 646.885. And, unless otherwise stated, use of the terms "discount," "_____ percent discount," "$_____ discount," "_____ percent off," and "$_____ off" are "considered to identify the origin of the price that the seller is comparing to the seller's current price as the seller's former price, or in the case of introductory advertisements, the seller's future price." O.R.S. § 646.885.

79.    As alleged in greater detail above, Defendant uses misleading price comparisons. For example, Defendant uses strikethrough pricing without clearly and conspicuously identifying in the advertisement the origin of the price that the seller is comparing to the current price. Defendant's strikethrough pricing does not contain any disclosures at all about the origin of the strikethrough price.

39.     In addition, as alleged in greater detail above, Defendant uses the word "sale," "discount," and "___% Off," in its promotions, even when the Products are not offered at a discount as compared to the seller's former price (or in the case of introductory products, a future price).  Defendant also makes no disclosure indicating that the price comparisons are to something other than the former or future price.

80.     Defendant's representations of regular prices, sales, and discounts on its website are "advertisements" as defined by O.R.S. § 646.881(1).  These representations about the prices, sales, and discounts were made in connection with the sales of Defendant's rugs and home accessory products.

81.     Defendant's use of list prices, sitewide sales, and advertised discounts are "price comparisons" as defined by O.R.S. § 646.881(2).  These statements make a claim that the current price is reduced as compared to a Product's typical or former price.

82.     Defendant's unlawful methods, acts and practices described above were "willful violations" of O.R.S. § 646.608 because Defendant knew or should have known that its conduct was a violation, as defined by O.R.S. § 646.605(10).  For example, Defendant knows that its actions are misleading and deceptive, because it was already sued for the same behavior under the consumer protection laws of multiple states.

83.     Defendant, at all relevant times, had a duty to disclose that the discounts were not real, that the sales persisted and were not limited in time, and that the regular prices were not the true regular prices of the Products.  Defendant had a duty because (1) Defendant had exclusive knowledge of material information that was not known to Plaintiff and the Class; (2) Defendant concealed material information from Plaintiff and the Class; and (3) Defendant made partial representations which were false and misleading absent the omitted information.

84.     Defendant's misrepresentations and nondisclosures deceive and have a tendency to

deceive a reasonable consumer and the general public.

85.    Defendant's misrepresentations and nondisclosures are material.  A reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

86.    Defendant engaged in the reckless or knowing use or employment of the unlawful methods, acts or practices alleged here, which are unlawful under O.R.S. § 646.608.

87.    As a direct, substantial and/or proximate result of Defendant's conduct, Plaintiff and Class members suffered ascertainable losses and injury to business or property.

88.    Plaintiff and Class members would not have purchased the Products at the prices they paid, if they had known that the advertised prices and discounts were false.

89.    Plaintiff and Class members paid more than they otherwise would have paid for the Products they purchased from Defendant.  Defendant's false pricing scheme fraudulently increased demand from consumers.

90.    The Products that Plaintiff and Class members purchased were not, in fact, worth as much as Defendant represented them to be worth.

91.    Plaintiff seeks, on behalf of herself and the Class: (1) the greater of statutory damages of $200 or actual damages; (2) punitive damages; (3) appropriate equitable relief and/or restitution; and (4) attorneys' fees and costs.  O.R.S. § 646.638(3); O.R.S. § 646.638(8).

92.    The unlawful acts and omissions described here are, and continue to be, part of a pattern or generalized course of conduct.  Defendant's conduct is ongoing and is likely to continue and recur absent a permanent injunction.  Accordingly, Plaintiff seeks an order enjoining Defendant from committing such unlawful practices.  O.R.S. § 646.638(1); O.R.S. § 646.638(8)(c); O.R.S. § 646.636.

93.    The balance of the equities favors the entry of permanent injunctive relief against

Defendant.  Plaintiff, the Class members, and the general public will be irreparably harmed absent the entry of permanent injunctive relief against Defendant.  Plaintiff, the Class members, and the general public lack an adequate remedy at law.  A permanent injunction against Defendant is in the public's interest.  Defendant's unlawful behavior is ongoing as of the date of the filing of this Complaint.  If not enjoined by order of this Court, Defendant will or may continue to injure Plaintiff and Oregon consumers through the misconduct alleged.  Absent the entry of a permanent injunction, Defendant's unlawful behavior will not cease and, in the unlikely event that it voluntarily ceases, it is capable of repetition and is likely to reoccur.

94.     This action was brought "within one year after the discovery of the unlawful method, act or practice."  O.R.S. § 646.638.

95.     The applicable limitations period is expansive and extends back decades based on the "discovery" rule in the UTPA at O.R.S. § 646.638(6).

96.     Plaintiff and the Class members did not know, and could not have known, that these reference prices and discount representations were false.

97.     Absent class members of the subclass are still not aware, at the time of the filing of this Complaint, of Defendant's false discount advertising scheme.  By Defendant's design, the false advertising scheme by its very nature is hidden and difficult for the typical consumer to discover.  Consumers who shop on Defendant's website do not know the true historical prices or sales histories of the Products that they have viewed and purchased.  They do not know that the discounts offered are false, or that the false discounting practices extend to all of Defendant's Products.  Subclass members have not discovered, and could not have reasonably discovered, Defendant's fake discounting scheme.

98.     Absent class members will learn of the scheme for the very first time upon court-ordered class notice in this case.

## Count II: Breach of Contract
### (By Plaintiff and the Class)

99.     Plaintiff incorporates each and every factual allegation set forth above.

100.    Plaintiff brings this cause of action on behalf of herself and the Class.

101.    Plaintiff and class members entered into contracts with when they placed orders to purchase Products on Defendant's website.

102.    The contracts provided that Plaintiff and class members would pay Defendant for the Products ordered.

103.    The contracts further required that Defendant provides Plaintiff and class members with Products that have a former price, and a market value, equal to the regular prices displayed on the websites.  They also required that Defendant provide Plaintiff and class members with the specific discount advertised on the website.  These were specific and material terms of the contracts.

104.    Plaintiff and class members paid Defendant for the Products they ordered, and satisfied all other conditions of their contracts.

105.    Defendant breached the contracts with Plaintiff and class members by failing to provide Products that had a regular price and market value equal to the list price displayed on its website, and by failing to provide the promised discounts.

106.    As a direct and proximate result of Defendant's breaches, Plaintiff and class members were deprived of the benefit of their bargained-for exchange, and have suffered damages in an amount to be established at trial.

107.    Plaintiff provided Defendant with notice of this breach, by mailing a notice letter to Defendant's headquarters, on November 6, 2024.

## Count III: Breach of Express Warranty
### (By Plaintiff and the Class)

108.    Plaintiff incorporates each and every factual allegation set forth above.

109.    Plaintiff brings this cause of action on behalf of herself and the Class.

110.    Defendant, as the manufacturer, marketer, distributor, supplier, and/or seller of the Products, issued material, written warranties by advertising that the Products had a prevailing market value equal to the regular price displayed on Defendant's website. This was an affirmation of fact about the Products (i.e., a representation about the market value) and a promise relating to the goods.

111.    Defendant also issued material, written warranties by representing that the Products were being sold at an advertised discounted price. This was an affirmation of fact about the Products and a promise relating to the goods.

112.    These warranties were part of the basis of the bargain and Plaintiff and members of the class relied on this warranty.

113.    In fact, the Products did not have a market value equal to the purported regular prices. And the Products were not actually sold at the advertised discounts. Thus, the warranties were breached.

114.    Plaintiff provided Defendant with notice of this breach of warranty, by mailing a notice letter to Defendant's headquarters, on November 6, 2024.

115.    Plaintiff and the class were injured as a direct and proximate result of Defendant's breach, and this breach was a substantial factor in causing harm, because (a) they would not have purchased the Products if they had known that the warranty was false, (b) they overpaid for the Products because the Products were sold at a price premium due to the warranty, and/or (c) they did not receive the Products as warranted that they were promised.

### Count IV: Unjust Enrichment
#### (By Plaintiff and the Class)

116.    Plaintiff incorporates each and every factual allegation set forth in paragraphs 1-48 and 54-65 above.

117.    Plaintiff brings this cause of action in the alternative to her Breach of Contract claim (Count II), on behalf of herself and the Class.

118.    As alleged in detail above, Defendant's false and misleading advertising caused Plaintiff and the class to purchase the Products and to pay a price premium for these Products.

119.    In this way, Defendant received a direct and unjust benefit, at Plaintiff's expense.

120.    (In the alternative only), due to Defendant's misrepresentations, its contracts with Plaintiff are void or voidable.

121.    Plaintiff and the class seek restitution, and in the alternative, rescission.

## Count V: Intentional Misrepresentation
### (By Plaintiff and the Class)

122.    Plaintiff incorporates each and every factual allegation set forth above.

123.    Plaintiff brings this cause of action on behalf of herself and members of the Class.

124.    As alleged more fully above, Defendant made false representations and material omissions of fact to Plaintiff and subclass members concerning the existence and/or nature of the discounts and savings advertised on its website.

125.    These representations were false.

126.    When Defendant made these misrepresentations, it knew that they were false at the time that they made them and/or acted recklessly in making the misrepresentations.

127.    Defendant intended that Plaintiff and subclass members rely on these representations and Plaintiff and subclass members read and reasonably relied on them.

128.    In addition, subclass-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Products.

129.    Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and subclass members.

130.     Plaintiff and the subclass were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known that the representations were false, and/or (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation.

## VII.     Prayer for Relief.

131.     Plaintiff seeks the following relief for herself and the proposed class:

- An order certifying the asserted claims, or issues raised, as a class action;

- A judgment in favor of Plaintiff and the proposed class;

- Damages, statutory damages, treble damages, and punitive damages where applicable;

- Restitution;

- Rescission;

- Disgorgement, and other just equitable relief;

- Pre- and post-judgment interest;

- An injunction prohibiting Defendant's deceptive conduct, as allowed by law;

- Reasonable attorneys' fees and costs, as allowed by law; and

- Any additional relief that the Court deems reasonable and just.

## VIII.     Jury Demand.

132.     Plaintiff demands the right to a jury trial on all claims so triable.

Dated:  March 17, 2025

Respectfully submitted,

By:  _s/  Jonas Jacobson_

Jonas Jacobson (OSB No. 231106)
jonas@dovel.com
Christin Cho (Cal. Bar No. 238173)*
christin@dovel.com
Simon Franzini (Cal. Bar No. 287631)*
simon@dovel.com
Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
Tel: (310) 656-7066

*Attorneys for Plaintiff*

* Pro Hac Vice application forthcoming