Jonas Jacobson (OSB No. 231106)
jonas@dovel.com
Vivek Kothari (OSB No. 182089)
vivek@dovel.com
Simon Franzini (Cal. Bar No. 287631)*
simon@dovel.com
Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
Tel: (310) 656-7066

*Attorneys for Plaintiff*

* Admitted Pro Hac Vice

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| KEIRA MCCARRELL, individually and on behalf of all others similarly situated,<br><br>                      Plaintiff,<br><br>v.<br><br>RUGSUSA, LLC,<br><br>                  Defendant. | Case No. 3:25-cv-00454-AB<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>ORAL ARGUMENT REQUESTED |

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................6

BACKGROUND ................................................................................................................6

ARGUMENT ...................................................................................................................11

    I.       Plaintiff's allegations satisfy Rule 9(b). .............................................................11

          A.     Plaintiff describes the who, what, when, where, how, and why of Defendant's misconduct. ........................................................................11

          B.     Plaintiff alleges with particularity that Defendant's discounts are fake ..........14

    II.     Plaintiff states a claim under the UTPA .............................................................16

          A.     Plaintiff's UTPA claim is not subject to Rule 9(b). .................................16

          B.     Plaintiff plausibly alleges that Defendant acted willfully. ...............................17

          C.     Plaintiff plausibly alleges a violation of Section 608(1)(j). .............................18

          D.     Plaintiff plausibly alleges a violation of Section 608(1)(e) and (i). .................19

          E.     Plaintiff plausibly alleges a violation of Section 608(1)(ee). ...........................21

    III.    Plaintiff states a claim for breach of contract .....................................................23

    IV.    Plaintiff states a claim for breach of express warranty .......................................24

    V.     Plaintiff states a claim for unjust enrichment. ....................................................26

    VI.    Plaintiff states a common law fraud claim. .........................................................26

          A.     Plaintiff plausibly alleges fraud based on affirmative misrepresentation. ...........................................................................26

          B.     Plaintiff plausibly alleges fraud based on half-truths. ....................................29

          C.     Plaintiff plausibly alleges fraud based on active concealment. ........................31

CONCLUSION ...............................................................................................................32

## TABLE OF AUTHORITIES

**Cases**

*Autzen v. John C. Taylor Lumber Sales, Inc.*,
280 Or. 783 (1977) ...............................................................................................24

*Benson Tower Condo. Owners Ass'n v. Victaulic Co.*,
2014 U.S. Dist. LEXIS 147072 (D. Or. Oct. 15, 2014) ......................................29

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*,
637 F.3d 1047 (9th Cir. 2011) .............................................................................11

Cal. Civ. Code § 1770(a)(9) ......................................................................................21

*Clark v. Eddie Bauer LLC*,
2025 U.S. Dist. LEXIS 47559 (W.D. Wash. Mar. 12, 2025) ..................14, 23, 30

*Clark v. Eddie Bauer LLC*,
371 Or. 177 (2023) ...............................................................................................20

*Coates v. Legacy Health*,
2024 U.S. Dist. LEXIS 180877 (D. Or. Oct. 3, 2024) .........................................25

*Coos Bay RV Invs., Ltd. Liab. Co. v. Wheelhaus, Inc.*,
2021 U.S. Dist. LEXIS 214453 (D. Or. Oct. 14, 2021) .......................................15

*Covell v. Nine W. Holdings, Inc.*,
2018 U.S. Dist. LEXIS 12437 (S.D. Cal. Jan. 25, 2018) .....................................15

*Crowder v. Shade Store, LLC*,
2024 U.S. Dist. LEXIS 41896 (N.D. Cal. Feb. 12, 2024) ....................................14

*Cryo-Tech, Inc. v. JKC Bend, LLC*,
313 Or. App. 413 (2021) ......................................................................................23

*Dennis v. Ralph Lauren Corp.*,
2017 U.S. Dist. LEXIS 140156 (S.D. Cal. Aug. 29, 2017) ..................................14

*Esgate v. Home Depot U.S.A., Inc.*,
2025 U.S. Dist. LEXIS 78094 (D. Or. Apr. 24, 2025) .........................................14

*Farmers Ins. Co. v. Strawn*,
565 US 1177 (2012) ..............................................................................................26

*Fleshman v. Wells Fargo Bank, Nat'l Ass'n*,
27 F. Supp. 3d 1127 (D.Or. June 17, 2014) .........................................................19

*Freeman v. Indochino Apparel, Inc.*,
443 F. Supp. 3d 1107 (N.D. Cal. 2020) ...............................................................24

*Gregory v. Novak*,
121 Or. App. 651 (1993) ......................................................................................30

*Heise v. Pilot Rock Lumber Co.*,
222 Or. 78 (1960) .................................................................................................29

*Krause v. Eugene Dodge, Inc.*,
265 Or 486 (1973) ...........................................................................................29, 30

*Larisa's Home Care, LLC v. Nichols-Shields*,
    362 Or. 115 (2017) .................................................................................................26

*Martell v. GM LLC*,
    492 F. Supp. 3d 1131 (D. Or. 2020) .............................................................. 17, 26

*McKie v. Sears Prot. Co*,
    2011 U.S. Dist. LEXIS 44848 (D. Or. Apr. 26, 2011) ...................................16

*McKie v. Sears Prot. Co.*,
    2011 U.S. Dist. LEXIS 47967 (D. Or. Feb. 22, 2011) ...................................16

*Mendoza v. Lithia Motors, Inc.*,
    2017 U.S. Dist. LEXIS 4716 (D. Or. Jan. 11, 2017) ......................................20

*Morongo Band of Mission Indians v. Rose*,
    893 F.2d 1074 (9th Cir. 1990) ........................................................................32

*Munning v. Gap, Inc.*,
    2016 U.S. Dist. LEXIS 149886 (N.D. Cal. Oct. 28, 2016) .......................24, 25

*Musgrave v. Lucas*,
    193 Or. 401 (1951) .........................................................................................26

*Nabiyev v. Closet World, Inc.*,
    2023 U.S. Dist. LEXIS 205544 (C.D. Cal. Nov. 15, 2023) ..................13, 14, 25

*Osborn v. Gene Teague Chevrolet Co.*,
    254 Or. 486 (1969) .........................................................................................31

*Parada v. MJ's Labor Servs.*,
    2019 U.S. Dist. LEXIS 148140 (D. Or. Aug. 30, 2019) ................................20

*Phillips v. Brooklyn Bedding LLC*,
    2024 U.S. Dist. LEXIS 72676 (N.D. Cal. Mar. 28, 2024) ....................21, 23, 25

*Real v. Y.M.I. Jeanswear, Inc.*,
    2017 U.S. Dist. LEXIS 237643 (C.D. Cal. Sep. 1, 2017) ..............................14

*Rubenstein v. Neiman Marcus Group LLC*,
    687 F.App'x. 564 (9th Cir. 2017) ...................................................................13

*Safransky v. Fossil Grp., Inc.*,
    2018 U.S. Dist. LEXIS 60946 (S.D. Cal. Apr. 9, 2018) ................................14

*Silva v. Unique Bev. Co., LLC*,
    2017 U.S. Dist. LEXIS 93625 (D. Or. June 15, 2017) ...................................16

*Solano v. Kroger Co.*,
    2020 U.S. Dist. LEXIS 107447 (D. Or. June 12, 2020) .................................16

*Solano v. Kroger Co.*,
    2020 U.S. Dist. LEXIS 223143 (D. Or. Nov. 30, 2020) .................................16

*State ex rel. Redden v. Disc. Fabrics, Inc.*,
    289 Or. 375 (1980) .........................................................................................17

*Stewart v. Albertsons, Inc.*,
    308 Or. App. 464 (2021) .................................................................................17

*Strawn v. Farmers Ins. Co.,*
    350 Or 521 (2011) ......................................................................................................26

*Strawn v. Farmers Insurance Co. of Oregon,*
    350 Or. 336 (2011) ....................................................................................................26

*Unigestion Holding, S.A. v. UPM Tech., Inc.,*
    160 F. Supp. 3d 1214 (D. Or. 2016) ................................................................... 11, 31

*United States v. Austin,*
    54 F.3d 394 (7th Cir. 1995) ......................................................................................18

*Vizcarra v. Michaels Stores, Inc.,*
    710 F. Supp. 3d 718 (N.D. Cal. 2024) .........................................................21, 24, 25

**Statutes**

Cal. Civ. Code § 1770(a)(5) ..............................................................................................21

Cal. Civ. Code § 1770(a)(9) ..............................................................................................21

Or. Rev. Stat. § 646.605(10) ............................................................................................17

Or. Rev. Stat. § 646.608(1)(e) ..........................................................................................19

Or. Rev. Stat. § 646.608(1)(ee) ...........................................................................19, 21, 23

Or. Rev. Stat. § 646.608(1)(i) ...........................................................................................19

Or. Rev. Stat. § 646.608(1)(j) ..........................................................................18, 19, 21, 22

Or. Rev. Stat. § 646.608(1)(p) ..........................................................................................19

Or. Rev. Stat. § 646.608(1)(s) ..........................................................................................19

Or. Rev. Stat. § 646.608(4) ........................................................................................21, 22

Or. Rev. Stat. § 646.883 ...................................................................................................21

Or. Rev. Stat. § 646.883(2) ..............................................................................................22

Or. Rev. Stat. § 646.885 ............................................................................................21, 23

Or. Rev. Stat. § 646.885(2) ..............................................................................................22

Or. Rev. Stat. § 72.3130(2) ..............................................................................................25

**Rules**

Fed R. Civ. P. 9(b) ........................................................................................... 11, 13, 15, 16

## INTRODUCTION

Defendant RugsUSA, LLC prominently advertises supposed time-limited site-wide discounts off its regular prices. But in truth, Defendant offers these supposed time-limited discounts nearly all the time. So Defendant's advertised regular prices are not its true regular prices. And its advertised discounts are not true discounts.

Defendant's tactics violate consumer protection statutes prohibiting just this type of deceptive price advertising. Plaintiff Keira McCarrell brought this case to put an end to Defendant's deceptive price advertising and seek compensation for consumers who, like her, were deceived. She asserts Oregon consumer protection and common law claims.

Defendant claims that the Complaint relies on "general allegations and conclusory statements" and "lacks specific factual allegations and details regarding the representations at issue, Plaintiff's experience with RugsUSA, and the purchases Plaintiff allegedly made that give rise to Plaintiff's Complaint." ECF No. 13 ("Mot.") 2. But the Complaint describes Defendant's accused price advertising in detail, with dozens of examples showing exactly what representations Plaintiff claims are deceptive. It explains in detail *why* they are deceptive. It includes persuasive factual support for its contentions, including a year-long investigation showing that Defendant's products are on sale the vast majority of the time. And it describes Plaintiff's experience with RugsUSA in detail including what she bought, and what representations she saw and relied on to make her purchase.

Courts routinely hold that materially identical allegations in fake-discount cases meet the pleading standard. This Court should as well.

## BACKGROUND

Defendant RugsUSA sells and markets rugs and home accessory products ("Products") online at its website, www.rugsusa.com. ECF No. 1 ("Compl.") ¶ 6. For years, it has used fake

discounts to sell its Products. *Id.* ¶ 6. Discounts are important to consumers because it makes them more "likely to buy now, rather than wait, comparison shop, and buy something else." *Id.* ¶¶ 1, 41-43. Fake discounts, however, are illegal. *Id.* ¶¶ 4-5.

Defendant's tactics include "using fake strikethrough prices, fake sitewide sales, and 'limited time' sales that are continuously available." *Id.* ¶ 21. On its website, Defendant advertises supposedly time-limited, site-wide sales on its products. *Id.* ¶ 22. Defendant's advertisements claim that consumers who buy during the supposed sale will get a percentage off the price of their purchase. And the advertisements strike through the list price, putting the supposedly discounted price in red font next to it. *Id.* ¶ 22.

Defendant runs these advertisements throughout its website on its homepage:



On a banner near the top of the site:

On the product listing pages:





And in the checkout cart:



*Id.*

Defendant's advertisements convey that, if consumers buy during the supposed sale, consumers will get a special discount off of Defendant's regular prices that is not usually available. *Id.* ¶¶ 22-25, 28-30, 38-44, 47. Consumers reasonably rely on Defendant's representations, and are led to believe that the regular prices Defendant lists for its products (the ones to which the purported discount is applied) are the prices that consumers usually and regularly have to pay to buy Defendant's products. *Id.* Based on this, consumers buy quickly, while the purported time-limited sale is still available, believing that this will get them a special deal on a product worth more than what they are paying. *Id.* ¶¶ 28-29, 38-44; *see, e.g., id.* ¶¶ 42-43 (summarizing research showing how discounts drive sales).

In truth, "Defendant consistently, if not perpetually, offers purported reductions off the list prices it advertises." *Id.* ¶ 30; *see, e.g., id.* ¶ 26 (investigation by counsel showed that 138 out of 150

randomly selected screenshots of Defendant's website between October 13, 2023, and November 22, 2024, displayed a purported time-limited sale). "As a result, everything about Defendant's price and purported discount advertising is false. The list prices Defendant advertises are not actually Defendant's regular or former prices, or the prevailing prices for the Products Defendant sells, and do not represent the true market value for the Products, because Defendant's Products are consistently available for less than that, and customers did not have to formerly pay that amount to get those items. The purported discounts Defendant advertises are not the true discount the customer is receiving." *Id.* ¶ 30. Nor are the purported discounts time-limited—"quite the opposite, they are almost always, if not always, available." *Id.*

Defendant's conduct harms consumers by inducing them to make purchases based on false and misleading advertising. *Id.* ¶ 47. It also harms consumers by depriving them of their reasonable expectation that they would receive a product that usually retails for more than what they paid during the supposed sale. *Id.* ¶¶ 28, 38-40. And, finally, it artificially increases consumer demand for Defendant's products, allowing Defendant to charge a price premium that it would not be able to charge absent its misrepresentations. *Id.* ¶ 44. Consumers therefore pay more for Defendant's products than they otherwise would. *Id.*

Plaintiff Keira McCarrell is one such consumer. On June 27, 2024, she purchased an "Opar Flora Washable Abstract Rug" from Defendant's website. *Id.* ¶ 45. When she made her purchase, Defendant's website advertised a sitewide sale of "up to 70% OFF." *Id.* It represented that this sale "Ends Tonight." *Id.* And it also advertised an "Extra 40% OFF Clearance." *Id.* Defendant represented that the list price of the rug Plaintiff purchased was $183.19 but that Plaintiff would pay only $88.79 (such that she was receiving a total discount of $94.40). *Id.* ¶ 46. This purported sale

price was the result of the 40% off clearance sale, plus an additional discount for the "up to" 70% off sale.[1] *Id.*

Plaintiff read and relied on these representations. *Id.* ¶ 47. Based on them, she reasonably understood that the Product she purchased regularly retailed at the published list price, that she was receiving a discount off the regular price, and that the discount was available only for a limited time. *Id.* She would not have bought the rug had she known that it was not discounted as advertised and that she was not receiving the advertised discount from the regular price. *Id.*

Defendant has been sued before for using fake sales. *Id.* ¶¶ 7, 20. It settled those cases for $14 million but then continued using fake sales to sell its products. *Id.* ¶¶ 7, 20-21. Plaintiff brings this case on behalf of Oregon consumers who were deceived by Defendant's fake discounting after the period released in the prior settlement.

## ARGUMENT

### I.    Plaintiff's allegations satisfy Rule 9(b).

### A.    Plaintiff describes the who, what, when, where, how, and why of Defendant's misconduct.

A pleading satisfies Rule 9(b) where the plaintiff identifies "the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Unigestion Holding, S.A. v. UPM Tech., Inc.*, 160 F. Supp. 3d 1214, 1220 (D. Or. 2016) (citing *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (quotation marks and alteration omitted). The Complaint meets that standard.

<u>Who</u>: Defendant RugsUSA, LLC. Compl. ¶¶ 6, 7.

---

[1] Defendant contends that the math does not add up because $94.40 is neither "a 70% or a 40% discount off of $183.19, and certainly not a combination of the two." Mot. 4. But the math does add up, because Defendant's website advertised a discount of "up to" 70%. Compl. ¶ 45. So the advertisements match the purported discount: 40% off from the clearance sale, plus an additional percentage off of that was "up to" 70%.

<u>What</u>: Defendant "sells its products using fake sales," *Id.* ¶¶ 6, 19, including by:

- Using "fake strikethrough prices, fake sitewide sales, and 'limited time' sales that are continuously available." *Id.* ¶ 21, *see also id.* ¶¶ 22, 36, 79.

- Advertising "regular prices that are not its true regular prices, or its former prices." *Id.* ¶ 32; *see also id.* ¶¶ 9, 83.

- Advertising "made-up discounts." *Id.* ¶ 2; *see also* ¶ 30 ("The purported discounts Defendant advertises are not the true discount the customer is receiving.").

- Making "limited time" statements when its promotions are not, in fact, time-limited. *Id.* ¶ 33; *see also id.* ¶¶ 8-9, 21-26, 33, 38, 45, 47-48, 73, 77.

- Using "strikethrough sale pricing without any disclosures about where the strikethrough price comes from." *Id.* ¶36; *see also id.* ¶ 79 ("Defendant's strikethrough pricing does not contain any disclosures at all about the origin of the strikethrough price").

When Plaintiff made her purchase, Defendant's website "represented that the list price of the Opar Flora Washable Abstract Rug was $183.19, but that [Plaintiff] would receive a $94.40 total discount on her order." *Id.* ¶ 46. The online "Order Details" confirmed this representation. *Id.* (screenshot showing a strikethrough price of $183.19 and a discounted price of $88.79).

<u>When</u>: From February 2024 to the filing date of the Complaint. *See id.* ¶¶ 20-21 (stating that Defendant continued its fake-discounting tactics even after settling a similar lawsuit in February 2024 and that it "continues its practice of using fake sales today."). This includes "June 27, 2024," when Plaintiff, relying Defendant's fake sale advertisements, made her purchase. *Id.* ¶ 45.

<u>Where</u>: On Defendant's website, www.rugsusa.com. *Id.* ¶¶ 18, 22, 45, 47. Plaintiff made her purchase "from Defendant's website, rugsusa.com." *Id.* ¶ 45.

<u>How Defendant's representations are false and misleading</u>: As described in greater detail above (*see supra*, Background), Defendant's advertisements convey to reasonable consumers that a

special promotion is running for a limited time and that, as a result, consumers who buy during the promotion will get a special deal and pay less than they would usually have to pay for Defendant's products. *Id.* ¶¶ 28-30, 38-44, 47. In truth, however, this is false: Defendant always or nearly always offers supposed time-limited sales; and the Products are always or almost always sold for a discounted price, and are rarely if ever sold at the supposed list price. *See, supra.* Accordingly, Defendant's advertisements are deceptive to reasonable consumers. And, like other consumers, Plaintiff was deceived by Defendant's conduct. When she made her purchase, she "reasonably understood that the Product she was purchasing regularly (and before the promotion Defendant was advertising) retailed at the published list price, that the published list price was the market value of the Product that she was buying; that she was receiving the advertised discount and a price reduction as compared to the regular price, and that advertised discount was only available for a limited time (during the limited time promotion)." *Id.* ¶ 47.

In short, the Complaint identifies the who, what, when, where, and how of Defendant's false advertising, and explains what is false and misleading about it and why it is false and misleading. The Complaint therefore satisfies Rule 9(b). *See, e.g., Nabiyev v. Closet World, Inc.*, 2023 U.S. Dist. LEXIS 205544, at *8 (C.D. Cal. Nov. 15, 2023) (nearly identical allegations satisfied Rule 9(b) in fake-discount case); *Rubenstein v. Neiman Marcus Group LLC*, 687 F.App'x. 564, 567 (9th Cir. 2017) (plaintiff satisfied Rule 9(b) when she alleged that "she purchased products with Compared To price tags in a Last Call store in Camarillo, California (the 'Where'), on July 21, 2014 (the 'When')[, and] that Neiman Marcus (the 'Who'), through its use of those Compared To price tags (the 'What'), misled consumers into believing that the Compared To prices were charged by either Neiman Marcus or other merchants in the vicinity for comparable products (the 'How')").

**B.    Plaintiff alleges with particularity that Defendant's discounts are fake.**

Defendant asserts that Plaintiff "alleges no facts upon which the various allegations and beliefs regarding allegedly fake discounts and sales are based." Mot. 8-9. Defendant contends that this warrants dismissal. *Id.* As just described, however, Plaintiff does allege—in great detail—the facts supporting her fake-discounting claims. *See supra* Background and Argument I.A. These facts include examples of sales that were advertised as ending on a particular date, but then continued indefinitely.  Compl. ¶¶ 24-25.[2] They also include the results of a thorough investigation by Plaintiff's counsel showing that, over the course of a thirteen-month period, Defendant advertised a supposedly time-limited sale over 90% of the time. *Id.* ¶ 26. Courts in fake-discount cases routinely hold such allegations sufficient to satisfy Rule 9(b). *Esgate v. Home Depot U.S.A., Inc.*, 2025 U.S. Dist. LEXIS 78094 (D. Or. Apr. 24, 2025) (denying motion to dismiss UTPA fake-discounting claims similar to the ones alleged here); *Clark v. Eddie Bauer LLC*, 2025 U.S. Dist. LEXIS 47559 (W.D. Wash. Mar. 12, 2025) ("*Clark (Washington)*") (same); *Dennis v. Ralph Lauren Corp.*, 2017 U.S. Dist. LEXIS 140156, at *14-15 (S.D. Cal. Aug. 29, 2017) (allegations that a discount was available on "three dates" over a five-month period were sufficient); *Crowder v. Shade Store, LLC*, 2024 U.S. Dist. LEXIS 41896, at *8 (N.D. Cal. Feb. 12, 2024) (rejecting defendant's argument that nearly identical allegations did not satisfy 9(b)); *Nabiyer*, 2023 U.S. Dist. LEXIS 205544, at *7-8 (nearly identical allegations and investigation were sufficient to satisfy 9(b) in a fake-discount case); *Real v. Y.M.I. Jeanswear, Inc.*, 2017 U.S. Dist. LEXIS 237643, at *12-14 (C.D. Cal. Sep. 1, 2017) (investigation of ten products over a three-month period, a year after one of the plaintiff's purchases, was sufficient to plausibly allege a permanent sitewide sale); *Safransky v. Fossil Grp.*, Inc., 2018 U.S. Dist. LEXIS 60946, at *35 (S.D. Cal. Apr. 9, 2018) (allowing fake-discount case to proceed based on "examples");

---

[2] Paragraph 25 contains a typographical error. The image in Paragraph 25 was captured on July 9, 2024, not July 8, 2024.

*Covell v. Nine W. Holdings, Inc.*, 2018 U.S. Dist. LEXIS 12437, at *12 (S.D. Cal. Jan. 25, 2018) (allowing claims to proceed based on a bare, unsupported allegation that the Defendant's prices were fictitious because "the particular facts as to whether the SUGG. RETAIL prices are fictitious are likely only known to" the defendant). The Court should do the same here.

Defendant argues that Plaintiff's allegations of Defendant's fake discounts do not satisfy Rule 9(b) because, according to Defendant, they are based on "information and belief." Mot. 8-9. But here, that information is an investigation by Plaintiff's counsel showing that, in a thirteen-month period, Defendant's website advertised a supposedly time-limited sale over 90% of the time. Compl. ¶ 26. That information "plausibly supports [Plaintiff's] belief" that Defendant engaged in fake-discount practices, which is all that Rule 9(b) requires. *Coos Bay RV Invs., Ltd. Liab. Co. v. Wheelhaus, Inc.*, 2021 U.S. Dist. LEXIS 214453, at *12 (D. Or. Oct. 14, 2021).

Defendant suggests that the Court should disregard Plaintiff's allegations about her counsel's investigation because she does not have "direct personal knowledge of the defendants' alleged misconduct." Mot. 9. But as the many cases cited above and Defendant's own cases demonstrate, fraud plaintiffs do not need to have direct personal knowledge of the defendant's fraud, and can instead rely on factual support derived from investigations performed by their representatives, to satisfy the requirements of Rule 9(b). *See, e.g., Coos Bay*, 2021 U.S. Dist. LEXIS 214453, at *12 (plaintiff satisfied Rule 9(b) by "support[ing] its claim of false representation with a factual assertion that its representatives visited the Wheelhaus site and, instead of the professional, high-end manufacturing facility portrayed on their website, they found 'domed tents on empty property, which appeared to have been recently erected'" which "plausibly support[ed] [the plaintiff's] belief that Wheelhaus had promised more than it was capable of delivering"); *see* cases cited above. And for this reason, courts in fake-discount cases routinely credit investigations by counsel materially

identical to the one relied upon here in denying motions to dismiss. *See, e.g., Crowder*, 2024 U.S. Dist. LEXIS 41896, at *8; other cases cited above.

## II.    Plaintiff states a claim under the UTPA.

### A.    Plaintiff's UTPA claim is not subject to Rule 9(b).

Numerous judges in this district have declined to apply Rule 9(b)'s pleading standard to claims under the UTPA. Rule 9(b) applied only to claims "grounded in fraud." *Silva v. Unique Bev. Co., LLC*, 2017 U.S. Dist. LEXIS 93625, at *36 (D. Or. June 15, 2017) (quotation omitted). "To determine if a claim is grounded in fraud, courts compare the claim to the elements of a state common law fraud claim." *Id.* An "important difference[]" between UTPA claims and fraud claims is that "the scienter requirement for all UTPA claims [is] different than for common law fraud claims: where UTPA claims require only negligent misrepresentation, fraud claims require something more." *McKie v. Sears Prot. Co.*, 2011 U.S. Dist. LEXIS 47967, at *33 (D. Or. Feb. 22, 2011), *findings and recommendation adopted by* 2011 U.S. Dist. LEXIS 44848, at *7-8 (D. Or. Apr. 26, 2011). Therefore, courts have held that even where a "UTPA claim contains fraud-like allegations, an Oregon UTPA claim and an Oregon common law fraud claim remain distinct and … Rule 9(b) does not apply." *Silva*, 2017 U.S. Dist. LEXIS 93625, at *39 (declining to apply Rule 9(b) to UTPA claim in consumer class action alleging that the defendant's advertisements falsely represented that its products had coconut qualities); *see, e.g., McKie*, 2011 U.S. Dist. LEXIS 47967, at *32-36 (declining to apply Rule 9(b) to consumer claim that the defendant "falsely stat[ed] that [it] would provide timely, free repairs/replacements"); *Solano v. Kroger Co.*, 2020 U.S. Dist. LEXIS 107447, at *26-29 (D. Or. June 12, 2020) (declining to apply Rule 9(b) in class action alleging that the defendant "misrepresented that the empty Florida's Natural beverage containers could be redeemed for ten cents" and "failed to disclose that the containers were not, in fact, redeemable"), *findings and recommendation adopted by* 2020 U.S. Dist. LEXIS 223143, at *5 (D. Or. Nov. 30, 2020).

Here, like in these cases, Plaintiff's UTPA claim is distinct from a common law fraud claim because it requires only that Plaintiff allege negligent misrepresentation, not fraud. *See* Compl. ¶ 82 (alleging that Defendant's violations were willful because it "knew *or should have known* that its conduct was a violation") (emphasis added).  Therefore, Rule 9(b) does not apply.[3]

## B.    Plaintiff plausibly alleges that Defendant acted willfully.

Under the UTPA, a "willful violation occurs when the person committing the violation knew or should have known that the conduct of the person was a violation." ORS 646.605(10). Thus, willfulness under the UTPA "requires no more than proof of ordinary negligence by a defendant in not knowing, when it should have known, that a representation made by [it] was not true." *State ex rel. Redden v. Disc. Fabrics, Inc.*, 289 Or. 375, 385 (1980).

Here, Plaintiff alleges that "Defendant knew or should have known that its conduct was a violation." Compl. ¶ 82. And Plaintiff alleges facts that make this allegation plausible (actually, persuasive). She alleges that Defendant advertises list prices—which reasonable consumers understand to represent regular or former prices—in strikethrough font, and supposedly time-limited discounts off of those supposed list prices. She also alleges that that the "list prices … are not actually Defendant's regular or former prices … [and that the] purported discounts Defendant advertises are not the true discount the customer is receiving." Compl. ¶ 30. Defendant knew or should have known what its own advertising said. And Defendant knew or should have known that its advertising was false, because the list prices were not actually the regular or former prices, and the discounts were not in fact time-limited. Therefore, Plaintiff plausibly alleges that Defendant knew or should have known that its conduct violated the UTPA. *See Stewart v. Albertsons, Inc.*, 308 Or. App. 464 (2021) (finding willfulness under UTPA where defendant had all facts in its possession).

---

[3] Plaintiff acknowledges that some judges in this district have applied Rule 9(b) to UTPA claims. *See, e.g.*, *Martell v. GM LLC*, 492 F. Supp. 3d 1131, 1145 (D. Or. 2020). But the thorough reasoning in the cases cited above persuasively explains why Rule 9(b) does not apply here.

And there is more. Plaintiff also alleges that "Defendant knows that its actions are misleading and deceptive, because it was already sued for the same behavior under the consumer protection laws of multiple states." Compl. ¶ 82. Not only was Defendant sued, it paid over $14 million to resolve the allegations. *Id.* ¶ 20. This further confirms that Defendant knew (or at a minimum should have known) that its sales were deceptive and, therefore, that its conduct violated the UTPA. *See United States v. Austin*, 54 F.3d 394, 400 (7th Cir. 1995) (evidence of prior settlement admissible to show notice and knowledge).

### C.    Plaintiff plausibly alleges a violation of Section 608(1)(j).

Section 608(1)(j) of Oregon's UTPA prohibits "false or misleading representations of fact concerning the reasons for, existence of, or amounts of price reductions." ORS 646.608 (1)(j). As described above, Plaintiff alleges that Defendant regularly represents that its products are a certain percentage off, for example "20% Off." *See, e.g.,* Compl. ¶ 22; *supra*, Argument I.A. Plaintiff also alleges that Defendant conveys to consumers that its Products have a certain former price, regular price, and market value by placing a higher price in "strikethrough" font next to the supposed discounted price it is charging for a particular product on a particular day. Compl. ¶¶ 22, 28-29.

These are representations of fact concerning the existence (and in some cases, the amount) of price reductions: Defendant's advertisements convey to reasonable consumers that "they are receiving reductions from Defendant's regular prices," *Id.* ¶ 30, and that "the list prices Defendant advertises are Defendant's regular prices," Compl. ¶ 29. And, as the Complaint alleges, these representations are false and misleading. *See supra* Argument I.A; *Id.* ¶ 9 ("The purported list prices were not the true regular prices, the purported discounts were not the true discounts, and the discounts were not time-limited."), *see also id.* ¶¶ 22, 26 (describing year long investigation by counsel that confirmed Defendant's fake-discounting practices), 30. So Plaintiff plausibly states a claim under Section 608 (1)(j).

Defendant asserts that "Plaintiff does not articulate or otherwise describe with any specificity which false or misleading representations RugsUSA made, whether those representations were about the reason for, existence or amount of the price reductions, or otherwise identify the price reductions that she contends RugsUSA misrepresented." But as described above, Plaintiff has done just that. *See supra*, Argument I.A (identifying the false and misleading representations Defendant made), Argument II.B (explaining that those representations were about the existence and amounts of price reductions); *see also* Compl. ¶¶ 19 and 22.

Defendant cites *Fleshman v. Wells Fargo Bank, Nat'l Ass'n*, 27 F. Supp. 3d 1127, 1140 (D.Or. June 17, 2014). But there, the plaintiffs made "no attempt to connect [the] allegations to a particular subsection of the statute." *Id.* Here, by contrast, Plaintiff goes through each subsection of the UTPA and explains in detail how her allegations meet each particular subsection. *See* Compl. ¶ 73 (explaining how Defendant's conduct violates Section 608 (1)(j)); ¶ 74 (explaining how Defendant's conduct violates Section 608(1)(s)); ¶ 75 (explaining how Defendant's conduct violates Section 646.608(1)(i)); ¶ 76 (explaining how Defendant's conduct violates Section 608(1)(e)); ¶ 77 (explaining how Defendant's conduct violates Section 608(1)(p)); ¶¶ 78-79 (explaining how Defendant's conduct violates Section 608(1)(ee)). So *Fleshman* does not apply.

### D.    Plaintiff plausibly alleges a violation of Section 608(1)(e) and (i).

Section 608(1)(e) of Oregon's UTPA prohibits representing that goods or services "have sponsorship, approval, characteristics, ingredients, uses, benefits, quantities or qualities" that they do not have. ORS 646.608(1)(e). Defendant violates Section 608(1)(e) by representing that its products have characteristics, benefits, and qualities that they do not have—namely regular prices and market values that are higher than the true regular prices and market values, and discounts that are not really discounts. Compl. ¶ 76. Section 608(1)(i) prohibits advertising goods or services "with the intent not to provide [them] as advertised." ORS 646.608(1)(i). Defendant violates Section 608(1)(i) by

advertising products at a discount off regular prices, with the intent not to provide such a discount. Compl. ¶ 75.

Defendant argues that these sections apply only to "representations about a product's tangible qualities, not price." Mot. 14. But nothing in the text of the provisions is so restrictive, and the cases Defendant cites do not impose any such limitation. Defendant represents that *Clark v. Eddie Bauer LLC*, 371 Or. 177 (2023) held that "[a] representation about a product's former price is not a representation about 'the character or quality of the product itself.'" Mot. 14. But *Clark* did not hold that. To the contrary, the Oregon Supreme Court expressly stated that "we have never considered that question." *Clark*, 371 Or. at 186 n.9. The court merely "assume[d] for purposes of this opinion that a representation about a product's former price is not a representation about 'the character or quality of the product itself'" because that question had "no bearing on the conclusions" that the court reached. *Id.* Neither do Defendant's other cases support its atextual interpretation. In *Mendoza v. Lithia Motors, Inc.*, 2017 U.S. Dist. LEXIS 4716 (D. Or. Jan. 11, 2017), the plaintiffs' claims failed because the undisclosed kickbacks had no relationship—tangible or intangible—to the defendant's representations about the vehicles and services at issue. *Id.* at *15. And in *Parada v. MJ's Labor Servs.*, 2019 U.S. Dist. LEXIS 148140 (D. Or. Aug. 30, 2019), the court merely observed that "the word 'motel' is not inconsistent with low-cost, temporary or migrant worker housing." *Id.* at *17. Here, in contrast to *Mendoza* and *Parada*, the absence of any real discount is directly related to—and inconsistent with—Defendant's advertisements and strike-through prices representing that the customer is receiving a discount.

Moreover, courts applying materially similar provisions of other states' consumer protection statutes have interpreted those provisions to prohibit fake discounts. For example, California's Consumers Legal Remedies Act (CLRA) uses virtually identical language to the UTPA. It prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses,

benefits, or quantities that they do not have." Cal. Civ. Code § 1770(a)(5). And it prohibits "[a]dvertising goods or services with intent not to sell them as advertised." *Id.* § 1770(a)(9). Courts have held that materially similar allegations of fake-discount practices state claims under both of these provisions. *See, e.g.*, *Phillips v. Brooklyn Bedding LLC*, 2024 U.S. Dist. LEXIS 72676, at *7-9 (N.D. Cal. Mar. 28, 2024) (fake-discount allegations satisfied both provisions); *Vizcarra v. Michaels Stores, Inc.*, 710 F. Supp. 3d 718, 728-30 (N.D. Cal. 2024) (same). Here, too, Plaintiff's fake-discount allegations adequately plead violations of the materially identical provisions of the UTPA.

### E. Plaintiff plausibly alleges a violation of Section 608(1)(ee).

Section 608(1)(ee) of Oregon's UTPA prohibits conduct that "violates ORS 646.883 or 646.885." ORS 646.608(1)(ee). Accordingly, a plaintiff can state a claim under Section 608(1)(ee) by plausibly alleging that the defendant's conduct violates either Section 883 or Section 885 of the UTPA. Here, Plaintiff does both.

ORS 646.883: Section 883 prohibits including "a price comparison" (for example a price next to a higher strikethrough price) in an advertisement unless: (1) "[t]he seller clearly and conspicuously identifies … the origin of the price that the seller is comparing to the seller's current price"; and (2) "[t]he price comparison is in compliance with ORS 646.608 (1)(j) and the rules adopted under ORS 646.608 (4)." ORS 646.883. Defendant's price comparisons violate both requirements.

Defendant violates the first requirement because it does not identify the origin of the strikethrough price compared to the current price. "Defendant's strikethrough pricing does not contain any disclosures at all about the origin of the strikethrough price." Compl. ¶ 79; *see id.* ¶ 36. This is demonstrated in the Complaint's screenshots of Defendant's strikethrough pricing without any disclosures about the origin of the strikethrough price. *Id.* ¶¶ 22, 45-46. So the Complaint

contains far more than a "solitary, conclusory contention" that Defendant "uses misleading price comparisons." Mot. 15.

Defendant violates the second requirement because, for the reasons explained above, its price comparisons do not comply with Section 608 (1)(j). *Supra* Argument II.C. Defendant asserts that "[t]he Complaint does not include a single allegation of how RugsUSA failed to comply with ORS 646.608(4), which is required to establish a violation of ORS 646.883." Mot. 15. But Section 883(2) requires sellers to comply with *both* Section 608(1)(j) *and* the rules adopted under Section 608(4). So a violation of either is a violation of Section 883(2). Because Defendant violates Section 608(1)(j), no allegations about the Section 608(4) rules are necessary.

ORS 646.885: Section 885 requires that certain terms frequently used in connection with comparison price advertising, such as "regular," "reduced," "sale," and "clearance," among others, "shall identify the origin of the price that the seller is comparing to the seller's current price as the seller's own former price, or in the case of introductory advertisements, the seller's future price." ORS 646.885(1). Section 885 also provides that "[u]nless the seller states otherwise in the advertisement," using terms such as "discount," "_____ percent discount," "$_____ discount," "_____ percent off," and "$_____ off" will be "considered to identify the origin of the price that the seller is comparing to the seller's current price as the seller's former price, or in the case of introductory advertisements, the seller's future price." ORS 646.885(2). So sellers who, like Defendant, use phrases such as "___ percent off," must base the comparison on their own former prices, or else clarify otherwise. They cannot base the comparison off of some other seller's prices, or a made up, fictious list prices that are rarely if ever used.

Here, Defendant uses the terms "sale," "discount," and "__% Off" in its advertisements. Compl. ¶ 22. And Plaintiff plausibly alleges that the prices that the supposed "sale", "discount" and "__% Off" advertising compares to are not Defendant's former prices. *See, e.g.*, Compl. ¶ 73

("Defendant's listed prices are not Defendant's true prices, or former prices, or the prevailing

market prices for Defendant's Products."). Defendant's only response is to repeat its contention that

Plaintiff does not plausibly allege that the discounts are fake. Mot. 16. As described above, that

challenge fails. *See supra* Argument I.B. Therefore, Plaintiff plausibly alleges a violation of Section

885. *See Clark (Washington),* 2025 U.S. Dist. LEXIS 47559, at *13-15 (denying motion to dismiss

UTPA claim under ORS §§ 646.608 (1)(ee) and 646.885).

### III.    Plaintiff states a claim for breach of contract.

Defendant argues that the "Complaint does not plausibly allege the relevant terms of any

contract." Mot. 16. But the Complaint identifies the precise terms of the alleged contract: that

"Defendant provides Plaintiff and class members with Products that have a former price, and a

market value, equal to the regular prices displayed on the websites," that "Defendant provides

Plaintiff and class members with the specific discount advertised on the website," and that "Plaintiff

and class members would pay Defendant for the Products ordered." Compl. ¶¶ 102-03.

The Complaint plausibly alleges that the contract between Plaintiff and Defendant contained

these terms, because those terms are what Defendant's representations objectively communicated to

Plaintiff. *E.g.,* Compl. ¶ 30 ("Reasonable consumers also reasonably believe that the list prices that

Defendant advertises represent Defendant's regular prices, and the true market value of the

Products, and that they are the prevailing prices for those Products. Reasonable consumers also

believe that they are receiving reductions from Defendant's regular prices, former prices, and the

market value of the Products in the amounts advertised."); *see Cryo-Tech, Inc. v. JKC Bend, LLC*, 313

Or. App. 413, 428 (2021) ("In ascertaining the meaning of the terms of a contract, we examine the

parties' objective manifestations of intent, as evidenced by their communications and acts.").

Courts in fake-discount cases consistently hold that materially identical allegations state a

claim for breach of contract. *See, e.g., Phillips*, 2024 U.S. Dist. LEXIS 72676, at *17 (allegations that

PAGE 23 – OPPOSITION TO MOTION TO DISMISS

contract required Defendant to "provide a product that had 'a market value equal to the regular price[] displayed on the website,' along with 'a discount equal to the difference between the price paid, and the regular price[] advertised,'" and that Defendant "breached that contract 'by failing to provide' … a product that 'ha[d] a regular price and market value equal to the regular price displayed, and by failing to provide the discount it promised'" were "enough to state a claim for breach of contract"); *Vizcarra*, 710 F. Supp. 3d at 731 (plaintiff stated a breach of contract claim based on materially identical allegations); *Freeman v. Indochino Apparel, Inc.*, 443 F. Supp. 3d 1107, 1113 (N.D. Cal. 2020) (same); *Munning v. Gap, Inc.*, 2016 U.S. Dist. LEXIS 149886, at *21-23 (N.D. Cal. Oct. 28, 2016) (same).

Defendant argues that "Plaintiff offers no facts whatsoever establishing what document or writing spelled out these various purported obligations." Mot. 17. The obligations arise from Defendant's representations on its website, and what Plaintiff plausibly alleges those representations communicate to reasonable consumers. As the cases cited above make clear, the contractual terms need not be "spelled out" any more than what they objectively communicate to reasonable consumers.

### IV.    Plaintiff states a claim for breach of express warranty.

A plaintiff states a claim for express warranty by alleging that the defendant made an affirmation of fact or description of the goods, and that the factual affirmation or description is part of the basis of the bargain. *Autzen v. John C. Taylor Lumber Sales, Inc.*, 280 Or. 783, 788 (1977). Here, Defendant—through its advertisements—made two affirmations of fact: "that the Products had a prevailing market value equal to the regular price displayed on Defendant's website"; and "that the Products were being sold at an advertised discounted price." Compl. ¶¶ 110-11. And these affirmations were "part of the basis of the bargain," *id.* ¶ 112, because Plaintiff and other reasonable

consumers believed that they were receiving a discount, and that the prevailing market value was the displayed regular price, *e.g., id.* ¶¶ 8, 29-30, 38-39.

Courts in fake-discount cases consistently hold that materially identical allegations state a claim for breach of express warranty. *See, e.g., Phillips*, 2024 U.S. Dist. LEXIS 72676, at *18 (materially identical allegations stated a claim); *Vizcarra*, 710 F. Supp. 3d at 731 (same); *Munning*, 2016 U.S. Dist. LEXIS 149886, at *24-26 (same); *Nabiyev*, 2023 U.S. Dist. LEXIS 205544, at *21-23 (same).

Defendant contends that the screenshots in the Complaint "do not say anything about 'prevailing market value.'" Mot. 18. But as described above, the Complaint alleges that "reasonable consumers expect that Defendant's regular prices . . . represent the true market value of the Products." Compl. ¶ 38. This allegation must be accepted as true at this stage. *Coates v. Legacy Health*, 2024 U.S. Dist. LEXIS 180877, at *4 (D. Or. Oct. 3, 2024) ("When considering a motion to dismiss, the court must accept all allegations of material fact as true and construe those facts in the light most favorable to the non-movant.").

Defendant also argues that the challenged statements merely "convey[] an opinion about the goods" and "are not affirmations of fact." Mot. 18 (citing ORS 72.3130(2)). But Defendant's advertisements go beyond mere opinion—*e.g.*, that the goods are "valuable." Rather, they make specific representations about facts related to the product: that it has a specific prevailing market value, and that it is being offered at a discount. Those are representations of fact, not opinion, and therefore give rise to an express warranty. *See, e.g., Vizcarra*, 710 F. Supp. 3d at 731 (allegations of fake discount were a "description of the goods (not only their price but also the promised discount)"); *Munning*, 2016 U.S. Dist. LEXIS 149886, at *26 ("[A]n advertised discounted price can constitute an express warranty").

V.    **Plaintiff states a claim for unjust enrichment.**

As Defendant notes, unjust enrichment claims must "match[] already recognized forms of unjust enrichment." Mot. 18 (citing *Larisa's Home Care, LLC v. Nichols-Shields*, 362 Or. 115, 128 (2017). *Larisa's Home Care LLC* goes on to note that fraud claims "fall[] squarely with the categories recognized by Oregon case law and treatises to involve unjust enrichment." *See also*, Restatement (3d) Restitution § 13 comment a, at 166 ("A conclusion that one party has obtained benefits from another by fraud is ... one of the most recognizable sources of unjust enrichment."). Because Plaintiff adequately alleges fraud, Plaintiff's allegations support a claim for unjust enrichment. *See infra* Argument VI.

VI.    **Plaintiff states a common law fraud claim.**

Oregon law recognizes several types of common law fraud including: (1) affirmative misrepresentation; (2) omission of a material fact needed to make a half-truth not misleading; and (3) actual or active concealment. *Martell v. GM LLC*, 492 F. Supp. 3d 1131, 1142 (D. Or. 2020). Plaintiff here states a claim for each.

A.    **Plaintiff plausibly alleges fraud based on affirmative misrepresentation.**

Plaintiff alleges each element of an intentional misrepresentation claim. *See Musgrave v. Lucas*, 193 Or. 401, 410 (1951) (stating the elements for an intentional misrepresentation claim) and *Strawn v. Farmers Insurance Co. of Oregon*, 350 Or. 336, 351-52 (2011), *adh'd to on recons.*, 350 Or 521, *cert denied*, 565 US 1177 (2012) (providing a more abbreviated list of the elements that is materially the same as the *Musgrave* list).

Defendant made false material representations: As described above, Defendant makes false representations regarding the regular price and discounts of its Products and represents that its discounts are time limited. *See* Argument I.A. "Defendant represents that its Products are being sold at a discount because of a promotion, when they are not." Compl. ¶ 33; *id.* ¶¶ 45-47 (describing the

false material misrepresentations made to Plaintiff). Those misrepresentations are important to consumers. *See id.* ¶¶ 41-43, 47 (Plaintiff "read and relied on Defendant's representations . . . [and] would not have made the purchase" had she known the truth about them). Defendant's misrepresentations also harm consumers. *Id.* ¶¶ 44, 48. Therefore, the Complaint alleges that "Defendant's misrepresentations and nondisclosures are material." *Id.* ¶ 85.

Defendant knew the representations were false: As described above, Defendant knows that it does not regularly sell its Products for the strikethrough price, that the strikethrough price is not the market value of the Product, that it is not selling Products as a discount, and that its discounts are not time limited. *See supra* Argument I.A, II.A. Therefore, the Complaint alleges that Defendant knew that its representations were false. Compl. ¶ 126 ("When Defendant made these misrepresentations, it knew that they were false at the time that they made them and/or acted recklessly in making the misrepresentations.").

Defendant intended the plaintiff to rely on the misrepresentation: The Complaint alleges that "consumers are more likely to buy a product, and buy more of it, and pay more for it, if they believe that the product is on sale," that consumers "presented with discounts are substantially more likely to make the purchase," and that "when consumers believe that an offer is expiring soon, the sense of urgency makes them more likely to buy a product." *Id.* ¶¶ 41-43, 47 (alleging that Plaintiff believed that she was getting a limited time discount and "would not have made the purchase if she had known that the Product was not discounted as advertised, and that she was not receiving the advertised discount"). Thus, the Complaint pleads that "Defendant intended that Plaintiff and subclass members rely on these representations." *Id.* ¶ 127.

Plaintiff justifiably relied on the misrepresentation: As described above, the Complaint alleges that Plaintiff and reasonable consumers reasonably relied on Defendant's representations. *Id.*

¶¶ 38-40, 47. Thus, the Complaint alleges justifiable reliance. *Id.* ¶ 127 ("Plaintiff and subclass members read and reasonably relied on" Defendant's representations).

<u>Plaintiff was damaged as a result of the reliance</u>: "Defendant's advertisements harm consumers by inducing them to make purchases they otherwise would not have made, based on false information. In addition, Defendant's advertisements artificially increase consumer demand for Defendant's Products. This puts upward pressure on the prices that Defendant can charge for its Products. As a result, Defendant can charge a price premium for its Products, that it would not be able to charge absent the misrepresentations described above. So, due to Defendant's misrepresentations, Plaintiff and the class paid more for the Products they bought than they otherwise would have." *Id.* ¶ 44; *see id.* ¶ 129.

Thus, Plaintiff alleges with particularity each element of affirmative misrepresentation.

The only challenge Defendant makes to Plaintiff's affirmative fraud claim is that "Plaintiff fails to plead with particularity the representations upon which she relied." Mot. 19. But Plaintiff alleges exactly that, with extreme specificity. The Complaint includes screenshots of the advertisements that appeared on Defendant's website when Plaintiff made her purchase—depicting the representations exactly as they appeared on June 27, 2024, the date Plaintiff made her purchase. Compl. ¶ 45. It also describes in detail Defendant's representations about the price of the rug Plaintiff purchased: "Defendant also represented that the list price of the Opar Flora Washable Abstract Rug was $183.19, but that Ms. McCarrell would receive a $94.40 total discount on her order (-$59.20 'SALE40' clearance discount combined with the automatic 'Fourth of July' discount)." *Id.* ¶ 46. And it includes a screenshot of Plaintiff's order details confirming this representation.[4] *Id.*

---

[4] Defendant again asserts that the order details "contradicts Plaintiff's allegations regarding application of both 70% and 40% discounts." Mot. 19. But as described above, there is no

In the next paragraph, Plaintiff alleges that she "read and relied on" these representations. *Id.* ¶ 47. And "[b]ased on Defendant's representations described and shown above"—*i.e.,* the specific representations described in the preceding paragraphs—Plaintiff "reasonably understood that the Product she was purchasing regularly (and before the promotion Defendant was advertising) retailed at the published list price, that the published list price was the market value of the Product that she was buying; that she was receiving the advertised discount and a price reduction as compared to the regular price, and that advertised discount was only available for a limited time (during the limited time promotion)." *Id.*

So, far from referring to "unspecified representations" (Mot. 19), the Complaint describes in detail—and contains screenshots showing—the precise representations that Defendant made and Plaintiff relied on.

### B.     Plaintiff plausibly alleges fraud based on half-truths.

A half-truth is a "misleading [representation] calculated to convey a false impression even though it may literally be true." *Heise v. Pilot Rock Lumber Co.,* 222 Or. 78, 91-92 (1960). Even in the absence of a duty to speak, one who makes a representation that is a "half-truth" assumes the obligation to make a full and fair disclosure of the whole truth. *Krause v. Eugene Dodge, Inc.,* 265 Or 486, 505 (1973). Half-truths "are fraud even when not made in response to inquiries when made by one with superior knowledge." *Heise,* 222 Or. at 90. Fraud based on a half-truth occurs when the Plaintiff "(1) heard the half-truth; and (2) would have 'behaved differently had the omitted information been disclosed.'" *Benson Tower Condo. Owners Ass'n v. Victaulic Co.,* 2014 U.S. Dist. LEXIS 147072, at *36 (D. Or. Oct. 15, 2014).

---

contradiction. *Supra* n. 1. Plaintiff's purported discount was the result of applying the 40% clearance sale and an additional percentage off due to the "UP TO 70% OFF" sale. Compl. ¶¶ 45-46.

Here, Defendant's representations regarding the amount of the discounts it offered and the duration of its promotions were half-truths. It represented that Plaintiff was receiving specific percent-off discounts and that the discounts were time-limited. *E.g.*, Compl. ¶¶ 8, 22-25, 28-30, 45-47. These representations conveyed the false impression "that she was purchasing a Product whose regular price and market value were the purported list price that Defendant advertised, that she was receiving a substantial discount, and that the opportunity to get that discount was time-limited." Compl. ¶ 8.

Having chosen to speak on these issues, Defendant was required to "make a 'full and fair disclosure' of the 'whole truth.'" *Krause*, 265 Or at 505. It was required to inform consumers that the reference prices were not its former prices (and so the percent-off calculations were inaccurate) and that another promotion was coming on the heels of the last one. But it did not disclose either of these facts. Moreover, Defendant had superior knowledge of the half-truths because "by design," the "very nature" of "a false advertising scheme" is "hidden and impossible for an ordinary consumer to discover." *Clark (Washington)*, 2025 U.S. Dist. LEXIS 47559, at *12 (quotation omitted).

Thus, Plaintiff states a claim for fraud by half-truth. *See, e.g.*, *Krause*, 265 Or. at 504-07 (finding that jury could have found half-truth where car dealer represented that car was new in accordance with trade meaning but not ordinary meaning of the term); *Gregory v. Novak*, 121 Or. App. 651, 655 (1993) (finding material issue of fact regarding allegation of half-truth where seller represented that pool was in working order but had various defects).

Defendant claims that Plaintiff has not stated what Defendant should have disclosed to avoid making a half-truth. Mot. 21. But she has done that—she alleges that Defendant should have made sure that its "list prices accurately reflected Defendant's regular prices and former prices . . . and that its discounts were truthful." Compl. ¶ 48; *see also* Compl. ¶ 79 ("Defendant's strikethrough pricing does not contain any disclosures at all about the origin of the strikethrough price"). And she

PAGE 30 – OPPOSITION TO MOTION TO DISMISS

also describes in detail precisely how Defendant's half-truths are misleading to consumers, which further informs Defendant what it needs to disclose. *E.g.*, Compl. ¶¶ 8, 28-30, 47.[5]

### C.    Plaintiff plausibly alleges fraud based on active concealment.

Oregon law recognizes that fraud can occur by active concealment. *Unigestion Holding, S.A.*, 160 F. Supp. 3d at 1226. Active concealment "occurs—even in the absence of a duty to speak—when a defendant engages in acts which create a false impression covering up the truth." *Id.* (cleaned up). Here, Defendant presented regular prices in strikethrough font that create a false impression that those are its regular, non-discounted prices and that they represent the market value of its Products. *See, e.g.,* Compl. ¶¶ 30, 47 (explaining that Plaintiff understood that "the Product she was purchasing regularly . . . retailed at the published list price, [and] that the published list price was the market value of the Product that she was buying"). Defendant's representations cover up the truth that the "list prices Defendant advertises are not actually Defendant's regular or former prices, or the prevailing prices for the Products Defendant sells, and do not represent the true market value for the Products." *Id.* ¶ 30. Therefore, the Complaint states a claim for actual concealment. *Cf. Osborn v. Gene Teague Chevrolet Co.*, 254 Or. 486, 488-89 (1969) (evidence at trial showing that defendant had replaced an odometer to show fewer miles was sufficient to show fraud).

Defendant argues that Plaintiff's actual concealment claim is "conclusory" and does not allege how Defendant engaged in concealment. Mot. 22. But as just described, Plaintiff alleges specific facts showing that Defendant concealed the regular price of its Products.

---

[5] Defendant also argues that Plaintiff has not alleged fraud by omission because Defendant did not have a duty to speak. Mot. 20-21. Plaintiff is not pursuing fraud by omission based on a duty to speak, so this argument is moot. And neither of Plaintiff's other theories—half-truths and active concealment—require a separate duty to speak.

## CONCLUSION

The Court should deny Defendant's motion in full. Alternatively, Plaintiff respectfully requests leave to amend to address any deficiencies the Court may identify. *See Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (stating that granting leave to amend represents a policy that "is to be applied with extreme liberality").

Dated:  June 27, 2025

Respectfully submitted,

By:  */s/  Vivek Kothari*
Jonas Jacobson (OSB No. 231106)
jonas@dovel.com
Vivek Kothari (OSB No. 182089)
vivek@dovel.com
Simon Franzini (Cal. Bar No. 287631)*
simon@dovel.com
Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
Tel: (310) 656-7066

*Attorneys for Plaintiff*

* Admitted Pro Hac Vice