TIMOTHY W. SNIDER, OSB NO. 034577
timothy.snider@stoel.com
NICHOLAS R. BOTTCHER, OSB NO. 245683
nicholas.bottcher@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR 97205
Telephone: 503.224.3380

THOMAS N. McCORMICK (*pro hac vice*)
tnmccormick@vorys.com
VORYS, SATER, SEYMOUR AND PEASE LLP
4675 MacArthur Court, Ste. 700
Newport Beach, CA 92660
Telephone: 949.526.7903

*Attorneys for Defendant RugsUSA, LLC*


UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| KIERA McCARRELL, individually and on behalf of all others similarly situated, | Case No.: 3:25-cv-00454-AB |
| Plaintiff, | DEFENDANT RUGSUSA, LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT |
| v. | |
| RUGSUSA, LLC, | ORAL ARGUMENT REQUESTED |
| Defendant. | |

DEFENDANT RUGSUSA, LLC'S REPLY ISO MOTION TO DISMISS PLAINTIFF'S
CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................... ii

I.    INTRODUCTION ........................................................................................ 1

II.    ARGUMENT ............................................................................................. 1

    A.    The Complaint Should Be Dismissed Under Rule 9(b). ....................... 1

        1.    Rule 9(b) applies and Plaintiff fails to plead fraud with
            particularity. ........................................................................... 1

        2.    Plaintiff's allegations made on information and belief are not
            supported by any actual facts supporting those beliefs. ............. 3

    B.    The Complaint's Screenshots And Allegations Do Not Establish
        Deceptive Conduct And Fail To State A Claim. .................................. 5

    C.    Plaintiff's UTPA Claims Are Not Plausibly Alleged. ......................... 6

        1.    Plaintiff has not adequately alleged willfulness under the UTPA. ........... 7

        2.    Plaintiff has not adequately pled a violation of any provision of
            ORS 646.608. ...................................................................... 8

    D.    Plaintiff's Breach Of Contract Claim Should Be Dismissed Because The
        Alleged Pricing Statements Were Not Terms Of The Contract. ......................... 10

    E.    Plaintiff Fails To Plead An Affirmation Of Fact Supporting Her Breach Of
        Express Warranty Claim. .................................................................. 11

    F.    Plaintiff's Unjust Enrichment Claim Fails For The Same Reasons As Her
        Fraud Claim. .................................................................................. 12

    G.    Plaintiff's Intentional Misrepresentation Claim Does Not Satisfy Rule
        9(b). .............................................................................................. 12

III.    CONCLUSION .......................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ahern v. Apple, Inc.*,
   411 F. Supp. 3d 541 (N.D. Cal. 2019) .................................................................10

*In re Autodesk, Inc. Sec. Litig.*,
   132 F. Supp. 2d 833 (N.D. Cal. 2000) ....................................................................4

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)................................................................................................6

*Growth All. Grp. LLC v. Christmas Square Grp. LLC*,
   No. 24-cv-09093, 2025 WL 1666570 (N.D. Cal. June 12, 2025)...........................14

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ............................................................................2, 3

*Kungys v. United States*,
   485 U.S. 759 (1988)................................................................................................9

*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998) ................................................................................8

*Martell v. GM LLC*,
   492 F. Supp. 3d 1131 (D. Or. 2020) ...........................................................2, 12, 13

*Matchniff v. Great Nw. Ins. Co.*,
   224 F. Supp. 3d 1119 (D. Or. 2016) .....................................................................10

*Miller v. Winco Foods*,
   No. 3:19-cv-02094-AC, 2020 WL 6693149 (D. Or. Sept. 3, 2020) ........................7

*Nelson v. Bennett*,
   662 F. Supp. 1324 (E.D. Cal. 1987)........................................................................8

*Neubronner v. Milken*,
   6 F.3d 666 (9th Cir. 1993) ......................................................................................3

*Pearson v. Philip Morris, Inc.*,
   361 P.3d 3 (Or. 2015) ..............................................................................................8

*In re Premera Blue Cross Customer Data Security Breach Litigation*,
   198 F. Supp. 3d 1183 (D. Or. 2016) .....................................................................13

## TABLE OF AUTHORITIES
(continued)

<b>Page(s)</b>

*Rathgeber v. Hemenway*,
   69 P.3d 710 (Or. 2003) ...........................................................................................7

*Unigestion Holding, S.A. v. UPM Tech., Inc.*,
   160 F. Supp. 3d 1214 (D. Or. 2016) .....................................................................12

*Value Linx Servs., LLC v. Linx Card, Inc.*,
   No. 3:18-cv-02126, 2019 WL 3502895 (D. Or. Aug. 1, 2019) ............................11

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ................................................................................2

**Statutes**

Oregon Unlawful Trade Practices Act ................................................................. passim

ORS 72.3130, Oregon Uniform Commercial Code ...................................................11

ORS 72.3130(2) ..........................................................................................................11

ORS 646.605(10) ..........................................................................................................7

ORS 646.608 .................................................................................................................8

ORS 646.608(1) .............................................................................................................6

ORS 646.608(1)(e) ....................................................................................................6, 9

ORS 646.608(1)(i) .....................................................................................................6, 9

ORS 646.608(1)(j) .........................................................................................................6

ORS 646.608(1)(p) ........................................................................................................6

ORS 646.608(1)(ee) .......................................................................................................6

ORS 646.638(1) .........................................................................................................7, 8

**Rules**

Fed. R. Civ. P. 9(b) ................................................................................................. passim

Fed. R. Civ. P. 12(b)(6)................................................................................................1

Fed. R. Evid. 408 ..........................................................................................................8

Page iii –    DEFENDANT RUGSUSA, LLC'S REPLY ISO MOTION TO DISMISS
                 PLAINTIFF'S CLASS ACTION COMPLAINT
129609483.1 0082389-00002

<u>**REPLY IN SUPPORT OF MOTION**</u>

## I.     INTRODUCTION

Plaintiff's Opposition confirms that the Complaint relies on broad accusations and speculation rather than the particularized facts required to sustain her fraud-based claims. Plaintiff's claims all sound in fraud, yet the Complaint is devoid of the *who, what, when, and how* of any actual misrepresentation to Plaintiff herself.  Instead, Plaintiff recites a generalized "fake sale" scheme, largely on information and belief, hoping to survive scrutiny by citing other fake-discount cases.  But those out-of-state cases do not overcome the fundamental pleading deficiencies present here under Federal Rules of Civil Procedure 9(b) and 12(b)(6).  Plaintiff's Opposition fails to remedy these deficiencies.  It also misconstrues Oregon's Unlawful Trade Practices Act ("UTPA") and stretches contract and warranty law beyond recognition.  For the reasons below and those in the Motion, the Court should dismiss the Complaint in its entirety.

## II.     ARGUMENT

### A.     The Complaint Should Be Dismissed Under Rule 9(b).

#### 1.     Rule 9(b) applies and Plaintiff fails to plead fraud with particularity.

As RugsUSA showed in its Motion, Plaintiff's allegations regarding fake sales, materially misleading representations, false discounts, and her claim that she read and reasonably relied on such alleged misrepresentations, are allegations of fraud that implicate Federal Rule of Civil Procedure 9(b).  Motion pp. 14-15 of 30.  Plaintiff's Opposition begins by tacitly admitting that Rule 9(b) applies to her claims.  *See* Opposition pp. 11-13 of 32 (arguing her Complaint complies with Rule 9(b) without disputing that Rule 9(b) applies).  She then argues that Rule 9(b) does not apply to her UTPA claim by citing a series of unpublished decisions from 2011, *id.* p. 16 of 32, while also acknowledging that a published 2020 decision held otherwise, *id.* p. 17 of

32 n.3 (citing *Martell v. GM LLC*, 492 F. Supp. 3d 1131, 1145 (D. Or. 2020)).  RugsUSA cited

*Martell* in its brief, *see* Motion p. 15 of 30, and that case should control here.  "Rule 9(b) applies

to cases 'grounded in fraud' even when fraud is not an element of the claim."  *Martell*, 492 F.

Supp. 3d at 1145 (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003)).

Plaintiff here alleges a "unified course of fraudulent conduct," *Vess*, 317 F.3d at 1103, and thus

Rule 9(b) applies.

The Complaint, however, falls far short of Rule 9(b)'s requirements.  Plaintiff's

Opposition insists that the Complaint identifies the "who, what, when, where, and how" of the

misconduct.  *See* Opposition pp. 11-13.  But simply naming RugsUSA as the "who" and

describing an amorphous scheme with conclusory allegations is not enough.  The Complaint

never alleges actual facts regarding what statements she relied on and how any of those alleged

statements were false in context.  She never plainly nor clearly alleges, with plausible facts, ***how***

RugsUSA's representations were purportedly false and misleading.  All she offers are conclusory

allegations (unsupported, as shown below) regarding allegedly perpetual sales and purported

pricing discrepancies that are completely untethered to any external reference points in the

market.

At most, Plaintiff alleges that on June 27, 2024, she visited Defendant's website and saw

certain pricing displays for a rug she purchased.  But these are just the "'neutral facts necessary

to identify the transaction,'" *Kearns v. Ford Motor Co.*, 567 F.3d  1120, 1124 (9th Cir. 2009)

(citation omitted), and Plaintiff must allege more to satisfy Rule 9(b).  She fails to allege exactly

which statements she actually relied on during that purchase.  She generally references seeing an

"up to 70% OFF" sitewide promotion, an "Extra 40% OFF Clearance," and a list price of

$183.19 with a sale price of $88.79 for her rug.  Crucially, though, she does not allege that she

ever saw the various other website "screenshots" depicted in the Complaint's background section (e.g., banners on other days), which she claims made the sales "fake" and "false" because they were allegedly offered in perpetuity.  And in response to RugsUSA pointing out the inconsistency in Plaintiff's math regarding the discounts she received, *see* Motion p. 11 of 30, Plaintiff simply admits there is uncertainty regarding what discounts were actually applied to her purchase, *see* Opposition p. 11 of 32 n.1.  These conclusory and unsupported allegations do not satisfy Rule 9(b).

At bottom, Plaintiff's pleading lumps together a wide variety of alleged pricing representations and other unidentified marketing materials in vague terms, which is insufficient to apprise RugsUSA of the particular conduct constituting an intentional misrepresentation.  Rule 9(b) requires Plaintiff to clearly and explicitly allege each specific misrepresentation that she contends RugsUSA fraudulently made, along with the time, place, and identity details of each. She has not done so.  Therefore, all of Plaintiff's fraud-based claims should be dismissed for failure to plead with particularity.

### 2. Plaintiff's allegations made on information and belief are not supported by any actual facts supporting those beliefs.

Plaintiff's Complaint is almost entirely based on allegations made upon information and belief without supporting details, and allegations of fraud based on information and belief generally do not satisfy the heightened pleading standard of Rule 9(b) unless the complaint "state[s] the factual basis for the belief."  *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993); *see also Kearns*, 567 F.3d at 1124-25 (fraud plaintiff must allege specific circumstances of misrepresentation).  Omitting the phrase "information and belief" changes nothing because "allegations of misrepresentations not made on personal knowledge are presumed to have been

made on information and belief." *In re Autodesk, Inc. Sec. Litig.*, 132 F. Supp. 2d 833, 839 (N.D. Cal. 2000).

Plaintiff argues her allegations satisfy Rule 9(b) because they are based on an investigation by her counsel that purportedly shows that "Defendant's website advertised a supposedly time-limited sale over 90% of the time."  Opposition p. 15 of 32.  But the "investigation" shows nothing of the sort.  Plaintiff states her counsel looked at 150 "randomly selected screenshots of Defendant's website between October 13, 2023 and November 22, 2024."  *Id.* p. 10 of 32.  But just two pages later, Plaintiff's Opposition states that the relevant time frame for her allegations does not begin until February 2024.  *Id.* p. 12 of 32.  Plaintiff's investigation is already insufficient to save her claims because it does not examine the proper time period.

Plaintiff's purported investigation is plainly insufficient to support her claims.  There are 407 days in the time period Plaintiff claims her counsel investigated, and she claims her counsel inspected 150 screenshots and found 138 instances of advertising a time-limited sale.  *Id.* p. 10 of 32.  Plaintiff provides no details regarding how "random" the selection process was or what method was applied to select the screenshots, what screenshots were in fact inspected, what the screenshots actually showed, or how they were related in time (a crucial piece of information given Plaintiff's allegations regarding the timing of RugsUSA's advertisements and sales).  Her allegations regarding this investigation are as conclusory and unsupported as the remainder of her Complaint and need not be taken at face value.  And even assuming the purported investigation was adequately alleged, Plaintiff's investigation shows only 138 instances of advertising a time-limited sale, which is only 33.9% of the 407-day period Plaintiff identified.  This is hardly a sufficient factual allegation to support Plaintiff's conclusion that RugsUSA

Page 4 –     DEFENDANT RUGSUSA, LLC'S REPLY ISO MOTION TO DISMISS
             PLAINTIFF'S CLASS ACTION COMPLAINT

offers fake "perpetual" sales on its website—at most this would show that RugsUSA frequently advertises sales, not that any specific sales misrepresented the truth. Plaintiff's generalized observations lack the detail needed to infer a concrete and actionable falsehood.

Here, Plaintiff's core accusations (that RugsUSA's reference "list" prices are fictitious, its discounts illusory, and its sales never-ending) are speculative assertions unsupported by an adequate investigation or any specifically alleged facts. In response to RugsUSA pointing out the conclusory and unsupported nature of her allegations Plaintiff relies on her "investigation" time and time again. *E.g., id.* pp. 13-15 of 32. But as discussed above, this investigation is fatally flawed and does not support Plaintiff's claims. Plaintiff pleads no concrete facts showing that any particular reference price was false or that any "limited time" sale actually failed to end as advertised. Rule 9(b) demands more. Because Plaintiff alleges no facts upon which her various allegations and beliefs of fraud are founded, the Complaint as pleaded cannot satisfy Rule 9(b).

### B. The Complaint's Screenshots And Allegations Do Not Establish Deceptive Conduct And Fail To State A Claim.

Even setting aside Rule 9(b), the Complaint does not contain facts plausibly showing that RugsUSA engaged in any actionable deception. Plaintiff's theory is that RugsUSA perpetually runs "fake" sales by advertising high "list" prices with corresponding discounts that never truly expire and that the list prices were never the actual prices. Yet Plaintiff offers no well-pled facts to substantiate the charge that the reference prices are fictitious or that the time-limited sales are a sham. Instead, she simply relies on her "investigation" and a smattering of screenshots included in her Complaint (while also claiming a "typographical error" exists in her Complaint that makes her allegations more plausible, *see* Opposition p. 14 of 32 n.2 (responding to Motion p. 10 of 30)).

Importantly, none of the screenshots appended to the Complaint demonstrates a lie.  They show webpages with strikethrough prices and discount banners on certain dates.  Complaint ¶¶ 22, 24-25.  There is no allegation that the "list price" shown for Plaintiff's rug (or any rug) was entirely made up or never charged to any customer.  Likewise, the fact that promotions were running on many days does not prove that any given promotion was *untruthful* at the time it was advertised.  The Complaint concedes that when Plaintiff bought her rug, RugsUSA was indeed running a sitewide "up to 70% off" sale concurrently with a clearance sale.  Plaintiff paid exactly the advertised sale price ($88.79) for her rug, saving $94.40 off the listed price.  In other words, she *did* receive a substantial discount off the reference price, just as the website indicated.

Plaintiff's assertions are wholly conclusory.  The Complaint leaps from noting frequent sales to declaring that everything about RugsUSA's price and discount advertising is false.  That is the type of speculative conclusion that *Twombly*/*Iqbal* and Rule 9(b) forbid.  At most, Plaintiff alleges the *inference* that the list prices must be bogus because sales are allegedly "perpetual."  Such inferences without facts are not enough to state a plausible claim of deception.  In sum, the scattered screenshots and "information and belief" allegations in the Complaint do not nudge her theory of a perpetual fake sale scheme "across the line from conceivable to plausible."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The absence of any concrete deceptive act or false statement, tied to a time, a place, and content, is fatal to her claims.

### C.    Plaintiff's UTPA Claims Are Not Plausibly Alleged.

Plaintiff's statutory claims under Oregon's UTPA should be dismissed.  The Complaint invokes several subsections of ORS 646.608(1), namely (e), (i), (j), (p) and (ee), which prohibit certain deceptive trade practices in advertising prices.  However, merely reciting the language of these provisions is not enough.  Plaintiff must plead facts showing how RugsUSA's conduct

violated each specific subsection, and Plaintiff has not. The Opposition's attempts to defend these UTPA claims only highlight the gaps in the Complaint.

      **1.      Plaintiff has not adequately alleged willfulness under the UTPA.**

As an initial matter, Plaintiff's entire UTPA claim should be dismissed for failure to plausibly plead willfulness. To bring a UTPA claim based on any theory, a plaintiff must plead a *willful* violation. ORS 646.638(1). Willful violations occur when the defendant "knew or should have known" its conduct was a violation. ORS 646.605(10). And importantly, statements do not violate the UTPA unless they constitute willful misrepresentations "at the time that they were made[.]" *Rathgeber v. Hemenway*, 69 P.3d 710, 715 (Or. 2003).

Plaintiff has made no actual factual allegations regarding RugsUSA's purported willfulness in allegedly violating the UTPA, and certainly none supporting a plausible inference that RugsUSA knew or should have known the alleged statements were violations at the time they were made. Instead, Plaintiff simply parrots the words of the statute, *see* Complaint ¶ 82, or relies on the same general and conclusory allegations that the list prices on the website were not the regular or former prices and that the discounts advertised were not legitimate, *id.* ¶ 30. But as RugsUSA pointed out in its Motion, *see* Motion p. 19 of 30, "a bare allegation that a defendant acted willfully is a mere conclusion of the pleader and is generally insufficient." *Miller v. Winco Foods*, No. 3:19-cv-02094-AC, 2020 WL 6693149, at *7 (D. Or. Sept. 3, 2020) (citation and internal quotation marks omitted).

The only thing Plaintiff adds to her argument is the fact that RugsUSA previously entered into a settlement agreement related to previous actions filed by the same counsel. Opposition p. 18 of 32. The Court should reject this disingenuous argument for a number of reasons. It is black-letter law that a settlement agreement is not admissible to prove or disprove the validity of

Page 7 –        DEFENDANT RUGSUSA, LLC'S REPLY ISO MOTION TO DISMISS
                    PLAINTIFF'S CLASS ACTION COMPLAINT
129609483.1 0082389-00002

a disputed claim.  Fed. R. Evid. 408.  The mere fact that RugsUSA entered into a settlement does

not plausibly support an allegation that it knew or should have known its conduct was a violation

of the UTPA, because defendants enter into settlements for myriad reasons unconnected from

liability.  *E.g., Nelson v. Bennett*, 662 F. Supp. 1324, 1334-35 (E.D. Cal. 1987); *see also Linney*

*v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("'[T]he very essence of a

settlement is compromise, "a yielding of absolutes[.]"'" (citations omitted)).

    Furthermore, by presenting this settlement agreement as an indictment of RugsUSA,

Plaintiff is violating the settlement agreement's terms.  A copy of the settlement agreement is

attached as Exhibit A.  Section XI clearly states that the "Agreement is not to be construed or

deemed as an admission of liability, culpability, negligence, or wrongdoing on the part of

Defendant."  Ex. A p. 23.  Additionally, in Section XVI Plaintiff's counsel expressly agreed

> not [to] make, publish, circulate or cause to be made, published or circulated any
> statements that . . . (ii) represent or suggest that this Agreement or any order by
> the Court regarding the Settlement or this Agreement represents or implies any
> wrongdoing by, or any admission of liability by, Defendant, or a finding by the
> Court of liability or wrongdoing.

*Id.* p. 24.  The Court should not reward Plaintiff for violating this agreement—born of

compromise and negotiation and furthering the "overriding" federal interest in encouraging

settlements, *see Nelson*, 662 F. Supp. at 1335—by permitting Plaintiff to wield it as a weapon

against RugsUSA now.  Plaintiff has not plausibly alleged that RugsUSA willfully violated the

UTPA and the Court should dismiss the UTPA claim.

### 2.    Plaintiff has not adequately pled a violation of any provision of ORS 646.608.

    To state a UTPA claim Plaintiff must plausibly allege that RugsUSA committed an

unlawful trade practice under ORS 646.608.  ORS 646.638(1); *see also Pearson v. Philip*

*Morris, Inc.*, 361 P.3d 3, 28 (Or. 2015).  While she alleges violations of multiple subsections of

ORS 646.608, *see* Motion pp. 17-18 of 30, her allegations all suffer from the same fundamental defect already discussed above—she has only alleged unsupported conclusions, not plausible facts. *See* Opposition p. 18 of 32 (listing conclusions regarding pricing but no supporting facts and relying again on purported investigation by counsel); *id.* pp. 21-22 of 32 (relying on screenshots in Complaint); *id.* pp. 22-23 of 32 (repeating conclusory allegation regarding list and former prices with no allegations of underlying fact). For all the reasons discussed above, Plaintiff's conclusory and unsupported statements do not state a plausible claim for relief.

Plaintiff's various UPTA arguments suffer from specific issues as well. RugsUSA noted that ORS 646.608(1)(e) and (i) apply only to representations regarding the quality and characteristics of the products themselves, not pricing or allegedly fake discounts, and provided Oregon case law in support. Motion pp. 20-21 of 30. Plaintiff responds by discussing California law and the requirements of non-UTPA statutes. Opposition pp. 20-21 of 32. Arguments about other statutes that are not at issue here are not persuasive, and Plaintiff cites no authority that supports using (1)(e) to challenge an advertised price comparison. More persuasive is the fact that while subsections (e) and (i) do not mention price reductions or comparison, other subsections such as (j) and (ee) do. Interpreting subsections (e) and (i) to also apply to pricing issues would render them superfluous and redundant, contrary to well established canons of statutory interpretation. *E.g., Kungys v. United States*, 485 U.S. 759, 778 (1988). A product's price or market value is simply not a "characteristic" or "quality" of the good in the sense contemplated by the UTPA.

Even if (1)(e) and (i) could be stretched to pricing representations, Plaintiff has not identified any false "characteristic" that RugsUSA attributed to its rugs. The Complaint does not allege that RugsUSA made any claim about the rugs' quality, materials, or performance that was

untrue.  At most, Plaintiff alleges that RugsUSA conveyed an impression that the rugs were

"worth" the higher list price.  But a seller's opinion or statement about a product's value is not an

objective characteristic of the product, it is a subjective assertion often considered puffery and

cannot form the basis of a fraud claim.  *E.g., Ahern v. Apple, Inc.*, 411 F. Supp. 3d 541, 555-56

(N.D. Cal. 2019) (applying Oregon UTPA law).  The Court should dismiss Plaintiff's UTPA

claims for failure to state a claim.

### D.    Plaintiff's Breach Of Contract Claim Should Be Dismissed Because The Alleged Pricing Statements Were Not Terms Of The Contract.

Plaintiff's breach of contract claim is premised on a novel theory that goes far beyond the

ordinary terms of a retail purchase.  She contends that when she (and the putative class members)

bought rugs from RugsUSA, the contract of sale included promises that the products had a

"former price" or "market value" equal to the listed price, and that she was getting a specific

discount off that price.  In other words, Plaintiff asserts that the advertised pricing itself became a

term of the sales contract.  This theory is implausible and unsupported by Oregon law.

To plead a breach of contract, Plaintiff must allege the existence of a contract and its

relevant terms, her own performance, defendant's breach, and resulting damage.  *Matchniff v.

Great Nw. Ins. Co.*, 224 F. Supp. 3d 1119, 1124 (D. Or. 2016).  Here, the basic contract was

straightforward:  Plaintiff agreed to pay a certain price and RugsUSA agreed to provide a rug.

That exchange unquestionably occurred.  Plaintiff tries to expand the "relevant terms" to include

collateral advertising statements about pricing.  However, she identifies no actual contractual

document or communication where RugsUSA agreed that the rug's "true value" was $183.19 or

that future pricing would adhere to some standard.  The only writing confirming the sale is the

order confirmation showing the rug, the price paid, and any discounts applied.  Plaintiff does not

cite any provision in any terms of sale or any contract that incorporates a warranty of price or

value.  Instead, she relies on what "Defendant's representations objectively communicated" to

her, which she claims she "plausibly alleged."  Opposition p. 24 of 32.  But yet again, Plaintiff

substitutes argument about what her conclusory allegations mean instead of actual allegations of

fact that could plausibly establish that there was a meeting of the minds sufficient to form a

contract incorporating the terms Plaintiff is trying to add to the simple contract of sale between

herself and RugsUSA.  *Value Linx Servs., LLC v. Linx Card, Inc.*, No. 3:18-cv-02126, 2019 WL

3502895, at *8-9 (D. Or. Aug. 1, 2019) (meeting of the minds is necessary to create an

enforceable contract).  The Court should dismiss Plaintiff's breach of contract claim.

    **E.**    **Plaintiff Fails To Plead An Affirmation Of Fact Supporting Her Breach Of Express Warranty Claim.**

    Plaintiff's express warranty claim repackages the same pricing representations underlying

all her other claims as supposed "warranties" about the goods.  She alleges that RugsUSA's

advertisements made "affirmations of fact" that became part of the basis of the bargain—

specifically, (1) "that the Products had a prevailing market value equal to the regular price"

displayed, and (2) "that the Products were being sold at an advertised discounted price."

Opposition p. 24 of 32.  From the start, this theory struggles because it is counterintuitive to treat

a *price* representation as a warranty about the *product*.  Warranties typically relate to the quality,

description, or performance of the goods (e.g., "this rug is 100% wool" or "will not shed").  A

statement about market value is more akin to opinion or sales talk.  Indeed, Oregon's Uniform

Commercial Code (ORS 72.3130) draws a line between actionable warranties and non-actionable

statements of value or opinion.  Under ORS 72.3130(2), a statement "merely of the value of the

goods or a statement purporting to be merely the seller's opinion or commendation of the goods

does not create a warranty."  RugsUSA's strikethrough price is, at best, an assertion of the

product's value (what it *could* sell for absent a sale).  That falls squarely within the category of

non-warranty opinions or puffery, not a factual promise about the product's characteristics. The Court should dismiss Plaintiff's breach of express warranty claim.

### F.    Plaintiff's Unjust Enrichment Claim Fails For The Same Reasons As Her Fraud Claim.

As pointed out in RugsUSA's Motion, and in Plaintiff's Opposition, Plaintiff's unjust enrichment claim depends on the viability of her fraud claim. Motion pp. 25-26 of 30; Opposition p. 26 of 32. Because her fraud claim is not adequately pled (as is further discussed below), the Court should dismiss Plaintiff's unjust enrichment claim as well.

### G.    Plaintiff's Intentional Misrepresentation Claim Does Not Satisfy Rule 9(b).

Finally, Plaintiff's intentional misrepresentation claim is a re-packaging of her UTPA and other allegations, and it fails for many of the same reasons already discussed. Simply put, Plaintiff has not pled the factual underpinning of her claims with the requisite particularity.

As an initial matter, Oregon law recognizes four general theories of fraud—affirmative misrepresentation, omission of a material fact when there is an independent duty to disclose, omission of a material fact that would make a "half-truth" not misleading, and actual concealment. *Unigestion Holding, S.A. v. UPM Tech., Inc.*, 160 F. Supp. 3d 1214, 1223-24 (D. Or. 2016). A plaintiff must be "explicit[]" regarding which theory(ies) they are pursuing. *Martell*, 492 F. Supp. 3d at 1144. Plaintiff's Complaint brings a claim for "intentional misrepresentation," Complaint ¶¶ 122-130, which appears to be a claim for affirmative misrepresentation. Her complaint does not mention any omission-based claims, and thus her fraud claim should be limited to an affirmative misrepresentation theory.

Such an affirmative misrepresentation claim must fail because Plaintiff has not properly identified any actual affirmative misrepresentations. She relies, as always, on her **conclusions** that "Defendant represents that its Products are being sold at a discount because of a promotion,

when they are not," Opposition p. 26 of 32, and that such alleged "misrepresentations are important to consumers," *id.* p. 27 of 32. But she has not provided the factual allegations that would make such conclusory statements plausible. As previously discussed, the screenshots she provides and the investigation by her counsel simply do not support the conclusions that Plaintiff draws and presents to the Court as fact. There are no facts properly alleged that support a plausible claim that RugsUSA runs perpetual sales rendering its prices "fake" or "false."

Even if the Court is inclined to consider other fraud theories, Plaintiff's claim still fails for the same reasons. Plaintiff argues that RugsUSA's "representations regarding the amount of the discounts it offered and the duration of its promotions were half-truths," Opposition p. 30 of 32, but again the fatal flaw is that this ***conclusion*** is not supported by properly alleged factual allegations in the Complaint. Plaintiff's Opposition cites the same screenshots and investigation, *id.*, but as discussed they are inadequate to support Plaintiff's conclusory allegations. And without actually identifying a half-truth, an omission-based fraud claim fails.

With respect to an active concealment theory, a plaintiff "must allege facts showing [defendant's] deceptive acts intended to prevent discovery of the concealed information." *Martell*, 537 F. Supp. 3d at 1197. But all Plaintiff alleges is that RugsUSA did not reveal information about its list prices. Opposition p. 31 of 32. Plaintiff does not allege that RugsUSA did anything to "intentionally misle[a]d" customers or "send [them] down the wrong path," *see In re Premera Blue Cross Customer Data Security Breach Litigation*, 198 F. Supp. 3d 1183, 1193-94 (D. Or. 2016), as the information about the timing and duration of RugsUSA's sales was available to anyone accessing RugsUSA's website. Plaintiff has not adequately pled an active concealment claim.

Finally, Plaintiff fails to adequately plead scienter or intent for any theory of fraud. The Complaint makes the generic assertion that "when Defendant made these misrepresentations, it knew they were false … and/or acted recklessly." Complaint ¶ 126. But no supporting facts are given, beyond Plaintiff's improper attempt to use the prior settlement agreement as a weapon against RugsUSA in violation of Plaintiff's counsel's agreement not to do so. *See* Exhibit A pp. 23-24. While state of mind can be alleged generally, that does not mean such allegations are completely free from basic pleading standards requiring non-conclusory allegations supporting a plausible allegation of scienter. *E.g., Growth All. Grp. LLC v. Christmas Square Grp. LLC*, No. 24-cv-09093, 2025 WL 1666570, at *2 (N.D. Cal. June 12, 2025). The Court should dismiss Plaintiff's intentional misrepresentation claim.

## III.    CONCLUSION

For the foregoing reasons, RugsUSA respectfully requests that the Court grant its Motion to Dismiss and dismiss Plaintiff's Class Action Complaint in its entirety, with prejudice.

DATED:  July 11, 2025                    STOEL RIVES LLP

*s/ Nicholas R. Bottcher*
TIMOTHY W. SNIDER, OSB No. 034577
timothy.snider@stoel.com
NICHOLAS R. BOTTCHER, OSB No. 245683
nicholas.bottcher@stoel.com

- AND -

THOMAS N. McCORMICK (*pro hac vice* )
tnmccormick@vorys.com
VORYS, SATER, SEYMOUR AND PEASE
LLP
4675 MacArthur Court, Ste. 700
Newport Beach, CA  92660
Telephone:  949.526.7903

*Attorneys for Defendant RugsUSA, LLC*

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Settlement" or the "Agreement") is made and entered into by and between Plaintiffs Christina Wiley, Alexandria Lee, Tawney Briggs, and Christopher Korda ("Plaintiffs" or "Class Representatives"), individually and on behalf of the Settlement Class, on the one hand, and Defendant RugsUSA, LLC ("RugsUSA" or "Defendant"), on the other hand, in the action entitled *Wiley, et al. v. RugsUSA, LLC*, Case No. 6:23-cv-03250-SRB (W.D. MO), pending in the United States District Court for the Western District of Missouri (the "Court").

### I.    DEFINITIONS

As used in this Agreement and all related documents, the following terms have the following meanings:

A.    "**Actions**" means *Wiley v. RugsUSA, LLC*, 6:23-cv-03250-SRB (W.D. Mo.); *Lee v. RugsUSA, LLC*, 3:23-cv-02412-JSC (N.D. Cal.); *Briggs v. RugsUSA LLC*, 2:23-cv-00982-TSZ (W.D. Wash.); and *Korda v. RugsUSA, LLC*, 3:23-cv-01026-AR (D. Or.).

B.    "**Administration Fund**" means a fund that Defendant will pay or cause to be paid to the Settlement Administrator. The Administration Fund is an early payment towards Administration Costs (defined below) and payable from the Settlement Common Fund (defined below).

C.    "**Administration Costs**" means the actual costs reasonably charged by the Settlement Administrator for its services as provided for in this Agreement, including, but not limited to, all costs of providing notice to persons in the Settlement Class, issuing Settlement Awards, processing Claim Forms, escrow fees, and the cost of maintaining a designated post office box for receiving Claim Forms. The Administrative Costs shall be paid out of the Settlement Common Fund.

D.    "**CAFA Notice**" refers to the notice requirements imposed by 28 U.S.C. § 1715(b).

E.    "**Cash Benefit(s)**" means a dollar payment, in the form of a check or electronic payment, to a Settlement Class Member who elected to receive a Cash Benefit through a valid Claim Form.

F.    "**Cash Benefit Fund**" means the non-reversionary fund, the amount of which shall be established after the expiration of the Claim Period, which shall equal the total Cash Benefit to be awarded to all Settlement Class Members who elected to receive a Cash Benefit through a valid Claim Form.

G.    "**Claim(s)" or "Claim Form(s)"** means the claim form submitted by a Settlement Class Member, in the form attached hereto as "**Exhibit C**," which shall offer each Settlement Class Member a choice between receiving an automatic Credit Benefit or a Cash Benefit. Each Settlement Class Member who elects to receive the Cash Benefit must attest under penalty of perjury that they were a Missouri, California, Washington, or Oregon resident who purchased one or more products from RugsUSA.com during the Class Period. Failure to submit a completed Claim Form with all requested information shall result in such Settlement Class Member receiving Credit Benefit as the default option.

H.    "**Claim Deadline**" means the date sixty (60) days after the Notice Deadline.

I.    "**Claim Period**" means the time period in which Settlement Class Members may submit a Claim Form.  The Claim Period begins on the Notice Deadline and expires on the Claim Deadline.

J.    "**Claims Process**" means the process for Settlement Class Members' submission of Claims, as described in Section III.

K.    "**Class Counsel**" means Dovel & Luner, LLP and Bursor & Fisher P.A.

L.    "**Class Notice**" means the types of notice that will be provided to the Settlement Class, as described in Section IV and ordered by the Court.

M.    "**Class Period**" means May 17, 2020 to October 12, 2023 for California Class Members; June 30, 2019 to October 12, 2023 for Washington Class Members; July 13, 2022 to

October 12, 2023 for Oregon Class Members; and August 11, 2018 to October 12, 2023 for Missouri Class Members.

N.    **"Credit Benefit(s)"** means the credit issued to each Settlement Class Member, unless the Settlement Class Member elects to receive a Cash Benefit, that can be applied toward any purchase made on RugUSA.com.  Credit Benefits are subject to additional terms and conditions, as set forth in Section III.F. The Parties agree that, for purposes of Cal. Civ. Proc. Code § 1520.5, the Credit Benefit qualifies as a gift certificate under Cal. Civ. Code § 1749.45 *et seq.*, that does not expire, and that California's escheat statute, Cal. Civ. Proc. Code § 1520, therefore does not apply to the Credit Benefit.

O.    **"Effective Date"** means the last of the following dates: (a) all Parties have executed this Agreement; (b) the day after the Court has entered the Final Approval Order; and (c) the day after the date on which time to appeal or to seek permission to appeal from the Court's approval of this Settlement has expired or, if appealed, approval of this Settlement has been affirmed in its entirety by the court of last resort to which such appeal has been taken and such affirmance is no longer subject to further appeal or review, or the day after the denial of a writ of certiorari to review the order and final judgment from any court making the Final Approval Order a final, non-appealable judgment.

P.    "**Email Notice**" means notice of the proposed Settlement to be provided to Settlement Class Members substantially in the form attached hereto as "**Exhibit A**."

Q.    "**Fairness Hearing**" or "**Final Approval Hearing**" means the hearing at or after which the Court will make a final decision whether to approve this Agreement and the Settlement set forth herein as fair, reasonable and adequate and to enter the Final Approval Order.

R.    "**Final Approval**" means the date the Court finally approves the Settlement of the Actions, including but not limited to, the terms and conditions of this Agreement.

S.    "**Final Approval Order**" means the order and judgment that the Court enters upon finally approving the Settlement in connection with the Fairness Hearing.

T.      "**Long Form Notice**" means notice of the proposed Settlement to be provided to Settlement Class Members substantially in the form attached hereto as "**Exhibit B**."

U.      "**Mail Notice**" means notice of the proposed Settlement to be provided to Settlement Class Members by first class mail, if necessary, after the failure of Email Notice, in substantially the same form as "**Exhibit D**."

V.      "**Notice Deadline**" or "**Notice Date**" means the date on which the notice described in Section IV of the Agreement is first issued.

W.      "**Objection/Exclusion Deadline**" means the deadline to object or seek exclusion from the Settlement.

X.      "**Parties**" or "**Party**" means the Class Representatives and Defendant.

Y.      "**Preliminary Approval**" means the date the Court preliminarily approves the Settlement of the Actions, including but not limited to, the terms and conditions of this Agreement.

Z.      "**Preliminary Approval Order**" means the order to be submitted to the Court in connection with the preliminary approval hearing on the Settlement, the proposed form of which is attached hereto as "**Exhibit E**."

AA.    "**Released Claims**" means all claims to be released pursuant to Section III.D of this Agreement.

BB.    "**Settlement Administrator**" means the third-party agent or administrator agreed to by the Parties and appointed by the Court.  The Parties agree that, subject to the Court's approval, an independent entity shall be retained to implement the Class Notice and Claims administration requirements of this Agreement.

CC.    "**Settlement Award**" means a Credit Benefit or Cash Benefit provided to an eligible Settlement Class Member pursuant to Section III.E. of this Agreement.

DD.    "**Settlement Class**" means:

1.      all persons who, while in the state of California, purchased one or more products advertised as being subject to a purported discount on Defendant's website RugsUSA.com from May 17, 2020 to October 12, 2023 ("California Settlement Subclass"); and

2.      all persons who, while in the State of Washington, purchased one or more products advertised as being subject to a purported discount on Defendant's website RugsUSA.com from June 30, 2019 to October 12, 2023 ("Washington Settlement Subclass"); and

3.      all persons who, while in the State of Oregon purchased one or more products advertised as being subject to a purported discount on Defendant's website RugsUSA.com from July 13, 2022 to October 12, 2023 ("Oregon Settlement Subclass"); and

4.      all persons who, while in the State of Missouri purchased one or more products advertised as being subject to a purported discount on Defendant's website RugsUSA.com from August 11, 2018 to October 12, 2023 ("Missouri Settlement Subclass").

Excluded from the Settlement Class are all persons who validly opt out of the Settlement in a timely manner; governmental entities; counsel of record (and their respective law firms) for the Parties; Defendant and any of its parents, affiliates, subsidiaries, independent service providers and all of its respective employees, officers, and directors; the presiding judge in the Actions or judicial officer presiding over the matter, and all of their immediate families and judicial staff; and any natural person or entity that entered into a release with Defendant prior to the Effective Date arising from the same representations, advertising, marketing and/or sales on the Defendant's website, www.RugsUSA.com, underlying the claims in the operative complaint in the Actions.

EE.    "**Settlement Class Member(s)**" means any member of the Settlement Class.

FF.     "**Settlement Common Fund**" means the non-reversionary common fund created by Defendant in the amount equal to 14.25% of Defendant's revenue from sales of products to Settlement Class Members during the Class Period.  This amounts to approximately $14,268,403. Defendant has agreed to pay this amount in exchange for a full release and dismissal of the Actions with prejudice.  The Settlement Common Fund will be used to fund Settlement Awards (Cash and Credit Benefits) and Administration Costs, as well as attorneys' fees and costs to Plaintiffs' counsel, and incentive awards to Plaintiffs as awarded by the Court. The Settlement Common Fund represents the total extent of Defendant's monetary obligations under the Agreement, and

Defendant shall not have any other monetary obligation related to or arising out of the Actions or the Agreement.

GG.    "**Settlement Website**" means the website to be established by the Settlement Administrator for purpose of providing notice, Claim Forms, and other information regarding this Agreement, as described in Section IV.C.

HH.    "**Website Notice**" means the notice made available on the Settlement Website pursuant to Section IV.C. of this Agreement, including the Long Form Notice.

## II.    LITIGATION BACKGROUND

A.    Plaintiffs allege that, during the Class Period, Defendant deceptively advertised various discounts of its products on its website. Based on these allegations, the Actions were filed in California, Washington, Oregon, and Missouri on May 17, June 30, July 13, and August 11, 2023, respectively.  The Actions allege violations of certain California, Washington, Oregon, and Missouri consumer protection statutes, and claims for breach of contract, breach of express warranty, and unjust enrichment. Plaintiffs seek injunctive relief, compensatory damages, and restitution in amounts by which Defendant was allegedly unjustly enriched based on its product sales.

B.    Defendant expressly denies any liability or wrongdoing of any kind or that Plaintiffs or any putative class member has been damaged in any amount or at all in connection with the claims alleged in the Actions, and further contends that, for any purpose other than Settlement, the Actions are not appropriate for class treatment.  Defendant does not admit or concede any actual or potential fault, wrongdoing, or liability against it in the Actions or any other actions.  Defendant maintained during the entire pendency of the Actions, and continues to maintain, that the challenged advertising practices are not deceptive or misleading as a matter of law.

C.    The Parties engaged in negotiations over a seven-month period relating to the facts and legal issues in the Actions. Although the Parties agreed to stay formal discovery and case deadlines, the Parties exchanged informal discovery, including detailed financial and sales records

relevant to the claims and alleged damages. Plaintiffs' counsel represents that they spent significant time and effort analyzing these detailed records, and enlisted the help of an expert witness to assist them in doing so. The Parties also prepared and exchanged comprehensive mediation briefs that discussed the claims, defenses, and alleged damages in detail, followed by an in-person mediation in Los Angeles on November 10, 2023, with the Honorable Louis Meisinger (Retired) of Signature Resolution.  The Parties reached a tentative agreement on most issues but continued to engage in extensive and contentious negotiations over the following three weeks, until a settlement was finally reached.  A term sheet was executed on December 1, 2023. As a result of these lengthy, substantive, and good faith negotiations, Class Counsel was able to assess thoroughly the claims of the Settlement Class Members,Defendant's marketing practices, and Defendant's defenses.

D.      Based on the above-outlined investigation and litigation, the current state of the law, the expense, burden, and time necessary to prosecute the Actions through trial and possible appeals, the risks and uncertainty of further prosecution of the Actions considering the defenses at issue, the sharply contested legal and factual issues involved, and the relative benefits to be conferred upon the Settlement Class Members pursuant to this Agreement, Plaintiffs and Class Counsel have concluded that a Settlement with Defendant on the terms set forth herein is fair, reasonable, adequate, and in the best interests of the Settlement Class in light of all known facts and circumstances.

E.      Defendant and Defendant's counsel recognize the expense and length of continued proceedings necessary to continue the Actions through trial and through possible appeals. Defendant also recognizes that the expense and time spent pursuing the Actions has and will further detract from resources that may otherwise be used to run Defendant's business.  While Defendant denies any wrongdoing or liability arising out of any of the facts or conduct alleged in the Actions and believes that it has valid defenses to Plaintiffs' claims, Defendant has determined that the Settlement is fair, adequate, and reasonable.

F.    Based on the foregoing, which the Parties expressly incorporate as material terms of the Agreement, it is the desire of the Parties to fully, finally, and forever settle, compromise, and discharge all disputes and claims arising from or related to the Actions which exist between the Parties.  Therefore, it is the intention of Plaintiffs and the Settlement Class that this Agreement shall constitute a full and complete Settlement and release of the Released Claims against Defendant.

## III.    <u>TERMS OF SETTLEMENT</u>

In consideration of the mutual covenants and promises set forth herein, and subject to Court approval, the Parties agree as follows:

A.    <u>Consolidation of the Actions for Settlement Purposes</u>: To promote efficiency and conserve judicial and party resources, Plaintiffs shall dismiss the *Lee*, *Briggs*, and *Korda* cases without prejudice and shall file a consolidated complaint in the *Wiley* case naming each of the Class Representatives as named Plaintiffs. The Parties shall seek approval of the Settlement in the *Wiley* case. Defendant will not contest personal jurisdiction or venue in the *Wiley* case as to any Class Representative or Class Member for settlement purposes only. The claims dismissed without prejudice in *Lee*, *Briggs*, and *Korda* and added to *Wiley* in accordance with this provision shall be treated for all purposes as though they were filed as of the date of the *Lee*, *Briggs*, and *Korda* complaints, respectively, for settlement purposes.

B.    <u>Conditional Certification of Class.</u>  For settlement purposes only, and without any finding or admission of any wrongdoing or fault by Defendant, and solely pursuant to the terms of this Agreement, the Parties consent to and agree to the establishment of a conditional certification of the Settlement Class, pursuant to Federal Rule of Civil Procedure 23(b)(3).

C.    <u>Certification is Conditional.</u>  This certification is conditional on the Court's approval of this Agreement.  In the event the Court does not approve all terms of the Agreement, or if the Agreement is voluntarily or involuntarily terminated for any reason, then certification of the Settlement Class shall be void and this Agreement and all orders entered in connection therewith, including but not limited to any order conditionally certifying the Settlement Class, shall

become null and void and shall be of no further force and effect and shall not be used or referred to for any purposes whatsoever in the Actions or in any other case or controversy.  And, in such an event, this Agreement and all negotiations and proceedings related thereto shall be deemed to be without prejudice to the rights of any and all Parties hereto, who shall be restored to their respective positions as of the date of this Agreement, and Defendant has not and shall not be deemed to have waived any opposition or defenses it has to any aspect of the claims asserted herein or to whether those claims are amenable to class-based treatment. In addition, in such an event, Plaintiffs may re-file the *Lee, Briggs*, and *Korda* actions within 30 days, and, if Plaintiffs do so, the Parties agree that those re-filed actions shall be treated as though they were filed as of the initial filing date of the *Lee, Briggs,* and *Korda* actions respectively for all purposes, including for purposes of any statute of limitation defense as to Plaintiffs' claims and as to the claims of any unnamed putative class members. Defendant supports certification of the Settlement Class for settlement purposes only. In the event the Settlement is not preliminarily approved, the Parties agree to resume settlement discussions in good faith for at least 14 days.  If after 14 days the Parties have not agreed to amended settlement terms, then all pre-trial and trial deadlines and dates shall be reset by the Court.  The Parties agree to provide the Court with a proposed schedule within 14 days after an order of the Court denying preliminary approval.

D.    <u>Settlement Class Member Information</u>. Defendant will provide the Claims Administrator a customer list of Settlement Class members, including name, email address, the shipping address associated with each Settlement Class Member's most recent purchase to a California, Washington, Oregon, and Missouri address, and a list of all purchases (including the amount paid) by the Settlement Class Members on www.RugsUSA.com during the Class Period, for the purpose of administering the Settlement reached pursuant to this Agreement.

E.    <u>Releases</u>.

1.    <u>Release of Defendant</u>.  Upon the Effective Date, and except as to such rights or claims as may be created by this Agreement, and in consideration for the Settlement benefits described in this Agreement, Plaintiffs and the Settlement Class shall fully release and discharge

Defendant and all its present and former parent companies, subsidiaries, shareholders, officers, directors, employees, agents, servants, registered representatives, affiliates, successors, personal representatives, heirs and assigns, retailers, suppliers, distributors, endorsers, consultants, and any and all other entities or persons upstream and downstream in the production/distribution channels, but only in their capacity as such (together, the "Discharged Parties") from all claims, demands, actions, and causes of action of any kind or nature whatsoever, whether at law or equity, arising under federal, state, or local law, that Plaintiffs or Settlement Class Members ever had, now have, or may have against the Discharged Parties in any other court, tribunal, arbitration panel, commission, or agency, or before any governmental and/or administrative body, or any other adjudicatory body, on the basis of or arising from the Discharged Parties' representations, advertising, marketing and/or sales on the Defendant's website, www.RugsUSA.com, during the Class Period, which were alleged in the operative complaint, or which arise from the same facts and claims alleged in the operative complaint in the Actions. This is notwithstanding that Plaintiffs and the Settlement Class acknowledge that they may hereafter discover facts in addition to or different from those that they now know or believe to be true concerning the subject matter of the Actions and/or the Released Claims herein. The Released Claims shall include, but are not necessarily limited to, all claims that have or could have been asserted by any or on behalf of any Settlement Class Member in the Actions and that are based on or arise out of the same factual predicate as the Actions.

2.    Class Representatives' Release of Unknown Claims.  Plaintiffs expressly understand and acknowledge that certain principles of law, including but not limited to Section 1542 of the Civil Code of the State of California, provide that:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Plaintiffs hereby agree that the provisions of all such principles of law or similar federal or state laws, rights, rules or legal principles, are hereby knowingly and voluntarily waived, relinquished and released by Plaintiffs.

    F.    <u>Compensation to the Settlement Class.</u>

    1.    <u>Benefits to Settlement Class Members</u>: Subject to the rights, terms, and conditions of this Agreement, after distribution and payment of Administration Costs, attorneys' fees and costs, and incentive awards, all money in the Settlement Common Fund will be distributed to Settlement Class Members in proportion to their total purchases made on RugsUSA.com during the Class Period. Accordingly, payment to each Class Member will amount to 14.25% of their past purchases, minus that Class Member's proportional share of Administration Costs, attorneys' fees and costs, and incentive awards. Defendant will make a payment to each Settlement Class Member in either cash (Cash Benefit) or RugsUSA credit (Credit Benefit).

    2.    <u>Credit Benefit Delivery</u>:  Unless a Settlement Class Member submits a valid Claim Form electing to receive payment in the form of a Cash Benefit, the appropriate Credit Benefit amount will automatically be provided to Settlement Class Members without any requirement to fill out a claim form or take any other affirmative action. Credit Benefits will be automatically applied to Settlement Class Members' RugsUSA accounts and the Settlement Administrator shall send the Settlement Class Member an email to the email address associated with the account informing the Settlement Class Member that the credit has been applied to the account and providing instructions on how to use it.  That email sent by the Settlement Administrator will also contain instructions to access the account to which the Credit Benefit has been applied. If the email to a Settlement Class Member giving notice of the Credit Benefit bounces back, the Settlement Administrator will send notice of the Credit Benefit via first class mail to the shipping address provided by Defendant for that Settlement Class Member with instructions on how to claim the Credit Benefit.

    3.    <u>Use of Credit Benefits</u>: Credit Benefits can be used toward any purchase by the Settlement Class Member made on RugsUSA.com (including any shipping and handling fees

or taxes that may apply), can be combined with any other discount or offer, do not expire, and will be tied to the account to which they are applied.  If Credit Benefits used in connection with an order exceed the total amount of the order (including any shipping and handling fees or taxes that may apply), then any unused Credit Benefit will remain in the Settlement Class Member's account and can be applied toward future purchases. If a Credit Benefit used in connection with an order is less than the total amount of the order, then the Settlement Class Member using the Credit Benefit is responsible for the balance of the purchase amount that exceeds the Credit Benefit amount, including any shipping and handling fees and taxes that may apply.

        4.      <u>Cash Benefit Election and Delivery</u>: If a Settlement Class Member submits a valid Claim Form and elects to receive Cash Benefits, the Settlement Class Member will receive the payment they are due under this Agreement in the form of Cash Benefits rather than Credit Benefits.

        G.      <u>Settlement Administration and Notice</u>.

        1.      All notice, publication, and claims administration activities shall be carried out exclusively by the Settlement Administrator.

        2.      <u>Claim Process</u>.  Settlement Class Members may elect to receive a Cash Benefit instead of a Credit Benefit by submitting a valid Claim Form to the Settlement Administrator via a web form on the Settlement Website during the Claim Period and choosing to receive a Cash Benefit.  Settlement Class Members may, at their option, submit a paper Claim Form, which will be accepted upon receipt as valid by the Settlement Claims Administrator if the claim is otherwise valid.  Settlement Class Members who do not submit a Claim Form electing to receive payment in the form of a Cash Benefit shall receive payment in the form of Credit Benefit as the default option.

The Settlement Administrator will use adequate and customary procedures and standards to prevent the payment of fraudulent claims. This may include measures such as using a class member identifier to access and file claims and/or validating claims against Defendant's records. The Settlement Administrator shall have the right to audit Claims, and the Settlement

Administrator may request additional information from Settlement Class Members submitting Claims. If any Settlement Class Member submits a Claim Form and elects to receive the Cash Benefit but fails to attest under penalty of perjury that they were a California, Washington, Oregon, or Missouri resident who purchased one or more products from RugsUSA.com during the Class Period and the claim is otherwise valid, the Cash Benefit election shall be denied, and such Settlement Class Member shall instead receive payment in the form of Credit Benefit. The Settlement Administrator shall maintain records of all Claim Forms until one hundred and twenty (120) days after all valid Claims have been finally resolved and the Settlement Administrator has issued payment to those Settlement Class Members who submitted valid Claims and elected to receive a Cash Benefit, and such records will be made available upon request to Class Counsel and Defendant's counsel at the end of the one hundred twenty (120) day period.  The Settlement Administrator also shall provide such reports, declarations, and such other information to the Court as the Court may require or as Class Counsel or Defendant's counsel requests.

3. <u>Final Tally</u>.  The Settlement Administrator shall provide weekly reports to counsel for Defendant and Plaintiffs stating the number of Claims received, the number of Claims electing the Cash Benefit option, the number of any Claims electing the Cash Benefit option that have been denied, the name of any class member(s) that have submitted a valid opt-out request, and the name of any class member(s) that submitted an invalid opt-out request. Within **seven (7) calendar** days after the close of the Claim Period, the Settlement Administrator shall provide the Parties with the total number of valid and timely Claims received and approved electing the Cash Benefit option. The Settlement Administrator shall separately provide to Defendant, but not Class Counsel, the identities of each such Settlement Class Member and those that have excluded themselves from the Settlement Class.

4. <u>Calculation of Cash Benefit Fund and Credit Benefit Amounts</u>. Within **fourteen (14) calendar** days after the close of the Claim Period, the Settlement Administrator shall provide Defendant with (a) a schedule of the Cash Benefit amounts to be paid to each Settlement Class Member who submitted a valid and timely Claim electing the Cash Benefit

option, including the total amount of such Cash Benefit payments, which shall establish the amount of the Cash Benefit Fund; and (b) for each Settlement Class Member not receiving a Cash Benefit, a schedule of the Credit Benefit amounts payable to that Settlement Class Member under this Agreement. The Settlement Administrator shall separately provide to Class Counsel anonymized versions of the above-referenced schedules after removing identifying information of the Settlement Class Members from such schedules.

      H.    <u>Payment Schedule</u>.  In settlement of the claims of Plaintiffs and the Settlement Class Members, Defendant shall remit payment on the following schedule:

      1.    Within **fourteen (14) calendar days** of Preliminary Approval, Defendant shall pay sums to cover the reasonable Administration Expenses (the Administration Fund) into an escrow account established by the Settlement Administrator. The Administration Fund comprises part of the Settlement Common Fund. The Administration Fund shall serve as an advance payment towards the costs of Class Notice and the Claims Process, including exclusions and objections. Defendant shall pay sums to cover any additional reasonable Administration Expenses to the Settlement Administrator out of the Settlement Common Fund as they become due.  Any additional payments owed to the Settlement Administrator are also part of the Settlement Common Fund.

      2.    Within **thirty (30) calendar days** of the Effective Date, Defendant shall pay or cause to be paid as directed by the Settlement Administrator an amount equal to the Cash Benefit Fund, and shall pay or cause to be paid the award of reasonable attorneys' fees and costs as approved by the District Court, plus any incentive awards as approved by the District Court, to Dovel & Luner, LLP by wire transfer.

      3.    Within **forty-five (45) calendar days** of the Effective Date, or by September 16, 2024, whichever occurs last, the Settlement Administrator shall provide notice of the Credit Benefit to the Class and Defendant shall provide the Credit Benefit to the account of each Settlement Class Member not receiving the Cash Benefit in the manner described above in Section III.E.3 above.

4.      Within **forty-five (45) calendar days** of the Effective Date, the Settlement Administrator shall disperse the Cash Benefit Fund by providing the Cash Benefit to those Settlement Class Members that validly selected the Cash Benefit.

5.      If an appeal is filed, which delays the Effective Date, then within **thirty (30) calendar days** of the filing of the notice of appeal, Defendant shall pay into an interest bearing escrow account an amount equal to the Cash Benefit Fund, plus the award of reasonable attorneys' fees and costs as approved by the District Court, plus any incentive awards as approved by the District Court.  The Parties, along with the Settlement Administrator, will mutually agree upon an appropriate escrow agent and all fees and costs associated with setting up the escrow account shall be deemed Administration Costs.  On the Effective Date, the Parties, along with the Settlement Administrator shall request that the escrow agent disperse the funds in a manner consistent with this Agreement, with any interest generated by the escrow account being paid to Defendant.

I.      <u>Attorneys' Fees/Costs and Class Representative Enhancement</u>.

1.      After the Court preliminarily approves the Settlement, Class Counsel may move the Court for an award of attorneys' fees and reasonable costs and expenses of up to $2,853,680 (i.e., 20% of the Settlement Common Fund). The actual amount of attorneys' fees, costs, and expenses to be awarded is in the discretion of the Court. Defendant may challenge or oppose the amount of fees requested by Class Counsel (i.e., may ask the Court to award Class Counsel less than the amount requested).  Class Counsel shall be entitled to payment of any attorneys' fees and reasonable costs and expenses awarded by the Court out of the Settlement Common Fund. Class Counsel shall not be entitled to interest on any amount sought at any time. Court approval of attorneys' fees, costs, and expenses, or their amount, will not be a condition of the Settlement.  In the event the Court declines to approve, in whole or in part, the payment of attorneys' fees, expenses, and costs in the amounts requested, the remaining amounts shall not revert to Defendant, and shall stay in the Settlement Common Fund for proportional distribution to the Class in the form of Cash Benefits and Credit Benefits, and the remaining provisions of this Agreement shall remain in full force and effect.

2.      Named Plaintiffs Christina Wiley, Alexandria Lee, Tawney Briggs, and Christopher Korda may also apply to the Court for incentive awards each in an amount not to exceed $2,500 each, for their participation as Class Representatives, to be paid from the Settlement Common Fund.  Court approval of the incentive awards, or their amount, will not be a condition of the Settlement.

3.      Plaintiffs and Class Counsel agree to provide Defendant all identification information necessary to effectuate the payment of the fees and costs including, but not limited to, Taxpayer Identification Number(s), and completed Internal Revenue Service Form(s) W-9. Attorneys' fees and incentive awards shall be paid to Class Counsel and Plaintiffs Christina Wiley, Alexandria Lee, Tawney Briggs, and Christopher Korda in accordance with Section H above.

4.      Except for the fees and costs to be paid to Class Counsel and Plaintiffs as specifically provided in this Agreement as part of the Settlement Common Fund,  Defendant does not agree to pay and shall not be responsible or liable for the payment of any attorneys' fees and expenses of Class Counsel, Plaintiffs, the Settlement Class, and Settlement Class Members, any person or entity that may object to the Agreement, or any attorney who may represent any person or entity that may object to the Agreement, in connection with the Actions or any Released Claim.

## IV.    <u>NOTICE TO THE SETTLEMENT CLASS</u>

The Settlement Administrator shall provide Class Notice in the forms approved by the Court, as detailed below, no later than the Notice Deadline.

A.      <u>Email Notice</u>.  The Settlement Administrator shall provide for Email Notice by sending an email substantially in the form of **Exhibit A** to the email addresses for Settlement Class Members identified by Defendant. Defendant is in possession of approximately 332,475 such email addresses. This contact information will be shared with the Settlement Administrator but not Class Counsel.

B.      <u>Mail Notice</u>.  If an original Email Notice is returned as undeliverable, the Settlement Administrator will send a postcard notice in substantially the same form as **Exhibit D** via first class U.S. mail, postage pre-paid to the shipping address provided by Defendant and

Exhibit A
Page 16 of 53

associated with the Settlement Class Member's most recent purchase on RugsUSA.com. Mail Notices will instruct Settlement Class Members to provide the Claims Administrator with a current email address for settlement purposes only.

C.    <u>Website Notice</u>.  The Settlement Administrator will establish and maintain the Settlement Website.  The Settlement Website will be dedicated to the Settlement.  On the Settlement Website will be posted the Long Form Notice, the Claim Form, a copy of this Agreement, the Preliminary Approval Order, and any other materials the Parties agree to include. The Settlement Website shall also provide for the straightforward and user-friendly online submission of Claim Forms, and instructions as to how to access the case docket via PACER or in person at any of the Court's locations.  The Settlement Website will also explain Settlement Class Members' right to opt out of or object to the Settlement, and provide the dates to opt out of or object to the Settlement.  The Settlement Website shall also state the date of the Fairness Hearing, that the date may change without further notice, and that Settlement Class Members should be advised to check the Settlement Website or the Court's PACER site to confirm that the date has not been changed. These documents and information shall be available on the Settlement Website no later than the Notice Deadline and remain until 30 days after distribution of all Settlement Awards.  The Settlement Website shall not include any advertising and shall not bear or include Defendant's logo or trademarks.

D.    <u>Toll-Free Number</u>.  The Settlement Administrator shall establish and host an automated case-specific toll-free number to allow Class Members to learn more and to request further information about the Actions.

E.    <u>CAFA Notice</u>.  The Settlement Administrator shall be responsible for timely compliance with all CAFA notice requirements.  The Settlement Administrator and the Parties shall work together in good faith to come to agreement regarding the form and content of, and secure any necessary court approval of, the CAFA Notice. All costs associated with effectuating CAFA Notice, including but not limited to postage and printing, shall be deemed Administration Costs and paid exclusively from the Settlement Common Fund.

F.     Defendant agrees to cooperate with Class Counsel and the Settlement Administrator in an effort to reasonably manage and reduce Administration Costs.

## V.   <u>PROCEDURES FOR OBJECTING TO OR REQUESTING EXCLUSION FROM SETTLEMENT</u>

A.     <u>Objections</u>.  Only Settlement Class Members may object to the Settlement.  A Settlement Class Member who wishes to object to the Settlement must do so in writing by the Objection/Exclusion Deadline.  All written objections and supporting papers must (a) contain and clearly identify the case name and number; and (b) be submitted to the Court either by mailing them to the Clerk of Court using the following address: United States District Court for the Western District of Missouri, *Wiley, et al. v. RugsUSA, LLC*, Case No. 6:23-cv-03250-SRB, 400 East Ninth Street, Kansas City, Missouri 64106, or by filing them in person with the Clerk of Court at that same address.  Written objections must also contain:  (1) the full name, address and telephone number of the Settlement Class Member; (2) a written statement of all grounds for the objection accompanied by legal support for the objection (if any); (3) any papers, briefs or other documents upon which the objection is based; (4) a list of all persons who will be called to testify in support of the objection (if any); (5) a statement of whether the Settlement Class Member intends to appear at the Fairness Hearing; (6) proof of membership in the Class, or a signed statement attesting, under penalty of perjury, that they were a California, Washington, Oregon, or Missouri resident who purchased one or more products from Defendant during the Class Period; (7) a list of all objections filed by the objector and his or her counsel to class action settlements in the last three years; and (8) the signature of the Settlement Class Member and her or his counsel, if any.  No Settlement Class Member shall be heard at the Fairness Hearing (whether individually or through separate counsel) unless written notice of the Settlement Class Member's intention to appear at the Fairness Hearing, and copies of any written objections or briefs, have been timely submitted to the Court.  The date of the postmark on the mailing envelope or a legal proof of service accompanied by a file-stamped copy of the submission shall be the exclusive means used to determine whether an objection and/or notice of intention to appear has been timely filed and served.  In the event

Exhibit A
Page 18 of 53

that the postmark is illegible, the objection and/or notice to appear shall be deemed untimely unless it is received by the Court within **two (2) calendar days** of the Objection/Exclusion Deadline. Settlement Class Members who fail to timely submit a written objection in the manner specified above shall be deemed to have waived any objections and shall be foreclosed from making any objection (whether by appeal or otherwise) to the Settlement. Class Counsel shall, at least **fourteen (14) calendar days** (or such other number of days as the Court shall specify) before the Fairness Hearing, file any responses to any written objections submitted to the Court by Settlement Class Members in accordance with this Agreement.

B.    <u>Procedure for Requesting Exclusion</u>. Settlement Class Members who wish to opt out of this Settlement must submit a written statement to the Settlement Administrator by the Objection/Exclusion Deadline. To be valid, each request for exclusion must: (a) state the Settlement Class Member's name, address, and phone number; (b) be personally signed by the Settlement Class Member and not the Settlement Class Member's attorney or anyone acting on the Settlement Class Member's behalf; and (c) include the statement "I/we request to be excluded from the class settlement in *Wiley v. RugsUSA, LLC*, 6:23-cv-03250-SRB (W.D. Mo.)." No "class" or "mass" exclusions shall be permitted. Requests to opt-out that do not include all required information and/or that are not submitted on a timely basis, will be null, void, and ineffective. The date of the postmark on the mailing envelope shall be the exclusive means used to determine whether a Settlement Class Member's opt-out/exclusion request has been timely submitted. In the event that the postmark is illegible, the opt-out/exclusion request shall be deemed untimely unless it is received by the Settlement Administrator within **two (2) calendar days** of the Objection/Exclusion Deadline. Any Settlement Class Member who properly opts out of the Settlement Class using this procedure will not be entitled to any Settlement Award, will not be bound by the Settlement, and will not have any right to object, appeal or comment thereon. Settlement Class Members who fail to submit a valid and timely request for exclusion on or before the Objection/Exclusion Deadline shall be bound by all terms of the Settlement and any final

judgment entered in this litigation if the Settlement is approved by the Court, regardless of whether they ineffectively or untimely requested exclusion from the Settlement.

        C.    <u>Termination Right</u>.  In its sole discretion and at its sole option, Defendant has the unconditional right, but not the obligation, to terminate this Agreement if the total number of opt-outs exceeds 5,000 persons in the Settlement Class.

        The Parties agree that third-party discovery of any kind (formal or informal) shall not be propounded or pursued through the date the Final Approval Order is entered by the Court, unless otherwise agreed by all Parties.

        Either Party may terminate the Settlement if the Court orders a notice program that deviates substantially from the notice program discussed in this Agreement, including without limitation a notice plan that requires additional third-party discovery or additional notice unduly burdensome to Defendant.

        D.    <u>No Solicitation of Settlement Objections or Exclusions</u>.  The Parties agree to use their best efforts to carry out the terms of this Settlement.  At no time will any of the Parties or their counsel seek to solicit or otherwise encourage any Settlement Class Members to object to the Settlement or request exclusion from participating as a Settlement Class Member or encourage any Settlement Class Member to appeal from the final judgment.

## VI.    **PRELIMINARY APPROVAL OF SETTLEMENT**

        Following full execution of this Agreement, the Parties will move the Court for entry of the Preliminary Approval Order, which shall specifically include provisions that: (a) preliminarily approve the Settlement as fair, adequate and reasonable to the Settlement Class, and within the reasonable range of possible final approval; (b) conditionally certify the Settlement Class for Settlement purposes only and appoint Class Counsel as counsel for the Settlement Class for Settlement purposes only; (c) approve the forms of Class Notice and find that the notice constitutes the best notice practicable under the circumstances, provides due and sufficient notice to the Settlement Class and fully satisfies the requirements of due process and Federal Rule of Civil Procedure 23; (d) direct that notice be provided to the Settlement Class, in accordance with this

Agreement, by the Notice Deadline; (e) establish a procedure for persons in the Settlement Class to object to the Settlement or exclude themselves from the Settlement Class by the Objection/Exclusion Deadline, after which no one shall be allowed to object to the Settlement or exclude himself or herself from the Settlement Class or seek to intervene; (f) approve the Claim Form and the Claims Process described herein, and set a deadline for timely submission of claims; (g) pending final determination of whether the Settlement should be approved, bar all persons in the Settlement Class, directly, on a representative basis or in any other capacity, from commencing or prosecuting against any of the Discharged Parties any action, arbitration, or proceeding in any court, arbitration forum or tribunal asserting any of the Released Claims; (h) pending final determination of whether the Settlement should be approved, stay all proceedings in the Actions except those related to effectuation of the Settlement; (i) schedule the Fairness Hearing on Final Approval of the Settlement, and rule on the Motion for Final Approval and Motion for Attorneys' Fees and Incentive Awards as soon as practicable; and (j) provide that, in the event the proposed Settlement set forth in this Agreement is not approved by the Court, or in the event that this Agreement becomes null and void pursuant to its terms, this Agreement and all orders entered in connection therewith, including but not limited to any order conditionally certifying the Settlement Class, shall become null and void and shall be of no further force and effect and shall not be used or referred to for any purposes whatsoever in the Actions or in any other case or controversy; and (k) that in such an event, this Agreement and all negotiations and proceedings related thereto shall be deemed to be without prejudice to the rights of any and all Parties hereto, who shall be restored to their respective positions as of the date of this Agreement.  In the event the Court does not enter the Preliminary Approval Order described herein, or decides to do so only with modifications, then this entire Agreement shall become null and void, unless the Parties hereto agree in writing to proceed with this Agreement as modified.

## VII.    FINAL APPROVAL OF SETTLEMENT

Not later than **seventy-five (75) calendar days** after Preliminary Approval, the Parties shall file a Motion for Final Approval of the Settlement.  Plaintiffs shall request that the Court

enter the Final Approval Order, which shall specifically include provisions that:  (a) finally approve the Settlement as fair, reasonable and adequate to the Settlement Class Members; (b) find that the Class Notice as given was the best notice practicable under the circumstances, is due and sufficient notice to the Settlement Class and fully satisfies the requirements of due process and Federal Rule of Civil Procedure 23; (c) approve the plan of distribution of the Settlement Awards; (d) finally certify the Settlement Class; (e) confirm that Plaintiffs and the Settlement Class Members have released all Released Claims and are permanently barred and enjoined from asserting, commencing, prosecuting or continuing any of the Released Claims against the Discharged Parties; and (f) dismiss the Actions with prejudice, without costs to any Party, except as provided in this Agreement, and subject to the Court's retaining continuing jurisdiction over the Parties for the purpose of enforcement of the terms of this Agreement.

## VIII.  UNCASHED SETTLEMENT AWARDS

To the extent Settlement Awards are provided by check instead of electronically, the expiration date for settlement checks will be 180 calendar days from the date the settlement checks are issued, unless otherwise extended by agreement of the Parties. Un-cashed settlement checks may be reissued where appropriate, including where the Settlement Class member states that he or she never received the check, in which case the Settlement Administrator will stop payment on the uncashed check and re-issue the check. Any funds remaining because of un-cashed checks shall will be sent by the Settlement Administrator to National Consumer Law Center and will not revert to Defendant.

## IX.    PARTIES' AUTHORITY

The signatories each represent that they are fully authorized to enter into this Agreement and bind the Parties to its terms and conditions.

## X.    MUTUAL FULL COOPERATION

The Parties agree to cooperate fully with each other to accomplish the terms of this Agreement, including but not limited to, execution of such documents and the taking of such other action as may reasonably be necessary to implement the terms of this Agreement.  The Parties to

Exhibit A
Page 22 of 53

this Agreement shall use their best efforts, including all efforts contemplated by this Agreement and any other efforts that may become necessary by order of the Court, or otherwise, to effectuate this Agreement. As soon as practicable after execution of this Agreement, Class Counsel, with the assistance and cooperation of Defendant and its counsel, shall take all necessary steps to secure the Court's final approval of this Agreement. Defendant agrees that Defendant will not attempt to discourage Settlement Class Members from filing claims.

## XI. <u>NO ADMISSION</u>

This Agreement is not to be construed or deemed as an admission of liability, culpability, negligence, or wrongdoing on the part of Defendant. Defendant denies all liability for claims asserted in the Actions. Each of the Parties has entered into this Agreement with the intention to avoid further disputes and litigation with the attendant inconvenience and expenses. This Agreement is a settlement document and shall, pursuant to Fed. R. Evid. 408 and related or corresponding state evidence laws, be inadmissible in evidence in any proceeding, action, arbitration, or hearing, including without limitation any litigation or regulatory proceeding or action, to establish liability. The preceding sentence shall not apply to an action or proceeding to approve or enforce this Agreement.

## XII. <u>NOTICES</u>

Unless otherwise specifically provided, all notices, demands or other communications in connection with this Agreement shall be in writing and shall be deemed served on the date of mailing by United States registered or certified mail, return receipt requested, addressed as follows:

| **For The Class** | **For Defendant** |
|---|---|
| Simon Franzini<br>DOVEL & LUNER, LLP<br>201 Santa Monica Blvd., Suite 600<br>Santa Monica, California 90401<br>simon@dovel.com | Thomas McCormick<br>Vorys, Sater, Seymour and Pease, LLP<br>4675 MacArthur Court, Suite 700<br>Newport Beach, CA 92660<br>tnmccormick@vorys.com |

Exhibit A
Page 23 of 53

## XIII. **CONSTRUCTION**

The Parties agree that the terms and conditions of this Agreement are the result of lengthy, intensive arms-length negotiations and drafting by and between the Parties, and that this Agreement shall not be construed in favor of or against any Party by reason of the extent to which any Party or his or its counsel participated in the drafting of this Agreement.

## XIV. **MATERIAL TERMS; CAPTIONS**

Each term of this Agreement is a material term of the Agreement not merely a recital, and reflects not only the intent and objectives of the Parties but also the consideration to be exchanged by the Parties hereunder.

Paragraph titles or captions are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Agreement or any of its provisions.

## XV. **INTEGRATION CLAUSE**

This Agreement contains the entire agreement between the Parties relating to the Settlement, and all prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written and whether by a Party or such Party's legal counsel, are extinguished.

## XVI. **PUBLIC STATEMENTS**

The Parties and their counsel shall make no comments to media or press with respect to the substance of the Agreement at any time (including but not limited to press releases), except as required by law.  In addition, the Parties and their counsel shall not make, publish, circulate or cause to be made, published or circulated any statements that (i) disparage Plaintiffs, Defendant, or their counsel, or (ii) represent or suggest that this Agreement or any order by the Court regarding the Settlement or this Agreement represents or implies any wrongdoing by, or any admission of liability by, Defendant, or a finding by the Court of liability or wrongdoing.

## XVII. **NON-EVIDENTIARY USE**

Neither this Agreement nor any of its terms shall be offered or received into evidence in the Actions, or in any other action or proceeding; provided, however, that nothing contained in

Exhibit A
Page 24 of 53

this section shall prevent this Agreement from being used, offered, or received in any proceeding to enforce, construe, or finalize this Agreement.

## XVIII. <u>NO COLLATERAL ATTACK</u>

This Agreement shall not be subject to collateral attack by any Settlement Class Member or any recipient of the notices to the Settlement Class after the judgment and dismissal is entered. Such prohibited collateral attacks shall include claims that a Settlement Class Member's Settlement Award was improperly calculated or adjusted or that a Settlement Class Member failed to receive timely notice of the procedure for disputing the calculation of the individual Settlement Award or failed to submit a timely dispute letter for any reason.

## XIX. <u>AMENDMENTS</u>

The terms and provisions of this Agreement may be amended only by a written agreement, which is both (1) signed by the Parties who have executed this Agreement and (2) approved by the Court.

## XX. <u>ASSIGNMENTS</u>

None of the rights, commitments, or obligations recognized under this Agreement may be assigned by any Party or Settlement Class Member without the express written consent of each other Party hereto. The representations, warranties, covenants, and agreements contained in this Agreement are for the sole benefit of the Parties and Settlement Class Members under this Agreement, and shall not be construed to confer any right or to avail any remedy to any other person.

## XXI. <u>GOVERNING LAW</u>

This Agreement shall be governed by, construed, and interpreted and the rights of the Parties determined in accordance with the laws of the State of Missouri, irrespective of the State of Missouri's choice of law principles.

## XXII. <u>BINDING ASSIGNS</u>

This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, trustees, executors, administrators, successors, and assigns.

## XXIII. **CONFIDENTIALITY**

Class Counsel and Defendant's counsel of record in the Actions warrant and represent that they have not shared any information regarding the substance of this Settlement or confidential information learned in the Actions with any third party, beyond what was permitted under the Stipulated Protective Order in the Actions. Nothing in this Agreement changes the terms of the Stipulated Protective Order or the Parties' obligations thereunder, and the Parties and their counsel continue to be bound by the Stipulated Protective Order.

## XXIV. **TAX CONSEQUENCES**

No opinion concerning the tax consequences of this Settlement to any Settlement Class Member is given or will be given by Defendant, Defendant's counsel, or Class Counsel, nor is any Party or his/her/its counsel providing any representation or guarantee respecting the tax consequences of the Settlement as to any Settlement Class Member. The Class Notice will direct Settlement Class Members to consult their own tax advisors regarding the tax consequences of the Settlement and any tax reporting obligations with respect thereto. Each Settlement Class Member is responsible for his/her taxes or tax reporting and other obligations respecting the Settlement, if any.

## XXV. **CLASS COUNSEL SIGNATORIES**

It is agreed that because the Settlement Class appears to be so numerous, it is impossible or impractical to have each member of the class execute this Agreement. The notice plan set forth herein will advise Settlement Class Members of all material terms of this Agreement, including the binding nature of the releases and such shall have the same force and effect as if this Agreement were executed by each Settlement Class Member.

## XXVI. **SETTLEMENT TIMELINE**

For the Court's and the Parties' convenience, the pertinent deadlines contained in this Agreement are listed below.

| Item | Deadline |
|---|---|
| Filing of Consolidated Complaint | On or before February 5, 2024 |
| Filing of Motion for Preliminary Approval | 21 days after filing of Consolidated Complaint |
| Funding of Administration Fund | 14 days after Preliminary Approval |
| Notice Deadline/Notice Date | 30 days after Preliminary Approval |
| Plaintiffs' Motion for Attorneys' Fees and Incentive Awards | 45 days after Preliminary Approval |
| Objection/Exclusion Deadline | 60 days after Preliminary Approval |
| Motion for Final Approval | 75 days after Preliminary Approval |
| Claim Deadline | 90 days after Preliminary Approval |
| Final Tally | 7 days after Claim Deadline |
| Fairness Hearing | The Parties shall request that the Court hold a Final Fairness Hearing and rule on the Motion for Final Approval and Motion for Attorneys' Fees and Incentive Awards as soon as practicable after filing. |
| Effective Date | The day after the date the Final Approval Order becomes a final, non-appealable judgment. |
| Payment of Cash Benefit Fund and award of attorneys' fees, costs, and incentive award (to the Settlement Administrator and Class Counsel if no appeal is filed, and into escrow account if an appeal is filed) | 30 days after Effective Date (if no appeal is filed) or 30 days after Notice of Appeal is filed (if appeal is filed). |

Exhibit A
Page 27 of 53

| Distribution of Settlement Awards to Class Members | 45 days after Effective Date (but no earlier than September 16, 2024 for the Credit Benefit). |
|---|---|

**XXVII.**      **COUNTERPARTS**

This Agreement may be executed in counterparts, and when each Party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Agreement, which shall be binding upon and effective as to all Parties and the Settlement Class.

**IN WITNESS WHEREOF**, the Parties have duly executed this Agreement as of the dates indicated below:

*[Signatures on following pages.]*

**CLASS REPRESENTATIVES AND CLASS COUNSEL**:

Dated: 05/02/2024 , 2024

By: *Christina Wiley*
_____
Christina Wiley, individually and on
behalf of the Settlement Class and the
Missouri Settlement Subclass

Dated: _____, 2024

By: _____
Alexandria Lee, individually and on
behalf of the Settlement Class and the
California Settlement Subclass

Dated: _____, 2024

By: _____
Tawney Briggs, individually and on
behalf of the Settlement Class and the
Washington Settlement Subclass

Dated: 05/02/2024 , 2024

By: _____
Christopher Korda, individually and on
behalf of the Settlement Class and the Oregon
Settlement Subclass

Dated: _____, 2024

DOVEL & LUNER, LLP

By: _____
Simon Franzini

BURSOR & FISHER, P.A.

By: _____
Neal Deckant

Attorneys for Plaintiffs and the Settlement
Class and subclasses

**CLASS REPRESENTATIVES AND CLASS COUNSEL**:

Dated: _____, 2024

By: _____
Christina Wiley, individually and on
behalf of the Settlement Class and the
Missouri Settlement Subclass

Dated: 2/5/2024 _____, 2024

By: _____
Alexandria Lee, individually and on
behalf of the Settlement Class and the
California Settlement Subclass

Dated: _____, 2024

By: _____
Tawney Briggs, individually and on
behalf of the Settlement Class and the
Washington Settlement Subclass

Dated: _____, 2024

By: _____
Christopher Korda, individually and on
behalf of the Settlement Class and the Oregon
Settlement Subclass

Dated: _____, 2024

DOVEL & LUNER, LLP

By: _____
Simon Franzini

BURSOR & FISHER, P.A.

By: _____
Neal Deckant

Attorneys for Plaintiffs and the Settlement
Class and subclasses

**CLASS REPRESENTATIVES AND CLASS COUNSEL:**

Dated: _____, 2024

By: _____
Christina Wiley, individually and on
behalf of the Settlement Class and the
Missouri Settlement Subclass

Dated: _____, 2024

By: _____
Alexandria Lee, individually and on
behalf of the Settlement Class and the
California Settlement Subclass

Dated: 2/5/2024_____, 2024

By: _____
*Tawney Briggs*
Tawney Briggs, individually and on
behalf of the Settlement Class and the
Washington Settlement Subclass

Dated: _____, 2024

By: _____
Christopher Korda, individually and on
behalf of the Settlement Class and the Oregon
Settlement Subclass

Dated: _____, 2024

DOVEL & LUNER, LLP

By: _____
Simon Franzini

BURSOR & FISHER, P.A.

By: _____
Neal Deckant

Attorneys for Plaintiffs and the Settlement
Class and subclasses

**CLASS REPRESENTATIVES AND CLASS COUNSEL**:

Dated: _____, 2024

By: _____
Christina Wiley, individually and on
behalf of the Settlement Class and the
Missouri Settlement Subclass

Dated: _____, 2024

By: _____
Alexandria Lee, individually and on
behalf of the Settlement Class and the
California Settlement Subclass

Dated: _____, 2024

By: _____
Tawney Briggs, individually and on
behalf of the Settlement Class and the
Washington Settlement Subclass

Dated: _____, 2024

By: _____
Christopher Korda, individually and on
behalf of the Settlement Class and the Oregon
Settlement Subclass

Dated: 2/6/2024 _____, 2024

DOVEL & LUNER, LLP

By: _____
Simon Franzini

BURSOR & FISHER, P.A.

By: _____
Neal Deckant

Attorneys for Plaintiffs and the Settlement
Class and subclasses

**CLASS REPRESENTATIVES AND CLASS COUNSEL**:

Dated: _____, 2024

By: _____
Christina Wiley, individually and on
behalf of the Settlement Class and the
Missouri Settlement Subclass

Dated: _____, 2024

By: _____
Alexandria Lee, individually and on
behalf of the Settlement Class and the
California Settlement Subclass

Dated: _____, 2024

By: _____
Tawney Briggs, individually and on
behalf of the Settlement Class and the
Washington Settlement Subclass

Dated: _____, 2024

By: _____
Christopher Korda, individually and on
behalf of the Settlement Class and the Oregon
Settlement Subclass

Dated: _____, 2024      DOVEL & LUNER, LLP

By: _____
Simon Franzini

BURSOR & FISHER, P.A.

2/6/2024        By: _____
Neal Deckant

Attorneys for Plaintiffs and the Settlement
Class and subclasses

**DEFENDANT AND COUNSEL FOR DEFENDANT:**

Dated: _____Feb 6_____, 2024          RugsUSA, LLC

                                       By: _____
                                            John Martin
                                            CFO

Dated: ___February 6___, 2024          VORYS SATER SEYMOUR AND PEASE, LLP

                                       By: _____
                                            Thomas McCormick
                                            Attorneys for Defendant

# EXHIBIT A

**TO ALL PERSONS WHO MADE A PURCHASE FROM WWW.RUGSUSA.COM FROM MAY 17, 2020, TO OCTOBER 12, 2023, WHILE RESIDING IN CALIFORNIA, FROM JUNE 30, 2019, TO OCTOBER 12, 2023, WHILE RESIDING IN WASHINGTON, FROM JULY 13, 2022, TO OCTOBER 12, 2023, WHILE RESIDING IN OREGON, OR FROM AUGUST 11, 2018, TO OCTOBER 12, 2023, WHILE RESIDING IN MISSOURI**

**Read This Notice Carefully.  You Could Receive Compensation From This Class Action Settlement. This Court-Authorized Notice describes your rights and gives information about the proposed settlement. This notice is only a summary. Details of the settlement are available at [WEBSITE] or by writing to or calling the Class Action Settlement Administrator at the address or toll-free number below.**

**What Is This Case About?** In the lawsuit entitled *Christina Wiley, et al. v. RugsUSA, LLC,* Case No. 6:23-cv-03250-SRB, U.S. District Court for the Western District of Missouri, plaintiffs Christina Wiley, Alexandria Lee, Tawney Briggs, and Christopher Korda ("Plaintiffs" or "Class Representatives"), on behalf of themselves and a proposed class and subclasses, allege that RugsUSA, LLC ("RugsUSA") deceptively advertised various discounts of its products on its website. RugsUSA denies that it misled consumers, disputes that it has done anything wrong, and believes its advertising was accurate and lawful. The lawsuit seeks money damages, as well as attorneys' fees and costs. The Court has not ruled on the merits of the claims or RugsUSA's defenses.

**Who Is A Class Member?** The settlement includes consumers from California, Washington, Oregon, and Missouri. Because of differences in the state consumer protection laws, there is a different applicable time period for each state. The Settlement includes the following consumers ("Settlement Class Members"):

- All consumers who, while in the state of California, purchased one or more products from the RugsUSA.com website that were advertised at a discount from May 17, 2020, to October 12, 2023.

- All consumers who, while in the state of Washington, purchased one or more products from the RugsUSA.com website that were advertised at a discount from June 30, 2019, to October 12, 2023

- All consumers who, while in the state of Oregon, purchased one or more products from the RugsUSA.com website that were advertised at a discount from July 13, 2022, to October 12, 2023.

- All consumers who, while in the state of Missouri, purchased one or more products from the RugsUSA.com website that were advertised at a discount from August 11, 2018, to October 12, 2023.

**What Are The Terms Of The Settlement?**  RugsUSA has agreed to create a settlement fund ("Settlement Common Fund") in the amount of $14,268,403 to fully resolve and release claims of all Class Members. This fund will be used to provide settlement awards ("Settlement Awards") to each Class Member, as well as to pay for notice and administration costs estimated at [$____], incentive awards of up to $2,500 to each of the four Class Representatives, and an award of up to 20% of the Settlement Common Fund (approximately $2,853,680) in attorneys' fees and expenses to Class Counsel (subject to Court approval). The Settlement Awards to be paid to each Settlement Class Member will equal 14.25% of such Settlement Class Member's total purchases made from www.RugsUSA.com during the time periods laid out above ("the Class Period"), minus that Class Member's small proportional share of notice and administration costs, attorneys' fees and costs, and incentive awards. Settlement Awards will be distributed to Settlement Class Members in either (a) cash, paid by check or electronic payment ("Cash Benefit"); or (b) credit that can be applied towards any purchase made on RugsUSA.com ("Credit Benefit"). To receive the Cash Benefit, Settlement Class Members must submit a valid Claim Form, as instructed below. Settlement Class Members who do not choose to receive the Cash Benefit by submitting a valid Claim Form will instead receive the Credit Benefit.

**How Do You Choose Your Settlement Award?** To receive the Cash Benefit, you must submit a signed and completed Claim Form online to the Class Action Settlement Administrator by **no later than** _____. Claim Forms may also be submitted to the Class Action Settlement Administrator by mail if postmarked **no later than** _____. The Claim Form is available at [website]. If you do not submit a signed and completed Claim Form to the Class Action Settlement Administrator by _____, you will instead receive the Credit Benefit.

**What Are My Other Options?**  If you do not want to be legally bound by the Settlement, you may opt out of the Settlement by sending a request for exclusion to the Class Action Settlement Administrator **no later than** _____. If you exclude yourself from the Settlement, you will not receive a Cash or Credit Benefit from the Settlement. If you do not opt out of the Settlement, you will be bound by any judgment approving the Settlement and will give up any right to sue RugsUSA for any claims under federal and state law that arise from the RugsUSA marketing representations at issue in this action.

If you stay in the Settlement (i.e., do not exclude yourself from the Settlement), you may object to the Settlement by writing to the Court explaining why you do not like the Settlement by **no later than** _____. Additional information about opting out of or objecting to the Settlement is available at [website]. You will be bound by the Settlement if your objection is rejected, and will still receive a Settlement Award.

**Final Approval Hearing.**  The Court will hold a hearing in this case to consider whether to approve the Settlement on _____, at _____ a.m., United States District Court for the Western District of Missouri, Charles Evans Whittaker U.S. Courthouse, 400 E. 9th Street, Kansas City, MO 64106. The date of the Final Approval Hearing may change without further notice to the class. Settlement Class Members should be advised to check the settlement website or the Court's PACER site to confirm that the date has not been changed and whether the hearing may be held virtually.

**THIS NOTICE IS ONLY A SUMMARY. MORE INFORMATION ABOUT THE LAWSUIT AND THE PRECISE TERMS AND CONDITIONS OF THE SETTLEMENT IS AVAILABLE AT [website], OR BY WRITING OR CALLING THE CLASS ACTION SETTLEMENT ADMINISTRATOR AT _____ OR (___) ___-___ (TOLL-FREE), OR CLASS COUNSEL WHOSE CONTACT INFORMATION CAN BE FOUND AT https://www.dovel.com and https://www.bursor.com, OR BY ACCESSING THE COURT DOCKET IN THIS CASE, FOR A FEE, THROUGH THE COURT'S PUBLIC ACCESS TO COURT ELECTRONIC RECORDS (PACER) SYSTEM AT https://www.mow.uscourts.gov/, OR BY VISITING THE OFFICE OF THE CLERK OF THE COURT FOR THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI, CHARLES EVANS WHITTAKER U.S. COURTHOUSE, 400 E. 9TH STREET, 1ST FLOOR, RM 1510, KANSAS CITY, MO 64106, BETWEEN 9:00 A.M. AND 4:30 P.M., MONDAY THROUGH FRIDAY, EXCLUDING COURT HOLIDAYS.**

**PLEASE DO NOT TELEPHONE THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT OR THE CLAIM PROCESS.**

# EXHIBIT B

**UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI**
*Christina Wiley, et al. v. RugsUSA, LLC Case No. 6:23-cv-03250-SRB*

# If you made one or more purchase from www.RugsUSA.com while residing in California, Washington, Oregon, or Missouri during the time periods listed below, you may be entitled to a payment from a class action settlement.

*A federal court authorized this Notice. This is not a solicitation from a lawyer.*

- RugsUSA, LLC ("RugsUSA") has agreed to pay settlement awards, and other expenses, as described below, to fully resolve and release the claims of all consumers who purchased one or more products from the RugsUSA.com website that were advertised at a discount, and whose purchases were: (1) made in the state of California from May 17, 2020, to October 12, 2023; (2) made in the state of Washington from June 30, 2019, to October 12, 2023; (3) made in the state of Oregon from July 13, 2022, to October 12, 2023; or (4) made in the state of Missouri from August 11, 2018, to October 12, 2023.

- RugsUSA has agreed to create a settlement fund ("Settlement Common Fund") in the amount of $14,268,403. This fund will be used to provide settlement awards ("Settlement Awards") to each Class Member, as well as to pay for notice and administration costs, estimated at [$\_\_\_\_], up to $2,500 incentive awards to each of the four Class Representatives, and an award of attorneys' fees and expenses of up to 20% of the Settlement Common Fund, equal to approximately $2,853,680, subject to Court approval.

- The Settlement Awards to be paid to each Settlement Class Member will equal 14.25% of such Settlement Class Member's total purchases made from www.RugsUSA.com during the time periods listed above ("the Class Period"), minus that Class Member's small proportional share of notice and administration costs, attorneys' fees and costs, and incentive awards. Settlement awards will take the form of either (a) cash, paid by check or electronic payment ("Cash Benefit"); or (b) credit that can be applied towards any purchase made on RugsUSA.com ("Credit Benefit"). To be eligible to receive the Cash Benefit, Settlement Class Members must submit a valid Claim Form, as instructed below. Settlement Class Members who do not choose to receive the Cash Benefit by submitting a valid Claim Form will instead receive the Credit Benefit.

- The Settlement resolves a lawsuit alleging that RugsUSA deceptively advertised various discounts of its products on its website.

- The two sides disagree on whether Plaintiffs and the Settlement Class could have prevailed at trial. By entering into the Settlement, RugsUSA has not conceded the truth or validity of any of the claims against it, and denies any liability or wrongdoing.

- Your legal rights may be affected whether you act, or don't act. Read this Notice carefully.

| **Your Legal Rights and Options in This Settlement:** | |
|---|---|
| DO NOTHING | If you do nothing, you will receive store credit that can be applied towards any purchase made on RugsUSA.com equal to 14.25% of your total |

| | purchases made from www.RugsUSA.com, minus your small proportional share of notice and administration costs, attorneys' fees, and incentive awards to the Class Representatives, during the Class Period. By doing nothing, you will give up certain rights to sue RugsUSA. |
|---|---|
| SUBMIT A CLAIM FORM | If you submit a valid Claim Form by [Claim Deadline] and elect to receive the Cash Benefit, you will receive a cash payment in the form of a check or electronic payment. Your cash payment will be equal to approximately 14.25% of your total purchases made from www.RugsUSA.com, minus your small proportional share of notice and administration costs, attorneys' fees, and incentive awards to the Class Representatives, during the Class Period. By submitting a Claim Form, you will give up certain rights to sue RugsUSA. |
| EXCLUDE YOURSELF FROM THE CASE | This is the only option that allows you to sue RugsUSA on your own regarding the legal claims in this case, but you will not receive compensation under the Settlement. The deadline for excluding yourself is [Objection/Exclusion Deadline]. |
| OBJECT TO THE SETTLEMENT | Write to the Court about why you do not like the Settlement. A Settlement Class Member who objects still remains in the Settlement Class and will receive a Settlement Award. The deadline for objecting is [Objection/Exclusion Deadline]. |

- These rights and options—and the deadlines to exercise them—are explained in this Notice.

- The Court in charge of this case must still decide whether to approve the Settlement. Compensation will be issued if the Court approves the Settlement and after appeals are resolved, if any.

# BASIC INFORMATION

## 1. Why was this notice issued?

This notice was issued because a Court has conditionally "certified" this case as a class action lawsuit for settlement purposes only and your rights may be affected. If you purchased items from www.RugsUSA.com that were advertised at a discount, and your purchases were: (1) made in the state of California from May 17, 2020, to October 12, 2023; (2) made in the state of Washington from June 30, 2019, to October 12, 2023; (3) made in the state of Oregon from July 13, 2022, to October 12, 2023; or (4) made in the state of Missouri from August 11, 2018, to October 12, 2023, you may have legal rights and options in this case. This Notice explains all of these issues. Judge Stephen R. Bough of the United States District Court for the Western District of Missouri is overseeing this class action. The case is known as *Christina Wiley, et al. v. RugsUSA, LLC Case No. 6:23-cv-03250-SRB* (the "Action"). The people who sued are called the Plaintiffs. The company they sued, RugsUSA, LLC, is called the Defendant or RugsUSA.

**Exhibit A**
Page 40 of 53

### 2. Why is this a class action?

In a class action, one or more people, called "Class Representatives" (in this case Christina Wiley, Alexandria Lee, Tawney Briggs, and Christopher Korda, the named "Plaintiffs"), sue on behalf of all people who have similar claims. Together, these people are called a Class or Class Members. One court resolves the issues for all Class Members, except for those who exclude themselves from the Class. Here, the Court has certified a class action for settlement purposes only. More information about why this is a class action can be found in the Court's Preliminary Approval Order, which is available at [WEBSITE].

### 3. Why is there a settlement?

The Court did not decide in favor of Plaintiffs or RugsUSA. Plaintiffs think they would have prevailed at trial. RugsUSA thinks the Plaintiffs would not have won anything from a trial. But there was no trial. Instead, both sides agreed to this Settlement. That way, both sides avoid the risk and cost of a trial, and the Class Members will receive compensation. The Class Representatives and their attorneys think the Settlement is best for all Class Members.

# THE CLAIMS IN THE LAWSUIT

### 4. What is the lawsuit about?

The lawsuit claims that RugsUSA deceptively advertised various discounts of its products on its website. The lawsuit claims that RugsUSA violated California, Washington, Oregon, and Missouri consumer protection law, and also asserts claims against RugsUSA for unjust enrichment, fraud, breach of contract, breach of express warranty, intentional misrepresentation, and negligent misrepresentation. RugsUSA denied these claims and denies any liability or wrongdoing. More information can be found in the Consolidated Class Action Complaint, available at [WEBSITE].

# MEMBERS OF THE SETTLEMENT CLASS

### 5. How do I know if I am a part of the Settlement Class?

The Court has certified this case for settlement purposes only as a class action. The class (the "Settlement Class") includes consumers from California, Washington, Oregon, and Missouri, and is defined as:

> All persons who, while in the state of California, purchased one or more products advertised as being subject to a discount on Defendant's website RugsUSA.com from May 17, 2020, to October 12, 2023 ("California Settlement Subclass"); and

> all persons who, while in the State of Washington, purchased one or more products advertised as being subject to a discount on Defendant's website RugsUSA.com from June 30, 2019, to October 12, 2023 ("Washington Settlement Subclass"); and

> all persons who, while in the State of Oregon purchased one or more products advertised as being subject to a discount on Defendant's website RugsUSA.com from July 13, 2022, to October 12, 2023 ("Oregon Settlement Subclass"); and

> all persons who, while in the State of Missouri purchased one or more products advertised as being subject to a discount on Defendant's website RugsUSA.com from August 11, 2018, to October 12, 2023 ("Missouri Settlement Subclass").

QUESTIONS? CALL [number] TOLL-FREE OR VISIT [WEBSITE]

Excluded from the Settlement Class are all persons who validly opt out of the Settlement in a timely manner; governmental entities; counsel of record (and their respective law firms) for the Parties; Defendant and any of its parents, affiliates, subsidiaries, independent service providers and all of its respective employees, officers, and directors; the presiding judge in the Action or judicial officer presiding over the matter, and all of their immediate families and judicial staff; and any natural person or entity that entered into a release with Defendant prior to the Effective Date arising from the same representations, advertising, marketing and/or sales on the Defendant's website, www.RugsUSA.com, underlying the claims in the operative complaint in the Action.

# THE SETTLEMENT BENEFITS

**6. What does the Settlement provide?**

RugsUSA has agreed to create a settlement fund ("Settlement Common Fund") in the amount of $14,268,403 to fully resolve and release claims of all Class Members. This fund will be used to provide settlement awards ("Settlement Awards") to each Class Member, as well as to pay for notice and administration costs, estimated at [$____], up to $2,500 incentive awards to each of the four Class Representatives, and an award of attorneys' fees and expenses of up to 20% of the Settlement Common Fund (equal to approximately $2,853,680), subject to Court approval.

The Settlement Awards will be distributed to Settlement Class Members in either (a) cash, paid by check or electronic payment ("Cash Benefit"); or (b) credit that can be applied towards any purchase made on RugsUSA.com ("Credit Benefit"). To be eligible to receive the Cash Benefit, Settlement Class Members must submit a valid Claim Form, as instructed below. Settlement Class Members who do not choose to receive the Cash Benefit by submitting a valid Claim Form will instead receive the Credit Benefit.

**7. How much will my payment be?**

Your Settlement Award, in the form of either the Cash Benefit or the Credit Benefit, will equal 14.25% of your total purchases made from www.RugsUSA.com during the Class Period, minus your small proportional share of notice and administration costs, attorneys' fees and costs, and incentive awards to the Class Representatives.

**8. What am I giving up to stay in the Settlement Class?**

Unless you exclude yourself from the Settlement, you will be part of the Settlement Class, and you will be bound by the release of claims in the Settlement. This means that, if the Settlement is approved, you cannot sue, continue to sue, or be part of any other lawsuit against RugsUSA asserting a released claim. It also means that all the Court's orders will apply to you and legally bind you. If you sign the Claim Form or do nothing, you will agree to release RugsUSA from any and all claims under federal and state law that arise from the RugsUSA marketing representations at issue in this action.

# THE LAWYERS REPRESENTING YOU

**9. Do I have a lawyer in this case?**

Yes. The Court has appointed the law firms of Dovel & Luner, LLP, and Bursor & Fisher, P.A., as Class Counsel to represent you and the Class in this case. These lawyers have experience handling similar cases.

More information about these lawyers and their law firms is available at https://www.dovel.com and https://www.bursor.com/.

| **10. Should I get my own lawyer?** |

You do not need to hire your own lawyer because Class Counsel is representing you and all the other members of the Settlement Class. If you want someone other than Class Counsel to speak for you, you may hire your own lawyer at your own expense.

| **11. How will the lawyers be paid?** |

Class Counsel may file a request for attorneys' fees and expenses of up to 20% of the Settlement Common Fund, equal to approximately $2,853,680. Class Counsel may also ask the Court to approve incentive awards of up to $2,500 to the Class Representatives Christina Wiley, Alexandria Lee, Tawney Briggs, and Christopher Korda for their services as Class Representatives. The Court may award less than these amounts.

# HOW TO CHOOSE YOUR SETTLEMENT AWARD

| **12. How can I get compensation under the Settlement?** |

Settlement Class Members who do not opt out of the Settlement by [Objection/Exclusion Deadline] will receive compensation equal to 14.25% of such Settlement Class Member's total purchases made from www.RugsUSA.com during the Class Period, minus that Class Member's small proportional share of notice and administration costs, attorneys' fees and costs, and incentive awards to the Class Representatives. Settlement awards will be paid in either (a) cash, paid by check or electronic payment ("Cash Benefit"); or (b) store credit that can be applied towards any purchase made on RugsUSA.com ("Credit Benefit"), at each Settlement Class Member's election.

To receive the Cash Benefit, you must submit a valid Claim Form. Settlement Class Members who do not submit a valid Claim Form by [Claim Deadline] will receive the Credit Benefit.

A Claim Form is available on the internet at [website]. Read the instructions carefully, fill out the form, sign it, and submit it online no later than [Objection/Exclusion Deadline]. You may also submit a Claim Form by mail if postmarked by no later than [Objection/Exclusion Deadline].

To receive a Cash Benefit, each Settlement Class Member must attest under penalty of perjury that they were a California, Washington, Oregon, or Missouri resident who purchased one or more products from RugsUSA.com during the Class Period, and the information supplied in the Claim Form is true and correct to the best of the Settlement Class Member's knowledge. Failure to submit a completed Claim Form with all requested information will result in such Settlement Class Member receiving Credit Benefit by default.

| **13. When would I receive compensation?** |

The Court will hold a hearing on [Fairness Hearing Date] to decide whether to approve the Settlement. If the Court approves the Settlement, after that, there may be appeals. It is always uncertain whether these appeals can be resolved, and resolving them can take time, perhaps more than a year. Settlement Awards will be distributed after the Settlement is finally approved and all appeals (if any) have been resolved in

Exhibit A
Page 43 of 53

favor of the Settlement. The progress of the Settlement will be updated through information posted at [website]. Please be patient.

# EXCLUDING YOURSELF FROM THE SETTLEMENT

| 14. How do I get out of the Settlement? |
| --- |

If you do not want a Settlement Award under this Settlement, and you want to keep the right to sue or continue to sue RugsUSA regarding the alleged marketing practices that are the subject of the Action, then you must take steps to get out of the Settlement Class. This is called excluding yourself from, or opting out of, the Settlement Class.

To exclude yourself from the Settlement, you must send a letter by mail to the Class Action Settlement Administrator that (a) states your name, address, and phone number; (b) is personally signed by you, and not your attorney or anyone acting on your behalf; and (c) includes the statement "I/we request to be excluded from the class settlement in *Wiley, et al. v. RugsUSA, LLC,* 6:23-cv-03250-SRB (W.D. Mo.)." No request for exclusion will be valid unless all of the information described above is included.

You must mail your exclusion request postmarked no later than [Objection/Exclusion Deadline] to the Class Action Settlement Administrator at the following address: [address]

| 15.  If I do not exclude myself, can I sue Defendant for the same thing later? |
| --- |

No. If you do not exclude yourself, you give up any right to sue (or continue to sue) RugsUSA for the claims that this Settlement resolves.

| 16.  If I exclude myself, can I get compensation under this Settlement? |
| --- |

No. If you ask to be excluded, you will not get any compensation under the Settlement, and you cannot object to the Settlement.

# OBJECTING TO THE SETTLEMENT

| 17.  How do I tell the Court that I do not agree with the Settlement? |
| --- |

You can ask the Court to deny approval of the Settlement by filing an objection. You can't ask the Court to order a different Settlement; the Court can only approve or reject the Settlement. If the Court denies approval, no Settlement Awards will be sent out and the lawsuit will continue. If that is what you want to happen, you must object. A Settlement Class Member who objects still remains in the Settlement Class and must timely submit a Claim Form in order to obtain a monetary award.

Any objection to the proposed Settlement must be in writing. If you file a timely written objection, you may, but are not required to, appear at the Final Approval Hearing, either in person or through your own attorney. If you appear through your own attorney, you are responsible for hiring and paying that attorney.

All written objections and supporting papers must (a) clearly identify the case name and number (*Wiley, et al. v. RugsUSA, LLC,* Case No. 6:23-cv-03250-SRB (W.D. Mo.)), (b) be submitted to the Court either by mailing them to United States District Court for the Western District of Missouri, *Wiley,  et al. v. RugsUSA, LLC,* Case No. 6:23-cv-03250-SRB, 400 East Ninth Street, Kansas City, Missouri 64106, or by

filing them in person with the Clerk of Court at that same address, and (c) be filed or postmarked on or before [Objection/Exclusion Deadline].

Written objections must also contain: (1) your full name, address, and telephone number; (2) a written statement of all grounds for the objection accompanied by any legal support for the objection (if any); (3) copies of any papers, briefs or other documents upon which the objection is based (if any); (4) a list of all persons who will be called to testify in support of the objection (if any); (5) a statement of whether you intend to appear at the Final Approval Hearing; (6) proof of membership in the Class or a signed statement attesting under penalty of perjury that you are a Class Member; (7) a list of all objections filed by you and your counsel to class action settlements in the last three years (if any); and (8) your signature and your attorney's signature (if any).

| 18.  What is the difference between objecting and excluding myself from the Settlement? |
| --- |

Objecting means telling the Court that you do not like something about the Settlement. You can object only if you stay in the Settlement Class. Excluding yourself from the Settlement means that you do not want to be part of the Settlement Class. If you exclude yourself, then you have no basis to object to the Settlement.

A Settlement Class Member who objects still remains in the Settlement Class and is eligible to receive a Settlement Award.

# IF YOU DO NOTHING

| 19.  What happens if I do nothing at all? |
| --- |

If you do nothing, you will remain a member of the Settlement Class and you will give up your rights to sue RugsUSA. You will automatically receive a Settlement Award in the form of credit that can be applied towards any purchase made on RugsUSA.com.

# THE COURT'S FINAL APPROVAL HEARING

| 20.  When and where will the Court decide whether to approve the Settlement? |
| --- |

The Court will hold a Final Approval Hearing at _____ a.m. on _____, at the United States District Court for the Western District of Missouri, Charles Evans Whittaker U.S. Courthouse, 400 E. 9th Street, Kansas City, MO 64106. At this hearing, the Court will consider whether the Settlement is fair, reasonable and adequate. If there are valid objections that comply with the requirements herein, the Court also will consider them and will listen to people who have asked to speak at the hearing. The Court may also decide how much to pay to Class Counsel and the Class Representatives.

The date of the Final Approval Hearing may change without further notice to the Settlement Class. Settlement Class Members should check the Settlement Website or the Court's PACER site to confirm that the date has not been changed and whether the hearing may proceed virtually.

| 21.  Do I have to come to the hearing? |
| --- |

No. Class Counsel will appear on behalf of the Settlement Class. But, you are welcome to come, or have your own lawyer appear, at your own expense.

Exhibit A
Page 45 of 53

| 22.  May I speak at the hearing? |
|---|

You, or any lawyer you retain, may ask the Court for permission to speak at the Final Approval Hearing. To do so, you must include in your objection to the Settlement a statement saying that it is your intent to appear at the Final Approval Hearing. Your Objection and notice of intent to appear must be submitted to the Court and postmarked no later than [Objection/Exclusion Deadline]. You cannot speak at the hearing if you excluded yourself from the Settlement.

# GETTING MORE INFORMATION

| 23.  Is this the entire Settlement? |
|---|

No. This notice is only a summary of the proposed Settlement. More information about the lawsuit and the precise terms and conditions of the Settlement is available at [WEBSITE], or by calling toll-free [phone number], or by writing to the Class Action Settlement Administrator at [address], or by accessing the Court docket in this case, for a fee, through the Court's Public Access to Court Electronic Records (PACER) system at https://www.mow.uscourts.gov/, or by visiting the office of the Clerk of the Court for the United States District Court for the Western District of Missouri, Charles Evans Whittaker U.S. Courthouse, 400 E. 9th Street, 1st Floor, Room 1510, Kansas City, Missouri 64106, between 9:00 a.m. and 4:30 p.m., Monday through Friday, excluding court holidays. You may also contact Class Counsel using the information listed below:

> DOVEL & LUNER, LLP
> Simon Franzini
> simon@dovel.com
> Grace Bennett
> grace@dovel.com
> 201 Santa Monica Blvd., Suite 600
> Santa Monica, California 90401
> (310) 656-7066
>
> BURSOR & FISHER, P.A.
> Yitzchak Kopel
> ykopel@bursor.com
> Julian Diamond
> jdiamond@bursor.com
> Matthew Girardi
> mgirardi@bursor.com
> 1330 Avenue of the Americas, Floor 32
> New York, NY  10019
> Telephone: (646) 837-7150

**Please do not telephone the Court or the Court Clerk's Office to inquire about this Settlement or the Claims Process.**

Exhibit A
Page 46 of 53

# EXHIBIT C

Exhibit A
Page 47 of 53

<table>
<tr><td>
**Your claim form must be submitted online or postmarked by:** ████████
</td><td>
**United States District Court**
**Western District of Missouri**

*Christina Wiley, et al. v. RugsUSA LLC*
Case No. 6:23-cv-03250-SRB
</td><td>
**SEL**
</td></tr>
</table>

# RUGSUSA SETTLEMENT

## CLAIM FORM FOR CASH BENEFIT

### <u>INSTRUCTIONS</u>

This class action alleges RugsUSA violated certain state laws by deceptively advertising various discounts of its products on its website, www.RugsUSA.com. RugsUSA denies these allegations.

**You are a Settlement Class Member if you:**

- While in the state of California, purchased one or more products from the RugsUSA.com website that were advertised at a purported discount from May 17, 2020 to October 12, 2023; or
- While in the state of Washington, purchased one or more products from the RugsUSA.com website that were advertised at a purported discount from June 30, 2019 to October 12, 2023; or
- While in the state of Oregon, purchased one or more products from the RugsUSA.com website that were advertised at a purported discount from July 13, 2022 to October 12, 2023; or
- While in the state of Missouri, purchased one or more products from the RugsUSA.com website that were advertised at a purported discount from August 11, 2018 to October 12, 2023.

**If you wish to receive your Settlement Award in the form of cash rather than store credit you must submit a valid Claim no later than ████████, 2024. If you wish to receive your Settlement Award in the form of store credit, then you do not have to do anything – you will automatically receive store credit so long as you are a Settlement Class Member and do not exclude yourself from the settlement.**

**Settlement payments will be mailed to you by check or digital payment.** Please ensure you provide a current, valid mailing address, email address, and mobile phone number with your Claim submission. If the mailing address, email address, or mobile phone number you include with your submission becomes invalid for any reason, it is your responsibility to provide accurate contact information to the Settlement Administrator to receive a payment.

The information provided on this Claim Form will be used solely by the Court-approved Settlement Administrator for the purposes of administering the Settlement and will not be provided to any third party or sold for marketing purposes.

<table>
<tr><td>

**Your claim form must be submitted online or postmarked by:** <mark>_____</mark>

</td><td>

### United States District Court
### Western District of Missouri

*Christina Wiley, et al. v. RugsUSA LLC*
Case No. 6:23-cv-03250-SRB

</td><td>

**SEL**

</td></tr>
</table>

## <u>Claim Form</u>

### I. YOUR CONTACT INFORMATION AND MAILING ADDRESS

| | |
|---|---|
| | |
| **First Name** | **Last Name** |

| |
|---|
| |
| **Street Address** |

| | | |
|---|---|---|
| | | |
| **City** | **State** | **Zip Code** |

| | | |
|---|---|---|
| | | |
| **Email Address** | **Mobile Phone** | **Notice ID** *(if you received a Notice)* |

Please ensure you provide a current, valid mailing address, email address, and mobile phone number with your Claim submission. If the mailing address, email address, or mobile phone you include with your submission becomes invalid for any reason, it is your responsibility to provide the Settlement Administrator with a current, valid mailing address, email address, and mobile phone for payment. The current address you provide here does not need to be the same address you used for your purchase(s) from RugsUSA.

### II. PAYMENT SELECTION

Please select **one** of the following payment options:

☐ **Prepaid Mastercard –** Enter the email address where you will receive the Prepaid Mastercard: _____

☐ **PayPal** - Enter your PayPal email address:_____

☐ **Venmo -** Enter the mobile number associated with your account: _ _ _-_ _ _-_ _ _ _

☐ **Zelle -** Enter the email address or mobile number associated with your Zelle account:

_____

☐ **Physical Check -** Payment will be mailed to the address provided above.

**Your claim form must be submitted online or postmarked by:** <mark>_____</mark>

**United States District Court
Western District of Missouri**

*Christina Wiley, et al. v. RugsUSA LLC*
Case No. 6:23-cv-03250-SRB

**SEL**

---

## III. CERTIFICATION

---

By signing this Claim submission, I certify, under penalty of perjury under the laws of the United States, that the information included with this Claim submission is true, accurate, and complete to the best of my knowledge, information, and belief. If I am submitting this Claim submission on behalf of a Claimant, I certify that I am authorized to submit this Claim submission on the individual's behalf. I am, or the individual on whose behalf I am submitting this Claim submission is, a member of the Settlement Class, and have not submitted a request to exclude myself, or "opt out of," the Settlement. I agree and consent to be communicated with electronically via email and/or mobile phone text (message & data rates may apply). I agree to furnish additional information regarding this Claim if so requested to do so by the Settlement Administrator.

| **SIGNATURE** | **DATE** |
|---|---|
|  |  |

# EXHIBIT D

Exhibit A
Page 51 of 53

| | |
|---|---|
| **TO ALL PERSONS WHO MADE A PURCHASE FROM WWW.RUGSUSA.COM FROM MAY 17, 2020, TO OCTOBER 12, 2023, WHILE RESIDING IN CALIFORNIA, FROM JUNE 30, 2019, TO OCTOBER 12, 2023, WHILE RESIDING IN WASHINGTON, FROM JULY 13, 2022, TO OCTOBER 12, 2023, WHILE RESIDING IN OREGON, OR FROM AUGUST 11, 2018, TO OCTOBER 12, 2023, WHILE RESIDING IN MISSOURI** | RugsUSA Settlement<br>c/o Administrator<br>Administrator Address<br>Administrator City/State/Zip<br><br><br>Class Member Name<br>Class Member Address<br>Class Member City/State/Zip |
| **Read This Notice Carefully.  You Could Receive Compensation From This Class Action Settlement.** This Court-Authorized Notice describes your rights and gives information about the proposed settlement. This notice is only a summary. Details of the settlement are available at [WEBSITE] or by writing to or calling the Class Action Settlement Administrator at the address or toll-free number on the back of this postcard. | |

Exhibit A
Page 52 of 53

*Christina Wiley, et al. v. RugsUSA, LLC*, Case No. 6:23-cv-03250-SRB (W.D. Mo.)

**What is this Case About?** In this lawsuit, Plaintiffs allege that RugsUSA, LLC ("RugsUSA") deceptively advertised various discounts of its products on its website. RugsUSA disputes the allegations, denies that it misled consumers, and believes its advertising was accurate and lawful. You are receiving this Notice because RugsUSA records indicate that you may be a Class Member. Class Members include all consumers who purchased one or more products from the RugsUSA.com website that were advertised at a discount, and whose purchases were: (1) made in the state of California from May 17, 2020, to October 12, 2023; (2) made in the state of Washington from June 30, 2019, to October 12, 2023; (3) made in the state of Oregon from July 13, 2022, to October 12, 2023; or (4) made in the state of Missouri from August 11, 2018, to October 12, 2023.

**What are the Settlement Benefits?** RugsUSA has agreed to create a settlement fund ("Settlement Common Fund") in the amount of $14,268,403, to provide settlement awards ("Settlement Awards") to each Class Member, as well as to pay for notice and administration costs, estimated at $_____, incentive awards of up to $2,500 to each of the four Class Representatives, and an award of attorneys' fees and expenses of up to 20% of the Settlement Common Fund, or approximately $2,853,680, subject to Court approval.

The Settlement Awards to be paid to each Settlement Class Member shall equal 14.25% of such Settlement Class Member's total purchases made from www.RugsUSA.com during the time periods laid out above ("the Class Period"), minus that Class Member's small proportional share of notice and administration costs, attorneys' fees and costs, and incentive awards. Settlement Awards will be paid in either (a) cash, paid by check or electronic payment ("Cash Benefit"); or (b) credit that can be applied towards any purchase made on RugsUSA.com ("Credit Benefit"). Each Class Member has the option to decide whether to receive payment in Cash Benefit or Credit Benefit.

**How do I Choose a Settlement Award?** To receive the Cash Benefit, you must submit a Claim Form online, available at _____, by _____. You can also mail the Claim Form to the Settlement Administrator, postmarked by _____. If you do not submit a timely Claim Form, you will receive the Credit Benefit.

**What are my Other Options?** If you do nothing, you will automatically receive the Credit Benefit. You will be legally bound by the terms of the Settlement, and you will release your claims against RugsUSA. If you do not want to be legally bound by the Settlement, you may opt out of the Settlement by _____. If you opt-out, you will not receive a Cash or Credit Benefit from the Settlement. If you do not opt-out, you can object to the Settlement by _____. Please visit _____ for more information on how to opt-out of or object to the Settlement.

**The Court's Final Approval Hearing.** The Court will hold a hearing in this case to consider whether to approve the Settlement on _____, at _____ a.m., United States District Court for the Western District of Missouri, Charles Evans Whittaker U.S. Courthouse, 400 E. 9th Street, Kansas City, MO 64106. The date of the Final Approval Hearing may change without further notice to the class. Settlement Class Members should be advised to check the settlement website or the Court's PACER site to confirm that the date has not been changed and whether the hearing may be held virtually.

<u>This notice is only a summary</u>. For more information, visit _____ or write or call the class action Settlement Administrator at _____ OR (___) ___-____ (toll-free).

Exhibit A
Page 53 of 53