P. Craig Cardon (CA 168646)*
Kevin M. Murphy (CA 346041)*
Rana Salem (CA 358050)*
SHEPPARD MULLIN RICHTER & HAMPTON LLP
1901 Avenue of the Stars, Suite 1600
Los Angeles, CA 90067
T: 310.228.3700 / F: 310.228.3701
ccardon@sheppard.com
kemurphy@sheppard.com
rsalem@sheppard.com

Abby H. Meyer (CA 294947)*
SHEPPARD MULLIN RICHTER & HAMPTON LLP
650 Town Center Drive, 10th Floor
Costa Mesa, CA 92626
T: 714.513.5100 / F: 714.513.5130
ameyer@sheppard.com

[COUNSEL CONTINUED ON NEXT PAGE]

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| KEIRA McCARRELL, individually and on behalf of all others similarly situation,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>RUGSUSA, LLC,<br><br>　　　　　Defendant. | Case No. 3:25-cv-00454-AB<br><br>**DEFENDANT RUGSUSA, LLC'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS REPRESENTATIVE AND CLASS COUNSEL**<br><br>██████████████<br><br>ORAL ARGUMENT REQUESTED |

SMRH:4927-3554-1650

Timothy W. Snider, OSB 034577
Nicholas R. Bottcher, OSB 245683
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR  97205
timothy.snider@stoel.com
nicholas.bottcher@stoel.com
T: 503.224.3380

*Attorneys for Defendant, RugsUSA, LLC*

*Admitted *Pro Hac Vice*

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................................1

II.     RELEVANT FACTUAL BACKGROUND...........................................................2

     A.   Dovel/Bursor's Serial Litigation Against RugsUSA ...............................2

     B.   Plaintiff McCarrell's Purchase From RugsUSA......................................3

     C.   RugsUSA Markets Appropriately Qualified Pricing And Promotions....................5

III.    PLAINTIFF'S MOTION FOR CLASS CERTIFICATION SHOULD BE
     DENIED..................................................................................................................6

     A.   Legal Standard For Class Certification....................................................6

     B.   Plaintiff Cannot Establish Adequacy Under Rule 23(a)(4) .....................7

     C.   Plaintiff Cannot Establish Typicality Under Rule 23(a)(3) ...................10

     D.   Plaintiff Cannot Establish Commonality or Predominance Under Rules
         23(a)(2) And 23(b)(3) ...........................................................................12

         1.   Plaintiff Ignores Material Factual Differences Applicable To All
            Of Her Claims For Relief.............................................................13

         2.   Plaintiff's "Reliance" Analysis Under the UTPA Is Incorrect;
            Reliance Causes Individual Issues To Predominate ...................14

         3.   The Statute of Limitations Creates Individual Issues ................17

         4.   The Contract-Based Claims Present Individual Issues ..............17

         5.   The Unjust Enrichment Claim Presents Individual Issues........18

         6.   Plaintiff's Damages Models Fail *Comcast* For Additional Reasons ........20

     E.   No Damages Class Should Be Certified Because Plaintiff Cannot Satisfy
         the Manageability and Superiority Requirements of Rule 23(b)(3) .....................24

     F.   No Injunctive Relief Class Should Be Certified Under Rule 23(b)(2) ..................26

IV.     CONCLUSION....................................................................................................27

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Amchem Prods. v. Windsor*
521 U.S. 591 (1997)...................................................................................................8, 13

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*
568 U.S. 455 (2013).................................................................................................13, 24

*Back Doctors Ltd. v. Metro. Prop. & Cas. Ins. Co.*
637 F.3d 827 (7th Cir. 2011) ..........................................................................................9

*Berni v. Barilla S.P.A.*
964 F.3d 141 (2d Cir. 2020)...........................................................................................27

*Brazil v. Dole Packaged Foods, LLC*
660 Fed. Appx. 531 (9th Cir. 2016)...............................................................................12

*Briggs v. RugsUSA, LLC*
Case No. 2:23-cv-00982 (W.D. Wash.)............................................................................2

*Briseno v. Henderson*
998 F.3d 1014 (9th Cir. 2021) ........................................................................................9

*Brown v. Electrolux Home Prods.*
817 F.3d 1225 (11th Cir. 2016) ......................................................................................7

*Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank*
136 F.3d 1360 (9th Cir. 1998) ........................................................................................2

*Burch v. RugsUSA, LLC*
Case No. 1:24-cv-03379 (D.D.C.) ..................................................................................3

*Canales-Robles v. Peters*
2022 U.S. Dist. LEXIS 37985 (D. Or. Mar. 3, 2022) ...................................................13

*Chowning v. Kohl's Dep't Stores, Inc.*
735 Fed. Appx. 924 (9th Cir. 2018)...............................................................................11

*CLF 007 v. CooperSurgical, Inc.*
2025 U.S. Dist. LEXIS 61420 (D. Or. Mar. 31, 2025)..................................................25

*Cochoit v. Schiff Nutrition Int'l*
326 F.R.D. 631 (C.D. Cal. 2108)...........................................................................8, 9, 10

*Colpitts v. Blue Diamond Growers*
  2023 U.S. Dist. LEXIS 57108 (S.D.N.Y. Mar. 31, 2023) ......................................................26

*Comcast Corp. v. Behrend*
  569 U.S. 27 (2013).............................................................................................. passim

*Corbett v. PharmaCare U.S., Inc.*
  2024 U.S. Dist. LEXIS 58336 (S.D. Cal. Mar. 29, 2024) ......................................................21

*Davidson v. Kimberly-Clark Corp.*
  889 F.3d 956 (9th Cir. 2018) ...............................................................................................11

*Dray v. RugsUSA, LLC*
  Case No. 2:23-cv-03017 (C.D. Cal.)........................................................................................2

*Duvall v. Haier US Appliance Sols., Inc.*
  2026 U.S. Dist. LEXIS 80851 (N.D. Cal. Apr. 13, 2026) .......................................................23

*DZ Rsrv. v. Meta Platforms, Inc.*
  96 F.4th 1223 (9th Cir. 2024) .........................................................................................11, 26

*Easterbrook v. LinkedIn Corp.*
  2023 U.S. Dist. LEXIS 69815 (D. Or. Apr. 20, 2023) .......................................................17, 19

*Ellis v. Costco Wholesale Corp.*
  657 F.3d 970 (9th Cir. 2011) .................................................................................................7

*Evans v. IAC/Interactive Corp.*
  244 F.R.D. 568 (C.D. Cal. 2007)..........................................................................................11

*Gen. Tel. Co. of Southwest v. Falcon*
  457 U.S. 147 (1982).........................................................................................................7, 8

*Golikov v. Walmart, Inc.*
  2025 U.S. Dist. LEXIS 225057 (C.D. Cal. Nov. 6, 2025).......................................................12

*Gunaratna v. Dennis Gross Cosmetology, LLC*
  2023 U.S. Dist. LEXIS 60796 (C.D. Cal. Apr. 4, 2023) .......................................................15

*Hanon v. Dataproducts Corp.*
  976 F.2d 497 (9th Cir. 1992) ...........................................................................................10, 12

*Hansberry v. Lee*
  311 U.S. 32 (1940)...............................................................................................................8

*Hong v. RugsUSA, LLC*
  Case No. 3:24-cv-08799 (N.D. Cal.) .............................................................................. passim

*Konoloff v. Safeco Ins. Co. of Am.*
  2022 U.S. Dist. LEXIS 152821, at \*15 (D. Or. July 27, 2022)
  *report and recommendation adopted by* 2022 U.S. Dist. LEXIS 152086, at \*1 (D. Or.
  Aug. 19, 2022) ...................................................................................................................25

*Korda v. RugsUSA, LLC*
  Case No. 3:23-cv-1026 (D. Or.)...................................................................................2, 3, 17

*In re Lamictal Direct Purchaser Antitrust Litig.*
  957 F.3d 184 (3d Cir. 2020)................................................................................................26

*Lara v. First Nat'l Ins. Co. of Am.*
  25 F.4th 1134 (9th Cir. 2022) ..................................................................................... passim

*Lee v. RugsUSA, LLC*
  3:23-cv-02412 (N.D. Cal.) ....................................................................................................2

*LeMons v. Walgreen Pharm. Servs. Midwest, LLC*
  2024 U.S. Dist. LEXIS 115530 (D. Or. July 1, 2024)................................................7, 12, 13

*Mikula v. RugsUSA, LLC*
  Case No. 1:25-cv-02640 (N.D. Ga.) .....................................................................................3

*Mobile Emergency Hous. Corp. v. HP, Inc.*
  2023 U.S. Dist. LEXIS 235084 (N.D. Cal. Dec. 8, 2023) ....................................................25

*Mueller v. Puritan's Pride, Inc.*
  2021 U.S. Dist. LEXIS 226103 (N.D. Cal. Nov. 23, 2021)...................................................23

*Munoz v. Giumarra Vineyards Corp.*
  2012 U.S. Dist. LEXIS 93043 (E.D. Cal. 2012)...................................................................27

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*
  259 F.3d 154 (3d Cir. 2001)................................................................................................25

*O'Shea v. Littleton*
  414 U.S. 488 (1974).............................................................................................................11

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods, LLC*
  31 F.4th 651 (9th Cir. 2022) ...............................................................................................21

*Parsons v. Ryan*
  754 F.3d 657 (9th Cir. 2014) ..............................................................................................12

*Phelps v. 3PD, Inc.*
  261 F.R.D. 548 (D. Or. 2009)..............................................................................................23

*Preciado v. RugsUSA, LLC*
    Case No. 1:25-cv-01243 (D. Colo.) ...........................................................................3

*In re Premera Blue Cross Customer Data Sec. Breach Litig.*
    2019 U.S. Dist. LEXIS 127093 (D. Or. July 29, 2019) ............................................18

*Rector v. City and Cty. of Denver*
    348 F.3d 935 (10th Cir. 2003) ...................................................................................11

*Retherford v. Portland Pub. Schs.*
    2019 U.S. Dist. LEXIS (D. Or. Dec. 3, 2019),
    *report and recommendation adopted as modified*, 2020 U.S. Dist. LEXIS 5375 (D.
    Or. Jan. 13, 2020) .....................................................................................................11

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*
    442 F.3d 741 (9th Cir. 2006) ......................................................................................2

*TransUnion v. Ramirez*
    594 U.S. 413 (2021)...................................................................................................21

*Tyson Foods, Inc. v. Bouaphakeo*
    577 U.S. 442 (2016)...................................................................................................13

*Usler v. Vital Farms, Inc.*
    2024 U.S. Dist. LEXIS 121033, *20 (W.D. Tex. July 9, 2024),
    *report and recommendation adopted*, 2024 U.S. Dist. LEXIS 172095 (W.D. Tex.
    Sept. 23, 2024) ..........................................................................................................23

*Van v. LLR, Inc.*
    61 F.4th 1053 (9th Cir. 2023) ....................................................................................21

*Vinole v. Countrywide Home Loans, Inc.*
    571 F.3d 935 (9th Cir. 2009) ......................................................................................7

*Vizcarra v. Unilever U.S.*
    339 F.R.D. 530 (N.D. Cal. 2021)................................................................................7

*Wal-Mart Stores, Inc. v. Dukes*
    564 U.S. 338 (2011).........................................................................................7, 13, 27

*Walters v. Vitamin Shoppe Indus., Inc.*
    701 F. App'x 667 (9th Cir. 2017)..............................................................................19

*Wiley v. RugsUSA, LLC*
    Case No. 6:23-cv-03250 (W.D. Mo.) .............................................................. passim

*Wooden v. Bd. of Regents of Univ. Sys. of Ga.*
    247 F.3d 1262 (11th Cir. 2001) .................................................................................11

*Zastrow v. RugsUSA, LLC*
Case No. 2:25-cv-00472 (W.D. Wash.) ..................................................................3

*Zinser v. Accufix Rsch. Inst., Inc.*
253 F.3d 1180 (9th Cir. 2001), *opinion amended on denial of reh'g*, 273 F.3d 1266
(9th Cir. 2001)..........................................................................................................7

**State Cases**

*Alsea Veneer, Inc. v. State*
318 Ore. 33 (Or. 1993)..........................................................................................19

*Bohr v. Tillamook Cnty. Creamery Ass'n*
373 Ore. 343 (2025)................................................................................15, 24, 25

*McAllister Constr. Co. v. Liu*
343 Ore. App. 53 (2025).........................................................................................19

*Pearson v. Philip Morris, Inc.*
358 Ore. 88 (2015).............................................................................................16, 17

*Slover v. Or. State Bd. of Clinical Soc. Workers*
144 Or. App. 565 (1996).........................................................................................25

*State v. Pettit*
73 Or. App. 510 (1985)...........................................................................................23

**Federal: Statutes, Rules, Regulations, Constitutional Provisions**

Federal Rules of Civil Procedure,
Rule 23 .......................................................................................... passim
Rule 23(a)(2).................................................................................12, 16
Rule 23(a)(3)...........................................................................................10
Rule 23(a)(4) .......................................................................................... passim
Rule 23(b) .............................................................................................7, 13
Rule 23(b)(2)....................................................................................1, 26, 27
Rule 23(b)(3).......................................................................................... passim

**State: Statutes, Rules, Regulations, Constitutional Provisions**

7A Federal Practice & Procedure § 1764 (3d ed. 2002) ..............................................10

Oregon Revised Statutes § 646.638 .............................................................................24

## I.    **INTRODUCTION**

This case is the product of the greed of Plaintiff's two law firms ("Dovel/Bursor"):  after previously suing RugsUSA and settling for $14 million, the court awarded Dovel/Bursor $750,000 in fees – far less than the $2.8 million they had requested.  Unhappy with that outcome, they immediately began recruiting new plaintiffs.  The result is this lawsuit.

This origin story goes to the heart of why Plaintiff's Motion for Class Certification (the "Motion") must be denied.  Dovel & Bursor are not adequate class counsel.  They previously sued and settled claims on behalf of Oregon consumers on *different* terms than they are pursuing here. There are material questions as to whether they have, or will have, a conflict with the class they seek to certify, a conflict Rule 23(a)(4) (adequacy) is meant to prevent.  Dovel/Bursor's representations to the court in the earlier suit also undermine Plaintiff's request to certify a Rule 23(b)(2) injunctive relief class.

The Motion also merely skims the surface of Rule 23 in a bid to achieve certification. However, under the rigorous analysis required by the Supreme Court and Ninth Circuit, Plaintiff's Motion falls far short.  Myriad material individual issues exist:  RugsUSA offers various prices and promotions to consumers, RugsUSA updates its prices pursuant to market factors quarterly, and there are variations in promotions which undermine an argument that RugsUSA has pursued a singular, common course of conduct.  RugsUSA also discloses the basis for its pricing immediately adjacent to the pricing that Plaintiff challenges.  Further, in a companion case to this one, Dovel/Bursor admitted that consumers cannot recall the details of the promotions they saw, showing that consumers will not even know if they are putative class members without review of RugsUSA's individual transaction records.  Thus, adjudication of a class action here would require a consumer-by-consumer, transaction-by-transaction analysis which is the antithesis of the purpose of Rule 23 (i.e., to identify and streamline due to commonality).

Plaintiff also misstates or overstates Oregon law, while also citing California law and concepts. While California district court cases may be a useful reference point at times, Oregon decisional law must be considered in its proper context with respect to this putative Oregon class's claims. Oregon law shows that it would not be appropriate to certify a class. For instance, reliance is required under Plaintiff's UTPA theory of harm, and reliance is an individual issue. Also, since Plaintiff seeks damages, she is not entitled to certification under an equitable claim. Also critically, her damage models fail to measure the harm underlying her theories of liability.

The foregoing highlights only some of the problems with Plaintiff's Motion. For these and the further reasons that follow, the Motion should be denied.

## II.    RELEVANT FACTUAL BACKGROUND

### A.    Dovel/Bursor's Serial Litigation Against RugsUSA

This litigation is Dovel/Bursor's second wave of attack against RugsUSA. In 2023, Dovel/Bursor sued RugsUSA in *Korda v. RugsUSA, LLC*, Case No. 3:23-cv-1026 (D. Or.); *Dray v. RugsUSA, LLC*, Case No. 2:23-cv-03017 (C.D. Cal.)[1]; *Briggs v. RugsUSA, LLC*, Case No. 2:23-cv-00982 (W.D. Wash.); and *Wiley v. RugsUSA, LLC*, Case No. 6:23-cv-03250 (W.D. Mo.). In each action, Dovel/Bursor challenged how RugsUSA advertises its prices and promotions, exactly as it is doing here. (*Cf. Korda*, Dkt. 1, ¶¶ 4-5, 7 *with McCarrell*, Dkt. 1, ¶¶ 4-7.)[2] Also in each action, Dovel/Bursor included an allegation that "[a]bsent the entry of a permanent injunction, Defendant's unlawful behavior will not cease and, in the unlikely event that it voluntarily ceases,

---

[1] Dovel/Bursor dismissed this case and refiled with a new California plaintiff in *Lee v. RugsUSA, LLC*, 3:23-cv-02412 (N.D. Cal.).

[2] RugsUSA requests that the Court take judicial notice of the dockets and filings in the collateral cases referenced within. The Court may do so because they are "court filings and other matters of public record." *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (taking judicial notice of "pleadings, memoranda, expert reports, etc." from a different litigation); *Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998) (taking judicial notice of pleadings in a related state court action).

it is capable of repetition and is likely to reoccur." (*See, e.g.*, *Korda* at Dkt. 1, ¶ 80.)

These cases were consolidated in *Wiley* by an amended complaint which also requested injunctive relief. (*Wiley*, Dkt. 21, ¶¶ 61, 65, 82, 111, 134, 150, 171-173, 231(i).) A few weeks later, Dovel/Bursor filed an unopposed motion for preliminary approval of a class settlement. (Meyer Decl., Ex. A.) The proposed $14 million settlement offered damages only to the settlement classes; i.e., Dovel/Bursor did not require that RugsUSA change its marketing. (*Id.*, p. 11; Meyer Decl., Ex. B, No. 1.) Dovel/Bursor told the court that the settlement provided "excellent" and "outstanding" relief to the class. (Meyer Decl., Ex. A, pp. 18, 20.) The settlement released all claims through October 12, 2023. (*Id.*, p. 10.) Dovel/Bursor stated an intent to request 20% of the settlement fund of $14 million. (*Id.*, p. 12.) The court entered orders granting preliminary approval of the settlement (*Wiley*, Dkts. 31, 34) and finally approved the settlement on June 27, 2024. (*Wiley*, Dkt. 44.) In the final approval order, the court denied Dovel/Bursor's request for $2,823,921.30 in fees, and instead awarded them $750,000 (about 5% of the settlement fund). (*Id.*)

Evidently dissatisfied with the fee award, Dovel/Bursor immediately launched an advertising campaign to identify new putative plaintiffs to sue RugsUSA, and that advertising was live on Instagram before the end of July 2024. (Meyer Decl., Ex. C (McCarrell Tr.), 22:14-26:2.) That advertising resulted in a sextet of new lawsuits including the above-captioned matter, *Burch v. RugsUSA, LLC*, Case No. 1:24-cv-03379 (D.D.C.); *Mikula v. RugsUSA, LLC*, Case No. 1:25-cv-02640 (N.D. Ga.); *Zastrow v. RugsUSA, LLC*, Case No. 2:25-cv-00472 (W.D. Wash.); *Preciado v. RugsUSA, LLC*, Case No. 1:25-cv-01243 (D. Colo.); and *Hong v. RugsUSA, LLC*, Case No. 3:24-cv-08799 (N.D. Cal.). The earliest of these was filed on October 28, 2024 (*Burch*, originally filed in the Superior Court of the District of Columbia; *see Burch*, Dkt. 1-1, p. 2.)

**B.      Plaintiff McCarrell's Purchase From RugsUSA**

Plaintiff purchased a rug on clearance from RugsUSA.com on June 27, 2024. (Dkt. 1, ¶¶

45-46.)  For her rug, Plaintiff would have seen a stricken-through list price of $183.19, and a compare-at clearance price of $147.99 on RugsUSA.com. (McManic Decl., ¶ 5.)  On the day of her purchase, RugsUSA was offering a 40% off promotion for all clearance items with the coupon code SALE40. (Dkt. 1, ¶¶ 45-46.)  This coupon saved Plaintiff $59.20, so the total cost of her rug was $88.79. (*Id.*)  Plaintiff understands that a clearance product "has been marked down and put on sale." (Meyer Decl., Ex. C (McCarrell Tr.), 59:15-18.)  Her damages expert as well understands that clearance products are typically marked down to their lowest price to permit the company to sell through remaining inventory. (Meyer Decl., Ex. D (Dennis Tr.), 91:10-21.)

When Plaintiff made her purchase, there was a sitewide promotion for the Fourth of July. (McManic Decl., ¶ 6.)  Additionally, she received a discount through a clearance-specific promotion code. (*Id.*; *see also* Dkt. 1, ¶ 45 [images].)  Within about a month of Plaintiff's purchase, RugsUSA changed its promotions practice such that clearance products are *excluded* from sitewide coupons unless the promotion terms specifically *include* them. (McManic Decl., ¶ 7.)

Plaintiff kept her RugsUSA rug from June 2024 to May 2025, during which time she had the rug in different parts of her home. (Meyer Decl., Ex. C (McCarrell Tr.), 32:18-21; 44:12-46:3.)  She only moved the rug out of its original, intended space when her mom gifted her a new one. (*Id.*, 46:4-15.)  Plaintiff confirmed she received value from her rug. (*Id.*, 32:22-24.)  Plaintiff's expert admitted, "███████████████████████." (Meyer Decl., Ex. D (Dennis Tr.) 92:3-12.)

Plaintiff presently owns several rugs, none of which are from RugsUSA, and these are sufficient for her current residence. (Meyer Decl., Ex. C (McCarrell Tr.), 82:12-84:11.)  If she moves, she does not expect that she will need or want a new rug as the ones she has "right now are sufficient." (*Id.*, 84:16-22.)

Prior to purchasing her rug, Plaintiff conducted a Google search to identify options, and

then compared rugs and prices across various websites.  (*Id.*, 53:5-54:5; 57:3-6.)  At that time, Plaintiff had never purchased a rug before so, other than design and color, she did not evaluate rug thickness or material.  (*Id.*, 56:11-25.)  Other consumers have more sophisticated knowledge about the marketplace for rugs and draw on that when purchasing from RugsUSA.  For instance, plaintiff Preciado in Colorado has an interest in home décor so she regularly "window shops" online. (Meyer Decl., Ex. E (Preciado Tr.), 18:20-19:16; 21:16-23:7.)  When shopping for her rug, she was looking for "a certain dimension and color for [her] bedroom," and she "wanted some content of wool material in the rug."  (*Id.*, 25:8-15.)  To conduct her search, she started with Google and then reviewed lots of results to understand what the market value was for a wool rug.  (*Id.*, 25:16-27:14; 30:24-31:14.)  Before purchasing from RugsUSA.com, she visited the website over a period of weeks to see if and how the price and promotions would change.  (*Id.*, 19:21-21:15.)

### C.    RugsUSA Markets Appropriately Qualified Pricing And Promotions

The pricing and promotions advertised on RugsUSA.com are appropriately qualified, substantiated, and vary depending on the consumer.  For one, RugsUSA uses "compare at" pricing, which is disclosed on the website.  The "compare at" pricing model is identified in some promotion advertisements, such as the one Plaintiff saw on the day of her purchase.  (Dkt. 1, ¶ 45 in the blue boxes)  It is also disclosed in the "tool tip" (the encircled question mark) immediately adjacent to the price (*id.*, ¶ 22, last image).  The tool tip was added to the website on or about October 12, 2023 and is shown in conjunction with stricken-through prices.  The tool tip states,

> Compare at Price indicates that the item (which may include a different color or pattern) was offered by other retailers at or above that price in the past 90 days. Compare at Price may not be the prevailing market price for an item.

(McManic Decl., ¶ 3.)  The tool tip accurately describes RugsUSA pricing, the setting of which is a multistep process that the company undertakes roughly quarterly for all of its website SKUs.

(Meyer Decl., Ex. F (McManic Tr.), 59:13-72:15.)  Because third-party retailers also sell most of the rugs found on RugsUSA.com, ███████████████████████████████████

███████████████████████████████████████████████████████████████.  (*Id.*; McManic Decl., ¶ 4.)  RugsUSA is not privy to whether the third-party retailers actually sold the products at those prices; and ████████████████████████████████████████████

████████████████████████████████.  (*Id.*)  The ████████████████████████████ *may be*, but is not necessarily, displayed as a stricken-through price on RugsUSA.com.  RugsUSA has ████

████████████████████████████████████████.  (Meyer Decl., Ex. F (McManic Tr.), 56:12-57:12.)  If the aforementioned price analysis results in ████████████████████████████████

████████████████████████ then no strike-through (and no tool tip) is shown; instead, the full list price is shown.  (*Id.*)  This variation occurs frequently and impacts numerous consumers, including plaintiff Hong[3] in California and plaintiff Preciado in Colorado.  (McManic Decl., ¶ 5.)

Additionally, advertised promotions are subject to change and to limitations.  For instance, sitewide promotions and coupons vary by percentage and may also be based on the number of items purchased (*see, e.g.*, Dkt. 1, ¶ 22); custom products are always excluded from sitewide promotions and coupons (*id.*); clearance products are now usually excluded from sitewide coupons (McManic Decl., ¶ 7); and sitewide coupons cannot be stacked with other (*id.*, ¶ 8). While promotions cannot be stacked, RugsUSA does not prevent a customer from splitting up purchases into multiple transactions to take advantage of multiple coupons or offers. (*Id.*, ¶ 9.)

### III.    PLAINTIFF'S MOTION FOR CLASS CERTIFICATION SHOULD BE DENIED

#### A.    Legal Standard For Class Certification

The class action is an exception to the usual rule that litigation is conducted by and on

---

[3] Dovel/Bursor have acknowledged that this opens plaintiff Hong to an atypicality argument under Rule 23.  (*Hong*, Dkts. 67, 70.)

behalf of the individual named parties only. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011). To come within the exception, a plaintiff must affirmatively demonstrate compliance with Rule 23. *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). The party seeking to certify a class bears the burden to establish the four requirements under Rule 23(a) and at least one requirement under Rule 23(b). *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001), *opinion amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001). Rule 23(a)'s requirements are commonly referred to as numerosity, commonality, typicality, and adequacy. *LeMons v. Walgreen Pharmacy Servs. Midwest, LLC*, 2024 U.S. Dist. LEXIS 115530, at *4 (D. Or. July 1, 2024). The court has discretion to grant or deny class certification. *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 939 (9th Cir. 2009). But "[w]hile the trial court has broad discretion to certify a class, its discretion must be exercised within the framework of Rule 23." *Zinser*, 253 F.3d at 1186.

"The United States Supreme Court requires district courts to engage in a 'rigorous analysis' of each Rule 23(a) factor when determining whether plaintiffs seeking class certification have met the requirements of Rule 23." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 980 (9th Cir. 2011) (quoting *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 161 (1982)). This analysis frequently entails overlap with the merits of the underlying claims. *Comcast*, 569 U.S. at 33-4. Where "there is conflicting evidence presented for and against a requirement for class certification[,]" a court must "'judg[e] the persuasiveness of the evidence presented' and 'resolve any factual disputes necessary to determine whether'" Rule 23's requirements "have been satisfied." *Vizcarra v. Unilever U.S.*, 339 F.R.D. 530, 546 (N.D. Cal. 2021) (quoting *Ellis*, 657 F.3d at 982-83). A court with doubts about whether Rule 23's requirements have been met after rigorous analysis should deny certification. *Brown v. Electrolux Home Prods.*, 817 F.3d 1225, 1233-34 (11th Cir. 2016).

### B.     <u>Plaintiff Cannot Establish Adequacy Under Rule 23(a)(4)</u>

Putative class counsel, Dovel/Bursor, are not adequate under Rule 23(a)(4) because their

prior representation and settlement in the *Wiley* action establishes that the firms have a material conflict of interest with the proposed putative class. "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997), citing *Gen. Tel. Co.*, 457 U.S. at 157-158, n.13. "This requirement ensures that the constitutional protections of due process and full faith and credit are afforded to absent class members." *Cochoit v. Schiff Nutrition Int'l*, 326 F.R.D. 631, 635 (C.D. Cal. 2018) (citing *Hansberry v. Lee*, 311 U.S. 32, 43 (1940); denying motion for class certification for failure to satisfy the adequacy requirement).

*Cochoit* is instructive, as Dovel/Bursor are similarly situated to counsel there. In *Cochoit*, attorney Marron asserted that a company's marketing claims were false or misleading. 326 F.R.D. at 633. The parties settled on a class-wide basis, and Marron received about $290,000 in attorneys' fees. *Id.* As part of the settlement, the company agreed to not use certain marketing claims, and Marron represented to the court that the "elimination of the statements identified in the settlement agreement 'will directly achieve the result sought in this action.'" *Id.*, at 634. After a notice and cure period in the settlement expired, however, Marron again sued the company. Without deciding whether Marron had breached his duties to the prior settlement class, the court found:

> Marron faces a conflict of interest. The core allegation in Cochoit's complaint is that Defendants falsely claim that their products survive in the gastrointestinal tract at rates 100 times higher than probiotic yogurt. It is in Cochoit's and the putative class' interest to argue that all related advertisements, touting the survivability of the products, are false. Yet, if Marron presents such an argument, he will be forced to explain why he allowed a similar advertising scheme—touting ten times better survivability—to continue throughout the Burton action and the "notice and cure" period. Further, if Marron admits that he failed to enjoin Defendants from making these advertisements, he risks admitting a breach of the Burton settlement and a disgorgement of the fees he received. As a result, there is at least a substantial risk that Marron's personal interest in keeping those attorneys' fees will conflict with Cochoit's

and the putative class members' interest in setting forth their strongest legal and factual arguments.

*Id.*, at 636. The court also found that Marron could not vigorously defend the putative class because his prior litigation against the company had become a "distraction[] from the merits of Cochoit's claims." *Id.* Further, the court determined, "[i]f the putative class and Defendants were to reach a settlement agreement, the Court, in deciding whether to approve the agreement, would be forced to consider whether Marron is receiving duplicative fees." *Id.* Thus, and without evaluating any other Rule 23 factor, the court denied plaintiff's request to certify any class.

The story here is the same: In the original suite of litigation, Dovel/Bursor advocated for injunctive relief for the putative class members. Indeed, in their consolidated amended complaint Dovel/Bursor repeatedly referenced the need for an injunction. (*Wiley*, Dkt. 21.) Once it came time to settle, however, Dovel/Bursor abandoned injunctive relief, arguing that damages alone provided "excellent" and "outstanding" relief. (Meyer Decl., Ex. A.) Dovel/Bursor had no expectation that RugsUSA would change its marketing practices when it made these representations. (Meyer Decl., Ex. B, No. 5.) And they abandoned injunctive relief despite their fiduciary obligation to not "throw away what could be a major component of the class's recovery." *Back Doctors Ltd. v. Metro. Prop. & Cas. Ins. Co.*, 637 F.3d 827, 830-31 (7th Cir. 2011); accord, *Briseno v. Henderson*, 998 F.3d 1014, 1025 (9th Cir. 2021) ("because a district court has appointed class counsel who owes a fiduciary duty to the class members, class counsel would be ethically forbidden from sacrificing the class members' interests").

It was only when the *Wiley* court did not approve Dovel/Bursor's request for 20% of the settlement fund that the firms teed up this second, instant round of litigation. Dovel/Bursor's manner of settling the *Wiley* case is consequently now before this Court. As in *Cochoit*, Dovel/Bursor must reconcile why they abandoned injunctive relief for Oregon consumers in *Wiley*

while seeking it here.  If Dovel/Bursor breached their fiduciary duties to the classes certified in *Wiley*, then they may have to disgorge their fee award, and their "personal interest in keeping those attorneys' fees will conflict" with "the putative class members' interest in setting forth their strongest legal and factual arguments."  *Cochoit*, 326 F.R.D. at 636.  This is not a specious concern: Despite arguing in *Wiley* that damages only relief was "excellent", now Dovel/Bursor will not admit that the *Wiley* settlement was fair and reasonable.  (Meyer Decl., Ex. B, No. 2[4].)  Moreover, if the Court were to certify a class, it would have to ensure that Dovel/Bursor are not obtaining "duplicative fees."  326 F.R.D. at 636.  These are the very same types of "distraction[s]" that led the *Cochoit* court to find that adequacy was not met.  *Id*.  For the same reasons, Dovel/Bursor cannot establish compliance with Rule 23(a)(4) and their request for certification should be denied.

### C.    Plaintiff Cannot Establish Typicality Under Rule 23(a)(3)

Plaintiff cannot establish that her claims are reasonably coextensive with the claims of the putative class, which is a requirement for certification.  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) ("The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class."); 7A Fed. Prac. & Proc. Civ. § 1764 (3d ed. 2002) ("Rule 23(a)(3) assures that the claims of the named plaintiffs are similar enough to the claims of the class so that the representative will adequately represent them.").  This is so because (1) Plaintiff lacks Article III standing to seek or obtain injunctive relief; (2) she cannot claim what are essentially full refund damages because she received value from her rug and no longer has it; and (3) her purchase of a clearance product is not typical of the putative class.

*First*, Plaintiff lacks Article III standing for her injunctive relief claims, and therefore she

---

[4]  Request 2:  Admit that the SETTLEMENT AGREEMENT was fair and reasonable.
Response:  [omitting objections] Plaintiff admits that a court determined that the Settlement Agreement was fair and reasonable. Plaintiff denies any implication of this admission concerning Defendant's post-settlement conduct or Plaintiff's claims in this action.

is atypical in this regard. *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974); *Rector v. City and Cnty. of Denver*, 348 F.3d 935, 950 (10th Cir. 2003) ("By definition, class representatives who do not have Article III standing to pursue the class claims fail to meet the typicality requirements of Rule 23."); *Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1287 (11th Cir. 2001) ("It should be obvious that there cannot be adequate typicality between a class and a named representative unless the named representative has individual standing to raise the legal claims of the class."). To establish standing for injunctive relief at class certification, Plaintiff must show by a preponderance that she faces an actual and imminent, not hypothetical, threat of suffering an injury in fact that is concrete and particularized, and that her injury is fairly traceable to defendant's challenged conduct and will be prevented or redressed by a favorable decision. *DZ Rsrv. v. Meta Platforms, Inc.*, 96 F.4th 1223, 1240 (9th Cir. 2024). Plaintiff has "no" plan "to purchase a rug," since "the ones that we have right now are sufficient. I don't foresee us buying a new one." (Meyer Decl., Ex. C (McCarrell Tr.), 84:6-22.)[5] She lacks standing and is atypical vis a vis the claim for injunctive relief.

*Second*, and similarly, Plaintiff lacks standing to represent a claim for "rescission and restitution". (Motion, p. 19-20.) Even if this particular damages theory were viable (which it is not), it could only apply to class members who received no value from their rug whatsoever,

---

[5] To the extent Plaintiff's declaration contradicts her deposition testimony (Dkt. 51, ¶ 6), her deposition testimony controls. *Evans v. IAC/Interactive Corp.*, 244 F.R.D. 568, 571 (C.D. Cal. 2007); *Retherford v. Portland Pub. Schs.*, 2019 U.S. Dist. LEXIS, 224855, *33 (D. Or. Dec. 3, 2019), *report and recommendation adopted as modified*, 2020 U.S. Dist. LEXIS 5375 (D. Or. Jan. 13, 2020). Even if the Court were to credit it, however, Plaintiff's declaration does not satisfy the Ninth Circuit's standard for alleging an imminent or actual threat of future injury. *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 970-71 (9th Cir. 2018). While it was a "close question," in that case, the Ninth Circuit credited allegations that the plaintiff "continue[d] to desire to purchase wipes that [we]re suitable for disposal in a household toilet," and "would purchase truly flushable wipes manufactured by" defendant if possible. *Id.* Plaintiff does not state any desire to purchase another rug from RugsUSA, but instead states only that she would "consider" it. (Dkt. 51, ¶ 6.)

otherwise they would be overcompensated by a full refund. *Chowning v. Kohl's Dep't Stores, Inc.*, 735 Fed. Appx. 924, 925 (9th Cir. 2018); *Brazil v. Dole Packaged Foods, LLC*, 660 Fed. Appx. 531, 534 (9th Cir. 2016). Plaintiff admitted that she received value from her rug, which excludes her from this putative class of consumers. (Meyer Decl., Ex. C (McCarrell Tr.), 32:22-24.) Further, this damages theory requires that putative class members "return the Product," to avoid them receiving "a windfall." (Motion, p. 20.) But, Plaintiff no longer has her rug (Meyer Decl., Ex. C (McCarrell Tr.), 32:6-17), solidifying her lack of standing.[6]

*Finally*, Plaintiff purchased a clearance product but does not establish with any evidence, let alone common evidence, that purchasers of clearance products expect clearance items "to be the regular everyday price at which RugsUSA regularly sells" the product. (Motion, p. 3.) Yet, commonsense and experience tell us they do have different expectations. (Meyer Decl., Ex. D (Dennis Tr.), 91:10-21; Ex. C (McCarrell Tr.), 59:15-18.) Plaintiff is therefore subject to unique defenses that will become the focus of the litigation. *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014), citing *Hanon*, 976 F.2d at 508. Under even a permissive standard, Plaintiff's claims that derive from a clearance item purchase are not "reasonably coextensive" with putative class members. *Id*. Plaintiff cannot establish Rule 23's typicality requirement.

### D.    Plaintiff Cannot Establish Commonality or Predominance Under Rules 23(a)(2) And 23(b)(3)

Commonality requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To satisfy commonality, "a plaintiff must demonstrate that the class members 'have suffered the same injury' and not 'merely that they have all suffered a violation of the same

---

[6] Given her lack of standing for this remedy, Dovel/Bursor should not have put it forward. But to the prior point of their inadequacy as class counsel, another court recently sanctioned Dovel for failing to adequately investigate the putative plaintiff's claims prior to filing for class certification. *Golikov v. Walmart, Inc.*, 2025 U.S. Dist. LEXIS 225057 (C.D. Cal. Nov. 6, 2025).

provision of law.'" *LeMons v. Walgreen Pharm. Servs. Midwest, LLC*, 2024 U.S. Dist. LEXIS 115530, *5 (D. Or. July 1, 2024), quoting *Dukes*, 564 U.S. at 349-50. The class members' claims "must depend upon a common contention" that is "of such a nature that it is capable of classwide resolution which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*, at *5-6.

Alternatively, the predominance inquiry under Rule 23(b) "focuses on whether common questions can be proved through evidence common to the class, and whether the issues capable of resolution through generalized proof are more substantial than the issues subject only to individualized proof on a given question." *Id.*, at *12, citing *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 465-68 (2013). An individualized question is one where class members' evidence varies from member to member. *Id.*, citing *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016). The predominance test is "more demanding" than is commonality. *Id.*, citing *Amchem Prods*, 521 U.S. at 623-24.

> ### 1.    Plaintiff Ignores Material Factual Differences Applicable To All Of Her Claims For Relief

Plaintiff argues that her "claims arise from the same deceptive advertising," (Motion, p. 9), but this ignores the material differences in how RugsUSA displays its prices and promotions: when RugsUSA shows a stricken-through price, it also shows the tool tip explaining its pricing, and there is no common evidence that consumers ignore that disclosure; and, RugsUSA regularly does not show a stricken-through price at all – instead it shows just a full price.  Thus, there is no common evidence of exposure to the challenged conduct in each class member transaction, defeating commonality. *Canales-Robles v. Peters*, 2022 U.S. Dist. LEXIS 37985, at *12-13 (D. Or. Mar. 3, 2022) (while a common practice was identified, how it applied "requires particularized

inquiries ill-suited to a class action.").[7]

Similarly, while Plaintiff focuses on the availability generally of transaction and pricing data for each putative class member, she ignores that the putative class purchased thousands of different products that were each subject to quarterly price changes ███████████████████████ (McManic Decl., ¶ 4; Meyer Decl., Ex F (McManic Tr.) 59:13-66:5) and also that there are numerous different rugs in different size and color profiles, ████████████████████ ██████████████████ (Ugone Report, ¶¶ 69-71). These products would have been displayed with a stricken-through price only some of the time. Plaintiff also ignores that when RugsUSA ran, for instance, an "up to 70% sale," customers participating in it would have received a wide variation of discounts, rather than a single, uniform, 70% promotion. (Accord, *id.*, ¶¶ 127-131 and n.254.) Plaintiff likewise ignores another variation – that volume-based coupons were sometimes available. (Dkt. 1, pp. 5, 7.) Moreover, purchasers of clearance products could not routinely participate in sitewide coupons after July 2024, and, Plaintiff ignores that consumers with multiple coupons could not stack them. (McManic Decl., ¶¶ 7-8.) Finally, Plaintiff ignores that repeat purchasers and comparison shoppers have different knowledge and expectations, and this is particularly true as to participants in the prior Oregon settlement class as they received notice of that litigation during settlement. (Ugone Report, ¶ 65; Meyer Decl., Ex. A, p. 13.) Thus, there are no common answers regarding whether the pricing or promotion was "false or misleading".

### 2. Plaintiff's "Reliance" Analysis Under the UTPA Is Incorrect;

---

[7] Plaintiff's expert Silverman claims that "reasonable consumers would not notice or think to click on" the tool tip and, if they did, they "would have an understanding of the Compare at Price and how it was determined that is entirely inconsistent from what it actually is (and how it was actually determined)." (Dkt. 48, pp. 42-44.) Silverman cites no research to support his supposition, and "████████████████████████████████████████████████████████████████ ██████████████████████████████████." (Ugone Report, p. 34 n.117.) Thus, Silverman's opinion support a finding that individual inquiries predominate.

**Reliance Causes Individual Issues To Predominate**

Plaintiff argues that reliance is not required under the UTPA (Motion, p. 14), but her legal analysis is incorrect – her theory of harm requires proof of reliance, which causes individual issues to predominate.  In *Bohr*, the Oregon Supreme Court explained that "whether reliance is required to satisfy the causation element" under the UTPA "turns on the nature of the unlawful trade practice and the ascertainable loss alleged."  *Bohr v. Tillamook Cnty. Creamery Ass'n*, 373 Ore. 343, 362 (2025).  The *Bohr* Court had to decide if reliance was required in an alleged false advertising case in which the plaintiff presented UTPA violations based on:  (1) a "price premium" theory, (2) an "illegal products" theory, and (3) an "inducement" theory.  *Id*. at 350.[8]  The "price premium" theory referred to marketing that "inflated the market value of those product and allowed [the company] to charge a higher or 'premium' price for its products…".  *Id*., at 367.  This was akin to a securities "fraud-on-the-market" theory and was – unsurprisingly for a harm of that type – supported by allegations that plaintiffs and members of the class [] routinely pay more for [the challenged products], as compared to national and generic brands."  *Id.*, at 369 (internal quotes omitted).  The "illegal products" theory asserted that the challenged products were illegally in the marketplace and therefore class members were entitled to a full refund.  *Id.*, at 350.  As to both types of alleged UTPA violation, the *Bohr* Court found that reliance was not required.  *Id.*, at 370.

However, as to the "inducement" theory, the Court confirmed that when "the plaintiffs had formed a belief about the product's characteristics based on the defendant's representations, they purchased the product with the expectation that it had those represented characteristics, and they

---

[8]  As used in *Bohr*, these terms have a different meaning than in the body of consumer class actions, including for instance in *Gunaratna v. Dennis Gross Cosmetology, LLC*, 2023 U.S. Dist. LEXIS 60796, *66 (C.D. Cal. Apr. 4, 2023) (*see* Motion, p. 14), where it is describing a reliance based damages model.  Under California's UCL, reliance is required but it may be shown with objective evidence, which is different than Oregon law.

suffered a loss when they purchased the product without those characteristics," *then*, the "loss" was a "result of" the misrepresentation and "reliance on the misrepresentation was 'integral'". *Id.*, at 364-65, citing *Pearson v. Philip Morris, Inc.*, 358 Ore. 88, 126 (2015).

Plaintiff has plainly offered an "inducement" theory of harm under the UTPA. (*See, e.g.,* Dkt. 1, ¶¶ 8-9 (Plaintiff purchased her rug "based on Defendant's representations" and the representation on she "relied [] were not true."); Dkt. 51, ¶ 4 (Plaintiff declared in support of the Motion that "[w]hen I purchased my Rugs USA product, I read and relied upon the purported sale advertised on www.rugsusa.com. In particular, in making my purchase, I relied on the information on the website displaying the purported regular price and the purported discount I believed I was receiving."); Dkt. 55, ¶¶ 64-73 (opining re reliance on discount information); Dkt. 57, ¶¶ 17-21 (explaining that conjoint surveys can be "used to analyze the value and importance of product attributes.").) Reliance is "subjective" under Oregon law, and "individual inquiries will be required to determine why the individual members of a large class make the choices they make." *Pearson*, 358 Ore. at 134. Indeed, Plaintiff has offered this Court no common evidence that would establish reliance; instead she has disclaimed reliance as part of her burden. (Motion, p. 14.) The reliance element of her alleged UTPA violations (both her "false and misleading" claim and "comparative advertising" claim) prevents certification under Rule 23(a)(2) and (b)(3).

Even if reliance was *not* required, i.e., because she was asserting a fraud-on-the-market theory or illegal products theory, her proffered damages model does not and cannot measure fraud-on-the-market, causing it to fail under *Comcast* (*supra*, 569 U.S. at 33). (Ugone Report, ¶¶ 138-144.) Fraud-on-the-market is appropriately used when there is a single product, with a single before and after price – circumstances that do not exist here. (*Id.*) ██████████████████

████████████████████████████████████████████

████████████.  Moreover, ████████████████████████████
███████████████████████████████, making application of same

here unprecedented.  (*Id.*, ¶ 142.)

Because Plaintiff has not offered any damages model that could or would measure only the

damages attributable to her theory of liability, she cannot meet her burden under *Comcast* to show

that individual issues do not predominate.  Class certification should be denied.

### 3.    The Statute of Limitations Creates Individual Issues

Individual issues also predominate with respect to the statute of limitations.  "[A] private

UTPA action must be brought within one year from the discovery of the unlawful trade practice

on which it is based."  *Pearson*, 358 Ore. at 137.  Since the limitation period is tied to "discovery,"

it runs from when Plaintiff and each class member knew or should have known about the

challenged conduct.  *Id.*  This is a "highly individualized" defense preventing certification.  *Id.*, at

137-140.  Because her unjust enrichment claim is based on the same allegations as her UTPA

claim, the UTPA's one-year limitations period applies to it as well.  *Easterbrook v. LinkedIn Corp.*,

2023 U.S. Dist. LEXIS 69815, at *10-11 (D. Or. Apr. 20, 2023).  This is not a frivolous issue.  In

the prior Oregon class action (*Korda*), notice of settlement was disseminated and class members

released all claims through October 12, 2023.  (Section II.A, *supra*.)  The instant action was filed

on March 17, 2025 (Dkt. 1), meaning that all putative claims between October 13, 2023 and March

16, 2024 could be subject to the defense.  The issues are individualized as to whether putative class

members here were aware of the prior litigation and settlement, as well as whether and when they

"discovered" the alleged false or misleading advertising (which RugsUSA does not concede is

false or misleading).  This precludes certification.

### 4.    The Contract-Based Claims Present Individual Issues

Ignoring the applicable standards, Plaintiff argues that her breach of contract and warranty

claims are governed by "the objective reasonable consumer standard and can therefore be decided classwide." (Motion, pp. 14-15.) However, as explained in her own cited case, courts only "routinely certify classes involving **standardized conduct** and **standard from contracts** and documents." *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, 2019 U.S. Dist. LEXIS 127093, at *53 (D. Or. July 29, 2019) (emphasis added).[9] As explained herein, there is wide variation in the types of offers, deals, and limitations that could have applied in any particular transaction. It cannot be said that there is common evidence that will drive common answers as to (i) the terms of the contract or warranty across the putative class of transactions, nor of (ii) whether there was a breach of such contract or warranty.[10] Further, while Plaintiff argues that RugsUSA "delivered goods valued at a lower price," (Motion, p. 14), this is belied by plaintiff Hong's testimony that while she purchased her rug from RugsUSA for $63.00,[11] she resold it for $90, because she thought that was a fair price for it. (Meyer Decl., Ex. G (Hong Tr.), 38:15-25, 41:20-43:24.) This, individual issues predominate, precluding certification of a damages class on either of these theories. Accord, *Lara v. First Nat'l Ins. Co. of Am.*, 25 F.4th 1134, 1138 (9th Cir. 2022) (common questions did not predominate in a breach of contract class action, where value had to be compared to the offer price on a transaction by transaction basis).

### 5.    The Unjust Enrichment Claim Presents Individual Issues

---

[9] Plaintiff's *Andriesian* case stands for the proposition that a claim of puffery is challenged under the reasonable consumer standard (Motion, p. 15), and *Justin Kraft* stands for the proposition that contract formation and terms can be determined with objective evidence (*id*.). Neither establishes that common class evidence exists here. Plaintiff's remaining cases are from California, which are not binding or precedential, particularly to the extent they analyze California law.

[10] In support of this claim, Plaintiff offers the same price premium model that is meant to support her UTPA claim. (Motion, p. 17.) Since a breach of contract/warranty considers whether a consumer's contractual expectations were satisfied, i.e., did she get the promised or warranted deal, this model could only be relevant to a "but for" or inducement theory of liability. Plaintiff's use of one damages model for both claims supports that reliance is required for her UTPA theory.

[11] *Hong v. RugsUSA, LLC*, Case No. 3:24-cv-08799 (N.D. Cal.), Dkt. 1, ¶ 42.

Plaintiff argues that she can certify a class based on her unjust enrichment claim because it is based on a "uniform course of conduct," (Motion pp. 15-16), but this ignores fatal threshold issues.  First, "equitable relief is unavailable if there is a 'practical, efficient, and adequate' remedy at law." *Easterbrook*, 2023 U.S. Dist. LEXIS 69815 at *10-11, quoting *Alsea Veneer, Inc. v. State*, 318 Ore. 33, 43 (Or. 1993).  Because the UTPA provides such a potential remedy, Plaintiff had to, but did not, show that the "'actual damages or statutory damages of $200, whichever is greater,' is an impractical, inefficient, or inadequate remedy for her unjust enrichment claim." *Id.*, at *11 Second, and relatedly, Plaintiff's request to certify pursuant to her unjust enrichment claim ignores that she has asserted the existence of a binding contract (Motion p. 14), and "[u]nder Oregon law, once a court determines that a valid contract exists, an unjust enrichment claim must fail." *Id.*, citing *Walters v. Vitamin Shoppe Indus., Inc.*, 701 F. App'x 667, 669 (9th Cir. 2017); accord, *McAllister Constr. Co. v. Liu*, 343 Ore. App. 53, 58-59 (2025).[12]

Finally, Plaintiff has not established that there is common evidence in support of each element of the claim.  She asserts that there is a "uniform course of conduct," but the evidence shows wide variability in how RugsUSA promotes its prices, in the manner of promotions and coupons available, and also variability in exposure to RugsUSA's pricing and promotions. (Section II.C, *supra*.)  She also asserts that RugsUSA received "more money" due to the challenged representations (Motion, p. 16), but this analysis is incomplete.  That is, if Plaintiff purchased a rug for $88.79 and received a rug worth $88.79, then RugsUSA was not unjustly enriched.  This is not theoretical – as discussed above, plaintiff Hong purchased her rug for $63.00, but resold it for $90.  (Meyer Decl., Ex. G (Hong Tr.), 38:15-25, 41:20-43:24.)  The evidence shows that

---

[12]  Plaintiff cites cases that construe unjust enrichment under California law, but these are not precedential.  (Motion, p. 16, citing *Astiana* and *Cabrera*.)

individual issues predominate as to the value of the rugs RugsUSA provided vis a vis their purchase price, and individual analysis is required to determine whether a putative class member has an unjust enrichment claim against RugsUSA.

### 6.    Plaintiff's Damages Models Fail *Comcast* For Additional Reasons

Plaintiff's price premium, rescission and refund, and statutory damages models fail *Comcast* for the further following reasons:

Plaintiff's price premium damages model does not satisfy *Comcast* because it "falls far short of establishing that damages are capable of measurement on a classwide basis" and "individual damage calculations will inevitably overwhelm questions common to the class." 569 U.S. at 34. This is clearly demonstrated by the following exemplar deficiencies with the model:

(1)    Plaintiff's damages experts attempt to shoehorn myriad differences between the products offered by RugsUSA into a "one size fits all" approach that tests just a handful of rug sizes and characteristics, as well as a narrow band of prices offered by the company. (Ugone Report, ¶¶ 55, 69-71, 81-87, 113-115, 127-134.) "One size" is simply not sufficient to measure the purported harm to the class: Consider that, for just five RugsUSA products, ███████████████ ██████████████████████████████████. (*Id.*, ¶ 131.) Moreover, the two proposed conjoint surveys fail to include the tool tip in their design, artificially eliminating this individual issue. (*Id.*, ¶ 80.) However, *Comcast* does not allow a party to ignore unfavorable facts because an arbitrary damages analysis "would reduce Rule 23(b)(3)'s predominance requirement to a nullity." 569 U.S. at 35-36. Dr. Ugone's hypothetical spotlights the problems with Plaintiff's price premium model:

███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████



(Ugone Report, ¶ 135.) Performing ███████ surveys to control for this problem establishes that individual issues predominate the class damages inquiry precluding certification of a Rule 23(b)(3) class. Accord, *Van v. LLR, Inc.*, 61 F.4th 1053, 1069 (9th Cir. 2023) (vacating order granting class certification; company showed that "an inquiry into the circumstances and motivations behind each of the 13,680 discounts might be necessary."). But failing to conduct this many surveys results in Plaintiff's price premium damages model not measuring Plaintiff's theory of harm.

(2)    The price premium damages model does not account for customers who did not purchase their rug due to the challenged conduct, including because they comparison shopped or are repeat purchasers, and therefore are uninjured. (Ugone Report, ¶¶ 58, 59, 62-68, 72.) These Oregon purchasers lack standing to receive any relief under *TransUnion v. Ramirez*, 594 U.S. 413 (2021), yet Plaintiff's and her experts offer no way of identifying or excluding them from the damages class. Plaintiff's failure of evidence leads to the conclusion that identifying these uninjured class members will predominate over common questions. *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods, LLC*, 31 F.4th 651, 669, n.13 (9th Cir. 2022).

(3)    The price premium damages model only measures a consumer's willingness to pay, rather than an efficient/competitive market (Ugone Report, ¶¶ 88-91), which does not satisfy *Comcast*. *Corbett v. PharmaCare U.S., Inc.*, 2024 U.S. Dist. LEXIS 58336, at *84 (S.D. Cal. Mar.

29, 2024). The problem with Plaintiff's approach is that it ignores that competitors respond to the market and that other retailers sell these same RugsUSA products. (Ugone Report, ¶¶ 73-75, 78, 96.) Supply-side factors such as these impact the ability to " █████████████████████ ████████ " RugsUSA's rugs – and Plaintiffs' experts have ignored them. (*Id.*, ¶ 95.) For instance, Plaintiffs' experts state ███████████████████████████████████████████ ████████████████████████████████ . (*Id.*, ¶ 96.) But as a matter of economics, ████████████████████████████████████████████████████ ████████████████████████████ . (*Id.*, ¶¶ 98-102.) Compounding the fallacy, Plaintiffs' experts argue that if " ████████████████████████████ ██████████████████████████████████████████ ." (*Id.* ¶ 103; *see also* ¶¶ 104, 107.) However, economic theory instead suggests that ████████████████ ████████████████████████████████ since there are numerous competitors for rugs as well as other resellers of RugsUSA's rugs. (*Id.*, ¶¶ 107, 108.) ████████ ████████████████████████████████████████████████ ████████████████████████████████████ (*Id.*, ¶¶ 109- 112.) This would ████████████████████████████████ . (*Id.*, ¶ 112.) Plaintiffs' experts fail to account for this which will cause them to overstate any putative harm to the class; but notably if they did try to account for this, individual issues would quickly overrun the model. (*Id.*, ¶¶ 106, 108.)

> **(4)** The Sawtooth software that Plaintiff's experts propose to use ██████████ ████████████████████████████████████████████████ ████████████████████████████████████████ . (Ugone Report, ¶¶ 92-94, 117-126.) Indeed, RugsUSA's counsel is not aware of any case where conjoint

has been accepted by a court at class certification in an alleged false pricing case.  The failure to identify a similar case in which conjoint was used "underscores the need for a persuasive demonstration of its utility and fit in this action." *Mueller v. Puritan's Pride, Inc.*, 2021 U.S. Dist. LEXIS 226103, *22 (N.D. Cal. Nov. 23, 2021); *Usler v. Vital Farms, Inc.*, 2024 U.S. Dist. LEXIS 121033, *20 (W.D. Tex. July 9, 2024) (excluding conjoint model; "[t]he court's concern…is not [the expert] or conjoint analysis, but how [the expert] uses conjoint analysis in this case"), *report and recommendation adopted*, 2024 U.S. Dist. LEXIS 172095 (W.D. Tex. Sept. 23, 2024).

Plaintiff's rescission theory also fails to measure Plaintiff's alleged theory of harm and so fails *Comcast*.  (Accord, Ugone Report, ¶¶ 145-151.)  "The goal of rescission is to restore the parties to the status quo ante." *Phelps v. 3PD, Inc.*, 261 F.R.D. 548, 563 (D. Or. 2009), citing *State v. Pettit*, 73 Or. App. 510, 513 (1985).  Before the transaction, Plaintiff had not spent money on a rug – *but RugsUSA held that rug in brand new, unused condition* in its inventory.  (Accord, Ugone Report, ¶ 150.)  Even if Plaintiff still had her rug to return, giving it back to RugsUSA now could not restore the parties to the status quo ante.  While Plaintiff argues that "rescission with complete restitution can be an appropriate remedy," citing *Spann* (Motion, p. 19), this argument ignores that "*Tobacco II* [] expressly ruled a full refund is unavailable to plaintiffs who obtain value from the deceptively advertised product." *Duvall v. Haier US Appliance Sols., Inc.*, 2026 U.S. Dist. LEXIS 80851, at *31 (N.D. Cal. Apr. 13, 2026).  Notwithstanding this case law, Plaintiff's rescission model does not account for value received (Ugone Report, ¶ 149) and, indeed, her damages expert sheepishly testified, "I'm not here to testify as to the propriety of the remedy."  (Meyer Decl., Ex. H (Weir Tr.) 118:19-23.)  In sum, Plaintiff confirmed that she received value from her rug (*id*., Ex. C (McCarrell Tr.) 32:22-24), but her rescission model improperly fails to account for that value.  (*Id*., Ex. H (Weir Tr.) 118:24-119:19.) Plaintiff has not offered any evidence, let alone

class-wide evidence, showing how she or her expert would uniformly account for the value consumers received from receipt of their rugs, nor to account for the condition of each rug that may be subject to a return remedy. This would require thousands of individual assessments. (Accord, Ugone Report, ¶¶ 145-151.) Thus the rescission and return model fails as a purported class-wide model for Plaintiff's equitable claims under *Comcast*.

Finally, to the extent that Plaintiff posits her statutory damages model as a strict liability style model, this ignores that the UTPA is not such a statute – it requires causation and harm at a minimum, and reliance in this case. *Bohr*, 373 Ore. at 348-49; ORS § 646.638. As described above and by Mr. Ugone, individual inquiry issues render it impossible to apply this model on a class-wide basis. (*See supra*; Ugone Report, ¶¶ 152-158.) Consequently, the model as proposed is also not tethered to the theory of harm, is not reliable, and fails under *Comcast*.

###### E.    No Damages Class Should Be Certified Because Plaintiff Cannot Satisfy the Manageability and Superiority Requirements of Rule 23(b)(3)

To certify a damages class, Plaintiff must, but cannot, show that a class action is the superior and manageable method of resolving the dispute. Rule 23(b)(3); *Amgen Inc.*, 568 U.S. at 460. Rule 23(b)(3) "only allows damages classes if the district court finds 'that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Lara*, 25 F.4th at 1138 (district court did not abuse its discretion in finding the superiority requirement was not met). "Whether a class action will be manageable 'is, by … far, the most critical concern in determining whether a class action is a superior means of adjudication.'" *Id*., citing 2 W. Rubenstein, Newberg on Class Actions § 4.72 (5th ed. Supp. 2021). In *Lara*, the superiority and manageability requirements were not satisfied where "[a] class action here would involve adjudicating issues specific to each class member's claim." *Id*., at 1140. There are two significant issues here that prevent Plaintiff's satisfaction of the manageability and superiority requirements.

First, by Dovel/Bursor's own admission, putative class members, i.e., those who "purchased one or more RugsUSA Product[s] advertised at a discount" (Motion, p. 5) cannot or will not know whether they are in fact class members. As Dovel/Bursor admitted in the *Hong* matter, online purchasers do not recall "the exact purchase flow of the myriad purchases" made every week, and even if they recall receiving a discount, they do not recall "the precise manner in which that discount was presented." *Hong*, 3:24-cv-08799, Dkt. 70, pp. 3-4; *see also id.*, Dkt. 67, p. 10. This information is not "publicly available absent daily review and cataloguing of each of the thousands of product listings on Defendant's website." *Id.*, Dkt. 70, p. 10. Thus the Court would have to permit evidence of each customer's transaction to confirm who is a putative class member, before turning to the merits of such customer's claim. It would not be manageable to proceed via thousands of mini trials, as the issues specific to each putative class member's claim are by their nature individualized. Accord, *Mobile Emergency Hous. Corp. v. HP, Inc.*, 2023 U.S. Dist. LEXIS 235084, at *33 (N.D. Cal. Dec. 8, 2023) (courts "consider difficulties in identifying members of a putative class in conducting analysis under Rule 23(b)(3)").

Second, Plaintiff ignores that her pleaded claims require proof of harm. *Bohr*, 373 Ore. at 348-49 [UTPA]; *Slover v. Or. State Bd. of Clinical Soc. Workers*, 144 Or. App. 565, 570-71 (1996) [contract]; *Konoloff v. Safeco Ins. Co. of Am.*, 2022 U.S. Dist. LEXIS 152821, at *15 (D. Or. July 27, 2022) [express warranty] *report and recommendation adopted by* 2022 U.S. Dist. LEXIS 152086, at *1 (D. Or. Aug. 19, 2022); *CLF 007 v. CooperSurgical, Inc.*, 2025 U.S. Dist. LEXIS 61420, at *21 (D. Or. Mar. 31, 2025) [unjust enrichment]. That Plaintiff has offered damages models does not alone establish the element of harm. *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 188 (3d Cir. 2001) ("Proof of injury (whether or not an injury occurred at all) must be distinguished from calculation of damages (which determines the actual value of

the injury)."); *In re Lamictal Direct Purchaser Antitrust Litig.*, 957 F.3d 184, 194 (3d Cir. 2020) (following *Newton* and reversing order granting class certification because the district court conflated proof of damages with proof of harm). If Plaintiff or putative class members received a product that had the same or higher value as what was paid, then they cannot establish harm. *See Colpitts v. Blue Diamond Growers*, 2023 U.S. Dist. LEXIS 57108, at *12 (S.D.N.Y. Mar. 31, 2023) (holding that a plaintiff must produce evidence that she paid a premium to establish harm). This requires mini trials. For these further reasons, no damages class should be certified.

### F.    No Injunctive Relief Class Should Be Certified Under Rule 23(b)(2)

The Court should not certify an injunctive relief class on the grounds that (1) Plaintiff lacks standing to represent an injunctive relief class; (2) Dovel/Bursor themselves previously advocated for settlement of prior litigation without injunctive relief, arguing that damages only would be "excellent" for the settlement classes, and (3) the putative classes consist of only past purchasers who will not benefit "as a whole" from an injunction (*see* Rule 23(b)(2)).

*First*, as discussed above, Plaintiff lacks standing to seek injunctive relief, which is a requirement for certification of a Rule 23(b)(2) class. *DZ Rsrv.*, 96 F.4th at 1239-40.

*Second*, as discussed above, on an identical set of claims against RugsUSA, Dovel/Bursor previously asked a court to enter a class action settlement that provided damages-only relief, arguing that this was "excellent" relief. (Meyer Decl., Ex. A.) Dovel/Bursor made this representation notwithstanding that the firms had originally prayed for injunctive relief. Dovel/Bursor's prior representations show that injunctive relief classes should not be certified.

*Third*, any injunctive relief class would consist only of past purchasers. As conceded by Plaintiff and her experts, an individual consumer does not purchase a rug very often, and there are lots of rugs in the marketplace to choose from. (Dkt. 55, ¶ 75; Meyer Decl., Ex. C (McCarrell Tr.), 84:6-22.) Moreover, a rug is a high involvement purchase so brand loyalty has less importance

during decision-making.  (Meyer Decl., Ex. E (Preciado Tr.), 25:8-27:14; 30:24-31:14; accord, Ugone Report, ¶¶ 22, 32, 60, 83 (identifying various features that weigh on the purchasing decision).)  Plaintiff has failed to develop any evidence – let alone common evidence – addressing the purchasing plans of putative class members, and so there is no evidence that an injunction can provide a remedy to "the class as a whole", nor evidence that injunctive relief will provide complete relief to all class members, as required for Rule 23(b)(2) certification.  *Dukes*, 564 U.S. at 360; accord, *Munoz v. Giumarra Vineyards Corp.*, 2012 U.S. Dist. LEXIS 93043, at *104 (E.D. Cal. 2012) (denying plaintiffs' request for 23(b)(2) certification because the proposed class included "those who no longer work for [defendant], and as a result would not benefit from injunctive relief."); *Berni v. Barilla S.P.A.*, 964 F.3d 141, 147 (2d Cir. 2020) (affirming denial of certification, including because the class of past purchasers were "not bound to purchase a product again").  Because there is no evidence showing that any particular class member would necessarily purchase from RugsUSA in the future, no injunctive relief class should be certified.

## IV.    CONCLUSION[13]

RugsUSA respectfully requests that the Court deny Plaintiff's Motion.

---

[13]  RugsUSA and its counsel take the obligation to meet and confer seriously.  Plaintiff knew on November 19, 2025 (Dkt. 40) that their Motion was due on February 23, 2026.  Notwithstanding this notice, Plaintiff did not initiate conferral until February 18, 2026 at 9:03 pm – two business days before the deadline.  (Dkt. 53-4.)  As of that time, Plaintiff knew that RugsUSA was not available to confer until at least Friday morning, February 20.  (*Id.*)  Even though after business hours, RugsUSA's lead trial counsel immediately responded that he needed to participate in the Motion conferral and that he was not available on Friday as he was scheduled to appear at a hearing on 28 other matters.  (Dkt. 53-5.)  So that the parties could have a meaningful conferral on Monday (the filing deadline), RugsUSA asked for Plaintiff's specific bases for the Motion in writing.  (*Id.*)  Plaintiff never provided this information.  (Dkts. 53-6 to -21.)  Given Plaintiff's delay in seeking to confer, it was not good faith to fail to provide a written position; and initiating conferral at the last moment when the moving party is committed to its arguments does not demonstrate good faith compliance requirement to confer, which is meant to minimize the scope of disputes.

DATED: May 4, 2026

STOEL RIVES LLP


By: _/s/ Timothy W. Snider_

Timothy W. Snider, OSB No. 034577
timothy.snider@stoel.com
Nicholas R. Bottcher, OSB No. 245683
nicholas.bottcher@stoel.com
Telephone: 503.224.3380

SHEPPARD, MULLIN, RICHTER &
HAMPTON LLP
P. Craig Cardon*
ccardon@sheppard.com
Kevin Murphy*
kemurphy@sheppard.com
Rana Salem*
rsalem@sheppard.com
Abby H. Meyer*
ameyer@sheppard.com
1901 Avenue of the Stars, Suite 1600
Los Angeles, CA 90067
Telephone: 310.228.3700

*Attorneys for Defendant RugsUSA, LLC*
* Admitted *Pro Hac Vice*

## **Certificate of Compliance**

This brief complies with the applicable word-count limitation under LR 7-2(b) because it contains 9,584 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

*/s/ Timothy W. Snider*
Timothy W. Snider