P. Craig Cardon (CA 168646)*
Kevin M. Murphy (CA 346041)*
Rana Salem (CA 358050)*
SHEPPARD MULLIN RICHTER & HAMPTON LLP
1901 Avenue of the Stars, Suite 1600
Los Angeles, CA 90067
T: 310.228.3700 / F: 310.228.3701
ccardon@sheppard.com
kemurphy@sheppard.com
rsalem@sheppard.com

Abby H. Meyer (CA 294947)*
SHEPPARD MULLIN RICHTER & HAMPTON LLP
650 Town Center Drive, 10th Floor
Costa Mesa, CA 92626
T: 714.513.5100 / F: 714.513.5130
ameyer@sheppard.com

[COUNSEL CONTINUED ON NEXT PAGE]

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| KEIRA McCARRELL, individually and on behalf of all others similarly situation,<br><br>    Plaintiff,<br><br>  v.<br><br>RUGSUSA, LLC,<br><br>    Defendant. | Case No. 3:23-cv-00454-AB<br><br>**DECLARATION OF ABBY H. MEYER IN SUPPORT OF DEFENDANT RUGSUSA, LLC'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS REPRESENTATIVE AND CLASS COUNSEL** |

Timothy W. Snider, OSB 034577
Nicholas R. Bottcher, OSB 245683
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR  97205
timothy.snider@stoel.com
nicholas.bottcher@stoel.com
T: 503.224.3380

*Attorneys for Defendant, RugsUSA, LLC*

*Admitted *Pro Hac Vice*

I, Abby H. Meyer, declare as follows:

1.      I am an attorney duly admitted to practice before this Court.  I am a partner with Sheppard, Mullin, Richter & Hampton LLP, attorneys of record for Defendant RugsUSA, LLC ("Defendant" or "RugsUSA").  If called as a witness, I could and would competently testify to all facts within my personal knowledge except where stated upon information and belief.

2.      I submit this Declaration in support of RugsUSA's Opposition to Plaintiff Keira McCarrell's Motion for Class Certification and Appointment of Class Representative and Class Counsel.

3.      In 2023, Plaintiff's counsel, Dovel & Luner LLP ("Dovel") and Bursor & Fisher, P.A. ("Bursor") (collectively, "Dovel/Bursor"), sued RugsUSA in *Korda v. RugsUSA, LLC*, Case No. 3-23-cv-1026 (D. Or.); *Dray v. RugsUSA, LLC*, Case No. 2:23-cv-03017 (C.D. Cal)[1]; *Briggs v. RugsUSA, LLC*, Case No. 2:23-cv-00982 (W.D. Wash.); and *Wiley v. RugsUSA, LLC*, Case No. 6:23-cv-03250 (W.D. Mo.).  These cases were consolidated in *Wiley* by the filing of an amended complaint which also requested injunctive relief.  A few weeks later, Dovel/Bursor filed an unopposed motion for preliminary approval of a class action settlement.  Attached hereto as **Exhibit A** is a true and correct copy of that unopposed motion.

4.      Attached hereto as **Exhibit B** is a true and correct copy of Plaintiff Evelin Preciado's Responses to Defendant's First Set of Requests for Admissions, dated February 9, 2026.

5.      On February 3, 2026, I deposed Plaintiff Keira McCarrell.  True and correct excerpts of her deposition testimony are attached hereto as **Exhibit C**.

---

[1] Dovel/Bursor dismissed this case and refiled with a new California plaintiff in *Lee v. RugsUSA, LLC*, 3:23-cv-02413 (N.D. Cal.).

6. On March 9, 2026, I deposed J. Michael Dennis, Ph.D., one of Plaintiff Keira McCarrell's damages experts. True and correct excerpts of his deposition testimony are attached hereto as **Exhibit D**.

7. On January 20, 2026, my colleague Craig Cardon ("Mr. Cardon") deposed Plaintiff Evelin Preciado. True and correct excerpts of her deposition testimony are attached hereto as **Exhibit E**.

8. On February 5, 2026, Rick Lyon, Plaintiff's counsel from Dovel, deposed David McManic, RugsUSA's Vice President of Pricing and Merchandise Planning and Assortment Planning. True and correct excerpts of his deposition testimony are attached hereto as **Exhibit F**.

9. On February 13, 2026, I deposed Plaintiff Anna Hong. True and correct excerpts of her deposition testimony are attached hereto as **Exhibit G**.

10. On March 16, 2026, Mr. Cardon deposed Colin B. Weir, another damages expert for Plaintiff Keira McCarrell. True and correct excerpts of his deposition testimony are attached hereto as **Exhibit H**.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 4, 2026, at Costa Mesa, California.

*/s/ Abby H. Meyer*
Abby H. Meyer

SMRH:4903-4117-7252.1                    -4-

# EXHIBIT A

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| CHRISTINA WILEY, ALEXANDRIA LEE, TAWNEY BRIGGS, and CHRISTOPHER KORDA, each individually and on behalf of all others similarly situated, | Case No. 6:23-cv-03250-S-SRB |
| Plaintiffs, | |
| v. | |
| RUGSUSA, LLC, | |
| Defendant. | |

**PLAINTIFFS' SUGGESTIONS IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND
CONDITIONAL CLASS CERTIFICATION**

**Table of Contents**

I.      Introduction. ................................................................................................................ 1

II.     Factual background. ..................................................................................................... 1

        A.      Plaintiffs' allegations. ..................................................................................... 1

        B.      Settlement negotiations and mediation. .......................................................... 2

        C.      The Settlement. ............................................................................................... 3

                1.      Class definition. .................................................................................. 3

                2.      Benefits to Class Members. ................................................................ 4

                3.      Limited release of claims. ................................................................... 5

                4.      Attorneys' fees and service awards. .................................................... 5

                5.      Settlement administration and notice. .................................................. 6

III.    The Settlement should be preliminarily approved. ....................................................... 6

        A.      The proposed Settlement is fundamentally fair, adequate, and reasonable. ................ 7

                1.      Rule 23(e)(2)(A): the proposed Class Representatives and Class
                        Counsel have adequately represented the class. .............................................. 8

                2.      Rule 23(e)(2)(B): The Settlement is the product of arm's length
                        negotiation. ........................................................................................ 9

                3.      Rule 23(e)(2)(C): The Settlement provides excellent relief. ......................... 11

                4.      Rule 23(e)(2)(C): The Settlement Fund treats Class Members
                        equitably relative to each other. ......................................................... 16

                5.      The *Van Horn* factors also support preliminary approval. ........................... 18

        B.      The Court should conditionally certify the Settlement Class for settlement
                purposes, because it will likely be able to certify it for judgment purposes. .............. 19

                1.      The Proposed Class is sufficiently numerous. ............................................... 19

                2.      There are questions of law and fact common to the class. ............................. 19

                3.      Plaintiffs' claims are typical of those of the Settlement Class. ...................... 20

                4.      Plaintiffs and proposed Class Counsel have fairly and adequately
                        represented the Class's interests. ........................................................ 21

                5.      The Settlement Class meets the requirements of Rule 23(b)(3). ................... 22

Case 6:23-cv-03250-SRB     Document 30     Filed 02/26/24     Page 2 of 34

C.    The Court should approve the proposed notice plan. ................................................. 24

IV.    Conclusion. ..................................................................................................................... 25

ii

**Table of Authorities**

**Cases**

*Adams v. Haan,*

    2020 U.S. Dist. LEXIS 176002 (C.D. Cal. Sep. 3, 2020) .............................................. 13

*Ahmed v. HSBC Bank USA,*

    2019 U.S. Dist. LEXIS 104401 (C.D. Cal. June 21, 2019) ........................................... 17

*Anderson v. Travelex Ins. Servs.,*

    2021 U.S. Dist. LEXIS 181238 (D. Neb. Sep. 22, 2021) ............................................. 11

*Azimpour v. Select Comfort Corp.,*

    2016 U.S. Dist. LEXIS 77126 (D. Minn. June 13, 2016) .............................................. 13

*Baker v. Seaworld Entm't, Inc.,*

    2020 U.S. Dist. LEXIS 131109 (S.D. Cal. July 24, 2020) ............................................ 11

*Barfield v. Sho-Me Power Elec. Coop.,*

    2015 U.S. Dist. LEXIS 70166 (W.D. Mo. June 1, 2015) .............................................. 15

*Bishop v. Delaval Inc.,*

    2022 U.S. Dist. LEXIS 237633 (W.D. Mo. June 7, 2022) ............................................ 15

*Bisphenol-A (BPA) Polycarbonate Plastic Prods. Liab. Litig. v. Avent Am., Inc.,*

    2011 U.S. Dist. LEXIS 2416 (W.D. Mo. Jan. 7, 2011) ........................................... 22, 23

*Boeing Co. v. Van Gemert,*

    444 U.S. 472 (1980) ..................................................................................................... 15

*Caligiuri v. Symantec Corp.,*

    855 F.3d 860 (8th Cir. 2017) ....................................................................................... 17

*Chester v. TJX Cos.,*

    2017 U.S. Dist. LEXIS 201121 (C.D. Cal. Dec. 5, 2017) ................................. 12, 20, 23

*Chowning v. Kohl's Dep't Stores, Inc.,*

    2016 U.S. Dist. LEXIS 188341 (C.D. Cal. Apr. 1, 2016) ............................................ 14

*Chowning v. Kohl's Dep't Stores, Inc.,*

    2016 U.S. Dist. LEXIS 37261 (C.D. Cal. Mar. 15, 2016) ........................................... 14

*Claxton v. Kum & Go, L.C.,*

    2015 U.S. Dist. LEXIS 75605 (W.D. Mo. June 11, 2015) ........................................................ 10

*Cleveland v. Whirlpool Corp.,*

    2022 U.S. Dist. LEXIS 111091 (D. Minn. June 23, 2022)............................................................ 8

*Cody v. SoulCycle Inc.,*

    2017 U.S. Dist. LEXIS 163965 (C.D. Cal. Oct. 3, 2017)............................................................. 13

*Cooper v. Integrity Home Care, Inc.,*

    2018 U.S. Dist. LEXIS 119748 (W.D. Mo. July 18, 2018)......................................................passim

*Elder v. Hilton Worldwide Holdings, Inc.,*

    2020 U.S. Dist. LEXIS 259476 (N.D. Cal. Apr. 29, 2020) .......................................................... 12

*Goldman v. Tapestry, Inc.,*

    501 F. Supp. 3d 662 (E.D. Mo. 2020) ........................................................................................ 17

*Hendricks v. Ference,*

    754 F. App'x 510 (9th Cir. 2018) ............................................................................................... 13

*Holt v. Communityamerica Credit Union,*

    2020 U.S. Dist. LEXIS 260295 (W.D. Mo. Sep. 4, 2020) ......................................................passim

*Huu Nguyen v. Nissan N. Am., Inc.,*

    932 F.3d 811 (9th Cir. 2019) ...................................................................................................... 17

*Huyer v. Buckley,*

    849 F.3d 395 (8th Cir. 2017) ...................................................................................................... 15

*In re BankAmerica Corp. Securities Litig.,*

    210 F.R.D. 694 (E.D. Mo. 2002) ............................................................................................... 10

*In re Centurylink Sales Practices & Sec. Litig.,*

    2021 U.S. Dist. LEXIS 135880 (D. Minn. July 21, 2021) ............................................................ 9

*In re Iowa Ready-Mix Concrete Antitrust Litig.,*

    2011 U.S. Dist. LEXIS 130180 (N.D. Iowa Nov. 9, 2011) ......................................................... 15

*In re Life Time Fitness, Inc., Tel. Consumer Prot. Act (TCPA) Litig.,*

    U.S. Dist. LEXIS 161734 (D. Minn. Dec. 1, 2015)..................................................................... 13

iv

*In re Pre-Filled Propane Tank Antitrust Litig.*,

2019 U.S. Dist. LEXIS 220018 (W.D. Mo. Nov. 18, 2019)...................................... 17, 18, 20, 24

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*,

2004 U.S. Dist. LEXIS 23342 (W.D. Mo. Apr. 20, 2004) ............................................................ 13

*Jacobo v. Ross Stores, Inc.*,

2018 U.S. Dist. LEXIS 248252 (C.D. Cal. Dec. 7, 2018) ........................................................ passim

*Jones v. Monsanto Co.*,

2021 U.S. Dist. LEXIS 91260 (W.D. Mo. May 13, 2021) ............................................................ 15

*Komoroski v. Serv. Partners Private Label, Inc.*,

2017 U.S. Dist. LEXIS 119292 (W.D. Mo. July 31, 2017)..................................................... 10, 15

*Larsen v. Trader Joe's Co.*,

2014 U.S. Dist. LEXIS 95538 (N.D. Cal. July 11, 2014).............................................................. 14

*Marshall v. NFL*,

787 F.3d 502 (8th Cir. 2015) ....................................................................................................... 11

*Myers v. Iowa Bd. of Regents*,

2023 U.S. Dist. LEXIS 195079 (S.D. Iowa June 22, 2023) ............................................... 8, 16, 17

*Perks v. ActiveHours, Inc.*,

2021 U.S. Dist. LEXIS 57272 (N.D. Cal. Mar. 25, 2021)............................................................ 10

*Phillips v. Caliber Home Loans, Inc.*,

2021 U.S. Dist. LEXIS 133899 (D. Minn. July 19, 2021) ............................................................. 9

*Rael v. Children's Place, Inc.*,

2020 U.S. Dist. LEXIS 13970 (S.D. Cal. Jan. 28, 2020).......................................... 14, 21, 22, 23

*Russell v. Kohl's Dep't Stores, Inc.*,

755 F. App'x 605 (9th Cir. 2018) ................................................................................................ 11

*Schoenbaum v. E.I. Dupont De Nemours & Co.*,

2009 U.S. Dist. LEXIS 114080 (E.D. Mo. Dec. 8, 2009) ............................................................ 19

*Soderstrom v. MSP Crossroads Apartments LLC*,

2018 U.S. Dist. LEXIS 17110 (D. Minn. Feb. 2, 2018) ............................................................... 17

v

*Spann v. J.C. Penney Corp.*,

211 F. Supp. 3d 1244 (C.D. Cal. 2016) ................................................................ 13

*Spann v. J.C. Penney Corp.,*

307 F.R.D. 508 (C.D. Cal. 2015) ......................................................................... 20

*Spann v. J.C. Penney Corp.,*

314 F.R.D. 312 (C.D. Cal. 2016) .................................................................... 12, 23

*Sperling v. Stein Mart, Inc.*,

291 F. Supp. 3d 1076 (C.D. Cal. 2018) ................................................................ 13

*Swinton v. SquareTrade, Inc.*,

2019 U.S. Dist. LEXIS 25458 (S.D. Iowa Feb. 14, 2019) .................................... 9, 22

*Vizcarra v. Unilever United States*,

339 F.R.D. 530 (N.D. Cal. 2021) .......................................................................... 17

*Wal-Mart Stores, Inc., v. Dukes*,

564 U.S. 338 (2011) ............................................................................................. 19

**Rules**

Fed. R. Civ. P. 23(a)(1) ............................................................................................. 19

Fed. R. Civ. P. 23(a)(2) ............................................................................................. 19

Fed. R. Civ. P. 23(a)(3) ............................................................................................. 20

Fed. R. Civ. P. 23(a)(4) ............................................................................................. 21

Fed. R. Civ. P. 23(b)(3) ................................................................................... 22, 23, 24

Fed. R. Civ. P. 23(c)(2)(B) ........................................................................................ 24

vi

## I.    Introduction.

Plaintiffs Christina Wiley, Alexandria Lee, Tawney Briggs, and Christopher Korda, and Defendant, RugsUSA, LLC, have reached a hard-fought class-wide settlement (the "Settlement"). The Settlement will provide over $14 million in relief to the Settlement Class (defined below). The Settlement meets all the criteria for preliminary approval and is an excellent outcome for the Settlement Class. Plaintiffs therefore respectfully request that the Court preliminarily approve the Settlement, approve the form and manner of the proposed notice, preliminarily certify the Settlement Class, appoint Plaintiffs' counsel as class counsel and Plaintiffs as class representatives, and schedule a final fairness hearing.

## II.    Factual background.

### A.    Plaintiffs' allegations.

Defendant, RugsUSA, LLC, sells rugs, carpets, and other home accessories through its website, RugsUSA.com. Plaintiffs Christina Wiley, Alexandria Lee, Tawney Briggs, and Christopher Korda all purchased products from Defendant's website. *See* Consolidated Class Action Complaint (ECF No. 21) ("Complaint") ¶¶15-24. Plaintiffs allege that when they made their purchases, Defendant advertised limited-time discounts off of purported "regular" prices in "strikethrough" font. *Id*. For example, Defendant advertised that the product Mr. Korda purchased—a "Chroma Tree of Paradise Medallion Rug"—was being offered at a 60% discount off of its regular price of $390.40, for a discounted price of $123.70. *Id*. ¶¶23-24. Plaintiffs allege that they, like other reasonable consumers, understood Defendant's advertising to mean that they were receiving a discount off of the prices at which Defendant usually sold its products. *Id*. ¶¶16, 18, 22, 24. But, Plaintiffs allege, Defendant's products "never sell at the purported strikethrough prices," and are instead always sold at lower, purportedly discounted prices. *Id*. ¶4. So, Plaintiffs allege, Defendant's advertised discounts were false and misleading. *Id*.

Plaintiffs allege that they were injured by Defendant's false representations because they "would not have purchased the Products, or would not have paid as much for the Products, had they known" that the products were not really on sale, and that they were not receiving the promised discounts. *Id*. ¶25. And they allege that other consumers were injured in the same way. *Id*. ¶¶80-82, 95, 146, 166. Based on these allegations, Plaintiffs filed class actions—each in their home state—

asserting claims for violations of the state consumer protection laws as well as common law claims. *See* ECF No. 1 (initial Complaint); *Lee v. RugsUSA, LLC*, No. 3:23-cv-02412 (N.D. Cal.); *Briggs v. RugsUSA, LLC*, No. 2:23-cv-00982-TSZ (W.D. Wash.); *Korda v. RugsUSA, LLC*, No. 3:23-cv-01026-AR (D. Or.).

      **B.      Settlement negotiations and mediation.**

      Plaintiffs and Defendant (collectively, "the Parties") engaged in initial motion practice, and, at the same time, began discussing early resolution of the case in or around July 2023. Settlement negotiations were arduous, contentious, and well-informed. Franzini Decl. ¶11; Agreement §II(C). The Parties agreed to attempt to negotiate a global resolution of all four cases—which all stemmed from the same factual predicate (Defendant's price advertising) and involved materially identical claims—through private mediation. Franzini Decl. ¶11. The Parties selected a well-respected mediator with extensive experience mediating consumer class actions, retired Judge Louis Meisinger. They scheduled a mediation for November 10, 2023. *See id.*; Agreement §II(C).

      To conserve party and judicial resources, the Parties agreed to stay the litigations pending the mediation. Prior to the mediation, the Parties exchanged informal discovery, including detailed financial and sales records. Agreement §II(C). Plaintiffs' counsel also collected numerous archived copies of Defendant's website showing Defendant's price advertising over time. Franzini Decl. ¶12. Plaintiffs' counsel performed a detailed analysis of Defendant's liability under the pertinent consumer protection statutes and common law. To assist with this, Plaintiffs' counsel retained a well-regarded marketing expert with extensive experience in false advertising class actions, Bruce Silverman. *Id*. Plaintiffs' counsel also performed an extensive analysis of Defendant's sales records, which were voluminous. *Id*. To assist with this, Plaintiffs' counsel retained a well-regarded economist with extensive experience, Colin Weir. *Id*. Together with Mr. Weir, Plaintiffs' counsel developed several damages models that it shared with Defendant. *Id*. This process helped the Parties to prepare substantive mediation briefs setting forth the Parties' positions on liability and damages calculations. *Id*.; Agreement §II(C). These mediation briefs were exchanged prior to the mediation. Franzini Decl. ¶12.

      On November 10, 2023, the Parties participated in a full-day, in-person mediation with

Judge Meisinger. *See id*. ¶13. After contentious negotiations that lasted into the evening, Judge Meisinger made a mediator's proposal, which both sides accepted. Following the mediation, the Parties negotiated a terms sheet, which was executed on December 1, 2023. *Id*. The Parties then began negotiating a long-form agreement, which involved several back-and-forth redline drafts, and conducted confirmatory discovery. *Id*. The Settlement Agreement was executed on February 6, 2024. Franzini Decl. ¶14. The Settlement Agreement is attached to this Motion as Exhibit 1.

The Parties did not discuss attorneys' fees, costs, and service awards to the Plaintiffs until after they finished negotiating the relief that would be afforded to the Settlement Class under the Settlement. Franzini Decl. ¶13. And at no point did the Parties negotiate any clear sailing provision—as discussed below, Defendant is free to challenge Proposed Class Counsel's fee request. *Id*.; Agreement §III(I)(1).

C.    **The Settlement.**

1.    **Class definition.**

The Settlement defines the Settlement Class as follows:

- All persons who, while in the State of California, purchased one or more products advertised as being subject to a purported discount on Defendant's website RugsUSA.com from May 17, 2020, to October 12, 2023 ("California Subclass");

- All persons who, while in the State of Washington, purchased one or more products advertised as being subject to a purported discount on Defendant's website RugsUSA.com from June 30, 2019, to October 12, 2023 ("Washington Subclass");

- All persons who, while in the State of Oregon purchased one or more products advertised as being subject to a purported discount on Defendant's website RugsUSA.com from July 13, 2022, to October 12, 2023 ("Oregon Subclass"); and

- All persons who, while in the State of Missouri purchased one or more products advertised as being subject to a purported discount on Defendant's website RugsUSA.com from August 11, 2018, to October 12, 2023 ("Missouri Subclass").

Agreement §I(DD).

### 2.    Benefits to Class Members.

The Settlement requires RugsUSA to create a non-reversionary common fund of $14,268,403, equal to 14.25% of RugsUSA's revenue from sales of products to Class Members during the timeframe covered by the Settlement (the "Class Period"). *Id*. §I(FF). This common fund is Defendant's total monetary liability under the Settlement and will be used to make payments to Class Members, and to cover notice and administration costs, service awards, and attorneys' fees and costs as approved by the Court. *Id*. §§I(FF), III(F)(1), III(I)(1).

Approximately 80% of the common fund—over $11.3 million—will be used to make direct payments to Class Members. These payments vary in proportion to how much each Class Member spent on RugsUSA.com during the Class Period, with Class Members who spent more receiving proportionally larger payments. The average payment is expected to be $34. Franzini Decl. ¶¶16, 23; *see* §III(A)(3) below (discussing this calculation).

Payments will be made one of two ways, at each Class Member's election. *Id*. §III(F)(1). Class Members can file a claim and receive payment in cash. Or, they can do nothing and automatically receive payment in RugsUSA credit. *Id*. §III(F)(1-4). Because RugsUSA credit can be automatically distributed to Class Members who do not file a claim using email and mailing addresses in Defendant's records, this distribution method ensures that every single Class Member—even those who do not file a claim—will receive the compensation they are due under the Settlement.

To file a claim, Class Members need only fill out and submit a simple claim form, either on the Settlement Website or by mail. Agreement §III(F)(2); *id*. §IV(C). The claim form allows Class Members to choose to receive their cash payment through an online service like PayPal, via a pre-paid Mastercard, or in the form of a physical check delivered by the Settlement Administrator. *Id*. §III(G)(3); Exhibit C (claim form showing these payment options). There is no penalty for choosing to receive payment in cash rather than credit. Agreement §III(F)(1).

Class Members who do not file a claim will automatically receive RugsUSA credit by email or, if no valid email address is available, by mail. *Id*. §III(F)(2). RugsUSA credit can be used toward any purchase on RugsUSA's website (including taxes and fees) with no restrictions. *Id*.

4

§III(F)(3). The credit never expires, can be used at any time with no blackout dates, and can be combined or "stacked" with any other promotions or discounts. *Id*. If a credit's value exceeds the total amount of a Class Member's order, any unused credit will remain in the Class Member's account and can be applied toward future purchases. *Id*. These features afford Class Members who choose to receive credit maximum flexibility to use their credit when and how they want.

Defendant sells numerous items that cost less than the average amount each Class Member will receive (approximately $34). In fact, Defendant sold over 50,000 items below this price point during the Class Period. Franzini Decl. ¶23; *see* §III(A)(3) below (discussing this further). This means that Class Members who elect to receive credits will be able to use them on a wide variety of products without having to spend any more of their own money. Plus, because Defendant offers free shipping in the continental United States, Class Members will not have to spend any of their credit on shipping costs. Franzini Decl. ¶23. And regardless, because each Class Member can elect to receive their benefit in cash, no Class Member will be forced to make any purchase they do not want to make to benefit from the Settlement.

### 3. Limited release of claims.

The Settlement provides a narrowly tailored release of only those claims that "arise from the same facts and claims alleged" in the Consolidated Class Action Complaint. Agreement §III(E). Under the Agreement, Class Members retain their rights against Defendant to bring any claims disconnected from the facts and allegations in this lawsuit.

### 4. Attorneys' fees and service awards.

The Settlement permits Class Counsel to apply to the Court for its reasonable attorneys' fees and expenses in an amount not to exceed 20% of the settlement fund. Agreement §III(I)(1). As discussed below, this is significantly lower than the typical fee of 25-36% awarded to Class Counsel in this District and the Eighth Circuit. *See* §III(A)(3) below.

The Settlement also permits each Class Representative to apply for a service award not to exceed $2,500. Agreement §III(I)(2). As discussed below, this is in line with what is customarily awarded to Class Representatives in this District and the Eighth Circuit. *See* §III(A)(4) below.

If less than the full amount made available to pay for attorneys' fees or service awards is

awarded to Class Counsel and the Class Representatives, the difference will not revert to Defendant. It will remain in the common fund and be distributed to Class Members. Agreement §III(I)(1).

### 5. Settlement administration and notice.

The Settlement provides that "[a]ll notice, publication, and claims administration activities shall be carried out exclusively" by a Settlement Administrator selected by the Parties and appointed by the Court. Agreement §III(G)(1). The Parties selected, and request that the Court appoint, Angeion Group ("Angeion") as Settlement Administrator. Franzini Decl. ¶26. The Parties made this selection after soliciting bids from several well-regarded settlement administration companies. *Id*. Angeion anticipates that administration will cost $95,000, and (at Plaintiffs' counsel's request) has agreed to a hard cap of $115,000. Weisbrot Decl. ¶31.

To effectuate notice, Defendant will provide to the Settlement Administrator: (1) the email address associated with each Class Member's most recent purchase; (2) the shipping address associated with each Class Member's most recent purchase to a California, Washington, Oregon, or Missouri address; and (3) a list of all purchases each Class Member made on RugsUSA.com during the Class Period. Agreement §III(D). Using this information, the Settlement Administrator will provide direct notice to each Class Member by email. Weisbrot Decl. ¶¶18-24; Agreement §IV(A-C). Because Defendant has an email address associated with each order, the Parties anticipate that the overwhelming majority of Class Members will receive email notice. Franzini Decl. ¶28. Still, if email notice to any Class Member is returned as undeliverable, the Settlement Administrator will provide notice by first class U.S. mail. Agreement §IV(B); Weisbrot Decl. ¶¶25-26. The proposed notice program is therefore expected to achieve near-universal actual notice. Franzini Decl. ¶28.

The Settlement Administrator will also create a Settlement Website. The Settlement Website will allow Class Members to submit claims online and will include detailed information concerning the Settlement, including information on how to opt out of or object to the Settlement. Agreement §IV(C); Weisbrot Decl. ¶¶27-28.

### III. The Settlement should be preliminarily approved.

Class action settlements must be preliminarily approved before notice is provided to Class Members. Fed. R. Civ. P. 23(e). "In deciding whether to grant 'preliminary approval' to a proposed

settlement, the Court evaluates two issues: (1) whether 'the court will likely be able to' grant final approval to the settlement as a fair, reasonable, and adequate compromise; and (2) whether 'the court will likely be able to' certify the class for purposes of entering judgment on the settlement." *Holt v. Communityamerica Credit Union*, 2020 U.S. Dist. LEXIS 260295, at \*3-4 (W.D. Mo. Sep. 4, 2020). Here, both requirements are met.

### A.    The proposed Settlement is fundamentally fair, adequate, and reasonable.

"Settlement agreements are generally encouraged, and are presumptively valid. A strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor. This presumption is particularly strong in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation. And the presumption is even stronger where the settlement is the product of arm's-length negotiations facilitated by a mediator. The guiding principle is that a class action settlement is a private contract negotiated between the parties and thus the Court's review is limited to ensuring that the agreement is not the product of fraud or collusion and that, taken as a whole, it is fair, adequate, and reasonable to all concerned." *Id.* at \*4-5 (cleaned up) (collecting and citing cases).

To assess whether a settlement is fair, adequate, and reasonable, courts in the Eighth Circuit consider the factors enumerated in Rule 23(e)(2), as well as four factors commonly known as the *Van Horn* factors. *Id.* at \*5. The Rule 23(e)(2) factors are "whether (A) the class representative and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; … (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2); *see id.* at \*5-6. "The four *Van Horn* factors are: (1) the merits of the plaintiffs' case weighed against the terms of the settlement; (2) the defendants' financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement." *Id.* at \*5.

7

Here, both the Rule 23(e)(2) factors and the *Van Horn* factors demonstrate that the proposed settlement is fundamentally fair, adequate, and reasonable. Accordingly, the Court will be able to grant final approval to the settlement, and so should grant preliminary approval.

### 1. Rule 23(e)(2)(A): the proposed Class Representatives and Class Counsel have adequately represented the class.

The focus of Rule 23(e)(2)(A) is "whether '(1) the class representatives have common interests with members of the class, and (2) whether the class representatives [] vigorously prosecute[d] the interests of the class through qualified counsel.'" *Cleveland v. Whirlpool Corp.*, 2022 U.S. Dist. LEXIS 111091, at *13 (D. Minn. June 23, 2022). Here, Plaintiffs have common interests with the members of the Class and, through their highly-qualified counsel, have vigorously represented the best interests of the Settlement Class.

To start, Plaintiffs have common (actually identical) interests with all Class Members. *See* §III(B)(4) below. Like all other Class Members, Plaintiffs purchased products from Defendant's website. Complaint ¶¶15-24. Like all other Class Members, Plaintiffs were shown allegedly deceptive advertising about the regular prices of the products they were purchasing, as well as about the discounts they were receiving. *Id.* And like all other Class Members, Plaintiffs allegedly would not have bought the products they purchased, or would have paid less for them, had Defendant's advertising been truthful. *Id.* ¶¶6, 27, 56. So, Plaintiffs and all other Class Members were injured by the same course of conduct in the same way. *See Myers v. Iowa Bd. of Regents*, 2023 U.S. Dist. LEXIS 195079, at *17 (S.D. Iowa June 22, 2023) (class representatives had common interests with the class where they "suffered the exact same injuries as class members.").

Plaintiffs also have vigorously prosecuted the interests of the Settlement Class. Plaintiffs have actively participated in and contributed to the case. Plaintiffs each provided documents and information needed to file their initial Complaints and the Consolidated Class Action Complaint; reviewed the pleadings and consulted with counsel on their experiences with RugsUSA; communicated with counsel in the lead-up to mediation; made themselves available for and discussed the mediation and the class-wide resolution negotiated at the mediation, with counsel; and reviewed, discussed, and approved the terms of the Settlement Agreement. And each Plaintiff

8

supports the Settlement and advocates for its approval. Wiley Decl. ¶8; Lee Decl. ¶8; Briggs Decl. ¶8; Korda Decl. ¶8; *see Phillips v. Caliber Home Loans, Inc.*, 2021 U.S. Dist. LEXIS 133899, at *19 (D. Minn. July 19, 2021) (plaintiffs adequately represented the class where they "supervised the litigation by reviewing pleadings, reviewing the Settlement and communicating with Class Counsel regarding the litigation.").

Moreover, Plaintiffs hired highly competent, qualified counsel to represent the interests of the Settlement Class. Class Counsel at Dovel & Luner and Bursor & Fisher are accomplished litigators with ample experience in class actions and complex litigation, including in cases very similar to this one. *Swinton v. SquareTrade, Inc.*, 2019 U.S. Dist. LEXIS 25458, at *36 (S.D. Iowa Feb. 14, 2019); Franzini Decl. ¶¶4-8; Kopel Decl. ¶4-6; *see In re Centurylink Sales Practices & Sec. Litig.*, 2021 U.S. Dist. LEXIS 135880, at *17 (D. Minn. July 21, 2021) (adequate representation where "the Class was represented in the litigation and the negotiations by experienced Lead Counsel, who have prosecuted numerous securities class actions."). And as detailed above, both firms diligently performed extensive work on behalf of the Class before and after filing, and in the period leading up to the negotiations. *See* §II(B). And, they arduously negotiated an outstanding settlement for the Class. *Id.*

In short, Plaintiffs have common interests with the Settlement Class and vigorously prosecuted this case on the Settlement Class's behalf through highly competent, experienced counsel. This factor supports preliminary approval.

### 2.  Rule 23(e)(2)(B): The Settlement is the product of arm's length negotiation.

The Settlement here is the product of arm's length negotiation between the Parties, each represented by competent and well-informed counsel.

As discussed above, Plaintiffs negotiated the Settlement through their highly competent counsel with significant experience with complex litigation and class actions. §III(A)(1) above; Franzini Decl. ¶¶4-8; Kopel Decl. ¶4-6.

Plaintiffs' counsel was well-informed in all negotiations and negotiated the Settlement only after significant analysis of the case. Counsel engaged in extensive pre-filing investigations before

9

the cases were even filed. Franzini Decl. ¶12. And, before the Settlement was reached, the Parties engaged in extensive informal discovery, including the exchange of financial data and sales records which informed both liability and damages issues. Plaintiffs' counsel also consulted with two well-regarded experts. *See* §II(B) above. And, the Parties exchanged substantive and detailed mediation briefs addressing all pertinent issues, which gave them the chance to fully understand the relevant claims and defenses, as well as Defendant's exposure, during Settlement negotiations. Franzini Decl. ¶12; *see In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002) ("In evaluating the settlement, the Court: 'should keep in mind the unique ability of class and defense counsel to assess the potential risks and reward of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery.'"); *Komoroski v. Serv. Partners Private Label, Inc.,* 2017 U.S. Dist. LEXIS 119292, at *9 (W.D. Mo. July 31, 2017) (preliminarily approving settlement where "the parties engaged in informal discovery and extensive arms-length settlement negotiations."); *Perks v. ActiveHours, Inc.*, 2021 U.S. Dist. LEXIS 57272, at *13 (N.D. Cal. Mar. 25, 2021) ("Despite the relatively early stage of the litigation, Class Counsel obtained sufficient information to make an informed decision about the Settlement and about the legal and factual risks of the case").

In addition, the Parties enlisted the services of a retired judge with extensive mediation experience to mediate the case and guide the settlement discussions. And, the Settlement was the product of a mediator's proposal given by that mediator at the mediation. Agreement §II(C); Franzini Decl. ¶11; s*ee Claxton v. Kum & Go, L.C.,* 2015 U.S. Dist. LEXIS 75605, at *16 (W.D. Mo. June 11, 2015) (approving settlement as "a product of extensive negotiation conducted over a period of several months and requiring the services of a mediator"); *Satchell v. Fed. Express Corp.*, 2007 U.S. Dist. LEXIS 99066, at *17 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.").

In short, the Settlement Agreement was the result of non-collusive, arm's-length negotiations through experienced counsel facilitated by an experienced mediator. This factor weighs in favor of approval. *See Holt*, 2020 U.S. Dist. LEXIS 260295, at *4 (the presumption that

10

settlement agreements are valid is "even stronger where the settlement is the product of arm's-length negotiations facilitated by a mediator.").

### 3.    Rule 23(e)(2)(C): The Settlement provides excellent relief.

The quality of the relief achieved for the Settlement Class in view of the strength of their claims and the continued risk of litigation is the single most important factor in determining whether to preliminarily approve a settlement. *See Anderson v. Travelex Ins. Servs.*, 2021 U.S. Dist. LEXIS 181238, at *6 (D. Neb. Sep. 22, 2021) ("The most important factor" in determining whether to approve a settlement is the "amount offered in settlement" balanced with "the strength of the case for plaintiffs on the merits."); *Marshall v. NFL*, 787 F.3d 502, 508 (8th Cir. 2015) ("The single most important factor in determining whether a settlement is fair, reasonable, and adequate is a balancing of the strength of the plaintiff's case against the terms of the settlement."). Here, the Settlement affords the Settlement Class excellent relief notwithstanding the existence of serious obstacles to recovering on the asserted claims. This factor therefore strongly weighs in favor of approval.

The Settlement affords Class Members excellent relief. As described above, the Settlement creates a non-reversionary common fund of $14,268,403 to benefit Class Members, amounting to 14.25% of Defendant's gross revenues derived from sales to Class Members during the Class Period. Agreement §I(FF). This will afford Class Members an average of approximately $34 of direct relief *after all settlement expenses, attorneys' fees, and other costs are paid*. This is an outstanding recovery—far more than what consumers typically recover in similar cases. *See, e.g.*, *Baker v. Seaworld Entm't, Inc.*, 2020 U.S. Dist. LEXIS 131109, at *32 (S.D. Cal. July 24, 2020) (noting that a recovery amounting to "14% of the maximum amount the Class could have recovered" is "higher than 'the typical recovery in similar court-approved settlements by considerable margin'"); *Jacobo v. Ross Stores, Inc.*, 2018 U.S. Dist. LEXIS 248252, at *25 (C.D. Cal. Dec. 7, 2018) (approving an $4,854,000 claims made settlement in a fake discount case with an average award of approximately $16.70, assuming a 2% claims rate, and a cash option of only 75% the value of vouchers); *Russell v. Kohl's Dep't Stores, Inc.*, 755 F. App'x 605, 608 (9th Cir. 2018) (affirming approval of a $6,150,000 claims made fake discount settlement where counsel estimated an average award of $20 per claimant); *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312 at 332 (C.D.

11

Cal. 2016) (preliminarily approving a claims made fake discount settlement); *Chester v. TJX Cos.*, 2017 U.S. Dist. LEXIS 201121, at *6 (C.D. Cal. Dec. 5, 2017) (same).

In addition to providing excellent topline relief, the Settlement also provides for a highly desirable method of distributing that relief to Class Members. The Settlement allows any Class Member who wants cash to receive the full amount to which they are entitled in cash—without any penalty for choosing cash. Agreement §III(F)(1). There is no cap (or any restriction) on how many Class Members can choose to receive cash. And, because the average payment in this case is $34, there is a significant incentive for Class Members who prefer cash to file a claim. *See Elder v. Hilton Worldwide Holdings, Inc.*, 2020 U.S. Dist. LEXIS 259476, at *13 (N.D. Cal. Apr. 29, 2020) (explaining that a "$25 or $50 cash option [is] much more likely to justify the transaction costs of filing a claim" than a smaller cash option).

The Settlement also ensures that every single Class Member will actually receive the relief to which they are entitled: under the terms of the Settlement, any Class Member who does not file a claim will automatically receive their payment in the form of RugsUSA credit, using information already in Defendant's possession. *See* §II(C)(2) above, Agreement §III(F)(2). This eliminates the need for Class Members to file a claim to obtain relief and results in far more comprehensive relief than the vast majority of similar settlements, which typically afford relief only to those class members who actually file a claim. *See e.g.*, *Spann*, 314 F.R.D. at 332 (preliminarily approving a fake discount settlement where consumers had to file a claim form to receive a settlement benefit); *Chester*, 2017 U.S. Dist. LEXIS 201121, at *21 (same); *Jacobo*, 2018 U.S. Dist. LEXIS 248252, at *25 (same).

What's more, the credits Class Members will receive under this automatic distribution procedure are as flexible as possible. They can be used for any product on RugsUSA.com at any time, with no restriction. *See* §II(C)(2) above; Agreement §III(F)(3). They can be combined with any other promotion or discount. *Id.* They never expire. *Id.* And, Defendant sells numerous products for less than the average credit amount of $34, so Class Members will not have to pay Defendant any more of their own money to use the RugsUSA credit they receive under the Settlement. Franzini Decl. ¶¶16, 23. Defendant also offers free shipping in the continental United States,

12

meaning that Class Members will not have to pay out of pocket for shipping and handling, either. *Id.* ¶23. In short, the credits are not disfavored percent off "coupons"; they are flexible vouchers with real value that Class Members can use whenever they want, for any product on Defendant's website, without spending any more of their own money. *See, e.g.*, *In re Life Time Fitness, Inc., Tel. Consumer Prot. Act (TCPA) Litig.*, U.S. Dist. LEXIS 161734, at \*5 (D. Minn. Dec. 1, 2015) (settlement was not a coupon settlement where class members could choose between a cash award or a credit to be used at defendant's gyms); *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 2004 U.S. Dist. LEXIS 23342, at \*11 (W.D. Mo. Apr. 20, 2004) (settlement was "not a 'coupon' settlement" because class members would "not be required to purchase any additional services or items to receive a benefit or cash payment."); *Hendricks v. Ference*, 754 F. App'x 510, 512 (9th Cir. 2018) (vouchers for purchasing Starkist Tuna were "not a form of coupon relief " because the vouchers "did not expire" and were transferrable, "could be used at a wide variety of stores," and had "sufficient value that class members could use them to purchase tuna without additional out-of-pocket expense"); *Cody v. SoulCycle Inc.*, 2017 U.S. Dist. LEXIS 163965, at \*19 (C.D. Cal. Oct. 3, 2017) (noting that "there is a crucial difference between coupons and vouchers" and holding that credits for SoulCycle classes are not coupons); *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1262 n.14 (C.D. Cal. 2016) (J.C. Penney store credits were not coupons).

In short, the Settlement affords Class Members excellent topline relief, as well as an excellent and comprehensive mechanism for distributing that relief to class members. This supports preliminary approval.

Continued litigation posed significant risks and costs. While Plaintiffs' counsel is very confident in the strength of the case, it is true that fake discount cases present complicated factual and legal issues and have been dismissed at multiple stages of litigation, including in this Circuit. *See e.g.*, *Azimpour v. Select Comfort Corp.*, 2016 U.S. Dist. LEXIS 77126, at \*10 (D. Minn. June 13, 2016) (granting defendant's motion to dismiss in a fake discount case); *Adams v. Haan*, 2020 U.S. Dist. LEXIS 176002, at \*1 (C.D. Cal. Sep. 3, 2020) (same); *Sperling v. Stein Mart, Inc.*, 291 F. Supp. 3d 1076, 1087 (C.D. Cal. 2018) (granting defendant's motion for summary judgment and denying plaintiffs' motion for class certification in a fake discount case); *Chowning v. Kohl's Dep't*

13

*Stores, Inc.*, 2016 U.S. Dist. LEXIS 188341, at \*1 (C.D. Cal. Apr. 1, 2016) (denying motion for class certification in a fake discount case).

And indeed, Defendant contested every aspect of Plaintiffs' case. Among other arguments, Defendant asserted that its pricing was not deceptive and was in line with its competitors; and that Plaintiffs were not injured and could not show damages because they received the items they ordered at the prices they agreed to pay. Franzini Decl. ¶22. Defendant also argued that Plaintiffs would be unable to certify a class, including because determining whether an individual consumer was deceived would require individual inquiries, and because Plaintiffs could not calculate class-wide damages or restitution. *Id*. While Plaintiffs disagree with these arguments, counsel has significant experience with fake discount cases and recognizes that these arguments present risk. *Id*.; *Chowning v. Kohl's Dep't Stores, Inc.*, 2016 U.S. Dist. LEXIS 37261, at \*38 (C.D. Cal. Mar. 15, 2016) (granting summary judgment in a fake discount case because the plaintiffs "failed to demonstrate a viable measure of restitution," and rejecting several proposed models); *Rael v. Children's Place, Inc.*, 2020 U.S. Dist. LEXIS 13970, at \*30 (S.D. Cal. Jan. 28, 2020) (preliminarily approving fake discount settlement and acknowledging risk of continued litigation where the "state of the law regarding the appropriate method for calculating damages or restitution in these types of false pricing cases is in flux"). Plus, even if Plaintiffs were successful in certifying a class, they could still face summary judgment, and would need to win at trial and potentially beat back any appeals. *See Larsen v. Trader Joe's Co.*, 2014 U.S. Dist. LEXIS 95538, at \*12 (N.D. Cal. July 11, 2014) ("[S]ettlement is favored where, as here, significant procedural hurdles remain, including class certification and an anticipated appeal."). And, even in the best-case scenario, continuing to trial would present substantial expense and delay.

In short, the outcome here is particularly excellent given the substantial risks and challenges presented by continued litigation, which further supports preliminary approval.

Proposed Class Counsel will seek a reasonable fee award, and the Settlement is not contingent on fees being awarded. Proposed Class Counsel will seek their fees as a percentage of the $14,268,403 common fund created for the benefit of the Settlement Class. The Settlement allows Class Counsel to seek an award of attorneys' fees and costs of up to 20% of the Settlement

14

Common Fund created by the Settlement. Agreement §III(I)(1). Proposed Class Counsel will file their fee petition 15 days before the deadline for Class Members to file objections or exclude themselves from the Settlement. *Id.* §XXVI.

Under the common fund doctrine, it is fair and reasonable for the Settlement to provide for attorneys' fees to be paid from the Settlement Common Fund. *See, e.g.*, *Bishop v. Delaval Inc.,* 2022 U.S. Dist. LEXIS 237633, at *4 (W.D. Mo. June 7, 2022) (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)) ("[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."); *Barfield v. Sho-Me Power Elec. Coop.*, 2015 U.S. Dist. LEXIS 70166, at *9 (W.D. Mo. June 1, 2015) ("The percentage-of-the-benefit, or percentage-of the-fund approach 'permits an award of fees that is equal to some fraction of the common fund that the attorneys were successful in gathering during the course of the litigation.'").

The amount of fees the Settlement Agreement provides for—20% of the Settlement Common Fund—is also fair and reasonable. In fact, it is at the very low end of attorney fee awards in this Circuit, which typically range from 25-36%. *See In re Iowa Ready-Mix Concrete Antitrust Litig.*, 2011 U.S. Dist. LEXIS 130180, at *14 (N.D. Iowa Nov. 9, 2011) ("courts in this circuit . . . have frequently awarded attorney fees between twenty-five and thirty-six percent of a common fund in other class actions."); *Huyer v. Buckley*, 849 F.3d 395, 399 (8th Cir. 2017) (explaining that in this Circuit, "courts have frequently awarded attorneys' fees ranging up to 36% in class actions."); *see Bishop*, 2022 U.S. Dist. LEXIS 237633, at *7 (Bough, J.) ("An award of one-third of the settlement fund is reasonable and characteristic of other awards in class action suits."); *Jones v. Monsanto Co.*, 2021 U.S. Dist. LEXIS 91260, at *23 (W.D. Mo. May 13, 2021) (fee award of 25% is "comfortably below the range frequently approved in class action settlements").

Finally, the Settlement is not contingent on the Court granting counsel's request for fees. Agreement §III(I)(1). The Settlement does not contain any "clear sailing" provision: Defendant is free to oppose the amount of fees requested by Class Counsel. Agreement §III(I)(1) ("Defendant may challenge or oppose the amount of fees requested by Class Counsel."); *see Komoroski*, 2017 U.S. Dist. LEXIS 119292, at *21 (noting that a "'clear sailing' provision is a potential red flag" in a

15

class action settlement). Nor does the Settlement provide for any "reverter" of fees—if the Court awards less than the full amount of attorneys' fees requested, any remaining funds will be divided and distributed to Class Members. *Id.* §III(I)(1). Under no circumstances will funds revert to Defendant. Franzini Decl. ¶19.

In short, the Settlement's provisions regarding attorneys' fees are reasonable. This further supports preliminary approval. *Holt*, 2020 U.S. Dist. LEXIS 260295, at *8 (this factor supported preliminary approval where "any award of attorneys' fees [would] be subject to the review and approval of [the] Court at the Final Approval Hearing. And because Plaintiff's motion for attorneys' fees [would] be made prior to the Class Members' deadlines to object to or exclude themselves from the Settlement, Class Members [would] have the opportunity to review the attorneys' fees before deciding whether or not to opt out of or object to the Settlement").

There are no other agreements relevant under Rule 23(e)(3). The Parties have not made any agreements in connection with this Settlement other than the Settlement Agreement discussed in this Motion. Accordingly, this factor is not relevant to preliminary approval.

        **4.**      **Rule 23(e)(2)(C): The Settlement Fund treats Class Members equitably relative to each other.**

"Under the Federal Rules of Civil Procedure, the court may approve a settlement only after considering if 'the proposal treats class members equitably relative to each other.'" *Myers v. Iowa Bd. of Regents*, 2023 U.S. Dist. LEXIS 195079, at *24 (S.D. Iowa June 22, 2023). "The relevant inquiry is whether '[t]he settlement provides relief commensurate to the value of their [] claims.'" *Id.*

Here, Class Members will receive payment in proportion to the amount they spent on RugsUSA.com during the Class Period. Agreement §III(F)(1) (explaining that Class Members' Cash or Credit Benefits will equal 14.25% of their total purchases during the Class Period, minus their proportional share of other settlement costs). All Class Members have materially similar claims based on an identical factual predicate—Defendant's alleged fake discount scheme. Complaint ¶¶1-7, 51-56. And, under all conceivable damages models, a Class Member's damages correlate with the amount of their purchases. *See Huu Nguyen v. Nissan N. Am., Inc.*, 932 F.3d 811,

16

818 (9th Cir. 2019) (holding that a benefit of the bargain damages model tied to a consumer's specific expectation damages is appropriate under CA consumer protection law); *Goldman v. Tapestry, Inc.*, 501 F. Supp. 3d 662, 669 (E.D. Mo. 2020) (same under Missouri law); *Vizcarra v. Unilever United States*, 339 F.R.D. 530, 553 (N.D. Cal. 2021) (approval of damages model for false advertising claims that calculates price premium and then applies that price premium to each consumers' specific purchases). So, it makes sense for all Class Members to be treated the same, but for their payout to depend on the total amount of relevant purchases they made. *See Myers*, 2023 U.S. Dist. LEXIS 195079, at *24 ("The implementation of a pro rata structure for award payouts, which correlates recovery amount to the scope of the injury, supports a settlement being equitable"); *In re Pre-Filled Propane Tank Antitrust Litig.*, 2019 U.S. Dist. LEXIS 220018, at *9 (W.D. Mo. Nov. 18, 2019) ("[T]he proposed Plan of Allocation treats Settlement Class Members equitably relative to each other and is fair and adequate because it distributes the settlement funds according to each Settlement Class Member's injury").

In addition to providing relief to all Class Members, the Settlement allows the named Plaintiffs to petition the Court for service awards of up to $2,500. Agreement §III(I)(2). "[C]ourts in the Eighth Circuit routinely approve service award payments to class representatives for their assistance to a plaintiff class." *Soderstrom v. MSP Crossroads Apartments LLC*, 2018 U.S. Dist. LEXIS 17110, at *26 (D. Minn. Feb. 2, 2018). "District courts in the Eighth Circuit 'regularly grant service awards of $10,000 or greater.'" *Thornburg v. Open Dealer Exch., LLC*, 2019 U.S. Dist. LEXIS 121204, at *8 (W.D. Mo. July 22, 2019) (quoting *Caligiuri v. Symantec Corp.*, 855 F.3d 860, 867 (8th Cir. 2017)). So here, given the Plaintiffs' diligence and commitment to this action discussed above, service awards of up to $2,500—which together represent less than 0.1% of the total Settlement Fund—are equitable and justified. *See Ahmed v. HSBC Bank USA*, 2019 U.S. Dist. LEXIS 104401, at *35 (C.D. Cal. June 21, 2019) (a service award "amounting to less than one percent of the settlement fund" was "warranted given the substantial efforts plaintiffs [had] undertaken on behalf of the class.").

In short, the Settlement treats absent Class Members equitably compared to each other, and allows for only a modest and deserved service award for the named Plaintiffs. This factor supports

preliminary approval.

### 5.    The *Van Horn* factors also support preliminary approval.

"In the Eighth Circuit, courts have long" considered the four factors first laid out in the Circuit's decision in *Van Horn*: (1) "the merits of the plaintiff's case, weighed against the terms of the settlement;" (2) "the defendant's financial condition;" (3) "the complexity and expense of further litigation; and" (4) the amount of opposition to the settlement." *In re Pre-Filled Propane Tank*, 2019 U.S. Dist. LEXIS 220018, at *7-8.

The first and third factors overlap substantially with the Rule 23(e) factors. As discussed above, while Plaintiffs' counsel believes this case is strong, Defendant raised multiple substantive arguments; and continued litigation would require certifying a class despite Defendant's opposition, possibly contesting a summary judgment motion, and winning at trial. Each of these steps would impose not only significant risk to the Class's recovery, but also substantial cost and delay. *See Cooper v. Integrity Home Care, Inc.*, 2018 U.S. Dist. LEXIS 119748, at *10-11 (W.D. Mo. July 18, 2018) (while Plaintiff's claims had "legal merit," the settlement was reasonable because it "provide[d] an immediate monetary award to all claimants without the costs and risks that accompany a trial," and because, without the settlement, the "case would likely involve additional motions relating to class certification, discovery, and summary judgment, as well as trial and appeal."); *Holt*, 2020 U.S. Dist. LEXIS 260295 at *7 ("[T]he complexity and expense of further litigation … weigh[d] in favor of preliminarily approving the Settlement" where "in the absence of the Settlement, the parties would have engaged in extensive motion practice, including a possible appeal, and further discovery."). Given these risks, and given the excellent relief provided by the Settlement, *see* §III(A)(3) above, preliminary approval is warranted.

The second and fourth *Van Horn* factors also support preliminary approval. Defendant has committed to, and is able to, fund the settlement, including both the cash and credit benefits promised to Class Members. Franzini Decl. ¶15 (Defendant has represented that it can afford to satisfy its requirements under the Settlement Agreement); *see Holt*, 2020 U.S. Dist. LEXIS 260295, at *6-7 (this factor favored preliminary approval where "Defendant, a credit union represented by sophisticated counsel, [was] able and [had] already agreed to fund the $2,325,000 settlement.");

18

*Cooper*, 2018 U.S. Dist. LEXIS 119748, at *11 (this factor favored preliminary approval where Defendant "concede[d] that it [could] pay the full settlement amount."). And, Class Counsel is not currently aware of any Class Member who intends to object to the Settlement. Franzini Decl. ¶29; *Cooper*, 2018 U.S. Dist. LEXIS 119748, at *12 (this factor favored approval where "the parties [were] not presently aware of any class members who intend to oppose settlement."). Plus, this Court will have the opportunity to consider any objections when the Parties seek final approval, and to hear from any objectors who wish to speak at the fairness hearing. *See Holt*, 2020 U.S. Dist. LEXIS 260295, at *7 (this factor was met where "any objections [would] be heard by the Court at the Final Approval Hearing.").

**B.     The Court should conditionally certify the Settlement Class for settlement purposes, because it will likely be able to certify it for judgment purposes.**

To determine whether it will likely be able to certify the class for purposes of entering judgment on the settlement, a court must evaluate "whether the proposed classes meet the four requirements of Rule 23(a) and any one of the requirements of the subsections of Rule 23(b)." *Holt*, 2020 U.S. Dist. LEXIS 260295, at *9. Here, as described below, the proposed class meets all the requirements of Rule 23(a), as well as the predominance and superiority requirements of Rule 23(b)(3). So, the Court should conditionally certify the Settlement Class.

**1.     The Proposed Class is sufficiently numerous.**

Rule 23(a)(1) is satisfied when the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "While there is no specific threshold number that satisfies this requirement, forty class members is generally sufficient." *Schoenbaum v. E.I. Dupont De Nemours & Co.*, 2009 U.S. Dist. LEXIS 114080, at *22 (E.D. Mo. Dec. 8, 2009). Here, the Settlement Class consists of approximately 332,475 members. Franzini Decl. ¶17; Agreement §IV(A). This more than satisfies Fed. R. Civ. P. 23(a)(1).

**2.     There are questions of law and fact common to the class.**

Rule 23(a)(2) requires the existence of questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). But "for purposes of Rule 23(a)(2) even a single common question will do." *Wal-Mart Stores, Inc., v. Dukes*, 564 U.S. 338, 359 (2011). "The interests of the various plaintiffs do not

have to be identical to the interests of every class member; it is enough that they share common objectives and legal factual positions." *Cooper*, 2018 U.S. Dist. LEXIS 119748, at *13. In other words, commonality is easily shown where class members "allege[] the same injury … from the same unlawful conduct." *In re Pre-Filled Propane Tank*, 2019 U.S. Dist. LEXIS 220018, at *11-12.

Here, the commonality requirement is satisfied because Class Members all suffered the same injury from the same unlawful conduct: all Class Members purchased purportedly discounted products from RugsUSA.com, and were allegedly injured because RugsUSA's advertised promotions were deceptive and unlawful. Given the identical factual and legal issues raised by RugsUSA's alleged conduct, there are numerous common questions of law and fact that will generate common answers for all Class Members. These include, but are not limited to: "whether defendant made false statements in its advertisements; [] whether defendant's advertisements were likely to deceive a reasonable consumer; [] whether defendant's statements regarding its pricing were material to plaintiffs' purchasing decisions … [and] whether plaintiffs have suffered damages as a result of defendant's conduct." *Spann v. J.C. Penney Corp.,* 307 F.R.D. 508, 518 (C.D. Cal. 2015) (certifying class in fake discount case); *see Chester*, 2017 U.S. Dist. LEXIS 201121, at *14 (holding, in a fake discount case, "there is a common question of whether Defendants' price comparison advertising resulted in deceptive price comparisons that were likely to deceive a reasonable consumer."); *Jacobo*, 2018 U.S. Dist. LEXIS 248252, at *18 (commonality satisfied in a fake discount case where there was a common question of "whether [Defendant]'s price comparison advertising resulted in deceptive price comparisons that were likely to mislead a reasonable consumer.").

### 3.    Plaintiffs' claims are typical of those of the Settlement Class.

Rule 23(a)(3) requires the class representative's claims or defenses be "typical of the claims or defenses of the class[.]" Fed. R. Civ. P. 23(a)(3). Typicality "just 'means that there are 'other members of the class who have the same or similar grievances as the plaintiff.'" *Holt*, 2020 U.S. Dist. LEXIS 260295, at *10. And it is "fairly easily met,"—"[f]actual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Id.*

20

Here, Plaintiffs' claims are typical of the Settlement Class. Each Plaintiff alleges that they, like all other Class Members, purchased products from Defendant's website and believed, based on Defendant's advertising, that they were receiving a discount and paying less than Defendant's regular prices. Complaint ¶¶15-24. As with other members of the Settlement Class, Plaintiffs raise claims under their states' consumer protection laws (along with several common law claims). *Id*. ¶¶68-230. "[L]ike other Class Members, Plaintiffs' primary injury is the loss of income from purchases made at [Defendant's website] as a result of [Defendant]'s false discounts." *Rael*, 2020 U.S. Dist. LEXIS 13970, at *15; *see Jacobo*, 2018 U.S. Dist. LEXIS 248252, at *19 (typicality was satisfied in fake discount case because the "named Plaintiffs' claims are premised on exactly the same practice as those of the absent Class Members: [Defendant]'s allegedly deceptive advertising in its U.S. stores."). And although the Settlement Class comprises class members from four different states, Defendant's conduct was uniform in those four states; and the consumer protection and common law claims of those states, as applied to Defendant's conduct, are materially similar. *See generally* Complaint ¶¶68-180 (asserting materially identical counts with materially identical elements). Plus, in any event, there is one named Plaintiff from each represented state, meaning that—at a minimum—each Plaintiff's claim is typical of the claims of the subclass from that state.

In short, Plaintiffs' claims arose from the same conduct that injured all Class Members—Defendant's allegedly deceptive sales practices—and Plaintiffs and Class Members were allegedly harmed in the same way by this conduct. Plaintiffs' claims are typical of those of the Settlement Class.

### 4. Plaintiffs and proposed Class Counsel have fairly and adequately represented the Class's interests.

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy requirement is met where: '1) the representatives and their attorneys are able and willing to prosecute the action competently and vigorously; and 2) each representative's interests are sufficiently similar to those of the class that it is unlikely that their goals and viewpoints will diverge.'" *Holt,* 2020 U.S. Dist. LEXIS 260295, at *11.

Here, as explained above, each Plaintiff has assisted counsel and actively participated in this litigation on behalf of the Class. And proposed Class Counsel is experienced and competent in class litigation, and consumer protection litigation in particular. *Cooper*, 2018 U.S. Dist. LEXIS 119748, at \*13-14; *see* §III(A)(1) above; Franzini Decl. ¶¶4-8; Kopel Decl. ¶¶4-6. Counsel has vigorously protected the Settlement Class's interests in this case, culminating in an excellent Settlement that provides outstanding relief to Class Members. *See* §III(A)(3) above.

Moreover, Plaintiffs have the same interests as all other Class Members. Each Plaintiff alleges that they, like all other Class Members, purchased products from Defendant's website and believed, based on Defendant's advertising, that they were receiving a discount and paying less than Defendant's regular prices. Complaint ¶¶15-24. And, "like other Class Members, Plaintiffs' primary injury is the loss of income from purchases made at [Defendant's website] as a result of [Defendant]'s false discounts." *Rael*, 2020 U.S. Dist. LEXIS 13970, at \*15. In other words, Plaintiffs "do not have interests that are antagonistic to the Class and are fully aligned with the interests of other Class Members." *Bisphenol-A (BPA) Polycarbonate Plastic Prods. Liab. Litig. v. Avent Am., Inc.*, 2011 U.S. Dist. LEXIS 2416, at \*40 (W.D. Mo. Jan. 7, 2011); *see* Wiley Decl. ¶7; Lee Decl. ¶7; Briggs Decl. ¶7; Korda Decl. ¶7; *Swinton*, 2019 U.S. Dist. LEXIS 25458, at \*36 (plaintiff was an adequate representative where he "and other class members share the same objectives, and their claims arise from the same general factual position.").

### 5.    The Settlement Class meets the requirements of Rule 23(b)(3).

Rule 23(b)(3) asks whether (1) "questions of law or fact common to the members of the class predominate over any questions affecting only individual members"; and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Here, the proposed Settlement Class meets both requirements.

<u>Common questions predominate in the Settlement Class</u>. "In this Circuit, predominance is satisfied 'if the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Holt,* 2020 U.S. Dist. LEXIS 260295, at \*11-12. This inquiry is "relaxed in the settlement context." *Id*. at \*11.

Here, Plaintiffs allege that—by advertising false sales, discounts, and prices that deceived

consumers—Defendant acted unlawfully towards all Class Members in the same way. And, this "basic common question — whether defendant's price comparison scheme generated false advertisements that deceived consumers — predominates." *Spann*, 314 F.R.D. at 322; *see Chester*, 2017 U.S. Dist. LEXIS 201121, at *15 (same in a fake discount case). Indeed, "regardless of the volume, price, timing, or location for any [Class Member's] qualifying purchase, all claims will require the Court to analyze whether Defendant's pricing scheme and pattern of discounting prices was lawful." *Rael*, 2020 U.S. Dist. LEXIS 13970, at *18-19. Thus, "common questions predominate over individual questions." *Id*. at *18. And for this reason, class actions involving allegedly fake discounts are routinely certified for settlement purposes. *See, e.g., id*. at *12; *Chester*, 2017 U.S. Dist. LEXIS 201121, at *15; *Jacobo*, 2018 U.S. Dist. LEXIS 248252, at *23.

A class action is the superior mechanism for resolution of this dispute. The superiority requirement asks whether a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Here, Defendant's products regularly sell for less than $30, and even Class Members who purchased more expensive rugs or other products, are unlikely to have spent more than a few hundred, or at most a few thousand, dollars. *See* Franzini Decl. ¶23; Complaint, ¶¶15-23 (detailing how much each Plaintiff spent on Defendant's products). So, were Class Members to litigate their claims on an individual basis, they would quickly spend more on litigating than they could hope to recover in damages. *See Bisphenol-A (BPA) Polycarbonate Plastic Prods.*, 2011 U.S. Dist. LEXIS 2416, at *41-42 (finding superiority where "the cost of litigation far out pace[d] the individual recovery available to any Plaintiffs."); *Jacobo*, 2018 U.S. Dist. LEXIS 248252, at *22 (finding a class action was superior in a fake discount case because "[e]ach putative class member's claim is likely too small to justify the cost or risk of litigation. Thus, a class action is a more efficient means for each individual class member to pursue his or her claims.").

Plus, importantly, Class Members' claims rely on nearly identical facts and law. And without a class action, each Class Member would have to litigate Defendant's liability separately even though it can be readily established using common evidence. *See* III(B)(2) above. In other words, "a significant number of individual lawsuits could be filed, and '[s]eparate proceedings

23

would produce duplicate efforts, unnecessarily increase the costs of litigation, impose an unwarranted burden on this Court and other courts throughout the country, and create the risk of inconsistent results for similarly situated parties.'" *In re Pre-Filled Propane Tank*, 2019 U.S. Dist. LEXIS 220018, at *16. Indeed, before the filing of the Consolidated Class Action Complaint in this Court, each of the named Plaintiffs had filed their own action in separate courts across the country. And barring this Settlement, other Class Members would need to do the same to seek relief. Class resolution is a significantly "more efficient use of the parties'—and the judiciary's—resources." *Cooper,* 2018 U.S. Dist. LEXIS 119748, at *15.

As an additional matter, there is no indication here that any individual litigation related to Plaintiffs' claims is currently pending in other forums—Mrs. Lee, Ms. Briggs, and Mr. Korda each originally filed separate cases in other courts, but these have since been dismissed so that they could be consolidated here for settlement approval purposes. And, finally, there is also no reason to believe this particular forum is undesirable. Fed. R. Civ. P. 23(b)(3)(A)-(D).

* * *

In short, the proposed Settlement Class satisfies the requirements of Rule 23 and should be conditionally certified.

### C.    The Court should approve the proposed notice plan.

Under Rule 23(e)(1) "[t]he court must direct notice in a reasonable manner to all class members who would be bound by" a proposed settlement. Here, the Parties' proposed notice plan is the best notice that is practicable under the circumstances, and should be approved by the Court. Fed. R. Civ. P. 23(c)(2)(B); *Amchem Prods. v. Windsor*, 521 U.S. 591, 617 (1997).

The Parties have devised a multi-step notice plan designed to provide all necessary information to Class Members to enable them to make a well-informed decision about their participation in the Settlement. First, Defendant will provide a Class List identifying Class Members, as well as their emails and relevant addresses, to the Settlement Administrator. Agreement §III(D). Then, as discussed above, all Class Members will receive direct notice by email or, if email notice fails, by mail. *Id.* §IV(A-B); Weisbrot Decl. ¶¶20-26. The notices are drafted in plain English and provide all relevant information about the case, the Settlement, and Class

24

Members' rights. Agreement, Exhibits A, B, D. In particular, the notices provide information about the nature of the claims asserted in the lawsuit, a summary of the Settlement terms, relevant deadlines, and a statement about the release of claims. *Id*. The notices also inform Class Members about their ability to file a claim for a cash payment and their right to opt out or object to the Settlement. *Id*.

In addition to providing Class Members with notice, the Settlement Administrator will establish a Settlement Website, where Class Members can review relevant Court documents, and important dates and deadlines pertinent to the Settlement. Agreement §IV(C); Weisbrot Decl. ¶¶27-28.

In light of this comprehensive plan, the Court should approve the notice plan and appoint Angeion Group as the Settlement Administrator. Angeion has significant experience administering class action settlements and anticipates that the proposed plan will provide the best notice practicable. *Id*. ¶33.

## IV.    Conclusion.

For the foregoing reasons, the Motion should be granted.

Dated: February 26, 2024                    Respectfully submitted,

By: */s/ Simon Franzini*
Simon Franzini (Cal. Bar No. 287631)*
simon@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

Yitzchak Kopel
ykopel@bursor.com
Julian Diamond *
jdiamond@bursor.com
Matthew Girardi *
mgirardi@bursor.com
BURSOR & FISHER, P.A.
1330 Avenue of the Americas, Floor 32
New York, NY  10019

25

Telephone: (646) 837-7150

* Admitted *Pro Hac Vice*

*Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 26, 2024, a copy of the foregoing document was electronically filed through the ECF system and will be sent electronically to all persons identified on the Notice of Electronic Filing.


Dated: February 26, 2024                    */s/ Simon Franzini*
                                            Simon Franzini

27

# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

<table>
<tr>
<td>
EVELIN PRECIADO, individually<br>
and on behalf of all others similarly<br>
situated,<br><br>
       *Plaintiff*,<br><br>
v.<br><br>
RUGSUSA, LLC,<br><br>
       *Defendant.*
</td>
<td>
Case No. 1:25-cv-01243-KAS
</td>
</tr>
</table>

## PLAINTIFF EVELIN PRECIADO'S RESPONSES TO DEFENDANT RUGSUSA, LLC'S FIRST SET OF REQUESTS FOR ADMISSIONS

Pursuant to Federal Rules of Civil Procedure 26 and 36, Plaintiff Evelin Preciado ("Plaintiff") provides the following objections and responses to Defendant's First Set of Requests for Admissions to Plaintiff Evelin Preciado ("Requests").

Plaintiff's responses to Defendant's Requests for Admission do not constitute an admission by Plaintiff that any of the Requests or the response thereto are relevant or admissible as evidence in any trial or other proceeding. Plaintiff reserves the right to object on any grounds, at any time, to the admission of any Requests or the response thereto in any such trial or other proceeding.

Plaintiff will respond as required by the Federal Rules of Civil Procedure, the Local Rules of this Court, and this Court's orders, but will not comply with any instructions that exceed those requirements.

1

## General Objections

Plaintiff objects to the Requests to the extent they are directed to Plaintiff's counsel (seeking their mental impressions), rather than Plaintiff, contrary to Rule 36, which permits requests for admissions directed to parties—not opposing counsel's thoughts or beliefs.

Plaintiff objects to the extent that any request for admission requests information that is protected from discovery under the attorney-client privilege, the work product doctrine, the common interest privilege, and/or any other applicable privilege or other immunity. Plaintiff will not provide privileged information.

Plaintiff objects to the Requests on the ground that they are overbroad, unduly burdensome, and not proportional to the needs of the case, as they seek sweeping, undefined, and cumulative information untethered to Plaintiff's claims or damages asserted in this case.

Plaintiff objects to the Requests on the ground that they seek information that is equally or more readily available to Defendant and Defendant's counsel, including Defendant's own advertising practices, website content, settlement obligations, and post-settlement conduct.

The definitions of "YOU" and "YOUR" are overly broad and improper. Plaintiff will define these terms to include herself.

Construing "and" disjunctively and "or" conjunctively is contrary to the plain meaning and purports to make requests ambiguous and overly broad. Plaintiff will construe "and" conjunctively and "or" disjunctively.

Plaintiff objects to the instruction to provide a privilege log as unduly burdensome and disproportionate to the needs of the case.

Certain definitions, when incorporated into the requests for admissions below, render the requests overly broad, unduly burdensome and not proportional to the needs of the case. Plaintiff objects specifically to the breadth of such requests for production below and states the scope to which Plaintiff will respond.

Several of the listed instructions impose requirements beyond Plaintiff's obligations under the Federal Rules of Civil Procedure. As explained above, Plaintiff will respond as required by the Federal Rules of Civil Procedure, the Local Rules of this Court, and this Court's orders, but will not comply with any instructions that exceed those requirements.

**Objections and Responses to each Request for Admission**





**RFA No. 3:** Admit that it was fair and reasonable to not have any injunctive relief provided for in the SETTLEMENT AGREEMENT.

**Objections to 3**: Plaintiff objects to this Request because it is overly broad, unduly burdensome, harassing, not proportional to the needs of the case, and seeks unnecessary and irrelevant information. The Settlement Agreement does not cover any

unnecessary and irrelevant information. The Settlement Agreement does not cover any of Plaintiff's or the putative class's claims in this lawsuit, and instead is limited to the claims of consumers in other states. And this lawsuit involves Plaintiff Preciado and a proposed class of Colorado consumers, none of whom were parties to the Settlement Agreement or have claims released in the Settlement Agreement. Plaintiff's attorneys are also not a party to this litigation. Plaintiff further objects on the ground that this Request improperly seeks information protected by the attorney-client privilege, attorney work-product doctrine, including counsel's mental impressions. On its face, the Request is directed to the mental impressions of Plaintiff's counsel (i.e., what Plaintiff's attorneys believe), and the Rules do not impose on a party a duty to investigate or disclose privileged attorney mental impressions.

**Response to 4**: Plaintiff lacks personal knowledge of the beliefs or mental impressions of her attorneys. Any such beliefs would constitute privileged attorney work product. Thus, after a reasonable inquiry, the information Plaintiff knows or can readily obtain is insufficient to enable Plaintiff to admit or deny this Request.



**RFA No. 6:** Admit that after FINAL APPROVAL of the SETTLEMENT AGREEMENT and prior to filing the COMPLAINT YOUR ATTORNEYS never contacted RUGSUSA to state that an agreed upon change to RUGSUSA's practices for advertising its pricing had not been made.

**Objections to 6**: Plaintiff objects to this Request because it is overly broad, unduly burdensome, harassing, not proportional to the needs of the case, and seeks unnecessary and irrelevant information. The Settlement Agreement does not cover any of Plaintiff's or the putative class's claims in this lawsuit, and instead is limited to the claims of consumers in other states. And this lawsuit involves Plaintiff Preciado and a proposed class of Colorado consumers, none of whom were parties to the Settlement

Dated: February 9, 2026

By: */s/ Simon Franzini*

Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Jonas Jacobson (Cal. Bar No. 269912)
jonas@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: +1 (310) 656-7069

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on February 9, 2026, the foregoing document is being served by e-mail on counsel of record.

_/s/ Simon Franzini_
Simon Franzini

11

# EXHIBIT C

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON, PORTLAND DIVISION

KEIRA MCCARRELL, individually )

and on behalf of all others    ) Case No.

similarly situated,           ) 3:25-cv-00454-AB

                 Plaintiff,    )

     vs.                       )

RUGSUSA, LLC,                  )

                 Defendant.    )

------------------------------)


     VIDEOCONFERENCE VIDEOTAPED DEPOSITION OF

               KEIRA MCCARRELL

          TUESDAY, FEBRUARY 3, 2026

               9:18 A.M.


REPORTED BY:

SUSAN NELSON, C.S.R. No. 3202

JOB NO. 7876405

PAGES: 1-99

Page 1

                    UNITED STATES DISTRICT COURT

             DISTRICT OF OREGON, PORTLAND DIVISION


KEIRA MCCARRELL, individually  )

and on behalf of all others    ) Case No.

similarly situated,            ) 3:25-cv-00454-AB

                    Plaintiff,    )

     vs.                       )

RUGSUSA, LLC,                  )

                    Defendant.   )

------------------------------)




        Videoconference videotaped deposition of

KEIRA MCCARRELL, the witness taken on behalf of

Defendant, commencing at 9:18 A.M., on TUESDAY,

FEBRUARY 3, 2026, Portland, Oregon, via Zoom, before

SUSAN NELSON, C.S.R. No. 3202.

                                                    Page 2

APPEARANCES OF COUNSEL APPEARING REMOTELY


FOR PLAINTIFF:

DOVEL & LUNER LLP

BY:  STEPHEN FERRUOLO, ESQ.

201 Santa Monica Boulevard, Suite 600

Santa Monica, California 90401

(310) 656-7066

sferruolo@dovel.com


FOR DEFENDANT:

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

BY:  ABBY MEYER, ESQ. (Pro Hac Vice)

650 Town Center Drive, 10th Floor

Costa Mesa, California 92626-1993

(714) 513-5100

ameyer@sheppardmullin.com


ALSO PRESENT

PICA MELLQUIST, DOVEL & LUNER

KEVIN DEL CID, VIDEOGRAPHER

Page 3

                         I N D E X

WITNESS          EXAMINATION                    PAGE

KEIRA MCCARRELL

                  By Ms. Meyer                   8



            INSTRUCTIONS TO NOT ANSWER

                      (NONE)


        INFORMATION REQUESTED TO BE MARKED

                      (NONE)

                                          Page 4

PORTLAND, OREGON;

TUESDAY, FEBRUARY 3, 2026;

9:18 A.M.

THE VIDEOGRAPHER:  Good morning everyone.  09:19:02 We're going on the record today at 9:18 a.m.  Today's 09:19:03 date is February 3rd, 2026.  Please note that today's 09:19:07 deposition is being conducted virtually.  The quality 09:19:11 of the recording depends on the quality of the camera 09:19:14 and Internet connection of the participants.  What is 09:19:17 seen from our witness and heard on screen is what 09:19:20 will be recorded.  Audio and video recording will 09:19:22 continue to take place unless all parties agree to go 09:19:26 off the record.  09:19:28

This is media unit number one of the 09:19:29 video-recorded deposition of Keira McCarrell, taken 09:19:32 by counsel for Defendant in the matter of 09:19:36 Keira McCarrell, individually and on behalf of all 09:19:38 others similarly situated, versus RugsUSA, LLC.  09:19:41

This case is filed in the United States 09:19:48 District Court, District of Oregon, Portland 09:19:51 Division, Case number is 3:25-cv-00454-AB.  09:19:54

My name is Kevin Del Cid, representing 09:19:57 Veritext, and I'm the videographer.  I'm not related 09:20:06 to any party in this action, nor am I financially 09:20:09

Page 6

interested in the outcome.  If there are any           09:20:12

objections to the proceeding, please state them at     09:20:14

the time of your appearance.                           09:20:17

Counsel will now state there appearances and   09:20:19

affiliations for the record, beginning with our        09:20:21

noticing attorney.                                     09:20:22

MS. MEYER:  Good morning.  My name is          09:20:23

Abby Meyer.  I'm a partner at Sheppard Mullin, and I   09:20:26

am appearing today on behalf of the defendant,         09:20:30

RugsUSA.                                               09:20:34

MR. FERRUOLO:  I am Stephen Ferruolo of        09:20:35

Dovel & Luner LLP.  I am here on behalf of Plaintiff   09:20:39

McCarrell.                                             09:20:39

And, apologies, if that construction noise     09:20:43

is picking up, let me know, I can mute myself.         09:20:45

THE VIDEOGRAPHER:  Okay.  Now, will the        09:20:49

court reporter introduce herself, swear in our         09:20:53

witness, and then counsel may proceed thereafter.      09:20:53

THE REPORTER:  Good morning.  Susan Nelson,

California Certified Shorthand Reporter, license

number 3202.

And, if you'll raise right hand, please, I

will swear you in.

///         ///

///         ///

Page  7

KEIRA MCCARRELL,

having been first duly sworn, was

examined and testified as follows:

THE REPORTER:  Thank you.  Please proceed.

MS. MEYER:  Thank you.

EXAMINATION                      09:21:17

09:21:17

BY MS. MEYER:                                   09:21:17

Q.  Ms. McCarrell, could you please state your   09:21:17
full name for the record.                        09:21:21

A.  Keira Jordan McCarrell.                    09:21:22

Q.  Have you ever used any other name?         09:21:24

A.  No, ma'am.                                 09:21:27

Q.  I understand you are -- you're engaged to be  09:21:28
married?                                          09:21:32

A.  Yes.  I technically am married.  I haven't   09:21:32
went through the process of, like, name changing yet.  09:21:36

Q.  Okay.  But you are planning on changing your  09:21:40
name?                                             09:21:42

A.  Yes, ma'am.                                09:21:43

Q.  And, prior to becoming married, did you use  09:21:43
any other names other than Keira Jordan McCarrell?  09:21:47

A.  No.  I -- I had a few instances where I    09:21:51

Page 8

A.   Yes, ma'am.                                      09:40:17

Q.   Is it more than $10,000?                         09:40:18

A.   No, ma'am.                                       09:40:22

Q.   Do you have any creditors to whom you owe        09:40:22
more than $10,000?                                    09:40:28

A.   No, ma'am.  Would student loans classify as      09:40:28
that?                                                 09:40:32

Q.   Yes.                                             09:40:33

A.   Yes, ma'am.                                      09:40:34

Q.   Other student -- other than student loans,       09:40:35
do you have any other creditors to whom you owe more  09:40:39
than $10,000?                                         09:40:45

A.   No.                                              09:40:47

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127



Page 23



Page 24

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127



Page 25

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

Q. Do you have any reason to think that you received this confirmation email some amount of days after you purchased your rug?    09:47:40 09:47:43 09:47:49

A. I -- I'm not -- I'm not sure. I'm sorry.    09:47:51

Q. That's okay. Would it be fair for me to say that you purchased your rug on or about June 27th, 2024?    09:47:59 09:48:02 09:48:05

A. Yes.    09:48:09

Q. Okay. And, prior to seeing the attorney advertisement, were you satisfied with the rug that you purchased from RugsUSA?    09:48:09 09:48:14 09:48:18

A. Sort of.    09:48:23

Q. And why do you say "sort of"?    09:48:24

A. It -- when I had gotten it, I'm particularly -- I felt like it didn't really look like the picture. And I also felt like the, like, thinness of it was really thin, but it was -- it was okay for the time being.    09:48:30 09:48:43 09:48:45 09:48:52 09:48:55

Q. Okay. You did not return the rug. Correct?    09:49:01

A. No.    09:49:04

Q. Did you want to return the rug?    09:49:04

A. I would -- no.    09:49:16

Q. Okay. Prior to seeing your attorney -- the    09:49:20

Page 26

Q. So you received the rug, you liked it enough 09:58:36 to keep it, but -- and you've had it for almost two 09:58:42 years. But -- but -- so are you telling me that you 09:58:51 think you've gotten no use or value out of the rug 09:58:54 whatsoever? 09:58:57

Q. And so why is it that you think you're 10:00:19

Page 32

you like about it?                                          10:25:30

A.  I liked that it was abstract, and also at          10:25:33

the time we did not have a lot of money, so I really    10:25:37

liked the price.                                            10:25:39

MS. MEYER:  Okay.  And I'm going to mark the   10:25:59

next exhibit.  Okay.  I'm marking Exhibit 3.            10:26:12

(The document referred to was             10:26:12

marked as Exhibit 3.)                     10:26:44

BY MS. MEYER:                                              10:26:44

Q.  Let me know when you got it.                       10:26:44

A.  Yeah.                                              10:26:45

Page  44



Page 45

Q.   Okay.  And the one that your mom got as a      10:30:32
gift, do you still have that one?                   10:30:34

A.   Yes.                                           10:30:34

Q.   Do you know where she purchased it?            10:30:40

A.   IKEA.                                          10:30:41

Q.   Okay.  Do you know how much she spent on it?   10:30:44

A.   No.                                            10:30:46

Q.   What do you like about the IKEA rug?           10:30:46

A.   That it's -- I like that it's, like,           10:30:59
fluffier and the color, I guess.                    10:31:04

Page 46

testimony right, pretty soon thereafter you decided    10:40:28

you wanted a rug, and pretty soon after that you    10:40:30

started shopping for a rug.  Correct?    10:40:33

    A.   Yes.    10:40:35

Page 53

Q.   Were you looking for something in particular    10:42:25
besides price?                                        10:42:29

A.   Something we liked.                              10:42:33

Q.   And was that -- like, I love color, but my      10:42:35
husband doesn't.  So did you have -- did you and your 10:42:40
husband have something in mind that you were looking  10:42:42
for?                                                  10:42:44

A.   He wanted -- we want -- both wanted             10:42:45
something interesting for our space.                  10:42:47

Q.   Okay.  And was that a shopping experience       10:42:49
that you did together?  Or did you do the shopping or 10:42:53
did -- maybe he did his own searching and you         10:42:57
compared results?                                     10:43:00

A.   From what I can remember, I'd just seen a       10:43:03
couple that were -- the pricing was good, and so I    10:43:06
sent over to him a couple of options, and we          10:43:09
ultimately decided on the one we purchased.           10:43:12

Q.   Were all of those options from RugsUSA?         10:43:14

A.   I can't remember.                               10:43:18

Q.   Do you still have those emails?                 10:43:19

Page 54

do know that we weren't trying to spend a lot of          10:44:43

money.  I can't say -- I also cannot say how many          10:44:46

options there were.          10:44:50

    Q.  Okay.  Is it your recollection, though, that          10:45:03

they were around the same price point as the rug that          10:45:05

you purchased from RugsUSA?          10:45:08

    A.  Considering we had a budget, I would say          10:45:10

that they were all around the same price point.          10:45:12

    Q.  And the rug that you got -- let me start          10:45:15

that over.          10:45:26

Page 56

Q.   Okay.  I just wanted to clarify your          10:46:34
testimony.  That's fine.                           10:46:36

Q.   Okay.  And did you use any comparison         10:47:08
shopping tools like apps or website browser        10:47:14
information to help you comparison shop?           10:47:18

A.   No.                                           10:47:21

Q.   Did you see the same RugsUSA design on other  10:47:21
websites?                                          10:47:36

A.   I can't remember, but no.                     10:47:36

Q.   I don't understand your answer there.         10:47:43

A.   I do not believe that I saw that on any       10:47:54
other website.                                     10:47:57

Q.   Okay.  And if you look at Exhibit 1, pdf      10:47:58
page 4, it says MCCARRELL -- it's Bates-stamped    10:48:08
MCCARRELL7.  There's a line for "Shipping" and it  10:48:16
says "Free."                                        10:48:17

Did the free shipping factor into your             10:48:18
decision to buy this rug from RugsUSA?             10:48:20

A.   I can't remember.                             10:48:22

Q.   About how many times prior to purchasing the  10:48:29
rug do you think you visited the RugsUSA website?  10:48:31

Page 57

A.   From the best of my memory, yes.            10:50:29

Q.   Okay.  And is it your recollection that you   10:50:32
could use that code on all items?               10:50:34

A.   I don't remember.                           10:50:38

Q.   Okay.  Is there anything else that you      10:50:40
recall about the code -- the promo code "SALE40"?   10:50:44

A.   I remember it being at, like -- like, it was   10:50:50
on -- like, it said it was like a special promotion,   10:50:57
or something along those lines.  Like, "use this code   10:51:00
at check out" type deal.                        10:51:06

Q.   Okay.  Do you recall or did you understand   10:51:19
that this code permitted you to take an extra   10:51:20
40 percent off of clearance products?           10:51:24

A.   I can't remember.                           10:51:27

Q.   And is your expectation that it's on        10:51:53
clearance so that a manufacturer can sell out the   10:51:59
last of its inventory for that product?         10:52:02

A.   I -- I don't know.                          10:52:05

Q.   Do you have any reason to believe that in   10:52:06
May or July of 2024 -- so right before -- the month   10:52:13
before, the month after your purchase -- you could   10:52:16

Page 59

if you had wanted to understand 11:43:37
what the compare at pricing was 11:43:39
referenced on this page and then 11:43:43
the advertisement for the promotion 11:43:44
that you purchased under the 11:43:47
company made that information 11:43:49
available to you?") 11:43:50

THE WITNESS:  I do not remember it saying 11:45:03
"compare at" on the advertisement or on -- like, when 11:45:08
I was making the purchase, so I don't know. 11:45:12

BY MS. MEYER: 11:45:16

Page 82



Page 83



MS. MEYER:  All right.  I'm going to mark a    11:50:27

further exhibit.  Just give me a moment to make sure    11:50:29

I've got the right one.  This will be Exhibit 9.    11:50:32

Page 84

THE REPORTER:  Perfect, that works.  Thank you.  We are off the written record.

(Whereupon, at 12:12 p.m., the videoconference videotaped deposition of KEIRA MCCARRELL was adjourned.)

Page  95

STATE OF CALIFORNIA   )

COUNTY OF LOS ANGELES ) ss.

I, KEIRA MCCARRELL, hereby declare under the penalties of perjury of the laws of the United States that the foregoing is true and correct.

Executed this _____ day of _____, 2026, at _____, California.

_____

KEIRA MCCARRELL

Page 96

STATE OF CALIFORNIA    )

COUNTY OF LOS ANGELES )  ss.

I, SUSAN NELSON, C.S.R. 3202, in and for the State of California, do hereby certify:

That, prior to being examined, the witness named in the foregoing deposition was by me duly sworn to testify the truth, the whole truth and nothing but the truth; that said videoconference videotaped deposition was taken down by me, via Zoom, stenographically at the time and place therein named to the best of my ability, and thereafter transcribed via computer-aided transcription under my direction, and the same is a true, correct and complete transcript of said proceedings;

Before completion of the deposition, review of the transcript [ ] was [X] was not requested.  If requested, any changes made by the deponent (and provided to the reporter) during the period allowed are appended hereto.

I further certify that I am not interested in the event of the action.

Witne[signature]                        lary, 2026.

Susan Nelson, C.S.R. No. 3202

Certified Shorthand Reporter

State of California

Page 97

# EXHIBIT D

# Filed Under Seal

# EXHIBIT E

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:25-cv-01243-CNS-KAS

_____

EVELIN PRECIADO, individually and
on behalf of all others similarly
situated,

        Plaintiff,

v.

RUGSUSA, LLC,

        Defendant.

_____

REMOTE VIDEO DEPOSITION OF EVELIN PRECIADO

January 20, 2026

_____

REMOTE APPEARANCES:

ON BEHALF OF THE PLAINTIFF:
        RICK LYON, ESQ.
        PICA MELLQUIST, ESQ.
        STEPHEN FERRUOLO, ESQ.
        Dovel & Luner LLP
        201 Santa Monica Boulevard, Suite 600
        Santa Monica, California 90401
        Phone:  310-656-7066
        Email:  rick@dovel.com
        email:  pmellquist@dovel.com
        Email:  sferruolo@dovel.com

ON BEHALF OF THE DEFENDANT:
        P. CRAIG CARDON, ESQ.
        Sheppard Mullin Richter & Hampton LLP
        1901 Avenue of the Stars, Suite 1600
        Los Angeles, California  90067
        Phone:  310-228-3700
        Email:  ccardon@sheppardmullin.com

Also Present:  Jerry DeBoer, videographer

Page 1

PURSUANT TO WRITTEN NOTICE and the appropriate rules of civil procedure, the remote video deposition of EVELIN PRECIADO, called for examination by the Defendant, was taken remotely from Denver, Colorado, commencing at 12:38 PM on January 20, 2026, before Deanna Baysinger, a Notary Public and Registered Professional Reporter in and for the State of Colorado.

I N D E X

EXAMINATION:                                              PAGE
By Mr. Cardon                                               4


EXHIBITS:                                                 PAGE

Exhibit 1    Class Action Complaint                        12
Exhibit 2    Emailed confirmation from RugsUSA,            30
             Bates stamped PRECIADO000755 and
             000756
Exhibit 4    Page Vault information from                   52
             RugsUSA.com

Exhibit 5    Printout from Facebook                        54

Exhibit 6    Printout from Poshmark                        74

** Exhibit 3 omitted **

Page 2

P R O C E E D I N G S                                                    12:37PM

THE VIDEOGRAPHER: Good afternoon. We are       12:37PM
going on the record at 12:38 PM Mountain Time on       12:38PM
January 20, 2026.                                      12:38PM

Please note that this deposition is being       12:38PM
conducted virtually.                                   12:38PM

Quality of recording depends on the       12:38PM
quality of camera, microphone and internet connection of       12:38PM
participants.                                          12:38PM

What is seen from the witness and heard on       12:38PM
the screen is what will be recorded.                   12:38PM

Audio and video recording will continue to       12:38PM
take place unless all parties agree to go off the record.       12:38PM

This is Media Unit 1 of the video recorded       12:38PM
deposition of Evelin Preciado taken by counsel for       12:38PM
Defendant in the matter of Evelin Preciado versus       12:38PM
RugsUSA, LLC, filed in the District Court, District of       12:38PM
Colorado -- excuse me -- in the United States District       12:38PM
Court, District of Colorado, Case Number       12:38PM
1:25CV01243-CNS-KAS.                                   12:38PM

This deposition is being held remotely via       12:38PM
Zoom.                                                  12:39PM

My name is Jerry DeBoer representing       12:39PM
Veritext Legal Solutions, and I'm the videographer. The       12:39PM
court reporter is Deanna Baysinger for the firm of       12:39PM

Page 3

Veritext Legal Solutions.    12:39PM

I'm not related to any party in this    12:39PM
action nor am I financially interested in the outcome.    12:39PM

Counsel and everyone attending remotely    12:39PM
will now state their appearances and affiliations for the    12:39PM
record.    12:39PM

If there are any objections to proceeding,    12:39PM
please state them at the time of your appearance    12:39PM
beginning with the noticing attorney.    12:39PM

MR. CARDON:  Morning -- or good afternoon.    12:39PM
This is Craig Cardon -- excuse me -- of Sheppard Mullin    12:39PM
on behalf of the Defendant RugsUSA.    12:39PM

MR. LYON:  This is Rick Lyon of    12:39PM
Dovel & Luner on behalf of the witness.  And with me also    12:39PM
from Dovel & Lunar is Pica Mellquist and Stephen    12:39PM
Ferruolo.    12:39PM

EVELIN PRECIADO,    12:39PM
called as a witness, having been first duly sworn, was    12:39PM
examined and testified as follows:    12:39PM

EXAMINATION    12:39PM

BY MR. CARDON:    12:40PM

Q.   Okay.  Well, good afternoon, Ms. Preciado.    12:40PM

Again my name is Craig Cardon.  I'm going    12:40PM
to ask you in advance if you'll excuse me.  You may find    12:40PM
I cough a few times during this.  I've got a lingering    12:40PM

Page 4

Q.   (By Mr. Cardon)  So did the advertisement   01:01PM
ask you specifically about RugsUSA.com?   01:01PM

A.   I do not remember if it was -- if it   01:01PM
stated specifically RugsUSA, but it did have a connection   01:02PM
to my purchase.   01:02PM

Q.   I'm sorry.  I -- what -- what does that   01:02PM
mean?   01:02PM

A.   Well, I knew it was referencing a purchase   01:02PM
I had made.  I don't know -- I believe it would have said   01:02PM
RugsUSA.   01:02PM

Q.   Okay.  But you don't recall if it did or   01:02PM
not.   01:02PM

A.   I do not.   01:02PM

Q.   Did it tell you you might make money by   01:02PM
contacting them?   01:02PM

A.   I believe so, yes.   01:02PM

Q.   Was there any amount that it told you you   01:02PM
might make?   01:02PM

A.   No.   01:02PM

Page 18



Q.   (By Mr. Cardon)   And in addition to getting   01:04PM
ideas, you visit multiple sites to get an understanding of   01:04PM
general pricing.   01:04PM

A.   That is -- can be part of it, yes.   01:04PM

Page 19



Page 20



Page 21



Page 22

Q.   Other than the December 2024 purchase, have   01:10PM
you ever made a purchase from RugsUSA.com?   01:10PM

A.   I could not say.  I don't remember if I   01:10PM
had.   01:10PM

Q.   How would you go -- have you tried to   01:10PM
investigate whether you have?   01:11PM

A.   No, I don't believe so.  I -- the method   01:11PM
of doing that would just be checking my -- my primary   01:11PM
email inbox.  I don't -- I don't recall if I had or not   01:11PM
before this purchase.   01:11PM

Q.   And what is that email address?   01:11PM

A.   Yeah.  It's evelin, that's my first name,   01:11PM
_utl@yahoo.com.   01:11PM

Q.   And have you, in fact, searched your --   01:11PM
that yahoo email inbox to see if you made other purchases   01:11PM
from RugsUSA.com?   01:11PM

A.   Not for that reason, no.   01:11PM

Q.   Okay.  Have you searched it to see if   01:11PM

Page 23

statement made to you in any fashion by RugsUSA.com that    01:13PM

you relied upon to make your purchase on December 9, 2024?    01:13PM

        A.   Gotcha.    01:13PM

             Well, when I was on the -- on the    01:13PM

website --    01:13PM

        Q.   I'm saying excluding the website.    01:13PM

        A.   Excluding.  No.    01:13PM



Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127



Page 26

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

A.    Correct.                                          01:17PM

Q.    But there -- I assume there was some upper        01:17PM
amount that you would have been willing to pay.         01:17PM

A.    Yes.  I would say if I had to give an             01:17PM
amount, well I was hoping to stay close to about $200   01:17PM
ideally was my target.                                  01:17PM

Q.    And what did you pay for this rug?                01:17PM

A.    I would have to -- I think it was after --        01:17PM
I'm referring to the complaint here.  $440.96.          01:17PM

Q.    Okay.  So you paid more than what you were        01:18PM
hoping to pay; is that right?                           01:18PM

Page 27

that was sent to you?                                          01:21PM

A.    Correct.                                                 01:21PM

Q.    Okay.  If you can go on the Exhibit Share,               01:21PM
if you go -- hit back and then click on Exhibit Number 2,      01:21PM
the second document?                                           01:21PM

(Exhibit Number 2 was marked.)                                 01:21PM

A.    Okay.  Yes, I'm there.                                   01:21PM

Q.    Okay.  So is this the confirmation email                01:21PM
that you received that you were referring to in that           01:21PM
paragraph in the complaint?                                    01:21PM

A.    Yes.                                                     01:22PM

Q.    Okay.  And on the second page it shows you              01:22PM
what the total is and that it's $458.89; correct?              01:22PM

A.    Correct.                                                 01:22PM

Q.    This was sent to you after you placed your              01:22PM
order; is that correct?                                        01:22PM

A.    Yes.                                                     01:22PM

Q.    So this -- this may seem elementary, but                01:22PM
I'm just trying to understand.                                 01:22PM

So you didn't see this confirmation until             01:22PM
you had already decided to make your purchase; is that         01:22PM
right?                                                         01:22PM

A.    Correct.                                                 01:22PM

Page 30



Q.   Okay.  Okay.  So why didn't you pull the                01:23PM
trigger in or around, let's call it, Thanksgiving?            01:24PM

A.   I -- I don't remember.  It may have been                01:24PM
at a different pricing tier.  I was shopping around with      01:24PM
the black Friday deals and all the way to this date when      01:24PM
I made the rug -- or purchased the rug.  It may have not      01:24PM
been the deal I was looking for.  I don't -- I don't          01:24PM
recall.  I was monitoring the -- the pricing.                01:24PM

Q.   Okay.  So do you still have the rug?                     01:24PM

A.   Yes.                                                     01:25PM

Q.   Is it the quality that you were expecting?              01:25PM

Page 31

follow up?                                                        03:07PM

THE REPORTER:  Yes.                                               03:07PM

MR. LYON:  Sounds good.                                           03:07PM

MR. CARDON:  And a -- and a rough would be                        03:07PM
great but -- but no rush is necessary.                            03:07PM

THE REPORTER:  No rush on the rough or no                         03:07PM
rush on the final?                                                03:07PM

MR. CARDON:  No -- no rush on either.  I                          03:07PM
assume the rough will be ready in the next couple of              03:07PM
days, if not sooner, but no -- no rush on either.                 03:07PM

THE REPORTER:  Okay.  Thank you.

*   *   *   *   *   *   *

WHEREUPON, the foregoing deposition was
concluded at the hour of 3:07 PM.  Total time on the
record was 1 hour and 58 minutes.

Page 80

I, EVELIN PRECIADO, the deponent in the above deposition, do acknowledge that I have read the foregoing transcript of my testimony, and state under oath that it, together with any attached Statement of Changes pages, constitutes my sworn testimony.

_____ I have made changes to my deposition

_____ I have NOT made any changes to my deposition

_____

EVELIN PRECIADO

Subscribed and sworn to before me this _____ day of _____, 2026.

My commission expires:_____.

_____

Notary Public

Page 81

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

CERTIFICATE OF COURT REPORTER

I, DEANNA BAYSINGER, a Registered Professional Reporter and Notary Public within and for the State of Colorado, commissioned to administer oaths, do hereby certify that previous to the commencement of the examination, the witness was duly sworn by me to testify the truth in relation to matters in controversy between the said parties; that the said deposition was taken in stenotype by me at the time and place aforesaid and was thereafter reduced to typewritten form by me; and that the foregoing is a true and correct transcript of my stenotype notes thereof.

That I am not an attorney nor counsel nor in any way connected with any attorney or counsel for any of the parties to said action nor otherwise interested in the outcome of this action.

My commission expires:  November 8, 2026.


DEANNA BAYSINGER

Registered Professional Reporter

Notary Public, State of Colorado

Date; January 25, 2026

Page 82

# EXHIBIT F
# Filed Under Seal

# EXHIBIT G

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

---oOo---

ANNA HONG, individually and on       )
behalf of all others similarly      )
situated,                            )
                                     )
                Plaintiff,           ) No.
                                     ) 3:24-cv-08799-AMO
                                     )
        vs.                          )
                                     )
RUGSUSA, LLC,                        )
                                     )
                Defendant.           )
_____     )

DEPOSITION OF ANNA HONG

Friday, February 13, 2026

At 9:07 a.m.

Taken at:
 All parties appeared remotely via Zoom

---oOo---

Reported By:  Deirdre M. Dawson
             CSR #11737

Page 1

A P P E A R A N C E S

For the                STEPHEN RAFFUOLO
Plaintiff:             Dovel & Luner LLP
                       201 Santa Monica Blvd., Suite 600
                       Santa Monica, California 90401


For the                ABBY MEYER
Defendant:             Sheppard, Mullin, Richter &
                       Hampton LLP
                       1901 Avenue of the Stars, Suite 1600
                       Los Angeles, California 90067

Page 2

INDEX OF WITNESSES

PAGE

ANNA HONG

Examination By Ms. Meyer                6

Examination By Mr. FARRUOLO           102

Examination By Ms. Meyer              103

Page 3

Friday, February 13, 2026

ANNA HONG,

the Witness herein, having been duly and regularly sworn

by the Certified Shorthand Reporter, deposed and

testified as follows:

---oOo---

THE VIDEOGRAPHER:  Good morning, we're going on the record.  The time is 9:07 a.m. on February 13th 2026.  This is the video recorded deposition of Anna Hong taken by counsel for defendant in the matter of Hong versus Rugsusa, LLC.  This deposition is being conducted remotely using virtual technology.  My name is David Bradley representing Veritext, and I am the videographer.

Will everyone present please introduce themselves, starting with the witness.

THE WITNESS:  I'm Anna Hong.

MR. FARRUOLO:  I'm Stephen Farruolo from Dovel & Luner, LLP, on behalf of Plaintiff Hong.  And with me is my colleague, Pica Mellquist, who will be observing today.

MS. MEYER:  My name is Abby Meyer, I'm counsel for defendant and I'm with the law firm Sheppard Mullin.

THE VIDEOGRAPHER:  Would you the court reporter please introduce herself and please administer the oath

Page 5

to the witness, and counsel may proceed.

THE REPORTER:  Do you solemnly swear or affirm that the testimony you will give in the matter now pending will be the truth, the whole truth, and nothing but the truth?

THE WITNESS:  Yes.

EXAMINATION

BY MS. MEYER:

Q.  Ms. Hong, could you please state your full name for the record?

A.  Anna Christiane Hong.

Q.  Have you ever used any other names?

A.  No.

Q.  You can put down your hand?

A.  Okay.

Q.  You don't have to leave that up.

And do you live with anyone?

A.  No.

Q.  Aside from counsel, did you speak with anybody about your deposition today?

A.  No.

Q.  We are conducting today's deposition over Zoom, but where are you physically located today?

A.  I am in Oakland, California.

Q.  And you're in a residence?  An office?

Page 6

A.    It must be.

Q.    Could you have posted it earlier and maybe updated the post at some point?

A.    It's possible.

Q.    So to the best of your recollection as we sit here today, do you think January 20th, 2025, is the date that you posted the rug or the date that you last updated this Marketplace posting?

A.    It could really have been either.  I don't know.

Q.    Do you have any records that would confirm whether this is a post date or an update date?

A.    Only if Facebook told me.  Other than that, I'm not sure.

Page 38

had already posted it on Facebook Marketplace, correct?

MR. FARRUOLO:  Objection.  Form.

THE WITNESS:  It's very foggy, but I believe that makes sense.

MS. MEYER:  Okay.  I've got a few more questions on this exhibit.  However, we've been going an hour.  If you would like to take the break, we can break now.  Otherwise, we can push through, but it will be longer than ten minutes.

MR. FARRUOLO:  Anna, it's up to you.

MS. MEYER:  Yeah, it's up to you.

MR. FARRUOLO:  That's fine.  We can keep going.

MS. MEYER:  Okay.

BY MS. MEYER:

Q.   All right.  So looking at Exhibit 40, there is a product description that starts with, "one hundred percent polyester."  Then there's a few lines below that before the map image.  Do you see that?

A.   Yes.

Page 41



Page 42

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127



MS. MEYER:  We can take a break.

Page 43

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

regarding this.

MS. MEYER:  Okay.

THE VIDEOGRAPHER:  Okay.  Anything else?

MS. MEYER:  Madame court reporter, I would like a rough of this.

THE REPORTER:  Do you have a date that you need it by?

MS. MEYER:  How soon can you get it, recognizing Monday is a holiday?

THE REPORTER:  Probably by Tuesday.

MS. MEYER:  That works.

THE REPORTER:  And then I need to get some spellings from you after we go off the record.

MS. MEYER:  From myself or Ms. Hong?

THE REPORTER:  From you.

MS. MEYER:  Okay.

THE VIDEOGRAPHER:  All right.  Well, that will conclude today's deposition.  We're now going off the record.  The time is 12:55 p.m.

(Whereupon, the deposition of ANNA HONG, adjourned at 12:55 p.m.)

-oOo-

Page 112

Please be advised I have read the foregoing deposition, pages_____ through_____, inclusive.  I hereby state there are:

(Check one)  _____ no corrections

_____ corrections per attached

Executed this_____ day of _____, 2026 at

_____, California.

_____

ANNA HONG

JOB NO. 7876421

Page 113

STATE OF CALIFORNIA          )

                             )     ss.

COUNTY OF SAN JOAQUIN        )


        I, Deirdre Dawson, do hereby certify that I am a licensed Certified Shorthand Reporter, duly qualified and certified as such by the State of California;

        That prior to being examined, the witness named in the foregoing deposition was by me duly sworn to testify to tell the truth, the whole truth, and nothing but the truth;

        That the said deposition was by me recorded stenographically at the time and place herein mentioned; and the foregoing pages constitute a full, true, complete and correct record of the testimony given by the said witness;

        That I am a disinterested person, not being in any way interested in the outcome of said action, or connected with, nor related to any of the parties in said action, or to their respective counsel, in any manner whatsoever.


        Dated:  February 17th, 2026


        Deirdre M. Dawson, CSR

        Certificate No. 11737

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

# EXHIBIT H

UNITED STATES DISTRICT COURT

FOR THE DISTRICT

OF OREGON

_____

KEIRA McCARRELL, individually    )
and on behalf of all others       )
similarly situated,               )
                                  )
              Plaintiff,          )   3:25-cv-00454-AB
                                  )
      vs.                         )
                                  )
RugsUSA, LLC,                     )
                                  )
          Defendant.              )
_____

 VIDEO-RECORDED VIDEOCONFERENCE DEPOSITION UPON ORAL

EXAMINATION OF

COLIN B. WEIR

_____

12:34 P.M. EDT

MARCH 16, 2026

REPORTED BY: CARLA R. WALLAT, CRR, RPR

           WA CCR 2578, OR CSR 16-0443, CA CSR 14423

Page 1

A P P E A R A N C E S

(ALL PARTICIPANTS APPEARING REMOTELY)


FOR THE PLAINTIFF:

      STEPHEN BECK

      Bursor & Fisher, P.A.

      701 Brickell Avenue, Suite 2100

      Miami, Florida 33131

      305.330.5512

      sbeck@bursor.com


FOR THE DEFENDANT:

      CRAIG CARDON

      Sheppard

      1901 Avenue of the Stars, 16th Floor

      Los Angeles, California 90067

      310.228.3700

      ccardon@sheppardmullin.com


ALSO PRESENT:  EMILY WALTER, Videographer

Veritext Legal Solutions
866-299-5127          calendar-ca@veritext.com          www.veritext.com

I N D E X

EXAMINATION BY:                                          PAGE(S)

MR. CARDON                                                  6


EXHIBITS FOR IDENTIFICATION                              PAGE

Exhibit 17   Declaration of Colin B. Weir,                 5

             February 23, 2026

             Reference Materials Designated

             "Confidential" and "Highly

             Confidential" Under Protective

             Seal

Exhibit 18   9/30/2025 ETI invoice to Dovel &            17

             Luner

Exhibit 19   10/31/2025 ETI Invoice to Dovel &           25

             Luner

Exhibit 20   1/31/2026 ETI invoice to Dovel &            32

             Luner

Exhibit 21   2/28/2026 ETI invoice to Dovel &            33

             Luner

Exhibit 22   Excel spreadsheet                           101

             RUGSUSA_HONG00000511

Exhibit 23   Excel spreadsheet                           103

             RUGSUSA_HONG 00005688-A

Veritext Legal Solutions
866-299-5127          calendar-ca@veritext.com          www.veritext.com

BOSTON, MASSACHUSETTS; MARCH 16, 2026

12:34 P.M. EDT

--oOo--

(Deposition Exhibit 17 was marked.)          12:34

THE VIDEOGRAPHER:  Good afternoon.          12:34
We're going on the record at 12:34 p.m. on March 16th,          12:34
2026.  This is the video-recorded deposition of Colin          12:34
B. Weir taken in the matter of Keira McCarrell,          12:34
individually and on behalf of others similarly          12:34
situated, as plaintiff, versus RugsUSA, LLC, as          12:35
defendant, filed in the United States District Court,          12:35
the District of Oregon.  Case Number 3:25-cv-00454-AB.          12:35
This deposition is being held remotely.          12:35

My name is Emily Walter, I'm the videographer.          12:35
The court reporter is Carla Wallat.  We are with          12:35
Veritext Legal Solutions.          12:35

Will the attorneys please state their          12:35
appearances for the record, beginning with noticing.          12:35

MR. CARDON:  Yes.  This is Craig Cardon          12:35
of Sheppard on behalf of RugsUSA.          12:35

MR. BECK:  Stephen Beck from Bursor &          12:35
Fisher on behalf of the plaintiff.          12:35

THE COURT REPORTER:  My name is Carla          12:35
Wallat.  I'm a Washington, Oregon and California          12:35

Page 5

certified stenographic reporter.

Counsel, if you have an objection to the remote deposition or to me swearing in the witness remotely, please state so now.

Hearing no objection, and I can see the witness, I will swear in the witness.

COLIN B. WEIR,

sworn as a witness by the Certified Court Reporter,

testified as follows.

THE COURT REPORTER:  Please go ahead.

EXAMINATION

BY MR. CARDON:

Q.  All right.  Okay.  Mr. Weir, we've been through this before, right?

A.  I've been deposed many times, yes.

Q.  Including by me, right?

A.  I don't have a memory of that.  No offense intended.

Q.  You don't remember that I took your deposition almost exactly a year ago?

A.  No, I do not.

Q.  I'm usually more memorable than that.  Look,

Page 6

sounds about right.                                    15:47

Q.  Okay.  So you believe in Mr. Tarar's            15:47
deposition he said that you could identify in the      15:47
documentation that you've reviewed whether there is a  15:47
reference price that is stricken through on a          15:47
particular day?                                        15:47

A.  I think it would be per transaction, not        15:48
necessarily a particular day.                          15:48

Q.  Yeah.  Per transaction --                       15:48

A.  An analysis -- that the analysis of the         15:48
transactions could allow one to speak to date ranges if 15:48
necessary.                                             15:48

Q.  Okay.  And so the -- so your belief is that     15:48
the transactional data indicates whether at the time of 15:48
that transaction there was a price that was stricken    15:48
through on that page or not?                           15:48

A.  I believe that was the testimony of the         15:48
defense witness, yes.                                  15:48

Page 118

Q.   Okay.  So it's the plaintiff's theory that the    15:50

refund is -- has to be 100 percent of the total    15:50

purchase price; is that right?    15:50

A.   So there are multiple theories in this case.    15:50

If one wants to do a calculation of value received and    15:50

not received, that would be the price premium model.    15:50

Page 119

state on the record that I reserve my right to read and    16:47

sign the transcript.    16:47

MR. CARDON:  Good of you to do that,    16:47

your counsel was supposed to.  In federal court, you    16:47

waive it if you don't -- if you don't ask for it.    16:47

THE VIDEOGRAPHER:  All right.  Anything    16:47

else before we go off, Counsel?    16:47

MR. CARDON:  Nothing further.    16:47

THE VIDEOGRAPHER:  We're off the record.    16:47

The time is 4:47 p.m.    16:47

THE COURT REPORTER:  Mr. Cardon, are you    16:48

ordering?    16:48

MR. CARDON:  Yeah, I think we have a --    16:48

should have a standing order.  I think it's full    16:48

package with synced video.    16:48

THE COURT REPORTER:  Okay.  And then,    16:48

Mr. Beck, do you need a copy?    16:48

MR. BECK:  Yes.    16:48

(Deposition concluded at 4:48 p.m.)

(Signature was reserved.)

Page 149

REPORTER'S CERTIFICATE

I, CARLA R. WALLAT, CCR, CSR, RPR, CRR, the undersigned Certified Court Reporter, authorized to administer oaths and affirmations in and for the states of Washington (2578), Oregon (16-0443), and California (14423) do hereby certify:

That the sworn testimony and/or proceedings, a transcript of which is attached, was given remotely before me at the time and place stated therein; that any and/or all witness(es) were duly sworn to testify to the truth; that the sworn testimony and/or proceedings were by me stenographically recorded and transcribed under my supervision. That the foregoing transcript contains a full, true, and accurate record of all the sworn testimony and/or proceedings given and occurring at the time and place stated in the transcript; that a review of which was requested; that I am in no way related to any party to the matter, nor to any counsel, nor do I have any financial interest in the event of the cause.

WITNESS MY HAND AND DIGITAL SIGNATURE this 25th day of March 2026.

CARLA R. WALLAT, RPR, CRR

Washington CCR #2578, Expires 1/5/2027

Oregon CSR #16-0443, Expires 9/30/2027

California CSR #14423, Expires 1/31/2027

Page 150

Mccarrell, Keira v. Rugsusa, LLC

Colin B. Weir (#7955168)

ACKNOWLEDGEMENT OF DEPONENT

I, Colin B. Weir, do hereby declare that I have read the foregoing transcript, I have made any corrections, additions, or changes I deemed necessary as noted above to be appended hereto, and that the same is a true, correct and complete transcript of the testimony given by me.

_____    _____

Colin B. Weir                                    Date

*If notary is required

SUBSCRIBED AND SWORN TO BEFORE ME THIS

_____ DAY OF _____, 20___.

_____

NOTARY PUBLIC

Page 153

Veritext Legal Solutions
866-299-5127        calendar-ca@veritext.com        www.veritext.com