Jonas Jacobson (OSB No. 231106)
jonas@dovel.com
Simon Franzini (Cal. Bar No. 287631)*
simon@dovel.com
Stephen Ferruolo (Cal. Bar No. 364158)*
sferruolo@dovel.com
Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
Tel: (310) 656-7066
Facsimile: +1 (310) 656-7069

Julian C. Diamond (NY Bar No. 5836846)*
jdiamond@bursor.com
Bursor & Fisher, P.A.
1330 Avenue of the Americas
New York, NY 10019
Tel: (646) 837-7011
Facsimile: (212) 989-9163

*Attorneys for Plaintiff*

* Admitted *Pro Hac Vice*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| KEIRA MCCARRELL, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>RUGSUSA, LLC,<br><br>Defendant. | Case No. 3:25-cv-00454-AB<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF BRUCE SILVERMAN** |

**TABLE OF CONTENTS**


I. Introduction. .... 1

II. Argument. .... 1

- A. Admissible expert testimony requires expertise, reliable methodology, and relevance. .... 1
- B. Mr. Silverman is qualified by knowledge, skill, experience, training, and education. .... 2
- C. Mr. Silverman implements a reliable methodology. .... 5
- D. Mr. Silverman's testimony is relevant. .... 15

III. Conclusion. .... 16

## TABLE OF AUTHORITIES

**Cases**

*Alaska Rent-A-Car, Inc. v. Avis Budget Group, Inc.*,
738 F.3d 960 (9th Cir. 2013) ........ 6

*Avila v. Willits Env't Remediation Tr.*,
633 F.3d 828 (9th Cir. 2011) ........ 2

*Bailey v. Rite Aid Corp.*,
338 F.R.D. 390 (N.D. Cal. 2021) ........ 4, 12, 14

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993) ........ 15

*Deckers Outdoor Corp. v. Last Brand, Inc.*,
2025 U.S. Dist. LEXIS 195920 (N.D. Cal. Oct. 2, 2025) ........ 1

*FTC v. Qualcomm Inc.*,
2018 U.S. Dist. LEXIS 208197 (N.D. Cal. Dec. 10, 2018) ........ 6, 7

*Hadley v. Kellogg Sales Co.*,
2019 U.S. Dist. LEXIS 136791 (N.D. Cal. Aug. 13, 2019) ........ 5, 12, 14, 15

*Hadley v. Kellogg Sales Co.*,
324 F. Supp. 3d 1084 (N.D. Cal. 2018) ........ 14

*Hangarter v. Provident Life & Accident Ins. Co.*,
373 F.3d 998 (9th Cir. 2004) ........ 2

*Hobbs v. Brother Int'l Corp.*,
2016 U.S. Dist. LEXIS 195911 (C.D. Cal. Aug. 31, 2016) ........ 5, 13, 14, 15

*In re Arris Cable Modem Consumer Litig.*,
327 F.R.D. 334 (N.D. Cal. 2018) ........ 6, 14

*Kennedy v. Collagen Corp.*,
161 F.3d 1226 (9th Cir. 1998) ........ 2

*Krommenhock v. Post Foods*, *LLC*,
334 F.R.D. 552 (N.D. Cal. 2020) ........ 4, 12, 14, 15

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137 (1999) ........ 5, 6

*Loral Infared & Imaging Sys. v. ERA Helicopters*,
1997 U.S. App. LEXIS 14850 (9th Cir. June 17, 1997) ........ 16

*Lytle v. Nutramax Labs., Inc.*,
2022 U.S. Dist. LEXIS 95559 (C.D. Cal. May 6, 2022) ........ 1

*Messick v Novartis Pharms. Corp.*,
747 F.3d 1193 (9th Cir. 2014) ........ 15

*Messick v. Novartis Pharms. Corp.*,
747 F.3d 1193 (9th Cir. 2014) ........ 1

*Mullins v. Premier Nutrition Corp.*,
178 F. Supp. 3d 867 (N.D. Cal. 2016) .......... 14

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
31 F.4th 651 (9th Cir. 2022) .......... 2

*Primiano v. Cook*,
598 F.3d 558 (9th Cir. 2010) .......... 2, 5, 15

*Sali v. Corona Reg'l Med. Ctr.*,
909 F.3d 996 (9th Cir. 2018) .......... 1

*Sementilli v. Trinidad Corp.*,
155 F.3d 1130 (9th Cir. 1998) .......... 6

*United States v. Holguin*,
51 F.4th 841 (9th Cir. 2022) .......... 6, 7

*United States v. Sandoval-Mendoza*,
472 F.3d 645 (9th Cir. 2006) .......... 6

*Vizcarra v. Michaels Stores, Inc.*,
2025 U.S. Dist. LEXIS 104521 (N.D. Cal. June 2, 2025) .......... 12, 15

*Wendell v. GlaxoSmithKline LLC*,
858 F.3d 1227 (9th Cir. 2017) .......... 1

*Zarinebaf v. Champion Petfoods USA Inc.*,
2022 U.S. Dist. LEXIS 56603 (N.D. Ill. Mar. 29, 2022) .......... 5, 13, 14, 15

*Zeiger v. WellPet LLC*,
526 F. Supp. 3d 652 (N.D. Cal. 2021) .......... 5, 16

**Rules**

Fed. R. Evid. 702 .......... 6

## I. Introduction.

Bruce Silverman is recognized as a leading expert in how consumers perceive marketing materials and advertisements. He has provided expert testimony in dozens of cases and regularly testifies on misrepresentation cases just like this, implementing the same methodology he implements here. As detailed below, Mr. Silverman is highly qualified, and his opinions are reliable and relevant to the task at hand. Defendant's argument—that Mr. Silverman insufficiently bases certain opinions of his solely on his professional experience—has repeatedly been rejected.

## II. Argument.

### A. Admissible expert testimony requires expertise, reliable methodology, and relevance.

"The Ninth Circuit has placed great emphasis on *Daubert's* admonition that a district court should conduct this analysis 'with a 'liberal thrust' favoring admission.'" *Deckers Outdoor Corp. v. Last Brand, Inc.*, 2025 U.S. Dist. LEXIS 195920, at *3-4 (N.D. Cal. Oct. 2, 2025) (quoting *Messick v. Novartis Pharms. Corp.*, 747 F.3d 1193, 1196 (9th Cir. 2014)). If "opinions are not the junk science Rule 702 was meant to exclude," the "interests of justice favor leaving difficult issues in the hands of the jury and relying on the safeguards of the adversary system." *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1237 (9th Cir. 2017) (quotes omitted).

The Daubert standard is even more liberal for class certification. When "evaluating challenged expert testimony" for "class certification," the "evidence's ultimate admissibility should go to the weight that evidence is given at the class certification stage." *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1006 (9th Cir. 2018); *see Lytle v. Nutramax Labs., Inc.*, 2022 U.S. Dist. LEXIS 95559, at *8 (C.D. Cal. May 6, 2022) ("At this stage, the court considers only

if expert evidence is useful in evaluating whether class certification requirements have been met" (quotes omitted)). Plaintiffs' experts pass any level of *Daubert* review.

"When an expert meets the threshold established by Rule 702 as explained in Daubert, the expert may testify and the jury decides how much weight to give that testimony." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010). That threshold consists of three requirements: (1) "the witness has to be sufficiently qualified to render the opinion"; (2) "the expert testimony … rests on a reliable foundation"; and (3) "the expert testimony … is relevant to the task at hand." *Id*. at 563-64 (internal quotations omitted). At class certification, the "task at hand" is determining "whether the evidence establishes that a common question is capable of class-wide resolution, not whether the evidence in fact establishes that plaintiffs would win at trial." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 667 (9th Cir. 2022).

We demonstrate below that Mr. Silverman is highly qualified, his methodology is reliable, and the challenged opinions are relevant to the task at hand.

**B. Mr. Silverman is qualified by knowledge, skill, experience, training, and education.**

"Rule 702 contemplates a broad conception of expert qualifications" and requires a "minimal foundation of knowledge, skill, and experience." *Hangarter v. Provident Life & Accident Ins. Co*., 373 F.3d 998, 1015-16 (9th Cir. 2004) (internal quotations omitted). "[A]s long as an expert stays within the reasonable confines of his subject area," an expert's "lack of specialization goes to weight, not admissibility, of [the] expert opinion." *Avila v. Willits Env't Remediation Tr*., 633 F.3d 828, 839 (9th Cir. 2011). So do "[d]isputes as to the strength of [an expert's] credentials." *Kennedy v. Collagen Corp*., 161 F.3d 1226, 1231 (9th Cir. 1998) (second alteration in original) (citation omitted).

Mr. Silverman's qualifications as an expert in how consumers perceive and understand advertising and marketing messages far exceed this standard. He is the owner and manager of Silverman Consulting LLC, an advertising and branding firm he founded in 2005. Declaration of Bruce Silverman (Dkt. 55) ("Silverman Decl."), ¶ 11. He has worked with law firms both as a consultant and as an expert witness on cases involving false and deceptive marketing. *Id*. He regularly testifies as an expert in federal courts throughout the country. *Id*.

Mr. Silverman has worked for over 50 years at the highest levels in the "real world" of marketing and advertising. *Id*. ¶ 13, Ex. B (Silverman's CV). He began his career working at the Ogilvy & Mather agency, working side by side with David Ogilvy, who is considered one of the most important advertising figures of the 20th century. *Id*. ¶ 14. At Ogilvy & Mather, Mr. Silverman worked his way up to Chief Creative Officer, the highest-ranking position in the creative department of an advertising agency. *Id*. He later joined the Asher/Gould agency in Los Angeles as co-owner, President, and Chief Creative Officer. *Id*. ¶ 17. And in 1997, he was appointed President/CEO of the principal U.S. unit of Western International Media, which was then the largest advertising media planning and buying agency in the world. *Id*. ¶ 20. In 2005, he founded Silverman Consulting LLC, which (in addition to its consulting and expert witness services) provides both creative and media services typically offered by advertising agencies. *Id*. ¶ 22.

During his career, he has authored hundreds of advertisements and label designs, including many that are instantly recognizable by any lay consumer. *Id*. ¶¶ 24-25. He was also responsible for guiding and approving the work of the hundreds of copywriters, art directors, and producers who, over the years, reported to him. *Id*. ¶ 26.

To reach the top of the advertising world, Mr. Silverman became "a true student of advertising," always striving to improve his knowledge and skills in how to "engage consumers,"

which required him to obtain "a deep understanding of consumer purchasing behavior." *Id.* ¶¶ 26-27. In addition "to deriving useful information from the thousands of … quantitative marketing and advertising studies [he] reviewed over the years," Mr. Silverman "personally interviewed more than 5,000 consumers about advertising and branding issues for products and services ranging from business jets to ice cream cones" and "observed at least 3,500 focus group sessions … including sessions devoted entirely to discussing with consumers what they knew and felt about price promotions." *Id.* ¶ 28. He also "regularly made (and continue[s] to make) it a practice to interview consumers on a one-on-one basis" to learn "about their shopping habits." *Id.* ¶ 64.

As a result of his skill, knowledge, and experience, Mr. Silverman is recognized by his peers as one of the world's leading experts and has "been the recipient of virtually every significant award for advertising effectiveness and creativity offered by the advertising industry." *Id.* ¶ 30.

Federal courts repeatedly recognize Mr. Silverman's expertise and routinely approve his testimony on the same topics at issue here—consumer perception of marketing statements (here, Defendant's tool-tip disclaimer) and its impact on consumers' purchasing decisions. *See* Silverman Decl., Ex. C (listing dozens of cases in which he has provided expert testimony in the past four years). For example, *Bailey* held that, because Silverman "has five decades of experience in the 'marketing-communication industry,'" he is qualified to offer expert testimony "on the question of whether a reasonable consumer is likely to be deceived by an allegedly misleading statement." *Bailey v. Rite Aid Corp.*, 338 F.R.D. 390, 401 (N.D. Cal. 2021). *Krommenhock* held that because of Mr. Silverman's extensive "experience in the [marketing] industry," he is qualified to opine on "consumer behavior and decision-making as it relates to labeling." *Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 579 (N.D. Cal. 2020). *Hadley II*

held that, because of "his many years of marketing experience," Mr. Silverman is qualified to opine on "consumer behavior and the challenged claims" appearing on the product's packaging. *Hadley v. Kellogg Sales Co.*, 2019 U.S. Dist. LEXIS 136791, at *73 (N.D. Cal. Aug. 13, 2019) ("*Hadley II*"). *Hobbs* held that, because of his "extensive and specialized experience in the marketing communications industry," "Silverman is competent to [opine] on a reasonable consumer's perceptions of the [challenged] statements on Defendant's website and print materials." *Hobbs v. Brother Int'l Corp.*, 2016 U.S. Dist. LEXIS 195911, at *11-12 (C.D. Cal. Aug. 31, 2016). *Zarinebaf* held that, because Mr. Silverman has "decades of experience" as "an advertising executive," he is qualified to provide consumer perception opinions, despite criticisms of his "lack of experience" with the specific product and labeling at issue. *Zarinebaf v. Champion Petfoods USA Inc.*, 2022 U.S. Dist. LEXIS 56603, at *16-17, 21 (N.D. Ill. Mar. 29, 2022). And although the defendant in *Zeiger* did not challenge Mr. Silverman's opinions at *Daubert*, the court nonetheless remarked that, because of Mr. Silverman's "expertise in consumer understanding and brand development," his opinions on how certain statements "would be understood by consumers" "are relevant and helpful." *Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652, 683 (N.D. Cal. 2021).

In sum, Mr. Silverman is more than qualified to offer the challenged testimony in this case.

**C. Mr. Silverman implements a reliable methodology.**

Mr. Silverman's methodology exceeds the reliability standard and has routinely been approved by federal courts.

"[T]he test of reliability is 'flexible.'" *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). After all, expert "evidence [can] be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano*, 598 F.3d at 564. The ultimate

question for a court is "whether the testimony has a reliable basis in the knowledge and experience of [the relevant] discipline." *Kumho Tire*, 526 U.S. at 149 (alteration in original) (internal quotations omitted). Under *Daubert*, courts should "screen … unreliable nonsense opinions, but not exclude opinions merely because they are impeachable." *Alaska Rent-A-Car, Inc. v. Avis Budget Group, Inc.*, 738 F.3d 960, 969 (9th Cir. 2013).

As "the Ninth Circuit explained," an expert's "'opinions and inferences … based on his review of … records, as well as his knowledge, experience, training and education'" that "help[s] the jury understand the evidence," is a reliable methodology. *In re Arris Cable Modem Consumer Litig.*, 327 F.R.D. 334, 363 (N.D. Cal. 2018) (quoting *Sementilli v. Trinidad Corp.*, 155 F.3d 1130, 1134 (9th Cir. 1998)). "'[T]he application of extensive experience' is a 'method' that can reliably support expert testimony." *United States v. Holguin*, 51 F.4th 841, 855 (9th Cir. 2022) (citing Fed. R. Evid. 702 advisory committee's note to 2000 amendment); *see United States v. Sandoval-Mendoza*, 472 F.3d 645, 655 (9th Cir. 2006) ("When evaluating specialized or technical expert opinion testimony, 'the relevant reliability concerns may focus upon personal knowledge or experience.'").

"[E]xperience-based expert testimony is reliable if the expert explain[s] how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *FTC v. Qualcomm Inc.*, 2018 U.S. Dist. LEXIS 208197, at *17 (N.D. Cal. Dec. 10, 2018) (internal citations and quotations omitted). For example, *Qualcomm* held that a patent licensing executive with 31 years' experience had "sufficiently demonstrated how his experience leads to his conclusions, why his experience is a sufficient basis for his opinions, and how that experience is reliably applied to the facts" by reviewing the "case law, discovery responses, testimony, depositions, and Qualcomm documents," and then "form[ing] his opinions 'based on the foregoing personal experience and .

. . [his] understanding of the views and conduct of industry participants'" that he gleaned from these materials. *Id*. at *17-19. The court concluded that the expert had "used his experience as a patent license negotiator to opine on topics relating to that very subject area," and had "arrive[d] at his conclusions with this experience in hand and after reviewing the available facts" *Id*. at *19. The court "therefore deem[ed] [his] opinions . . . sufficiently reliable to be admissible." *Id*.

As demonstrated below, the same is true here. Like the expert in *Qualcomm*, Mr. Silverman reviewed the case-specific record, applied decades of specialized advertising experience, and explained how and why that experience leads to the conclusions he reached, when applied to the facts of this case. Indeed, Defendant's principal authority, *Holguin*, supports admission rather than exclusion. *Holguin* requires an experience-based expert to explain how his experience leads to his conclusions, why that experience is a sufficient basis for those conclusions, and how it is applied to the facts. *Holguin*, 51 F.4th at 855. This is exactly what Mr. Silverman does here.

The challenged testimony here concerns how consumers would perceive the fine-print asterisk-like question mark ("?") appearing along with the strikethrough pricing on RugsUSA's product pages, as well as the disclaimer that pops up if a consumer were to notice the small asterisk and elect to click on it. Silverman Decl., ¶¶ 90-98.




*Id.* ¶ 90 (showing a representative product page that includes the asterisk-like question mark ("ⓘ") in fine grey print alongside the strikethrough pricing (~~$79~~) (what Defendant also calls the Compare at Price), the discount price in red (**$49**), and the purported discount (38% OFF)).

[redacted] Ferruolo Decl., Ex. 1 (Hadian depo.) at 116:17-117:3; 118:5-11; 118:24-119:4.

Defendant challenges Mr. Silverman's opinion that "reasonable consumers would not notice or think to click on the inconspicuous asterisk and would therefore be justifiably unaware of any disclaimer." Silverman Decl., ¶ 92. Defendant argues that this opinion is based on "vague references to his 'experience'" with no explanation of how that experience applies to "the facts of this case" or "the ultimate conclusions he offers." Mot. 2. Not so. Defendant simply ignores Mr. Silverman's detailed description of his experience, and his detailed explanation of how that experience applies to the facts here and how and why it supports his conclusions.

Mr. Silverman explains: "During [his] years in the agency business, [he] was frequently required to include a disclaimer (or multiple disclaimers) in an ad or commercial [he] wrote or

supervised." Silverman Decl., ¶ 93. He was repeatedly presented with "the same challenge, i.e., making the disclaimer that was written and provided to us by the agency's or client's attorneys as invisible or as unlikely to be read as possible." *Id.* He learned how best to do so by "regularly ma[king] … it a practice to interview consumers on a one-on-one basis … about their shopping habits" and studying "how closely they look at labels and point-of-sale ads." *Id.* ¶¶ 64, 92. He applied this same skill, knowledge, and expertise when analyzing the disclaimer on RugsUSA's website, and he found it to have all the hallmarks of a disclaimer that was intended not to be read, and that typically would not be read. *Id.* ¶¶ 92-93. The disclaimer is "not prominently featured as part of the purchasing process" [redacted] *Id.* [redacted] *Id.* [redacted] *Id.* He further explained, "it has been [his] experience" that when consumers "are purchasing from a large, well-branded company" like RugsUSA that "is likely to be perceived as trustworthy" they are even less likely to seek out and "make a point of checking the accuracy of each and every claim by reading fine print disclaimers that may accompany them." *Id.* ¶ 94.

Mr. Silverman further opines that, even if a reasonable consumer were to click on the asterisk and read the disclaimer, a reasonable consumer would not understand the disclaimer in a way that undoes the deception. *Id.* ¶¶ 95-98. Here is the disclaimer that is displayed if a user clicks the asterisk:




To begin, Mr. Silverman explains in detail, in testimony that Defendant does not challenge, the relevant context in which a consumer would see this disclaimer: "a reasonable consumer" who is shown a "purported discount would understand that … the 'list' prices (also referred to as a reference price or strikethrough price) featured on Defendant's website are the prices that Defendant usually and typically charges consumers to buy its products." *Id.* ¶ 39; *id.* ¶¶ 42-59, 64-67 (detailing how his experience on consumer perception of pricing and discounts supports this conclusion); *id.* ¶¶ 68-73 (applying that experience to RugsUSA's website pricing and discounts). He then explains why the text of the disclaimer does nothing to dispel or undermine this understanding of the reasonable consumer. Because "[s]trikethrough pricing unambiguously indicates to reasonable consumers that they are getting a discount off the former, regular price of the item," they "would not expect any disclaimer to contradict [this] reasonable expectation." *Id.* ¶ 92. And their reasonable expectation is confirmed and reinforced when, like here, the disclaimer does not include any language that explicitly dispels or contradicts that expectation: it does not say that the strikethrough price shown is different from (and actually

much higher than) RugsUSA's former or regular price. *Id.* ¶ 95. That is, if RugsUSA's disclaimer had stated the truth—i.e., that the strikethrough price displayed is higher than the true regular price, and that the lower discount prices ("$49" in the above example) are actually RugsUSA's "everyday prices," *id.* ¶¶ 58-61—that would have directly contradicted and potentially dispelled the reasonable consumers' understanding. *Id.* ¶¶ 95-97. But that is not what the disclaimer says. *Id.* "[T]he disclaimer does not explain [to the consumer] the true way that the reference price, or the 'Compare at Price,' is determined." *Id.* ¶¶ 58-61, 95.

Mr. Silverman further explains that the disclaimer's "statement that the 'Compare at Price may not be the prevailing market price for an item' would not affect the understanding of a reasonable consumer one way or the other because a reasonable consumer would not understand what 'prevailing market price' means." *Id.* ¶ 98. This stands in contrast to "words and phrases like '%X off' … and/or the inclusion of strikethrough pricing" which "in [his] experience" reasonable "consumers [do] understand." *Id.* ¶¶ 54, 56. Mr. Silverman's experience here is on point given his "observ[ations] [of] at least 3,500 focus group sessions …, including sessions devoted entirely to discussing with consumers what they knew about price promotions." *Id.* ¶ 28. Moreover, Mr. Silverman's experience-based conclusion is further confirmed by the factual record in this case. [redacted] Ferruolo Decl., Ex. 2 (McManic depo.) at 7:3-8; 14:23-15:8, 138:1-17; 140:2-5. Mr. Silverman points to this testimony as further validation of the opinion he reached based on his experience; he does not "rely solely" on it. Mot. 7.

In sum, Mr. Silverman uses the precise type of experience-based methodology—accompanied with an explanation of how that experience is applied to the specific facts of the

case and why it supports the expert conclusion—that courts repeatedly hold to be reliable and admissible.

For example, the defendant in *Bailey* made the same challenge Defendant makes here, arguing "that Silverman's opinions have no meaningful support, because they are based primarily on his work experience in the advertising industry." *Bailey*, 338 F.R.D. at 401. The court held that this argument "fall[s] flat" because "Silverman's experience" acquired during his "five decades of experience in the marketing-communication industry" "allows him to reliably and persuasively opine" on how consumers perceive labeling and whether they are deceived. *Id*.

Likewise, the defendant in *Vizcarra* also made similar challenges to Defendant by challenging "whether Silverman's advertising experience provides a sufficient foundation to offer specific opinions about" the defendant, its customers, and the specific coupon discount at issue in the case. *Vizcarra v. Michaels Stores, Inc.*, 2025 U.S. Dist. LEXIS 104521, at *9 (N.D. Cal. June 2, 2025). But the court rejected the argument that Silverman's opinions "exceed[ed] his expertise" and held that his opinions in the case were "sufficiently based in his experience in the advertising industry." *Id.*

In *Krommenhock*, the court held that defendant's "assertion that Silverman … had no methodology to support his analysis" is "without merit … because Silverman's opinions are based on his many years of marketing experience." *Krommenhock*, 334 F.R.D. at 580 (internal citations and quotations omitted). In *Hadley II*, the court held that Mr. Silverman's "[e]xperience-based" methodology is "reliable" and admissible because it is "based on his many years of marketing experience and his review of [defendant's] own … documents." *Hadley II*, 2019 U.S. Dist. LEXIS 136791, at *73. In *Hobbs*, the court rejected the defendant's objection to Mr. Silverman's methodology and held that his opinions on "reasonable consumer's perceptions" were reliable based on his "extensive and specialized experience in the marketing

communications industry." *Hobbs*, 2016 U.S. Dist. LEXIS 195911, at *11-12.

Similarly, in *Zarinebaf*, the court rejected defendant's argument that "Silverman's methodology is unreliable." *Zarinebaf*, 2022 U.S. Dist. LEXIS 56603, at *17. The court explained that "Silverman testified that he was familiar with how and why advertising is crafted, and how consumers review and consider packaging" based on "working on advertising for hundreds of products and services." *Id*. at *21 (internal quotations omitted). Because "he applied the same analysis to this case" when he "provided an opinion as to the materiality of the messaging on … [the] dog foods," his opinions were properly "tailored to his advertising expertise" and therefore reliable and admissible despite "criticisms of Silverman's lack of experience" with the specific product and messaging at issue. *Id*. at *19-21. Similarly, here, Mr. Silverman explains how, based on decades of advertising experience and thousands of "focus groups … devoted entirely to discussing with consumers what they knew and felt about price promotions," he gained "a deep understanding of consumer purchasing behavior." Silverman Decl., ¶¶ 27-28. And based on his experience of "frequently … includ[ing] a disclaimer (or multiple disclaimers) in an ad or commercial [he] wrote or supervised," he had a deep understanding of the characteristics that cause a consumer to "see," choose to "read," and "understand" a disclaimer. *Id*. ¶¶ 92-98. His opinions are therefore tailored to his advertising experience, reliable, and admissible.

Defendant also argues repeatedly throughout its motion that Mr. Silverman's opinions lack a "reliable methodology" because he does "not offer any quantitative or qualitative data" or "surveys." Mot. 1-4; *id*. at 4 (he "has conducted no consumer surveys or studies"); *id*. at 4 (he "has not reviewed any data"); *id*. at 1 ("[h]e has not conducted any studies or interviews with the relevant population"); *id*. ("[n]or has he reviewed or cited any empirical data").

Defendant's argument "misconstrues … the law governing expert opinions" because

"nothing" in *Daubert* "requires that an expert conduct independent testing." *In re Arris Cable Modem Consumer Litig*., 327 F.R.D. at 363. "While surveys … regarding consumer assumptions and expectations may be offered, they are not required." *Mullins v. Premier Nutrition Corp*., 178 F. Supp. 3d 867, 890 (N.D. Cal. 2016) (internal quotations omitted). And "an expert who offers testimony" on how "a reasonable consumer is likely to" perceive an ad or marketing message "is not required to conduct a consumer survey." *Bailey*, 338 F.R.D. at 401 (rejecting argument that "Silverman's opinions" are not "reliable" "because he did not conduct a survey of Rite Aid gelcaps consumers"); *Hadley v. Kellogg Sales Co*., 324 F. Supp. 3d 1084, 1115 (N.D. Cal. 2018) ("*Hadley I*") (the "argument" in defendant's "*Daubert* motion" that "Mr. Silverman did not [] survey or interview a single consumer" "is without merit."). For example, the court in *Zarinebaf* rejected defendant's argument that "Silverman did not conduct interviews, surveys, or focus groups" and credited "his opinions related to … consumer perception" based on the "specialized knowledge in advertising and marketing that he has brought to bear on his opinions." *Zarinebaf,* 2022 U.S. Dist. LEXIS 56603, at *17, 22. The court in *Krommenhock* likewise held that Defendant's "argument that Silverman's opinions must be excluded because he did not conduct any focus group or other consumer testing is misplaced." *Krommenhock*, 334 F.R.D. at 580. The court in *Hadley II* rejected defendant's "challenges [to] Mr. Silverman's opinions about consumer behavior and the challenged claims for failing to conduct a consumer survey." *Hadley II*, 2019 U.S. Dist. LEXIS 136791, at *73. And the court in *Hobbs* rejected defendant's attempt to "fault[] Silverman for not conducting a market survey." *Hobbs,* 2016 U.S. Dist. LEXIS 195911, at *11.

In sum, choosing not to conduct a survey or interview consumers is not a basis for *Daubert*. If anything, this argument "goes to the weight to be placed on [Silverman's] opinion, not its admissibility." *Zarinebaf*, 2022 U.S. Dist. LEXIS 56603, at *22 (holding that defendant's

"criticisms of Silverman's … choice not to speak to consumers" is not a basis for *Daubert* and is, instead "something [defendant] could inquire into on cross-examination"); *Vizcarra*, 2025 U.S. Dist. LEXIS 104521, at *9 (The "argument from Defendant" "that Silverman has not employed any reliable methodology for reaching those opinions" "goes to the weight, not the admissibility." (internal quotations omitted)).

Defendant also repeatedly labels Mr. Silverman's opinions as "*ipse dixit*." Mot. 2, 5, 6. But his experienced-based methodology (applying his experience to the facts in this case, as detailed above) is reliable and not *ipse dixit*. Courts repeatedly reject this argument and hold that the same experience-based methodology implemented here is reliable and admissible. *See Zarinebaf*, 2022 WL 910638, at *6 (holding that Mr. Silverman's opinions are not "mere *ipse dixit*" and that his experience-based methodology is reliable and admissible); *Hadley II*, 2019 U.S. Dist. LEXIS 136791, at *73 (same); *Hobbs*, 2016 U.S. Dist. LEXIS 195911, at *11-12 (same); *Krommenhock*, 334 F.R.D. at 580 (same).

**D. Mr. Silverman's testimony is relevant.**

An expert's testimony must be "relevant to the task at hand." *Primiano*, 598 F.3d at 564 (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993)). "The relevancy bar is low, demanding only that the evidence logically advances a material aspect of the proposing party's case." *Messick v Novartis Pharms. Corp*., 747 F.3d 1193, 1196 (9th Cir. 2014) (internal quotations omitted).

Here, the relevance of Mr. Silverman's challenged testimony is clear. The testimony is relevant to class certification because it provides common evidence (that will then be used at the merits stage) to show how reasonable consumers would perceive the challenged pricing representations and whether the disclaimer would alter that perception.

Defendant argues that Mr. Silverman's opinions "contribute nothing" and "improperly

invade the province of the jury" Mot. 7. But the jury does not have Mr. Silverman's expertise in consumer perception of advertisements and labels. This is why courts routinely find Mr. Silverman's testimony on these topics to be relevant and helpful. *See, e.g., Zeiger*, 526 F. Supp. 3d at 683 (Mr. Silverman's opinions on how consumers perceive advertisements and statements within advertisements "are relevant and helpful" because of his "expertise in consumer understanding"). Also, any "[d]oubts about whether an expert's testimony will be useful should generally be resolved in favor of admissibility." *Loral Infared & Imaging Sys. v. ERA Helicopters*, 1997 U.S. App. LEXIS 14850, at *4 (9th Cir. June 17, 1997) (internal quotations omitted).

**III. Conclusion.**

For the foregoing reasons, Defendant's motion to exclude opinions of Mr. Silverman should be denied in its entirety. Plaintiff does not believe an evidentiary hearing is necessary.

Dated: July 22, 2026

Respectfully submitted,

*/s/ Stephen Ferruolo*

Jonas Jacobson (OSB No. 231106)
jonas@dovel.com
Simon Franzini (Cal. Bar No. 287631)*
simon@dovel.com
Stephen Ferruolo (Cal. Bar No. 364158)*
sferruolo@dovel.com
Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
Tel: (310) 656-7066
Facsimile: +1 (310) 656-7069

Julian C. Diamond (NY Bar No. 5836846)*
jdiamond@bursor.com
Bursor & Fisher, P.A.
1330 Ave. of the Americas
New York, NY 10019

Tel: (646) 837-7011
Facsimile: (212) 989-9163

*Attorneys for Plaintiff*

* Admitted *Pro Hac Vice*