P. Craig Cardon (CA 168646)*
Kevin M. Murphy (CA 346041)*
Rana Salem (CA 358050)*
SHEPPARD MULLIN RICHTER & HAMPTON LLP
1901 Avenue of the Stars, Suite 1600
Los Angeles, CA 90067
T: 310.228.3700 / F: 310.228.3701
ccardon@sheppard.com
kemurphy@sheppard.com
rsalem@sheppard.com

Abby H. Meyer (CA 294947)*
SHEPPARD MULLIN RICHTER & HAMPTON LLP
650 Town Center Drive, 10th Floor
Costa Mesa, CA 92626
T: 714.513.5100 / F: 714.513.5130
ameyer@sheppard.com

[COUNSEL CONTINUED ON NEXT PAGE]

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

KEIRA McCARRELL, individually and on behalf of all others similarly situated,

Plaintiff,

v.

RUGSUSA, LLC,

Defendant.

Case No. 3:25-cv-00454-AB

**DEFENDANT RUGSUSA, LLC'S REPLY IN SUPPORT OF MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF PLAINTIFF'S EXPERT J. MICHAEL DENNIS**

ORAL ARGUMENT REQUESTED

Timothy W. Snider, OSB 034577
Nicholas R. Bottcher, OSB 245683
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR 97205
timothy.snider@stoel.com
nicholas.bottcher@stoel.com
T: 503.224.3380

*Attorneys for Defendant, RugsUSA, LLC*

*Admitted *Pro Hac Vice*

## I. INTRODUCTION

Plaintiff's opposition fails to address the fundamental deficiencies identified in RugsUSA's moving papers. Rather than attempt to demonstrate that Dr. Dennis's proposed conjoint surveys can reliably calculate classwide damages, Plaintiff retreats to the refrain that any perceived flaws go to "weight, not admissibility." However, the reliability requirements set forth in the 2023 amendment to Rule 702, make clear that the sufficiency of an expert's basis and methodology are threshold admissibility questions – not simply matters of "weight" – even at the class certification stage.

Plaintiff's remaining arguments do not withstand scrutiny under Rule 702 and *Daubert*. First, Plaintiff does not dispute that Dr. Dennis's proposed conjoint surveys would test only a limited subset of product configurations while ignoring the numerous different promotional combinations that Oregon consumers actually encountered. Plaintiff instead asserts that this "category-based sampling" approach reflects "standard practice" in conjoint analysis. But Plaintiff's argument disregards that there are no "standard" applications for conjoint analysis in these kinds of cases. In fact, Plaintiff fails to point to any case in which a similar conjoint survey has actually been used to evaluate a price premium or overpayment associated with alleged false discount pricing. Indeed, Plaintiff's expert, Colin Weir, testified that he was *unaware of any such case*. (*See* Ex. B to Cardon Decl., Weir Deposition Tr. 44:15-25.)

Plaintiff's argument also improperly ignores the subjective standard applicable to Plaintiff's UTPA claims – a deficiency that is compounded by the nature of the products at issue. Unlike packaged consumer goods, purchasing a rug is far more akin to purchasing a piece of art – the decision is driven by inherently subjective, aesthetic considerations such as color, pattern, texture, and how those attributes interact with a consumer's unique interior design preferences and personal taste. Dr. Dennis's proposed surveys, which seek to test only a handful of generic

product configurations, do not capture these individualized purchasing decisions, yet Plaintiff offers no response to this fundamental mismatch between Dr. Dennis's proposed methodology and the subjective inquiry that the UTPA demands.

Second, Plaintiff offers no meaningful response to the fact that Dr. Dennis's proposed surveys fail to account for real-world purchasing behavior – including comparison shopping and the actual RugsUSA website interface through which consumers browse and select rug products. Instead, Plaintiff concedes that a conjoint survey cannot accommodate these conditions, which only reinforces that the methodology Dr. Dennis has chosen is not suited to the facts and circumstances of this case.

Finally, Plaintiff does not dispute that Dr. Dennis omitted the website Disclaimer from his proposed surveys. Instead, Plaintiff offers post-hoc justifications that Dr. Dennis himself did not endorse at his deposition – including reliance on the *ipse dixit* opinions of Bruce Silverman, who is not even referenced in Dr. Dennis's Report and who does not purport to offer opinions on conjoint survey design. Dr. Dennis testified that he omitted the Disclaimer simply because he was not instructed to include it, but a lack of instruction does not excuse an expert from accounting for key analytical inputs in his survey design. Plaintiff cannot use material outside of Dr. Dennis's expert report (which does not even relate to conjoint design) to paper over these fundamental design deficiencies.

For these reasons and those set forth below, the Court should grant RugsUSA's Motion and exclude Dr. Dennis's proposed conjoint survey opinions and related testimony.

## II. THE COURT SHOULD EXCLUDE DR. DENNIS'S OPINIONS AND TESTIMONY BASED ON THE PROPOSED CONJOINT SURVEYS

### A. Plaintiff's "Weight, Not Admissibility" Arguments Conflict With Rule 702

Plaintiff asserts that challenges to "conjoint methodology" do not support exclusion and

that any perceived flaws "go to the weight and not the admissibility of expert opinions." (Opp. at pp. 3-4 (collecting cases).) But Plaintiff's argument misstates the Court's gatekeeping function, as was made clear by the December 2023 amendment to Rule 702. Prior to the amendment, many courts had similarly "held that the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology, are questions of weight and not admissibility." *See* Fed. R. Evid. 702 advisory committee's note to 2023 amendment. However, as the committee recognized, these rulings were "an incorrect application of Rule[] 702." *Id.*

Plaintiff's reliance on the district court's decision in *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466 (C.D. Cal. 2012), for the proposition that a "full *Daubert* analysis" is not required at the class certification stage does not rescue Dr. Dennis's opinions. (Opp. at pp. 1-2.) Even under a tailored analysis, the Ninth Circuit has made clear that expert testimony offered in support of class certification must satisfy *Daubert*'s requirements of relevance and reliability in connection with the Rule 23 factors. *Grodzitsky v. Am. Honda Motor Co.*, 957 F.3d 979, 984 (9th Cir. 2020).[1] Moreover, where, as here, a plaintiff relies on an unexecuted damages model, she must establish "by a preponderance of the evidence, that the model will be able to reliably calculate damages in a manner common to the class at trial." *Lytle v. Nutramax Lab'ys, Inc.*, 114 F.4th 1011, 1024 (9th Cir. 2024).

RugsUSA's Motion therefore properly challenges whether Dr. Dennis's proposed conjoint surveys can reliably and relevantly measure classwide damages, a question that goes directly to the Rule 23 requirements of commonality and predominance. Plaintiff's attempt to

---

[1] Neither of the other district court cases cited by Plaintiff reduce this gatekeeping function. *See Spann v. J.C. Penney Corp.,* 307 F.R.D. 508, 516-17 (C.D. Cal. 2015) ("district courts must conduct an analysis tailored to whether an expert's opinion was sufficiently reliable to admit for the purpose of proving or disproving Rule 23 criteria, such as commonality and predominance"); *Rai v. Santa Clara Valley Transportation Auth.,* 308 F.R.D. 245, 264 (N.D. Cal. 2015) (similar).

recast these fundamental methodological failures as mere "merits issues" should be rejected.

### B. Dr. Dennis's "Category-Based Sampling" Approach Fails To Satisfy The Subjective Standard Under The UTPA

Plaintiff does not dispute that Dr. Dennis's proposed conjoint surveys test only a limited number of rug sizes, characteristics, and prices. Instead, Plaintiff defends this approach as "common practice" and "standard practice" in conjoint analysis. (Opp. at p. 4.) However, Plaintiff fails to acknowledge that the use of conjoint analysis to evaluate purported overpayment associated with an alleged reference price or false discount (as Dr. Dennis proposes to do here) is far from "common" or "standard." Indeed, the undersigned counsel for RugsUSA is not aware of any such case in which a conjoint study has ever been performed. Plaintiff's expert, Mr. Weir, testified at deposition that he was similarly unaware of any such case.[2] The fact that conjoint analysis has been accepted *in other cases* involving entirely different claims and circumstances is therefore inapposite.

Plaintiff's argument ignores the central problem identified in RugsUSA's motion: the subjective standard applicable to Plaintiff's UTPA claims requires proof of what "individual purchasers in fact believed and whether their beliefs motivated their purchases." *Pearson v. Philip Morris, Inc.*, 358 Ore. 88, 126, fn. 26 (2015).[3]

---

[2] (*See* Ex. B to Cardon Decl., Weir Deposition Tr. 44:15-25 (Q. "When I took your deposition a year ago, you said you were not aware of any case in which a conjoint study was actually performed to evaluate a price premium or overpayment in a reference price or false discount pricing case. Is that still the case?" A. "I think the full context would have been that I was aware of numerous instances where conjoint had been proposed or considered for that, but then that I did not have awareness of the execution of a conjoint in that way and to the best of my recollection as I sit here today, that would still hold true.").)

[3] The UTPA's subjective standard also differs from the *objective* standard applicable to California's consumer protection claims at issue in the cases cited in Plaintiff's opposition. *See e.g., Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 563-64 (N.D. Cal. 2020) ("The relevant analysis under California law does not consider whether each class member saw and relied on each of the Challenged Statements and in what combination, but instead whether the Challenged

Whatever may constitute "best practices" in conjoint analysis generally does not establish that a conjoint survey is a proper method to reliably calculate damages *as applied to the facts of this case*. *See Lytle*, 114 F.4th at 1024 (a plaintiff or their expert "must chart out a path to obtain all necessary data and demonstrate that the proposed method will be viable as applied to the facts of a given case."); *LeGrand v. Abbott Laboratories*, No. 22-cv-05815-TSH, 2025 U.S. Dist. LEXIS 156022, at *14, 2025 WL 2323352 (N.D. Cal. Aug. 4, 2025); *see also Usler v. Vital Farms, Inc.*, No. A-21-CV-447-RP, 2024 U.S. Dist. LEXIS 121033, at *22, 2024 WL 3843802 (W.D. Tex. July 9, 2024). For example, in *Usler*, the court acknowledged that the plaintiff's prominent survey expert had been "successfully offered as an expert in many cases and conjoint analysis has been accepted by many courts." 2024 U.S. Dist. LEXIS 121033, at *20. However, the court also correctly recognized that the relevant concern "is not [the expert] or conjoint analysis, but how [the expert] uses conjoint analysis" as applied to the specific case at issue. *Id.* Because the expert improperly conflated the defendant's wholesale and retail pricing in designing his model, the court excluded the expert's conjoint-based opinions at the class certification stage finding that the plaintiffs had failed to demonstrate that such an "application of conjoint analysis" was "sufficiently tied to their damages model." *Id.* at *21.

Here, as set forth in the moving papers, Dr. Dennis's proposed conjoint surveys wrongly attempt to reduce the diverse purchasing experiences of Oregon consumers to a handful of generic product configurations and therefore cannot reliably capture the individualized, subjective reliance that Plaintiff's own theory of liability demands. Indeed, Plaintiff wholly fails

---

Statements were used consistently through the Class Period, supporting an inference of classwide exposure, and whether the Challenged Statements would be material to a reasonable consumer [. . .] the question is how an objective 'reasonable consumer' would react to a statement, and not whether individual class members saw or were deceived by statements" (citation omitted).)

to address the fact that [redacted] (Ugone Report ¶ 131.) Dr. Dennis does not account for these variations in his survey design, and Plaintiff offers no explanation for how surveys that ignore them can reliably attempt to measure the "price premium" attributable to the "Compare at Price" across the entire proposed class. This failure alone is fatal to Dr. Dennis's proposed surveys under the Ninth Circuit's holding in *Lytle*.

The court's recent decision in *LeGrand v. Abbott Laboratories* is instructive in its application of *Lytle*. *Id.*, 2025 U.S. Dist. LEXIS 156022, at *14. In *LeGrand*, the plaintiff challenged several different labeling statements as false and misleading across multiple products and offered a conjoint survey that tested only two of the challenged statements on only one of the challenged products. *Id.* at *14-15. The defendant's expert similarly identified that, under the proposed conjoint methodology, the plaintiff's expert would need to run "thousands of surveys" to account for all combinations of the challenged statements across all challenged products. *Id.* at *15. The plaintiff failed to respond to this argument or explain how the expert's proposed damages model could practically account for all of the variations among the challenged statements. *Id.* at *17. The court properly excluded the expert's conjoint survey opinions as unreliable, holding that because the "proposed damages model cannot practically account for all the Challenged Statements, [plaintiff] has failed to show 'that the model will be able to reliably calculate damages in a manner common to the class at trial.'" *Id.* (quoting *Lytle*, 114 F.4th at 1024).

The same fatal deficiency is present here, but to an even higher degree. Like the expert in *LeGrand*, Dr. Dennis proposes to test only a limited subset of product configurations while ignoring the numerous different promotional combinations that Oregon consumers actually

encountered – [redacted] (Ugone Report ¶ 131.) And like the plaintiff in *LeGrand*, Plaintiff here has offered no explanation for how Dr. Dennis's proposed conjoint surveys can practically account for these variations or reliably calculate classwide damages across the full scope of the proposed class. Further compounding this problem, unlike in *LeGrand*, the products at issue are not several kinds of packaged nutrition drinks. They are widely varying rug products – with different sizes, colors, materials, patterns – that were purchased through the RugsUSA website.

The distinction between rug products and nutrition drinks underscores why Dr. Dennis's limited conjoint survey design is particularly unreliable here. Purchasing a rug is far more personal and akin to purchasing a piece of art than purchasing a packaged consumer good. When a consumer selects a nutrition drink, the decision is driven by a relatively finite and objective set of attributes – flavor, nutritional content, price, and perhaps brand. These attributes are largely fungible across purchasers. One consumer's evaluation of a "nutrition shake" does not necessarily differ from another's and therefore a conjoint survey testing of a representative subset of such products could have the potential to reasonably approximate the purchasing experience of a broader class if designed properly.

Rugs, by contrast, are aesthetic, decorative products whose appeal is inherently subjective – much like selecting a painting or sculpture for one's home. A consumer choosing a rug considers not only price but also color, pattern, texture, material, shape, and size – and, critically, how those attributes interact with the consumer's unique interior design preferences and personal taste. Two consumers purchasing the same 8'x10' wool rug at the same price may assign entirely different value to the "Compare at Price" based on wholly individualized aesthetic

motivations.

A standardized conjoint survey testing a handful of generic product configurations cannot capture these deeply personal purchasing decisions. Yet this is precisely the individualized, subjective inquiry that the UTPA demands. *See Pearson*, 358 Ore. at 126, fn. 26. Dr. Dennis's proposed surveys, which reduce this subjective purchasing experience to a few standardized product profiles, are no more capable of reliably measuring classwide damages for rug purchases than a survey asking consumers how much they would pay for "art" based on testing only two paintings.

Plaintiff's citation to *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, 326 F.R.D. 592 (N.D. Cal. 2018), for the proposition that limiting attributes avoids respondent confusion, misses the point. The issue is not whether Dr. Dennis used too many or too few attributes in the abstract, but whether his survey design can reliably measure willingness to pay on a classwide basis in a way that accounts for the actual experience of the proposed class – and it cannot. This fundamental gap between Dr. Dennis's survey design and the class experience renders the proposed conjoint analysis unreliable and incapable of establishing damages susceptible to common proof.

### C. Dr. Dennis's Failure to Adequately Approximate Real-World Purchasing Behavior is not Excused by the Limitations of Conjoint Analysis

Plaintiff's defense of Dr. Dennis's failure to account for comparison shopping and the realities of the RugsUSA website interface fares no better. Plaintiff again asserts that Dr. Dennis has followed "best practices" for litigation survey design and argues that both deficiencies go to "weight." (Opp. at pp. 3, 8-9.) But Plaintiff's arguments conflict with basic economic principles.

[redacted] (Ugone Report, ¶ 80(c).) Yet that is precisely the proposition that Dr. Dennis proposes to test. Plaintiff argues that this approach is proper, because *RugsUSA* "offers nothing suggesting" that the real-world scenario of comparison shopping can be accounted for in the "controlled environment" of a conjoint survey. (Opp. at p. 8.) This argument is self-defeating – it establishes that conjoint is not a valid tool in this situation if it cannot account for critical real world aspects of the experience.

As the proffering party, it is *Plaintiff's* burden to establish that the proposed conjoint surveys reliably calculate damages in a manner common to the class at trial. *Lytle*, 114 F.4th at 1024; *LeGrand*, 2025 U.S. Dist. LEXIS 156022, at *17. [redacted] (*See* Ugone Report ¶ 65.) To the extent Plaintiff argues that a conjoint survey simply cannot accommodate this real-world purchasing behavior, her argument only reinforces that the methodology chosen by Dr. Dennis is not appropriate for the facts and circumstances of this dispute.[4]

Dr. Dennis's failure to account for the way in which consumers actually select from different rug products on the RugsUSA website further highlights this problem. (*See* Ugone Report ¶ 80.) As discussed above, Plaintiff does not actually address that the RugsUSA website

[4] That other district courts have found conjoint analysis suitable in cases involving entirely different false advertising claims, products, and purchasing habits has no bearing on this issue. *See Maldonado v. Apple, Inc.,* No. 3:16-cv-04067-WHO, 2021 U.S. Dist. LEXIS 92483, at *4 (N.D. Cal. May 14, 2021) (involving purchases of AppleCare or AppleCare+ written hardware warranties); *Krommenhock*, 334 F.R.D. at 576 (involving purchases of packaged cereal products).

presents an entirely different format for selecting and comparing rug products from Dr. Dennis's proposed conjoint surveys. She instead misleadingly asserts that the proposed surveys include "images" depicting rug colors (Opp. at p. 8 (citing Report ¶¶ 106–108)). But the referenced "images" are simply colored circles and would not allow survey respondents to view any of the rug products at issue in the context in which they are actually presented on the website:




(*See* Report at p. 38.)

Plaintiff further asserts that including any other information would result in "too many levels of attributes in a survey" and therefore is not feasible due to the risk of "focalism bias." (Opp. at p. 8.) But Plaintiff's argument only reinforces the core problem above: Dr. Dennis's proposed conjoint surveys are not suited to reliably measure the alleged damages at issue in this case. The fact that Plaintiff believes a conjoint survey *cannot* properly account for the real-world purchasing conditions experienced by class members does not excuse Dr. Dennis from satisfying the reliability requirements of *Daubert* and Rule 702.

### D. Omission of the Disclaimer Is a Further Fundamental Flaw, Not a "Red Herring"

Plaintiff does not dispute that Dr. Dennis's proposed conjoint surveys omit the Disclaimer. Rather, Plaintiff attempts to explain the omission by arguing that it was a deliberate decision and "better approximates real world conditions where reasonable consumers never saw the tooltip in the first place." (Opp. at p. 7.) But that was not the explanation given by Dr. Dennis.

When asked about the exclusion of the Disclaimer at his deposition, Dr. Dennis instead stated that [redacted] (*See* Dkt. 80-1, Ex. A to Meyer Decl., pp. 78-79.) In other words, Dr. Dennis did not include the Disclaimer because [redacted] But a lack of instruction does not give Dr. Dennis a "hall pass" to omit key analytical inputs – especially when his assignment was to reliably measure whether and to what extent class members overpaid.

Plaintiff's arguments – which were not endorsed by Dr. Dennis at his deposition – also do not make economic sense or follow proper conjoint survey design. As Dr. Ugone explained, to measure potential overpayment using conjoint analysis, [redacted] (Ugone Report ¶ 80(a).) This is because [redacted] (*Id.* ¶ 80.) And, the information in the Disclaimer is available to consumers in the real-world purchasing condition.

Here, as courts have repeatedly recognized, the existence of a disclaimer provides important information and context available to customers in the real world which could alter the

understanding of consumers – and, thus, the conclusions reached by Dr. Dennis. *See Cheslow v. Ghirardelli Chocolate Co.*, 472 F. Supp. 3d 686, 695 (N.D. Cal. 2020) ("A consumer perception survey that deprives survey respondents of key information about a product that would be available in the marketplace is not proper evidence of consumers' understanding of that product and is therefore irrelevant and, ultimately, unreliable."); *see also Moore v. Trader Joe's Co.,* 4 F.4th 874, 882 (9th Cir. 2021) ("[D]eceptive advertising claims should take into account all the information available to consumers and the context in which that information is provided and used"); *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 779 (9th Cir. 2024).

Some putative class members may have viewed the Disclaimer and some may not. This variability presents a critical individual inquiry issue that undermines the viability of class-wide damages in this case and must necessarily be accounted for in conjoint survey design. *See Townsend v. Monster Bev. Corp.*, 303 F. Supp. 3d 1010, 1024, 1031 (C.D. Cal. 2018) ("in order to evaluate the price premium attributable to each of the alleged misstatements, [an expert] would have [] to conduct a survey that included the specific statements themselves."); Ugone Report ¶¶ 65(a), 80(a), 81.

Ignoring the role of context in evaluating advertising claims, Plaintiff instead attempts to excuse Dr. Dennis's omission of the Disclaimer by asserting that a consumer "never would have seen" it, citing to the opinion of Bruce Silverman.[5] (Opp. at p. 5.) But *Dr. Dennis does not purport to rely on the opinion of Mr. Silverman in his Report*. In fact, Mr. Silverman is not mentioned once in his Report. (*See generally* Report.) Nor is the Disclaimer. (*Id.*) Therefore, Plaintiff cannot incorporate those opinions into the Report through attorney argument. *See* Fed.

[5] As set forth in RugsUSA's separate motion to exclude, Mr. Silverman's opinion on this topic is itself *ipse dixit* and subject to exclusion.

R. Civ. Proc. 26 (expert report must set forth the “basis and reasons” for opinions).

Even if Dr. Dennis had attempted to rely on Mr. Silverman, he does not purport to offer opinions in this case regarding the proper design of a conjoint survey and a wholesale adoption of Mr. Silverman’s opinions by Dr. Dennis (as Plaintiff now suggests) would be improper. *See McCoy v. Depuy Orthopaedics, Inc.*, No. 22-CV-2075 JLS (SBC), 2024 U.S. Dist. LEXIS 72108, at *31, 2024 WL 1705952 (S.D. Cal. Apr. 19, 2024) (“an expert witness cannot ‘simply parrot’ the opinions of other experts”); *Wallace v. State Farm Mut. Auto. Ins. Co.*, Civil Action No. 21-cv-3445-WJM-STV, 2023 U.S. Dist. LEXIS 169738, at *6-7, 2023 WL 6198893 (D. Colo. Sep. 22, 2023) (“While an expert may review or even consider the reports of other experts, he must also independently analyze the material and apply his own knowledge and experience without wholesale adopting the opinion of another expert.”).

Accordingly, Plaintiff cannot simply end-run around the requirements of Rule 26 and use Mr. Silverman’s *ipse dixit* opinion (which was not even considered by Dr. Dennis) to explain away Dr. Dennis’s design deficiencies. Plaintiff’s offer, on behalf of Dr. Dennis, to completely re-design the surveys to include the Disclaimer is likewise insufficient and only underscores that its current exclusion is a methodological deficiency, not a deliberate and justified design choice. (*See* Opp. at p. 7, fn. 1.)

## III. **CONCLUSION**

For the reasons set forth above and in the moving papers, RugsUSA respectfully requests that the Court grant its Motion and exclude the opinions of Dr. Dennis and any related testimony.

DATED: August 5, 2026

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By: */s/ P. Craig Cardon*

P. Craig Cardon*
ccardon@sheppard.com
Kevin Murphy*
kemurphy@sheppard.com
Rana Salem*
rsalem@sheppard.com
Abby H. Meyer*
ameyer@sheppard.com
1901 Avenue of the Stars, Suite 1600
Los Angeles, CA 90067
Telephone: 310.228.3700

STOEL RIVES LLP

Timothy W. Snider, OSB No. 034577
timothy.snider@stoel.com
Nicholas R. Bottcher, OSB No. 245683
nicholas.bottcher@stoel.com
Telephone: 503.224.3380

*Attorneys for Defendant RugsUSA, LLC*
* Admitted *Pro Hac Vice*

**Certificate of Compliance**

This brief complies with the applicable word-count limitation under LR 7-2(b) because it contains 3,968 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

*/s/ P. Craig Cardon*
P. Craig Cardon