Timothy W. Snider, OSB 034577
Nicholas R. Bottcher, OSB 245683
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR 97205
timothy.snider@stoel.com
nicholas.bottcher@stoel.com
T: 503.224.3380

*Attorneys for Defendant, RugsUSA, LLC*

[Additional Counsel Listed on Signature Page]

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

KEIRA McCARRELL, individually and on behalf of all others similarly situated,

Plaintiff,

v.

RUGSUSA, LLC,

Defendant.

Case No. 3:25-cv-00454-AB

**DEFENDANT RUGSUSA, LLC'S OPENING BRIEF ADDRESSING QUERIES FROM THE COURT'S ORDER AT DKT. 102**

[redacted]

RugsUSA hereby submits its response pursuant to the Court's Orders at Dkts. 102 and 106.

## I. QUESTION 1: PLAINTIFF'S PRICE-PREMIUM MODEL CANNOT SHOW UTPA LIABILITY

Plaintiff has offered a "price-premium" model in support of her Motion for Class Certification (Dkt. 54), but no matter how it is construed, that model cannot be used to "show liability" for her UTPA claims (Dkt. 102, p. 4).

Plaintiff seeks certification under Or. Rev. Stat. §§ 646.608(1)(j), (p), (s), and (ee [which incorporates by reference Or. Rev. Stat. §§ 646.883 and 646.885]) (the "UTPA"). (Dkt. 54, p. vi.) UTPA claims require proof that an unlawful act was committed, that the plaintiff "suffered an

ascertainable loss," and such loss (or injury) "was the result of the unlawful trade practice." *McCarrell v. RugsUSA, LLC*, 2025 U.S. Dist. LEXIS 151958, *12 (D. Or. Aug. 7, 2025), citing *Pearson v. Philip Morris, Inc.*, 358 Or. 88, 127 (2015). Whether reliance is required in the UTPA calculus "depends" on the nature of the ascertainable loss "alleged." *Bohr v. Tillamook Cnty. Creamery Ass'n*, 373 Ore. 343, 359 (2025).

While novel, Oregon recognizes a "price premium" theory of injury under the UTPA. *Bohr*, 373 Ore. at 350. The "price premium" theory – also referred to as a "fraud on the market" theory – refers to conduct that empowers a company "to charge more for its products across the entire market, ***not*** that the representations induced any individual purchase." *Id.*, 355 (emphasis added). Reliance is not required to establish this type of UTPA injury. *Id.*, 368-70 (noting also that the bar required at the class certification stage to establish this theory is much higher than at the pleading stage). Plaintiff's price-premium model cannot "be used to show liability" (Dkt. 102, p. 4) under this theory because the model was not designed to measure this type of injury and consequently fails *Comcast* (Dkt. 66, p. 16). Fraud-on-the-market requires at least a before-conduct and after-conduct price change, with the alteration of the price caused by the challenged conduct. (Dkt. 65-1, ¶¶ 138-144.) RugsUSA, however, regularly revises its prices as it accumulates data in the ordinary course and runs seasonal promotions of various types and durations. (Dkt. 66-1, ¶¶ 4, 5, 7-9.) There is no record evidence that as a result of a particular promotional statement RugsUSA pushed its prices higher across the board (*compare id.*); nor is there record evidence of other retailers' prices and how these compare to RugsUSA's prices, i.e., there is no record evidence that RugsUSA's rugs are priced at a premium vis a vis other retailers (*compare Bohr*, 373 Ore. at 369-70). Instead, the circumstances here are akin to the failure of proof seen in *Pearson*, where plaintiffs failed to establish a "difference in the price between a

product with the represented feature and one without," and therefore they provided "no logically viable theory on which classwide economic losses can be established." 358 Or. at 124.

Oregon also recognizes an "inducement" theory of injury under the UTPA. While Plaintiff tries to pivot to a fraud-on-the-market theory, her "price-premium" damages model is meant to measure an inducement theory of liability. (*See* Dkt. 66, p. 16.) Here again, though, she has failed to carry her burden under Rule 23. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 980 (9th Cir. 2011). Under Oregon jurisprudence, an inducement theory of the type claimed by Plaintiff *necessarily* requires individualized proof of reliance. *Pearson*, 358 Or. at 126 ("Although reliance is not, in and of itself, an element of a UTPA claim, it is a natural theory to establish the causation of the loss (i.e., the 'injury' in a UTPA claim) for a purchaser seeking a refund based on having purchased a product believing it had a represented characteristic that it did not have."); *id.*, 135 n.26 ("Reliance, however, is necessarily subjective—it turns on what individual purchasers in fact believed and whether their beliefs motivated their purchases …"); *Bohr*, 373 Ore. at 365 ("proof of consumer reliance on the misrepresentation was 'integral' […] because the plaintiffs' theory of recovery depended on them having formed a belief about the product's represented characteristics and, then, not receiving what they believed they were buying.").[1] Because reliance is an individual issue, Plaintiff cannot "show" reliance by the class by pointing to her experts' opinions. Thus, her price-premium model cannot be used to show liability using common evidence and in this respect Plaintiff has failed to satisfy the predominance requirement of Rule 23.

[1] While *Strawn* stands for the proposition that reliance may be shown with circumstantial evidence (*Strawn v. Farmers Ins. Co.*, 350 Ore. 336 (2011)), *Strawn* is limited to its procedural posture, addressing whether evidence was legally sufficient to support a directed verdict. *Pearson*, 358 Or. at 131-32. "The guidance [*Strawn*] gave for assessing whether a class plaintiff's circumstantial evidence created a jury question on the issue of classwide reliance is inapposite to the class certification issue that this case presents." *Id.*, 132.

For these further reasons, Plaintiff's Motion for Class Certification should be denied.

## II. QUESTION 2: PLAINTIFF'S PROPOSED STATISTICAL ANALYSES ARE NOT AN ECONOMICALLY VIABLE WAY TO PROVE LIABILITY

Plaintiff's proposed statistical analyses are not "an economically viable way of proving liability where the alleged scheme involves misrepresentations about price." (Dkt. 102, p. 4.) The reasons are simple: Plaintiff's experts designed a damages model that measures consumers' willingness-to-pay – an inducement theory of harm requiring individual evidence of reliance and ***not*** a fraud-on-the-market theory of harm. Further, at least as modeled, the statistical analyses cannot reliably measure misrepresentations about price. And finally, the proposed statistical analyses omit key historical information that renders them unable to prove liability across the putative class of products and purchasers.

### A. The Model Cannot Prove Market-Wide Price Inflation

Plaintiff's damages experts (Dennis and Weir) opine that every purchaser was harmed because RugsUSA's prices were "allegedly inflated" by the challenged conduct, and Plaintiff purports to use this soundbite to argue that she is offering a fraud-on-the-market theory of liability. (Dkt. 65-1 ¶ 138.) Even if her experts' opinions could be fairly characterized as ones for fraud-on-the-market, that theory requires proof that the pricing or promotion caused a material, upward effect on RugsUSA's prices. (*Id.*, ¶ 139.) Rather than measure and establish this, Plaintiff's experts assume it to be true: Dennis adopts as his "working hypothesis" that RugsUSA's reference prices are false, conceding that evaluating them is "not part of [his] assignment." (*Id.*, ¶ 39(a).) Weir likewise admits that his approach assumes Plaintiff's theory of harm is correct. (*Id.*, ¶ 69 n.130; *see also* ¶ 77.) But liability cannot be established by a false premise, and evaluation of the RugsUSA data disproves that Plaintiff has offered a fraud-on-the-market model that survives *Comcast.*

RugsUSA's rebuttal expert mapped prices for three products, and his chart shows that pricing varied widely by product with, for instance, the 8x10 Verdant Green Arrel rug's price increasing more quickly than the two other mapped products and also changing at different

[redacted]

magnitudes and durations as compared to the other products. (Dkt. 65-1, Ex. 5.) This chart ***does not show*** sustained price increases, nor do the price changes tie out to changes in pricing representations or promotions. Using securities litigation as a counter-exemplar (as those cases often use a fraud-on-the-market damages model), there every investor buys the same product at the same price at a given moment. (Dkt. 65-1 ¶ 140.) Pricing impact can be evaluated on a before-and-after representation basis, allowing evaluation of whether a representation caused a change in the price. RugsUSA instead updates its prices product-by-product, [redacted]. (Dkt. 66, pp. 5-6.) And, RugsUSA's customers bought different products at widely varying prices and promotions, over time. (Dkt. 65-1 ¶ 140; *see also* ¶ 141(a)-

(c).) There is no single market price that the challenged conduct has inflated – as illustrated above. The presumption that RugsUSA's challenged conduct increased RugsUSA's prices overall and for everyone is not true, causing the fraud-on-the-market theory to fail.

Instead, what is clear here is that Plaintiff's experts never in fact undertook to offer a fraud-on-the-market damages model. Their opinions are premised on a choice-based survey which is widely understood to measure individual consumers' preferences and willingness to pay – and thereby inducement-based liability. (Dkt. 65-1 ¶ 88.)[2] As discussed above, inducement-based liability requires individual evidence of each consumer's reliance (or lack thereof), meaning that Plaintiff cannot establish the predominance requirement of Rule 23.

### B. Plaintiff's Proposed Statistical Analyses Do Not Work Because The Representation At Issue Is Price

Price, or the availability of a promotion, is not an intrinsic product attribute, like color or size. It is an extrinsic product feature that changes based on supply and demand factors. This distinguishes this case from others where the courts have approved conjoint-based damages models. In a label case, for example, a survey can vary a claim like "natural" or "oil-free" while holding price constant, thereby measuring what consumers are willing to pay for the "natural" or "oil-free" attribute. Not here. As noted by the Court (Dkt. 102), there is no precedent for accepting this type of damages model in the context of a false pricing challenge. (Dkt. 65-1 ¶ 142.)

[2] Plaintiff's experts do not intend to use Sawtooth Software as directed. Sawtooth stresses that competitive context is "critical" and should be captured in any simulation. (Dkt. 65-1 ¶¶ 116–117, 119–120.) Dennis ignores this, instead pitting identical RugsUSA products against each other despite identifying more than a dozen competitors (*id.*, ¶¶ 118, 121). He then sets but-for prices at a 50/50 preference split rather than at profit-maximizing levels without considering costs (*id.*, ¶¶ 123–124 & n. 243), and he repeats these flaws in every proposed simulation (*id.*, ¶¶ 125, 130 & n. 240). The resulting estimates cannot reliably measure any price premium. (*Id.*, ¶ 126.)

Dennis' design exposes the problem. The proposed surveys ask respondents to complete 12 choice tasks, each time selecting among three hypothetical rugs described by seven attributes: material, size, style, pattern, color, description, and price. (Dkt. 65-1 ¶¶ 31, 32(a)-(g).) The price attribute will appear as one of four "expressions": (1) a web price paired with a reference price (*e.g.*, "$80 ~~$100~~"); (2) a web price paired with a sitewide promotion (*e.g.*, "$80, $64 After Additional Discount"); (3) a web price paired with a reference price and a sitewide promotion (*e.g.*, "$80 ~~$100~~, $64 After Additional Discount); or (4) no challenged conduct (*e.g.*, "$80" or "$64"). (*Id.*, ¶ 32(g).) Dennis would then simulate a market of two otherwise identical RugsUSA rugs, one with the challenged conduct and one "cured," adjusting the "cured" price until "the market share is an equal 50/50 split." (*Id.*, ¶ 35.) The premium would be the gap between the two prices, as a percentage of the challenged price. (*Id.*, ¶¶ 34-36.) This fails to distinguish between the impact of the price, the promotion, or some intrinsic quality of the rug (like color or size). (*Id.*, ¶¶ 143-144.) However, because the purported misrepresentation and the price are represented by the same attribute, Dennis' model would not be able to reliably isolate the impact of the challenged conduct on the price. (*Id.*, ¶¶ 143-144). That is, while the proposed surveys would present the above four "expressions" as a single price attribute on the front end, Dennis includes "web, regular, [and] sitewide discounted prices" in the back-end implementation. (Dkt. 56, ¶ 103.) Because of this design, price attributes could represent either the purported misrepresentation or the price paid. For example, for the first expression (*e.g.*, "$80 ~~$100~~"), the web price attribute would be "$80," the regular price attribute would be "~~$100~~," and the sitewide discounted price attribute would be blank. In this case, the web price attribute is the price paid. But for the second expression (*e.g.*, "$80, $64 After Additional Discount"), the web price attribute would be "$80," the regular price attribute would be blank, and the sitewide discounted price attribute would be "$64 After

Additional Discount." In this case, the web price attribute is a form of the challenged conduct (*i.e.*, a reference price prior to the application of a sitewide discount). Therefore, depending on the expression shown, the web price attribute could represent either the purported misrepresentation or the price paid.

**C. The Proposed Statistical Analyses Omit Key Data, Ostensibly To Force A Finding Of A Price Premium, As A *Fait Accompli***

Plaintiff's model is also not economically viable because it cannot be reconciled with what putative class members bought or the discounts they received.

*The surveys omit nearly a third of the product types at issue.* Dennis' surveys include only standard rectangular rugs in four small sizes and four large sizes. (Dkt. 65-1 ¶ 83.) The surveys

[redacted]

exclude round and square rugs, runners, and oversize rugs. (*Id.*) He also omits outdoor rugs and offers no basis for applying his premiums to them. (*Id.*, ¶ 83(b).) He likewise omits designer collections, such as Nate Berkus x Rugs USA, without considering whether their higher prices reflect royalty costs rather than the challenged conduct. (*Id.*, ¶ 83(c).) And he omits RugsUSA's non-rug products, including rug pads, bedding, and lighting. (*Id.*, ¶ 83(d).) These are not marginal gaps. As Table 1 (above) shows, the excluded products account for [redacted] of Oregon sales

[redacted]) and more than [redacted] of units sold ([redacted]). (*Id.*, ¶ 84 & n.178–179; *id.*, p. 52, Table 1.) Without data relevant to these product types, there is no basis to conclude that Plaintiff's statistical analyses can apply to them to offer an economically viable way of proving liability on a common-evidence basis as required by Rule 23 and *Comcast*.

*The survey parameters do not capture the discounts class members actually received.* Dennis plans to measure a separate premium for each combination of size category, form of challenged conduct, and discount level – 24 premiums in all. (Dkt. 65-1 ¶ 130 and n.253.) But his web discounts top out at 41.2%, though RugsUSA's actual discounts exceed that, and he never specifies the range for sitewide discounts. (*Id.*, ¶ 130 n. 252.) In reality, the five products in his large-rug category alone generate [redacted] distinct combinations of web and sitewide discounts for Oregon customers. (*Id.*, ¶ 131; *see* Table 2.) Plaintiff does not dispute that this deficiency exists.

(Dkt. 70 at 18.)

[redacted]

Dennis also splits his surveys by size on the premise that "price is clearly conditional on size." (Dkt. 65-1 ¶ 128.) By that logic, he should use one survey per rug size category, yet he stops at two size categories and does not explain why. (*Id.*, ¶ 129.) Stopping at two forces very different rugs into the same category. His small-rug category alone groups 2'x3' rugs averaging [redacted] with 5'x8' rugs averaging [redacted] which cost more than three times as much and are more than six times the size. (*Id.*, ¶ 129 & n. 248-249.)

Similarly, Dennis concedes that web prices "tend to be conditional on" material, yet never explains why the purported premium would not also differ by material, style, pattern, or color. (Dkt. 65-1 ¶ 132.) Prices also change over time and by product, and diverge sharply within his size categories. Small-rug prices span roughly [redacted], and even 4'x6' rugs

span [redacted]. (*Id.*, ¶ 134(a)-(c) & n. 261-262.) Applying a "one-size-fits-all" percentage across those ranges attributes size-driven price differences to the challenged conduct and cannot measure harm classwide. (*Id.*, ¶¶ 135-136.) And each effort to refine the categories only confirms the need for individualized inquiry. (*Id.*, ¶¶ 127, 133.)

*Plaintiff's analyses ignore that many transactions included no challenged conduct.* For the five products analyzed in Table 2, approximately [redacted] of Oregon unit sales involved no price discount, [redacted] involved no sitewide promotion, and [redacted] involved neither. (Dkt. 65-1 ¶ 131 n. 254.) On those sales, customers "did not suffer economic harm consistent with Plaintiff's theory," and neither of Plaintiff's experts indicates having analyzed this data. (*Id.*) Whether a given sale involved the challenged conduct at all, and therefore might result in liability, can only be determined using individual, transaction-by-transaction data. Any statistical model detailed enough to match the transactions at issue would require the individualized inquiry that defeats predominance under Rule 23(b)(3). (Dkt. 65-1 ¶¶ 133, 136, 144.)

Because Plaintiff's proposed statistical analyses are not an economically viable way of proving liability for the alleged pricing misrepresentations, the Court should resolve the viability of Plaintiff's price-premium theory now and deny class certification.

DATED: November 20, 2026

By: */s/ P. Craig Cardon*

PAUL HASTINGS LLP
P. Craig Cardon (CA 168646)*
Abby H. Meyer (CA 294947)*
Kevin M. Murphy (CA 346041)*
Rana Salem (CA 358050)*
craigcardon@paulhastings.com
abbymeyer@paulhastings.com
kevinmurphy@paulhastings.com
ranasalem@paulhastings.com

STOEL RIVES LLP
Timothy W. Snider, OSB 034577
timothy.snider@stoel.com
Nicholas R. Bottcher, OSB 245683
nicholas.bottcher@stoel.com

*Attorneys for Defendant RugsUSA, LLC*
* Admitted *Pro Hac Vice*

**Certificate of Compliance**

The brief complies with the Parties' Joint Status Report [Dkt. 105] because it contains 2,550 words, including headings, footnotes, and quotations, but excluding the caption, signature block, and any certificates of counsel.

*/s/ P. Craig Cardon*
P. Craig Cardon

LEGAL_AMERICAS # 605061531.6 104228.00003