Jonas Jacobson (OSB No. 231106)
jonas@dovel.com
Simon Franzini (Cal. Bar No. 287631)*
simon@dovel.com
Stephen Ferruolo (Cal. Bar No. 364158)*
sferruolo@dovel.com
Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
Tel: (310) 656-7066
Facsimile: +1 (310) 656-7069

Julian C. Diamond (NY Bar No. 5836846)*
jdiamond@bursor.com
Bursor & Fisher, P.A.
1330 Avenue of the Americas, New York, NY 10019
Tel: (646) 837-7011
Facsimile: (212) 989-9163

*Attorneys for Plaintiff*

* Admitted *Pro Hac Vice*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| KEIRA MCCARRELL, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>RUGSUSA, LLC,<br><br>Defendant. | Case No. 3:25-cv-00454-AB<br><br>**PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR CLASS CERTIFICATION, IN RESPONSE TO THE COURT'S OCTOBER 19, 2026 ORDER (DKT. 102)** |

## TABLE OF CONTENTS

I. Introduction. .... 1

II. The UTPA claims turn on the same objective, reasonable-consumer inquiries as the California claims. .... 1

A. The "unlawful practice" element is objective and common to the class. .... 1

B. Causation under the premium-price theory is also an objective, reasonable-consumer inquiry. .... 2

III. Question 1: The price-premium model can establish ascertainable loss and causation under each section at issue. .... 3

A. A premium price is an ascertainable loss that requires no showing of reliance. .... 3

B. For ascertainable loss, a price misrepresentation is not different in kind. .... 4

C. The ORS 646.883 nondisclosure claim requires no reliance for an additional reason. .... 5

IV. Question 2: Plaintiff's price-premium model is an economically viable, classwide method of proving loss from false discounting. .... 6

A. Under *Lytle*, the question is whether the model is reliable and fits Plaintiff's theory, not what it will show. .... 6

B. A false discount is a marketing claim like any other. .... 7

C. Plaintiff's model is reliable and fits her theory. .... 8

D. For the UTPA statutory-damages claim, the model need only show that a premium exists. .... 9

V. These questions do not warrant deferring certification. .... 9

VI. Conclusion. .... 9

## TABLE OF AUTHORITIES

**Cases**

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013) ........ 6

*Andriesian v. Cosmetic Dermatology, Inc.*,
2015 U.S. Dist. LEXIS 50502 (D. Or. Mar. 3, 2015) ........ 2

*Bohr v. Tillamook Cnty. Creamery Ass'n*,
373 Or. 343 (2025) ........ 1, 2, 3, 4, 5, 9

*Clark v. Eddie Bauer LLC*,
371 Or. 177 (2023) ........ 4, 7

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013) ........ 6

*de Lacour v. Colgate-Palmolive Co.*,
338 F.R.D. 324 (S.D.N.Y. 2021) ........ 9

*Drake v. Bayer Healthcare LLC*,
2026 U.S. App. LEXIS 11268 (9th Cir. Apr. 21, 2026) ........ 3, 6, 7

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011) ........ 6

*Lytle v. Nutramax Labs., Inc.*,
114 F.4th 1011 (9th Cir. 2024) ........ 6, 9

*Montes v. Sparc Grp., LLC*,
2026 U.S. App. LEXIS 31992 (9th Cir. Oct. 21, 2026) ........ 4

*Moore v. GlaxoSmithKline Consumer Healthcare Holdings*,
713 F. Supp. 3d 660 (N.D. Cal. 2024) ........ 3

*Noohi v. Johnson & Johnson Consumer Inc.*,
146 F.4th 854 (9th Cir. 2025) ........ 7

*Pearson v. Philip Morris, Inc.*,
358 Or. 88, 135 (2015) ........ 1, 2, 4, 5, 9

*Sanders v. Francis*,
277 Or. 593 (1977) ........ 5

*Scharfstein v. BP W. Coast Prods., LLC*,
292 Or. App. 69 (2018) ........ 5

*Scott v. W. Int'l Surplus Sales, Inc.*,
267 Or. 512 (1973) ........ 9

*Silva v. Unique Bev. Co.*,
2017 U.S. Dist. LEXIS 179362 (D. Or. Oct. 30, 2017) ........ 2

*Solano v. Kroger Co.*,
2020 U.S. Dist. LEXIS 223143 (D. Or. Nov. 30, 2020) ........ 5

**Statutes**

ORS 646.608(1) ........ 1, 5

ORS 646.883 .......... 2, 5
ORS 646.885 .......... 2, 7

**Rules**

Rule 23(b)(3) .......... 9
Rule 23(c)(1)(A) .......... 9

## I. Introduction.

The Court asked whether Plaintiff's price-premium model can, as a matter of law, show liability under the UTPA sections at issue, and whether the proposed analyses are an economically viable way to prove liability for price misrepresentations. Dkt. 102 at 4. Both answers are yes.

Under the UTPA, as under the California statutes, whether a representation is misleading is "an objective inquiry" that is "common to the class." *Pearson v. Philip Morris, Inc.*, 358 Or. 88, 135 n.26 (2015). And under *Bohr*'s premium-price theory, causation is likewise an objective, classwide question: whether the deception inflated the market price every buyer paid. *Bohr v. Tillamook Cnty. Creamery Ass'n*, 373 Or. 343, 365, 368 (2025).

The price-premium model is offered not to prove deception but to prove ascertainable loss and causation, the role *Bohr* approved.

## II. The UTPA claims turn on the same objective, reasonable-consumer inquiries as the California claims.

The Order suggests that the objective, reasonable-consumer standard of the California statutes is "not applicable to Oregon law." Dkt. 102 at 3. But Oregon applies the same standard to the unlawful-practice element and, under *Bohr*'s premium-price theory, to causation.

### A. The "unlawful practice" element is objective and common to the class.

As the Order explains, the California statutes apply an objective test, whether members of the public are likely to be deceived, obviating individual inquiry. Dkt. 102 at 3. The UTPA's first element, an unlawful trade practice, applies the same test. ORS 646.608(1)(j), (p), (s) (prohibiting "false or misleading" price representations). Whether a representation is misleading "is determined based on an objective standard of what a reasonable consumer would understand the representation to be," and, "[a]s an objective inquiry, it would be common to the class." *Pearson*, 358 Or. at 135 n.26. So, as in California, this element is common. *Pearson*'s class failed on reliance, not

misrepresentation, *id.*, and premium-price claims like Plaintiff's require no reliance, *Bohr* 373 Or. at 359, 368.

Courts in this District apply that standard to UTPA claims. *Silva v. Unique Bev. Co.*, 2017 U.S. Dist. LEXIS 179362, at *6, *10, *13–14 (D. Or. Oct. 30, 2017) (applying *Pearson*'s objective standard to UTPA labeling claims and denying dismissal because "the label … could be misleading to the reasonable consumer"); *Andriesian v. Cosmetic Dermatology, Inc.*, 2015 U.S. Dist. LEXIS 50502, at *9, *13 (D. Or. Mar. 3, 2015) ("Oil-Free" label actionable because "a reasonable consumer" could "read 'Oil-Free' to mean the product contains no artificial or synthetic oil ingredient").

UTPA price-comparison claims are even more objective. ORS 646.883 requires the seller to "clearly and conspicuously identif[y] … the origin of the price," and ORS 646.885 provides that terms such as "regular," "sale," and "percent off" refer to "the seller's former price." As detailed in the class certification briefing, whether Rugs USA's tooltip complies is one question with one answer.

Deception turns on two common questions: what Rugs USA's pricing conveys to a reasonable consumer, and whether that message was true. Mr. Silverman opines that "a reasonable consumer" would understand Rugs USA's reference prices to be "the prices that Defendant usually and typically charges," and that "a significant portion of Defendant's online customers, acting reasonably in the circumstances, would be misled." Dkt. 55 ¶¶38–39. Rugs USA's transaction-level data will answer the second question. Dkt. 57 ¶¶58–59. Rugs USA's argument that individual customers may have understood a reference price differently (Dkt. 100 at 3) is foreclosed by *Pearson*'s objective standard.

### B. Causation under the premium-price theory is also an objective, reasonable-consumer inquiry.

The Order distinguishes the California cases because there "causation, on a classwide basis, may be established by materiality," which is judged by an objective, reasonable-consumer standard.

Dkt. 102 at 3 (quoting *Moore v. GlaxoSmithKline Consumer Healthcare Holdings*, 713 F. Supp. 3d 660, 672 (N.D. Cal. 2024)). The same is true of causation under the UTPA's premium-price theory.

The two States reach that result by different routes. In California, the objective standard proves causation by establishing reliance classwide. In Oregon, a premium-price plaintiff need not prove reliance at all. *Bohr*, 373 Or. at 371. Causation instead turns on whether the deception inflated the market price that every buyer paid, a question that does not depend "on purchasers having had any particular understanding" of the representations. *Id.* at 365. As the Ninth Circuit explained in affirming certification of a price-premium class, "the presence or absence of a price premium is an objective, reasonable consumer inquiry," so "either all class members were injured or they were not." *Drake v. Bayer Healthcare LLC*, 2026 U.S. App. LEXIS 11268, at *4 (9th Cir. Apr. 21, 2026) (unpublished). Dr. Dennis's survey is designed to measure exactly that: "what economic value, if any, a reasonable consumer of rugsusa.com Products place[s] on a false discount attribute." Dkt. 56 ¶26.

The UTPA claims thus present the same objective, classwide causation question as the cases the Court cited.

## III. Question 1: The price-premium model can establish ascertainable loss and causation under each section at issue.

### A. A premium price is an ascertainable loss that requires no showing of reliance.

Under *Bohr*, a buyer who "received exactly what she was expecting at the price she was willing to pay" still "experienced an economic loss" if "the market price . . . would have been less . . . if not for [defendant's] deceptive marketing." 373 Or. at 368. That is Plaintiff's theory: Rugs USA's fictitious reference prices and perpetual "sales" increased demand, letting Rugs USA charge every purchaser an inflated price. Dkt. 57 ¶25; Dkt. 56 ¶57; Dkt. 70 at 12–13. The inflated price is the

ascertainable loss, and the deceptive pricing that inflated it is the cause. Question 1 is therefore answered as a matter of law: under *Bohr*, a premium price is a cognizable ascertainable loss.

That loss is established without individual reliance. The premium-price theory "does not, as pleaded, appear to necessitate a showing that every buyer relied on [defendant's] representations." *Bohr*, 373 Or. at 368. That follows from the statute: "ORS 646.638(1), by its terms, does not require reliance by the consumer." *Id.* at 359. *Pearson* required reliance only because the plaintiffs claimed the entire purchase price as their loss, on the theory that "they did not get what they believed they were buying." *Id.* at 364 (quoting *Pearson*, 358 Or. at 127). Plaintiff, by contrast, pleaded the price-premium theory from the start. Dkt. 23 at 20 (quoting Compl. ¶ 44) (Rugs USA's advertisements "artificially increase consumer demand," so it "can charge a price premium").

**B. For ascertainable loss, a price misrepresentation is not different in kind.**

The Order asks whether the theory works "where the misrepresentation involves a pricing scheme and not a distinct characteristic or attribute." Dkt. 102 at 3–4. The Oregon Supreme Court rejected that distinction for ascertainable-loss purposes: "the distinction … between a seller who misrepresents a product's physical characteristics or quality and a seller who mispresents [*sic*] the product's price history, is not supported by our case law." *Clark v. Eddie Bauer LLC*, 371 Or. 177, 196 (2023). That subsections (e) and (i) do not reach pricing representations, Dkt. 23 at 12–14, does not matter; the ascertainable-loss analysis does not depend on the form of the misrepresentation. *See Clark*, 371 Or. at 187–88. Applying Washington law, the Ninth Circuit recently accepted the "price premium theory of injury" in a false-discount case. *Montes v. Sparc Grp., LLC*, 2026 U.S. App. LEXIS 31992, at *4 (9th Cir. Oct. 21, 2026) (consumer "could allege economic loss if . . . the product she received was . . . less valuable than what was advertised") (citation omitted). Here, Mr. Silverman explains that Rugs USA's "list prices … exist for the purpose of creating the illusion that the

customer is getting a product worth more than what they are paying," Dkt. 55 ¶82, and Plaintiff's model is designed to measure that difference as a price premium, Dkt. 56 ¶33; Dkt. 57 ¶11.

Judge Mosman applied the same principle to the overpayment theory *Bohr* later adopted. In *Solano*, the misrepresentation concerned the customer's cost: a ten-cent deposit on containers that were not redeemable. He rejected the view that redeemability had to be "an inherent characteristic, quality, feature" of the product and held that plaintiffs alleging that the "misrepresentation of the customer's cost" made "the purchase price … greater than its objective market value" state ascertainable loss and causation under ORS 646.608(1)(s) without reliance. *Solano v. Kroger Co.*, 2020 U.S. Dist. LEXIS 223143, at *10–14 (D. Or. Nov. 30, 2020) (citing *Pearson*, 358 Or. at 144 (Walters, J., concurring)). A price misrepresentation thus supports a premium-price loss just as an attribute misrepresentation does.

**C. The ORS 646.883 nondisclosure claim requires no reliance for an additional reason.**

The ORS 646.608(1)(ee) claim under ORS 646.883 alleges a failure to disclose, clearly and conspicuously, the origin of the comparison price. Where "the representation takes the form of a 'failure to disclose,' . . . it would be artificial to require a pleading that [the] plaintiff had 'relied' on that non-disclosure." *Bohr*, 373 Or. at 359 (quoting *Sanders v. Francis*, 277 Or. 593, 598 (1977)). In such a case "whether a customer relied on the nondisclosure . . . does not matter; what matters is whether the fee is disclosed in the particular way that the law requires." *Scharfstein v. BP W. Coast Prods., LLC*, 292 Or. App. 69, 88–90 (2018) (affirming classwide $200 statutory damages and denial of decertification).

## IV. Question 2: Plaintiff's price-premium model is an economically viable, classwide method of proving loss from false discounting.

### A. Under *Lytle*, the question is whether the model is reliable and fits Plaintiff's theory, not what it will show.

The Order notes that Plaintiff's experts "have not yet undertaken any of the proposed analyses." Dkt. 102 at 3. The Ninth Circuit does not require it. "[T]here is no general requirement that an expert actually apply to the proposed class an otherwise reliable damages model … at the class certification stage." *Lytle v. Nutramax Labs., Inc.*, 114 F.4th 1011, 1019 (9th Cir. 2024). Instead, plaintiffs "may rely on a reliable though not-yet-executed damages model … so long as the district court finds that the model is reliable and, if applied to the proposed class, will be able to calculate damages in a manner common to the class at trial." *Id.* Requiring plaintiffs to field their conjoint model before certification "demands more from [p]laintiffs at this stage of the litigation than Rule 23 requires." *Drake*, 2026 U.S. App. LEXIS 11268, at *4–6.

Whether the survey will find a premium, and how large, is a merits question. Rule 23 "requires a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013). That question arises in every conjoint survey, whatever the subject matter, including the label-claim surveys in *Drake* and *Noohi*. The answer will be the same for every class member: "either all class members were injured or they were not." *Drake*, 2026 U.S. App. LEXIS 11268, at *4. That common answer, whatever it turns out to be, does not bear on certification. The Court examines the merits "only inasmuch as it must determine whether common questions exist; not to determine whether class members could actually prevail on the merits of their claims." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 n.8 (9th Cir. 2011).

The certification question is therefore whether the model is reliable and measures only the loss attributable to Plaintiff's theory. *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013). "At the class

certification stage, the key inquiry … is simply whether Plaintiffs have demonstrated the nexus between their legal theory . . . and their damages model." *Drake*, 2026 U.S. App. LEXIS 11268, at *5-6 (quoting *Noohi v. Johnson & Johnson Consumer Inc.*, 146 F.4th 854, 867 (9th Cir. 2025)). If the model can answer the premium question for the whole class, "[t]hat is all that Rule 23(b)(3) requires of Plaintiffs at this stage." *Id.* at *6.

**B. A false discount is a marketing claim like any other.**

The Order distinguishes the labeling cases because the misrepresentation here involves "a pricing scheme." Dkt. 102 at 3–4. But that distinction does not affect whether the premium can be measured. A conjoint survey measures any marketing claim's value the same way: by comparing the same product with and without it. Whether or not a discount describes a "characteristic" of the goods under ORS 646.608(1)(e), *see* Dkt. 23 at 11–14, it works like a label claim such as "oil-free." *Cf. Noohi*, 146 F.4th at 865. The Court has recognized that "allegations of fake discounts are descriptions of the goods, including the price and the promised discount." Dkt. 23 at 18 n.3. Plaintiff challenges not the price Rugs USA charged but what it said about that price: that it was marked down from a higher regular price, or discounted by a stated percentage. That statement is a marketing claim like any other. *Clark* treats a false price history the same way, as part of what the buyer pays for: the plaintiff paid for "items of clothing whose selling price had, at some earlier time, been what defendants' false price listings indicated," but "received . . . merchandise that had never been offered for sale at those prices." 371 Or. at 194. Like a label claim, the discount can be present or absent while the transaction price stays the same, which is exactly what the survey tests. Under Oregon law, both forms identify a comparison to "the seller's former price." ORS 646.885(1)–(2). Removing them produces the truthful version of the same offer. Dkt. 56 ¶20.

**C. Plaintiff's model is reliable and fits her theory.**

Plaintiff's experts will use conjoint analysis to calculate "what the prices of the Products would have been 'but-for' the harmful act (that is, Defendant's use of allegedly false reference pricing and false discounts) and then compare those 'but-for' prices to the actual prices paid by class members." Dkt. 56 ¶35; *see generally id.* ¶¶37–136; Dkt. 57 ¶¶16–29.

Plaintiff's proof has two parts. First, Dr. Dennis will field a choice-based conjoint survey and market simulation to "isolate any price premium solely attributable to Defendant's use of false reference pricing and false discounts." Dkt. 56 ¶33. The survey treats the regular (reference) price as its own attribute, either blank or inflated by 20%, 30%, 50%, or 70%. *Id.* ¶97. A respondent sees either a rug at $80 with a struck-through $100, or the identical rug at $80 alone. *Id.* ¶¶99–101. Sitewide promotions are handled the same way. *Id.* The market simulation then compares two otherwise identical products, one with the challenged claim and one "cured," following the test-and-control approach of the Federal Judicial Center's *Reference Guide on Survey Research*. *Id.* ¶20 & n.22. Because that is the only difference, the simulation "will reliably isolate any economic value associated with the Challenged Conduct." *Id.* ¶127. Second, Mr. Weir will apply the resulting premium to Rugs USA's transaction data to compute classwide and per-purchaser figures. Dkt. 57 ¶¶11, 15, 55–57. He opines that the survey "is properly designed to measure the price premium paid due solely to the Deceptive Sales Discounts" and is "especially economically suitable given Dennis' use of market based prices." *Id.* ¶35.

The survey's price points come from Rugs USA's actual transactions, and the quantity sold is treated as fixed by history, which accounts for supply-side conditions. Dkt. 56 ¶¶83, 102, 125; Dkt. 57 ¶¶40–45. Separate surveys by rug size and price tiers by size and material address product variety. Dkt. 56 ¶¶86–93. Dr. Dennis has specified the questionnaire, attributes, and levels and has tested the draft survey in focus groups. *Id.* ¶¶56, 72–80. No step requires "individualized analyses or Class-

Member-specific inquiries." Dkt. 57 ¶29. Rugs USA's remaining critiques (Dkt. 65 at 20–24) go to weight and can be resolved on the existing record or through Rule 702 motions.

### D. For the UTPA statutory-damages claim, the model need only show that a premium exists.

Plaintiff's UTPA claim does not require quantifying a premium at all. A plaintiff seeking the $200 statutory award "merely ha[s] to prove he suffered some loss"; "the amount of the loss is immaterial if only $200 is sought." *Scott v. W. Int'l Surplus Sales, Inc.*, 267 Or. 512, 515-16 (1973); *see Pearson*, 358 Or. at 121 n.18 (plaintiff "could prevail on the basis of a showing of 'some loss,' without showing the amount of the [product's] actual diminished value"); *see also de Lacour v. Colgate-Palmolive Co.*, 338 F.R.D. 324, 344 n.10 (S.D.N.Y. 2021). If the model shows any positive premium, that common proof establishes every class member's ascertainable loss for statutory damages, and Mr. Weir can calculate those damages from the same sales data. Dkt. 57 ¶61. The record already points to a positive premium: it is "now well-accepted that using a higher reference price alongside the selling price increases demand beyond the level induced simply by showing the selling price." *Id.* ¶25; *see id.* ¶27; Dkt. 55 ¶35.

## V. These questions do not warrant deferring certification.

Question 1 is a legal question answered by *Bohr*, and Question 2 is part of the Rule 23(b)(3) analysis the Court must perform anyway. A pre-certification merits ruling would bind only Ms. McCarrell, so deferral would not save resources. Rule 23(c)(1)(A) calls for a ruling "[a]t an early practicable time," and that time is now.

## VI. Conclusion.

The UTPA's deception element is objective and common to the class. Under *Bohr*, Plaintiff's price-premium model can prove ascertainable loss and causation for every section at issue without individual reliance, and under *Lytle* it is a reliable, classwide method of measuring that loss. The Court should certify the proposed Class.

Dated: November 20, 2026

Respectfully submitted,

*/s/ Julian C. Diamond*
Julian C. Diamond (NY Bar No. 5836846)*
jdiamond@bursor.com
Bursor & Fisher, P.A.
1330 Avenue of the Americas, New York, NY 10019
Tel: (646) 837-7011
Facsimile: (212) 989-9163

Jonas Jacobson (OSB No. 231106)
jonas@dovel.com
Simon Franzini (Cal. Bar No. 287631)*
simon@dovel.com
Stephen Ferruolo (Cal. Bar No. 364158)*
sferruolo@dovel.com
Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
Tel: (310) 656-7066
Facsimile: +1 (310) 656-7069

*Attorneys for Plaintiff*

* Admitted *Pro Hac Vice*

**Certificate of Compliance**

The brief complies with the Parties' Joint Status Report [Dkt. 105] because it contains 2,984 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

*/s/ Julian C. Diamond*
Julian C. Diamond